LATHAM & WATKINS LLP
    Christopher S. Yates (SBN 161273)
    Christopher B. Campbell (SBN 254776)
    Meaghan P. Thomas-Kennedy (SBN 303578)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:   chris.yates@lw.com
            christopher.campbell@lw.com
            meaghan.thomas-kennedy@lw.com

ORACLE CORPORATION
    Dorian Daley (SBN 129049)
    Deborah K. Miller (SBN 95527)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114
Email     dorian.daley@oracle.com
            deborah.miller@oracle.com

ORACLE CORPORATION
    Jeffrey S. Ross (SBN 138172)
10 Van de Graaff Drive
Burlington, MA 01803
Telephone: 781.744.0449
Facsimile: 781.238.6273
Email:   jeff.ross@oracle.com

Attorneys for Plaintiffs
Oracle America, Inc., and Oracle
International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation; and DOES 1–50,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1)  COPYRIGHT INFRINGEMENT;**<br>**(2)  INTERFERENCE WITH CONTRACT;**<br>**(3)  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; AND**<br>**(4)  UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

# REDACTED VERSION OF
# DOCUMENT SOUGHT TO BE SEALED

1    Plaintiffs Oracle America, Inc. ("Oracle America") and Oracle International Corporation

2  ("OIC") (together, "Oracle" or "Plaintiffs"), for their Complaint against Defendant Hewlett

3  Packard Enterprise Company ("HP"), the successor of Hewlett-Packard Company, allege as

4  follows based on their personal knowledge as for themselves, and on information and belief as to

5  the acts of others:

6  **I.      INTRODUCTION**

7    1.    For years, HP distributed, and conspired with others to distribute,

8  copyrighted, proprietary Oracle software code without authorization and in knowing violation of

9  Oracle's intellectual property rights.[1]  HP partnered with a third party software support

10  provider—TERiX Computer Company, Inc. ("Terix")—to sell hardware and software support

11  services that included the provision of software patches, updates, and bug fixes for Oracle's

12  proprietary Solaris operating system and related system firmware used on Oracle's Sun-branded

13  computers (collectively, "Solaris Updates").  HP knew that Oracle required customers who

14  wanted to access and install Solaris Updates to purchase a technical support agreement from

15  Oracle that granted rights to this intellectual property ("IP"); indeed, HP has the same

16  requirement for customers who wish to obtain updates for its copyrighted HP-UX server

17  operating system, and HP has sued a third party support company for unlawfully accessing and

18  using such updates to compete against it.  Nonetheless, in its effort to generate additional support

19  service revenues, HP falsely represented to customers that HP and Terix could lawfully provide

20  Solaris Updates and other support services at a lower cost than Oracle, and then worked with

21  Terix to improperly access and provide Oracle's proprietary Solaris Updates to customers.  HP

22  also directly installed Solaris Updates obtained from Terix on its customers' servers—even after

23  HP employees raised concerns to HP executives and its legal department that doing so violated

24  Oracle's copyrights and technical support policies.  After extensive litigation between Oracle and

25  Terix, Terix stipulated to judgment in favor of Oracle for this very conduct, including counts of

26  copyright infringement, fraud, violations of the Computer Fraud and Abuse Act, false advertising

27

28  [1] As used throughout this Complaint, the term "software" includes, without limitation, the Solaris
operating system, Solaris Updates, Oracle System Firmware, and firmware updates.

1

1   under the Lanham Act, breach of contract, intentional interference with prospective economic

2   relations, and unfair competition.  Oracle learned of HP's wrongful conduct in the course of the

3   Terix litigation, and brings this lawsuit against HP to protect its intellectual property rights and to

4   obtain compensation from HP for the customers HP unlawfully convinced to abandon Oracle's

5   support with false representations regarding the support (including Solaris Updates) that HP and

6   Terix could lawfully provide to the diverted Oracle customers.  Oracle also seeks injunctive

7   relief to prevent further acts of misappropriation and unfair competition.

8          2.      Oracle is the world's leading supplier of enterprise hardware and software

9   systems, and related technical support and consulting services for those systems.  Customers who

10   own Oracle hardware have the option to purchase an annual contract for technical support

11   services to be performed by Oracle for those hardware systems.  As part of those support

12   services, Oracle makes available to customers Solaris Updates for the proprietary Solaris

13   operating system and related system firmware that ships with and runs the hardware systems.

14          3.      In most instances, Oracle delivers its technical support services for this

15   software and firmware over the internet.  Customers that purchase a technical support agreement

16   from Oracle receive a "Customer Support Identification" number ("CSI number") linked to the

17   products covered by the support contract.  The CSI number allows customers to create login

18   credentials to access Oracle's secure support website.  Using those credentials, the licensed

19   customer on active support may download Solaris Updates for the hardware systems that are

20   covered by the support agreement.  The customer may not share or use its access credentials for

21   the benefit of others or for the benefit of unsupported Oracle hardware.  Only customers who pay

22   for and maintain a technical support agreement with Oracle may download Oracle's proprietary

23   Solaris Updates, and only for their own internal business on hardware systems covered by a

24   support contract.

25          4.      HP offers support services related to Oracle's Sun-branded hardware

26   systems, often as part of a "multi-vendor" support solution that includes support for the

27   customer's servers from other server manufacturers.  HP often works directly with customers to

28   provide this support, and often employs other entities, including Terix, as subcontractors to

2

1    provide all or some of the support services for the customer's Oracle servers.  When HP employs

2    a subcontractor like Terix to provide support services for a customer's Oracle servers, HP

3    typically remains the customer's primary contact for support needs and is involved in facilitating

4    the provision of support to the customer.

5          5.     Terix holds itself out as a third party maintenance provider that provides

6    support for, among other things Oracle hardware and—until recently as described below—

7    Oracle's proprietary Solaris operating system and system firmware.

8          6.     While a customer may engage a third party—instead of Oracle—to

9    provide "break-fix" support services on Oracle hardware, neither the third party nor the customer

10   can access or use Oracle's support website to obtain the proprietary software that runs on that

11   hardware without a support contract with Oracle because the Solaris Updates are Oracle's

12   copyrighted intellectual property.  As third party support providers not authorized or licensed by

13   Oracle, HP and its partners (including Terix) have no rights to distribute Oracle's proprietary

14   software as part of their support service offerings.

15         7.     HP ignored these fundamental rules and restrictions as part of its scheme

16   to sell its own support services for Oracle hardware to customers that needed access to Oracle's

17   proprietary patches and updates.  Neither HP, nor its partners, nor the end customers had any

18   right to access, download, copy, or distribute Solaris Updates from Oracle for these illicit

19   purposes.  Neither HP, nor its partners, have rights to distribute, access, or use Oracle's

20   proprietary software as part of their support service offerings.  Yet HP nonetheless, directly or

21   indirectly, provided its end customers—including but not limited to Comcast, ███████████

22   ████████████████████████████—with Oracle's copyrighted, proprietary

23   Solaris Updates.

24         8.     Neither HP nor its partners had permission from Oracle to distribute

25   copies of Oracle's copyrighted software to anyone, nor induce others, including their customers,

26   to copy and distribute Oracle's copyrighted software.  HP's activities infringe Oracle's

27   intellectual property rights and interfere with Oracle's contractual and prospective economic

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  relations. Oracle brings this lawsuit to stop HP's wrongful conduct and for damages caused by

2  HP's diversion of Oracle's customers through the unlawful use of Oracle's intellectual property.

3  **II.      THE PARTIES**

4      9.    Plaintiff Oracle America is a Delaware corporation duly authorized to do

5  business in the State of California, with its principal place of business in Redwood City,

6  California. Oracle develops and licenses certain intellectual property, including copyrighted

7  software programs, and provides related support and consulting services to its licensed

8  customers. In January 2010, Oracle completed its acquisition of Sun Microsystems, Inc.

9  ("Sun"),[2] which was renamed Oracle America, Inc. Plaintiff Oracle America continues to hold

10 all of Sun's interest, rights, and title to the copyrights for Solaris 8, 9 and 10 and the rights to

11 bring claims for infringement of those copyrights.

12     10.    Plaintiff OIC is a California corporation with its only place of business in

13 Redwood City, California. OIC owns and licenses certain intellectual property, including

14 copyrighted software programs. OIC and Oracle America together hold all interest, right and

15 title to the copyright for Solaris 11 and the right to bring claims for infringement of that

16 copyright. OIC, either on its own or together with Oracle America (depending on the

17 registration), holds all interest, right and title to the copyrights for Oracle System Firmware and

18 the right to bring claims for infringement of those copyrights.

19     11.    Defendant Hewlett Packard Enterprise Company ("HP") is a Delaware

20 corporation with its principal place of business and headquarters in Palo Alto, California.

21     12.    HP is the successor to Hewlett-Packard Company, which was, until

22 November 1, 2015, a Delaware corporation with its principal place of business and headquarters

23 in Palo Alto, California. For the relevant time period, Hewlett-Packard Company held itself out

24 as a third party maintenance provider that provides support for, among other things, Oracle's

25 Sun-branded hardware. Among other things, Hewlett-Packard Company developed, marketed,

26

27 [2] Sun developed and sold computer hardware and the Solaris operating system which runs that
   hardware. Sun computers, which Oracle continues to sell under the Sun brand name, may be

28 referred to as Oracle or Sun computer hardware interchangeably throughout this Complaint.

4

and sold its own computer systems; developed and licensed certain intellectual property, including copyrighted software programs; and provided related support and consulting services to its licensed customers.

13.     Oracle is currently unaware of the true names and capacities of Does 1 through 50, inclusive, whether individual, partnership, corporation, unincorporated association, or otherwise.  Due to the surreptitious nature of Defendants' actions, and the complicated nature of their scheme, the identities of Does 1 through 50 have been concealed from Oracle, preventing Oracle from identifying them by name.  After discovery, which is necessary to ascertain the true names and capacities of Does 1 through 50, Oracle will amend its complaint to allege the necessary identifying details.

14.     At all material times, each of the Defendants, including Does 1 through 50, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities, and in so doing the things alleged, each was acting within the scope of such agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others.

## III.    JURISDICTION

15.     Oracle's first claim for relief arises under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

16.     This Court has supplemental subject matter jurisdiction over the pendant state law claims under 28 U.S.C. § 1367, because these claims are so related to Oracle's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## IV.    VENUE

17.     Venue in this District is appropriate because HP is based here and committed a substantial amount of the wrongful intentional acts here, which it expressly aimed at Oracle.  HP knew or should have known Oracle resides in this District and caused harm that it

1   knew or should have known Oracle would likely suffer in this District.  As a result, HP would be

2   amenable to personal jurisdiction if this District were a separate state, and therefore venue in this

3   District is appropriate under 28 U.S.C. § 1400(a).

4   **V.    DIVISION / INTRADISTRICT ASSIGNMENT**

5           18.    Because this action alleges, among other things, claims for copyright

6   infringement, it is an intellectual property action and may be assigned on a district-wide basis

7   pursuant to Civil L.R. 3-2(c).

8   **VI.   FACTUAL ALLEGATIONS**

9           **A.    Oracle's Computer Systems and Support Materials**

10          19.    Oracle develops, manufactures, markets and distributes enterprise business

11   hardware and software systems and provides related technical support and consulting services.

12   The hardware systems that Oracle develops and distributes involve several components, all of

13   which Oracle supplies.  In a simplified view, the foundation of the system (or "stack" as it is

14   sometimes called) is typically storage and servers, such as Oracle's Sun servers.  The server

15   requires an operating system to run it, such as Oracle's Solaris operating system.  A typical

16   configuration would also employ a database to manage business data, middleware to allow the

17   database to interact with various applications that provide the business logic to be performed by

18   the system, and the applications themselves, such as human resources software for payroll

19   processing or financials software for financial reporting.

20          20.    Oracle's comprehensive line of Sun server systems provides world-class

21   performance for businesses of all sizes, and includes some of the most reliable, scalable, and

22   powerful systems in the industry.  Oracle also develops and licenses the Solaris operating system

23   and related "firmware" to run its Sun servers.  Solaris is one of the most advanced operating

24   systems available for enterprise use.  It provides innovative, built-in features that allow for high

25   availability, advanced security, efficiency, and industry-leading scalability/performance, and are

26   targeted at business and public sector customers.  Oracle spends many millions of dollars each

27   year developing and maintaining the Solaris operating system.

28

6

21.     As is typical in the enterprise computer industry, Oracle offers technical support services for its hardware systems, including the Solaris operating system.  For example, customers who own Oracle/Sun hardware may also purchase technical support services from Oracle which entitle those customers to Solaris Updates for their Oracle/Sun hardware, operating systems and firmware that run on that hardware.  Solaris Updates are available to customers with active support contracts with Oracle to download from Oracle's password-protected, secure customer support website.  Customers obtain, either through their own efforts on Oracle's support website or through an Oracle support engineer, the specific Solaris Update to apply based on the issues that they seek to address and the status of their particular system at the time the issue arises.

22.     Typically, Oracle's technical support service agreements are for one year. The customer may renew the agreement for an additional year subject to Oracle's then current pricing and support policies.  In order to lawfully access Solaris Updates and apply them to a particular hardware system, the customer must have an active technical support agreement with Oracle for that hardware system.  Oracle (like Sun before it) prices the service contract "on a per system basis."  Oracle's Hardware and Systems Support Policies state expressly that "[c]ustomers with unsupported hardware systems are not entitled to download or receive updates, maintenance releases, patches, telephone assistance, or any other technical support services for unsupported hardware systems."

23.     With a support contract, Oracle customers can create login credentials to access Oracle's secure support website, My Oracle Support ("MOS") (or previously Sun's support website, SunSolve).  Using a login credential, the licensed customer on active support may download otherwise restricted Solaris and firmware patches for its covered servers.  The MOS Terms of Use to which all users agree state: "You agree that access to My Oracle Support, including access to the service request function, will be granted only to your designated Oracle technical support contacts and that the Materials may be used only in support of your authorized use of the Oracle programs and/or hardware for which you hold a current support contract from Oracle."

7

24.     Oracle's requirement of a support agreement in order to access and apply Solaris Updates is very similar to the support policies that Sun had in place for many years prior to its acquisition by Oracle.  Like Oracle, Sun had a subscription model for Solaris support that required a support contract in order to access and use the full library of Solaris patches.  Since at least 1999, Sun sold access to Solaris patches and updates through annual support contracts, and only customers who purchased a support contract and demonstrated entitlement could access all Solaris patches.  Sun maintained a password-protected website that only customers with an active support agreement could use to obtain the full collection of Solaris Updates.  Sun also had patch access policies that stated expressly that third parties were not permitted to obtain Solaris Updates from Sun and provide them to end user customers without authorization, and that a separate Sun support contract was required for every system to which a customer applied patches.

**B.     HP's HP-UX Operating System and Its Technical Support Policies**

25.     HP is a global provider of "products, technologies, software solutions and services to individual consumers, small- and medium-sized businesses . . . , and large enterprises," with offerings including "enterprise information technology . . . infrastructure, including enterprise server and storage technology, networking products and solutions, technology support and maintenance . . . ."  HP's offerings include enterprise software and operating systems.

26.     Customers who purchase licenses to HP's enterprise software and operating systems, such as HP-UX, have the option to purchase contracts for related technical support services provided by HP or its authorized partners, including the provision of certain HP proprietary and protected software patches, updates, upgrades, fixes, and other technical support materials.  HP customers also have the option to not purchase any technical support services for their HP systems or purchase those services from an unauthorized support provider.  Service providers not authorized by HP do not have permission or rights to obtain, use, copy and/or distribute copies of this HP proprietary and protected software.

8

27.     Like Oracle, access to such HP proprietary and protected works is available to customers only with a valid support services contract with HP, and only those customers with a valid support services contract can access HP's password-protected support website and download the support software.

### C.     HP's Support Services Business

28.     HP also provides an array of hardware and software support services to customers, including support services for its own hardware and software products as well as support services for customers running Oracle/Sun hardware and software.

29.     HP partnered with various third parties, including Terix, to provide support for Oracle/Sun servers and software to customers.  In one form of the support relationship, HP would approach customers (sometimes jointly with Terix) to offer a complete suite of support services to the customer, including access to Solaris Updates if and when the customer required them.  HP would then subcontract the provision of the software support services for the Oracle/Sun products to Terix, which would then provide Solaris Updates to the customer with the facilitation and assistance of HP.  As described further below, HP knew that the customer wanted and needed Solaris Updates as part of its support package, and HP represented that it could meet all of the customer's needs—using Terix to meet the customer's needs for software support.  HP understood that Solaris Updates were an essential component of the Solaris support that its customers required and knew that such customers would not have acquired support from HP if they were told that Solaris Updates were only available from Oracle. Oracle learned as part of the Terix litigation that HP began using Terix to jointly service customer accounts by, at the latest, late 2007 or early 2008.

### D.     Terix's Unlawful Business Model

30.     For the relevant period, Terix advertised itself as "the leading independent provider of flexible and innovative hardware and software maintenance service offerings."  Terix claimed that it was "an industry leader for hardware and OS [operating system] maintenance services in the global datacenter market place."  Terix claimed that it could save customers "an average of 20% off the maintenance fees charged by OEMs [original equipment manufacturers]

9

for equivalent" service levels.  A significant portion of Terix's business was the provision of its "hardware and software maintenance offerings" for customers running Oracle/Sun servers and the Solaris operating system.

31.     Until mid-2015, Terix falsely told Oracle hardware customers that they did not need to purchase an annual support agreement with Oracle to obtain Solaris Updates. Terix told customers that it could provide Solaris and firmware support based on the following false assertions: (i) that customers' original purchase of the Oracle hardware, which included a license to use the installed version of Solaris on that hardware, also provided a perpetual entitlement to access and use Solaris Updates, (ii) that Terix could provide Solaris support including Solaris Updates, and (iii) that Terix could provide Solaris support and firmware updates because Terix was a member of Oracle's "partner" program (which it was not) and that this authorized Terix to provide Solaris support and firmware updates (which it does not).

32.     Terix then engaged in a number of techniques to copy and distribute Oracle's copyrighted and proprietary Solaris Updates, as illustrated in Terix's June 2013 "Terix Software Support" manual (the "Manual"), co-authored by Terix employee Jason Joyce at the request of, and then approved by, senior Terix management.  The Manual outlines the standard process Terix followed "for Terix customers that require full Software Support," i.e., who need software updates and not just hardware support.  The Manual states that once this process is complete, Terix will "provide[] customer access to patching information, firmware and private patches," that is, patches that can only be accessed by customers that have a support agreement with Oracle.  At its root, the process is for the customer, at Terix's instruction, to put *one server* on support with Oracle and then obtain access credentials that Terix then used to download Solaris Updates and firmware updates from Oracle's support website for *all of the customer's servers* on support with Terix.  This violates Oracle's technical support policies, which require an active technical support agreement with Oracle for each server to which a customer applies Solaris Updates.

33.     Terix knew that its conduct violated Oracle's technical support policies, and therefore employed a variety of subterfuges to avoid detection by Oracle.  The Manual

10

contained standardized emails that Terix employees were instructed to send to customers, who were in turn instructed to forward them to Oracle to order support on the one server.  The Manual instructed Terix employees to tell the customer "Please do not copy me on the email," so that Oracle would not be aware that Terix was inducing the customer to commit this misconduct.  The Manual instructed Terix employees to "move[] around" sections of the form customer email "keeping it from looking like a form letter to the OEM."  Joyce confirmed this was done so that Oracle could not figure out that these letters came from Terix.  In addition, pursuant to the Manual and as HP knew, Terix obtained a pre-paid credit card in the customer's name—not Terix's—that was provided to the customer to pay for the support contract with Oracle, again to prevent Oracle from knowing of Terix's (or HP's) involvement.  Because the credit cards Terix procured were all funded in U.S. dollars, the support contracts with Oracle needed to have a U.S. address.  The Manual instructed that for foreign customers with no U.S. address, Terix employees should instruct the customer to submit to Oracle a fraudulent address—one that was either completely "made up" or that belonged to a "random McDonalds."  The Manual also instructed Terix employees to log into Oracle's support websites from outside of Terix's network, which the co-author admitted was to keep Terix's involvement hidden from Oracle.  The Manual also contained talking points for Terix employees to use when customers "grow curious or fearful based on our asking them not to use Terix's name, or to do things in a way that hides our involvement."  The Manual acknowledged that Terix's "cloak and dagger" approach could "alarm the customer" who might "be worried about what is right or ethical."  Terix admitted that these "cloak and dagger" efforts were implemented to hide Terix's involvement from Oracle.

34. Terix developed a written presentation called "Clearvision" which was used to explain its "business model" to customers that asked for more detailed information about how Terix provided Solaris support services and, where a customer raised concerns about the legality of those services, to assure them that Terix's conduct was justified.  Among other things, Clearvision specifically told customers to disregard Oracle's written policies, to which the customers had previously agreed, that a customer may obtain Solaris Updates only for servers

11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

that are under a support contract with Oracle.  Clearvision also stated incorrectly that customers were entitled to all Solaris Updates for free by virtue of the software license customers received when they first licensed Solaris.  HP knew about Clearvision and the purpose it served to secure support business from Oracle's customers, helped Terix set up Clearvision presentations with customers who questioned the legality of obtaining Solaris Updates from Terix/HP, attended a Clearvision presentation at least as early as November 2012, and ultimately received a written copy of the entire presentation.  Relying on this and other misrepresentations, customers contracted with Terix and its partners such as HP instead of renewing support with Oracle.

35.     HP knew that, through Terix, it would be providing Solaris Updates to joint HP-Terix customers in violation of Oracle's support policies and intellectual property rights.  Indeed, HP expressly represented to existing and prospective customers that they could obtain Solaris Updates via Terix.  HP also knew that Oracle did not permit third parties like Terix to provide Solaris Updates unless the customer had a support contract directly with Oracle, yet HP never confirmed (or attempted to confirm) that joint Terix-HP customers actually had such contracts with Oracle (nor did it ask Terix to do so).  Finally, at least as of November 2012, HP participated in Terix's Clearvision presentation and thus understood Terix's entire business model and the indefensible arguments Terix used to justify its theft of Oracle's intellectual property.  Yet HP continued to work with Terix, continued to facilitate the provision of Solaris Updates to customers that HP knew did not have a support contract with Oracle, and even directly installed Solaris Updates for certain customers.  And it did so despite HP employees raising concerns about the legality of Terix's conduct to HP's legal department.  In short, the overwhelming evidence shows that HP knew the joint HP-Terix customers did not have a right to Solaris Updates and nonetheless contracted with Terix to ensure those materials were provided to customers that demanded them.

**E.     Oracle's Lawsuit Against Terix**

36.     In July 2013, Oracle filed suit against Terix and other parties for copyright infringement, violations of the Computer Fraud and Abuse Act, violations of the Lanham Act, breach of contract, intentional interference with prospective economic relations, and unfair

12

competition (the "Terix case"). Oracle's complaint centered on Terix's unauthorized provision of Solaris operating system support to customers on Oracle hardware.

37. The core defense asserted by Terix in the litigation was the same argument that it made to customers in its Clearvision presentations, including the November 2012 presentation involving HP: that "Individuals and entities who obtained licensed copies of Solaris 7, 8, 9 and/or 10 . . . received 'perpetual' license rights to that version (or those versions) of Solaris and to any Solaris Updates subsequently provided for that version (or those versions) of Solaris." Terix claimed that its conduct was therefore permissible and did not violate Oracle's copyrights.

38. On May 5, 2015, the Honorable Paul S. Grewal of the Northern District of California granted summary judgment in favor of Oracle on Terix's license defense. Judge Grewal ruled that "Defendants violated the terms of the relevant licenses by using a customer's credentials to—at the very least—download patches for any number of that customer's machines, whether covered by the license terms or not. This type of use is clearly not contemplated on the face of the license agreements."

39. On June 10, 2015, Terix stipulated to the entry of judgment against it, which established liability on all of Oracle's claims. Among other things, the stipulated judgment enjoined Terix from accessing, using, or distributing Oracle's proprietary Oracle/Sun software and support materials, including Solaris Updates and firmware updates, in specified manners. It also prohibited Terix from engaging, contracting for, or otherwise utilizing any third party—such as HP—to give, sell, or provide such proprietary software and materials to customers. Pursuant to the stipulated judgment, Terix was required to provide a statement to customers that "TERIX HAS NO LEGAL RIGHT TO PROVIDE ANY ORACLE SOFTWARE, BUG FIXES, PATCHES, UPDATES, UPGRADES, OR LICENSES FOR ANY SUCH SOFTWARE OR OTHER PRODUCT, OR ANY ORACLE SUPPORT MATERIALS. TERIX IS NOT AUTHORIZED TO PROVIDE, DISTRIBUTE OR MAKE AVAILABLE ANY SUCH ORACLE SOFTWARE, LICENSING, OR SUPPORT MATERIALS."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

40.     The stipulated judgment against Terix provided for monetary recovery in the amount of $57.7 million. ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████.

### F.     HP, Independently and through Its Partners, Provided Oracle Software to Others Who Were Not Entitled to It

41.     During the Terix case, Oracle learned that HP sold and provided systems-level support solutions to customers—including the provision of Solaris Updates—and then conspired with Terix to subcontract hardware support, "software support" (sometimes called "O/S advisory services") or both for the Oracle/Sun hardware and software to Terix.  HP partnered with Terix to pitch this combination of hardware and software support services to Oracle customers, including many customers that expressly informed HP that they needed, or might need, access to Solaris Updates as part of their support arrangement.  HP represented to the customer that it would provide Solaris Updates whenever they were needed, and then worked with Terix to ensure that Solaris Updates were in fact provided.  Pursuant to the arrangement between HP and Terix, HP would provide customers with Sun server hardware support and directed the customer to Terix for Sun server software support, including the provision of Oracle's copyrighted Solaris Updates, which neither HP nor Terix had authorization to provide. For some customers, HP subcontracted both the hardware support and "software support" to Terix.  In both approaches, HP induced Oracle customers to cancel or not renew Oracle support services contracts in reliance on HP and Terix's coordinated misrepresentations about their ability to provide Solaris Updates.

42.     As one example, in 2011 ███████ sought quotes for support services from various support providers including HP, and told HP that, as part of the requested support, it needed the ability to obtain Solaris Updates for its Sun/Oracle servers.  HP then worked with Terix to pitch a joint HP-Terix solution and told ███████ that HP (via Terix) could provide

14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Solaris Updates. ■■■■ employees raised concerns with HP that the HP-Terix solution might infringe Oracle's intellectual property rights. These concerns were forwarded to HP management, including an HP vice-president in its support organization. In an email to Terix and HP management, a ■■■■ employee wrote that: "■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■" Nonetheless, to assuage ■■■■ concerns, HP and Terix continued to represent to ■■■■ that they could lawfully provide Solaris Updates to ■■■■   ■■■■, HP's Director of Global Vendor Management, testified in the Terix case that HP's sales lead ■■■■ "brought TERiX in to meet with the customer and they shared their Clearvision overview." Both HP and Terix represented to ■■■■ that they could provide Solaris Updates. HP also falsely represented to ■■■■ (directly or through Terix's Clearvision presentation) that ■■■■ was entitled to Solaris Updates by virtue of its original purchase of Solaris, a statement that was untrue, disregarded Oracle's intellectual property rights, and contradicted Oracle's longstanding support policies. ■■■■ did not renew its multi-million dollar annual Oracle support services agreement, instead entering into a support relationship with HP, which then subcontracted to Terix the provision of software support (including Solaris Updates) for ■■■■ Sun hardware. ■■■■ entered into that relationship only after *both* HP and Terix told ■■■■ that ■■■■ could obtain Solaris Updates as part of the joint HP-Terix support arrangement. ■■■■ considered the relatively lower cost of the HP/Terix solution— which they could provide because Terix bore no costs to research and develop Solaris Updates— to be an important factor in its decision to cancel support with Oracle and receive support from HP and Terix. After ■■■■ moved to HP and Terix, HP facilitated Terix's provision of Solaris Updates by fielding requests from ■■■■ and directing ■■■■ to Terix to obtain numerous Solaris patches that were applied to some or all of ■■■■ Solaris servers.

43.     During the relevant period, HP knew that customers were required to have a technical support agreement with Oracle in order to access and apply Solaris Updates to their servers. Indeed, an HP presentation deck titled "■■■■■■■■■■■■■," notes that, with some limited exceptions, a Sun "■■■■■■■■■■■■■■■■■■

15

.”  Another internal HP presentation acknowledges the “███████,”

including that for “███████████████,” one “███████

███████.”  A later HP presentation titled “███████

███████” reflects that Oracle's policy of making

Solaris Updates and firmware updates available only through an Oracle technical support

agreement ███████████████

███████████████

███████████.”

44.    Moreover, during the course of HP's arrangement with Terix, HP

employees raised concerns about the propriety of Terix's conduct.  For instance, ██████, a

HP Solution Architect supporting the ███████ account, wrote to ███████ of

Terix to inquire about Terix's legal right to download Solaris Updates for ███████.

Among other things, ████ asked ██████ “███████

███████████████

█████” ██████ replied “███████

███████.” ████ replied in part, “█████

███████████████

███████████

███████████████

███████.'” ██████ dismissed ████ concerns, writing

“███████.”  In another instance, HP employee ███████

expressed concern that HP's position on Sun support was “███████

███████” and circulated to HP, Terix, and ██████ personnel a copy of Sun's

“███████████” which included the language, “██████

16

1 ████████████████████████████████████████████████████████

2 ████." Nevertheless, HP did not terminate its relationship with Terix, or otherwise take steps

3 to ensure that Terix did not provide Solaris Updates to customers without a technical support

4 contract with Oracle. To the contrary, HP continued to solicit Oracle customers and conspire

5 with Terix to provide Solaris Updates to customers if and when such updates were needed.

6      45.     HP's own intellectual property and support policies regarding its

7 enterprise hardware and software products mirror Oracle's policies. Like Oracle, HP sells

8 support for its hardware and proprietary software through subscription contracts. Access to

9 patches and updates to HP's proprietary software requires a valid support services contract with

10 HP. Only those customers with a valid support services contract can access HP's password-

11 protected website and download patches and updates. HP has prosecuted violations of its

12 policies through litigation against offenders, alleging, among other things, "illegal copying and

13 distribution of vast quantities of proprietary and copyrighted software patches, fixes, updates

14 and/or upgrades . . . obtained and downloaded from HP's protected customer support website."

15 Complaint at 2, *Hewlett-Packard Co. v. Infostaf Consulting, Inc.*, No. 12-cv-01806 (N.D. Cal.

16 Apr. 26, 2012). Specifically, HP alleged that the defendant copied and distributed its proprietary

17 and protected software to customers the defendant "knew, or should have known, [did] not have

18 valid support agreements with HP and/or license to use such proprietary works" and

19 "misrepresented to one or more of its prospective and/or existing customers that [it had] the

20 capability to lawfully access, use and/or provide HP proprietary and protected software patches,

21 updates and upgrades in connection with the technical support services it provide[d] to them,

22 when [it], in fact, [did] not." *Id.* at ¶¶ 20, 22. HP alleged that as a result of that unlawful

23 conduct, HP customers canceled their support services contracts with HP in favor of the

24 defendant.

25      46.     HP sold systems support services to Oracle customers that included

26 software support by Terix despite knowing that Terix's software support included Solaris

27 Updates that Terix had no lawful right to provide. HP materially contributed to Terix's unlawful

28

17

conduct by facilitating the provision of Solaris Updates to customers and by addressing customer concerns about the impropriety of Terix's conduct.

47.     For example, ▮▮▮ was an Oracle customer with an operating system support contract for its Sun servers.  On information and belief, HP informed ▮▮▮ that software support for ▮▮▮ Sun servers was available under its contract with HP and could be provided by Terix.  ▮▮▮ then canceled its support agreements with Oracle and instead obtained support through the joint HP-Terix arrangement.  ▮▮▮ eventually raised concerns with HP about the propriety of Terix's conduct. ▮▮▮▮▮▮▮▮ Senior Manager, Systems Design Engineering, wrote in an email to ▮▮▮▮▮, an HP Technology Services Representative, and ▮▮▮▮▮, a Terix representative, "▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮" ▮▮▮ then referred ▮▮▮ to Terix representatives. ▮▮▮ replied, "▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮" An HP Project Manager, ▮▮▮▮▮▮ responded to ▮▮▮ and outlined the surreptitious process that Terix prescribed: "▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮" Oracle is informed and believes that HP intended that Terix would, and Oracle knows that Terix did, use this process to gain access to and copy Oracle's protected software for a single Oracle-serviced server in order to provide Solaris Updates and firmware updates to ▮▮▮ hardware not covered by an Oracle support services agreement.

18

1         48.     The HP-Terix conspiracy worked generally the same way for other joint

2    customers, including at least ███████████████████████, and Comcast.

3         49.     Despite knowing that Terix's provision of Solaris Updates was unlawful,

4    HP facilitated Terix's misrepresentations by, among other things, arranging Clearvision

5    discussions with joint HP-Terix customers and/or prospective customers.  For example, on

6    information and belief, HP entered into a non-disclosure agreement with Terix governing the

7    substance of a Clearvision teleconference discussion with █████ which multiple HP

8    representatives attended, including members of HP's legal department.  Even after hearing the

9    Clearvision presentation which claimed that Terix had the right to provide Solaris Updates—a

10   right Judge Grewal held was "clearly not contemplated on the face of the license agreements"—

11   HP continued to conspire with Terix and participated in, directed, and contributed to the

12   infringement of Oracle's intellectual property.

13        50.     HP facilitated Terix's unlawful conduct by fielding customer requests for

14   Solaris Updates and then directing customers to Terix, which would then unlawfully access

15   Oracle's MOS website to obtain Solaris Updates and provide them to the joint HP-Terix

16   customer for use with servers not covered by any technical support agreement with Oracle.  For

17   instance, ████████, an HP Account Delivery Manager, directed customer █████ to Terix

18   in order to download a Solaris patch via an FTP site.  ████████, an HP Senior Program

19   Manager, made an "████████████" to Terix to "██████████████████████████."

20   ████████ acknowledged, "████████████████████████████████████

21   ████████████████████████████████."

22        51.     In other instances, HP itself provided unlawfully obtained Solaris Updates

23   and firmware updates to its customers.  For example, HP had a direct service relationship with

24   ████████ that covered ████████ Oracle/Sun servers.  HP engineers obtained Solaris Updates

25   from Terix and then installed those updates on ████████ Oracle/Sun servers.  Moreover, HP

26   did so knowing that such conduct violated Oracle's copyrights and intellectual property policies

27   and knowing the full scope of Terix's business model, as detailed in its Clearvision presentation.

28   Indeed, ████████, a former HP employee who supported the ████████ account, testified in the

1   Terix litigation that he raised concerns with HP executives (that were escalated to the HP legal

2   department) about whether Terix had the lawful right to provide Solaris Updates.  Instead of

3   contacting Oracle or confirming whether its customer actually had rights to Solaris Updates, HP

4   brazenly ignored its employees' concerns (and Oracle's intellectual property rights) and

5   continued to install Solaris Updates on ███████ servers—even though it knew that Terix had

6   no lawful right to provide Solaris Updates and even though HP had sued a third party technical

7   service provider for misappropriating its HP-UX Updates.

8        **G.**     **HP's Wrongful Conduct Injured Oracle**

9        52.     HP willfully, intentionally, and knowingly engaged in the wrongful

10   conduct alleged in this Complaint, including copyright infringement, intentional interference

11   with contract and prospective economic relations, and other unfair business practices.  HP did so

12   in order to generate support revenues by convincing Oracle customers to contract with HP

13   instead.

14        53.     As a direct and proximate result of these acts, Oracle has suffered injury,

15   damage, loss, and harm, including, but not limited to, loss of profits from sales to current and

16   potential customers of Oracle support services and/or licenses for Oracle software programs.  On

17   information and belief, Oracle also suffered harm in the form of lost hardware sales that Oracle

18   would have made but-for HP's successful displacement of Oracle as the affected customers'

19   support provider, which better positioned HP to convince the customers to replace Oracle Solaris

20   servers with servers manufactured by HP.

21        **H.**     **Oracle's Discovery of HP's Claim**

22        54.     Oracle did not discover and could not have discovered HP's unlawful

23   conduct until after Oracle sued Terix in July 2013 and the scope of Terix's unlawful conduct—

24   and HP's participation in that conduct—came to light through discovery of Terix and other

25   parties and third parties to the litigation.  Largely, this was due to the "cloak and dagger"

26   methods that Terix used to hide its theft of Oracle IP for the benefit of joint HP-Terix customers

27   and which HP was aware of.  But also, HP had previously represented that it believed that Oracle

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. _____

and HP were good business partners, and Oracle thus had no reason to suspect that HP was engaged in the conduct described in this Complaint.

55. In June 2015, HP entered into a tolling agreement with Oracle that tolled the running of any statutes of limitation and any other statute, law, rule or principle of equity with similar effect that may apply to the claims raised in this Complaint. The tolling agreement went into effect on May 6, 2015 and continues through the date of the filing of this Complaint.

**First Claim for Relief**

**Copyright Infringement**

56. Oracle incorporates each of the allegations in preceding paragraphs 1-55 of this Complaint as though fully set forth here.

57. Oracle owns valid and enforceable copyrights in all of its software and support materials, including the Solaris Updates, which are creative works of original authorship. Oracle has Certificates of Registration that cover many of the Solaris Updates taken and copied by HP and others acting in concert with it. Throughout this Complaint, including in this claim for relief, the term "software" includes without limitation the Solaris operating system, Solaris Updates and patches, Oracle System Firmware, and firmware updates.

58. Oracle holds all of Sun's interest, rights, and title to the copyrights for Solaris 8, 9, and 10, and all interest, rights and title to the copyright for Solaris 11. Oracle holds all interest, rights and title to the copyrights for Oracle System Firmware.

59. Oracle owned one or more exclusive rights in certain copyrights at issue in this case, including but not limited to the works listed in paragraph 60, at a point in time during which HP infringed those exclusive rights.

60. HP has infringed copyrights in Oracle software, including the software covered by the certificates of registration identified, dated, and numbered as follows:

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Solaris 8 (SPARC Platform Edition) | June 19, 2000 | TX 5-138-319 |
| Solaris 8 (Intel Platform Edition) | June 19, 2000 | TX 5-196-384 |
| Solaris 9 operating system | August 7, 2002 | TX 5-586-147 |
| Solaris 10 operating system | April 19, 2005 | TX 6-086-753 |

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Solaris 11 operating system | February 19, 2014 | TX 7-808-942 |
| Oracle System Firmware 6.7.10 | June 19, 2014 | TX 7-851-653 |
| Oracle System Firmware 7.3.0.a | June 19, 2014 | TX 7-851-666 |
| Oracle System Firmware 8.0.0.e | June 19, 2014 | TX 7-851-615 |
| Oracle System Firmware 8.0.4.b | June 19, 2014 | TX 7-851-695 |
| Oracle System Firmware 8.1.4.h | June 19, 2014 | TX 7-851-710 |
| Oracle System Firmware 9.0.0.d | June 19, 2014 | TX 7-851-699 |
| Oracle System Firmware 9.0.1.f | June 19, 2014 | TX 7-851-513 |
| Oracle System Firmware 9.0.0.i | June 19, 2014 | TX 7-851-509 |
| Oracle System Firmware 9.1.0.i | June 19, 2014 | TX 7-851-514 |

61.     These registrations generally cover versions of Oracle's Solaris operating system and other software, including the Solaris Updates thereto, as well as versions of Oracle System Firmware, including firmware updates. HP and others acting in concert with it copied and distributed versions of Oracle's Solaris operating system and other software, including the Solaris Updates thereto, as well as versions of Oracle System Firmware, including firmware updates, without a license.

62.     Through the acts alleged above, HP and those acting in concert with it have violated Oracle's exclusive rights to reproduce and make copies of its copyrighted software, including materials covered by the registrations and pending registrations listed above by, among other things, downloading, copying, and distributing Oracle's copyrighted software onto their and their customers' computers in violation of 17 U.S.C. § 106.

63.     HP and those acting in concert with it were not authorized to copy, download, reproduce, create derivative works from, or distribute Oracle's copyrighted software except as authorized by and in support of a specifically licensed use, and with respect only to software for which they had a current right to have and use.

64.     In addition to directly infringing Oracle's exclusive rights, HP has contributorily and/or vicariously infringed Oracle's exclusive rights in the software by controlling, directing, intentionally encouraging, inducing, or materially contributing to the copying, distribution, and/or creation of derivative works from Oracle's copyrighted software. HP also obtained a direct financial benefit from the above infringing activities and continued to engage in such activities with knowledge that doing so violated Oracle's copyrights. Moreover,

22

HP took no steps to stop its subcontractor, Terix, from supplying copyrighted Solaris patches and firmware updates to joint customers even after HP's legal team participated in a Clearvision presentation and other HP employees raised concerns about the lawfulness of Terix's conduct. HP also installed Solaris Updates provided by Terix on its customers' servers after members of HP's legal department had participated in a Clearvision presentation and after certain employees expressed concerns (that were escalated to the HP legal department) that Terix had no lawful right to provide Solaris Updates.

65.     HP and those acting in concert with it knew or should have known that copying, distributing, and creating derivative works of and from Oracle's software—which they had no license to copy, distribute, or create derivative works from—or controlling, directing, intentionally encouraging, inducing, or materially contributing to others' efforts to do so, infringed Oracle's exclusive rights in that software.

66.     Oracle is entitled to damages from HP in an amount to be proven at trial, including profits attributable to the infringement not taken into account in computing actual damages under 17 U.S.C. § 504(b).  Oracle is entitled to statutory damages under 17 U.S.C. § 504(c) based on Defendants' infringements after the dates of copyright registration.

67.     HP's infringement of Oracle's exclusive rights has also caused Oracle irreparable injury.  Unless restrained and enjoined, HP will continue to commit such acts. Indeed, even after members of HP's legal department participated in a Clearvision presentation and heard Terix's argument that Oracle's licenses permitted Terix's conduct, HP continued to work with Terix to support customers and, on information and belief, obtain new customers. And, HP continued to permit its employees to install Solaris Updates provided by Terix on its customers' servers after members of HP's legal department had participated in a Clearvision presentation and after certain employees expressed concerns (that were escalated to the HP legal department) that Terix had no lawful right to provide Solaris Updates.  Oracle's remedies at law are not adequate to compensate it for these inflicted and threatened injuries, entitling it to remedies, including injunctive relief as provided by 17 U.S.C. § 502 and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

**Second Claim for Relief**

**Intentional Interference with Contract**

68.     Oracle incorporates each of the allegations in preceding paragraphs 1-55 of this Complaint as though fully set forth here.

69.     Oracle was under contract with customers, including but not limited to Comcast, ███████████████████████████████████████████.  These customers owned Oracle/Sun computer hardware and were long-time customers of support services from Oracle for that hardware.

70.     HP knew of these contracts between Oracle and its customers, and intended to disrupt them.  HP engaged in wrongful conduct by, among other things, conspiring with Terix to infringe Oracle's copyrights, engaging in unfair competition, and directly and through Terix, misrepresenting to Oracle customers that they did not need a support contract with Oracle to obtain Solaris Updates and firmware updates.  For example, HP represented to ██████ (a Sun and then Oracle support customer) that it could obtain software support, including Solaris Updates, via Terix through ██████ relationship with HP.  ██████ then cancelled support contracts with Oracle and obtained Solaris Updates from Terix.  On information and belief, HP made similar representations to other customers that resulted in those customers terminating their contractual relationship with Oracle in favor of the unlawful support offered by HP and Terix.

71.     Oracle's contractual relationships with these and other customers were disrupted when these customers canceled existing support agreements and instead entered into support agreements with HP.  Oracle was damaged as a result of the disruption of these relationships in an amount to be proven at trial.  HP's wrongful conduct was a substantial factor in causing this harm to Oracle.

**Third Claim for Relief**

**Intentional Interference with Prospective Economic Relations**

72.     Oracle incorporates each of the allegations in preceding paragraphs 1-55 of this Complaint as though fully set forth here.

73.     Oracle was in an economic relationship with customers, including but not limited to Comcast, ███████████████████████████████████████, that, if not impeded by HP, would have resulted in an economic benefit to Oracle.  These customers owned Oracle/Sun computer hardware and were long-time customers of support services from Oracle for that hardware.  If not impeded by HP, these customers would otherwise have renewed their support services agreements with Oracle.

74.     HP knew of these prospective economic relationships between Oracle and its customers, and intended to disrupt them.  HP engaged in wrongful conduct by, among other things, conspiring with Terix, engaging in unfair competition, and through Terix, misrepresenting to Oracle customers that they did not need a support contract with Oracle to obtain Solaris Updates and firmware updates.  For example, HP solicited Comcast (then an existing Oracle support customer) and told Comcast that it could provide support for Comcast's Sun/Oracle hardware and software, including providing Solaris Updates using Terix as a subcontractor.  As a result of HP's representations, Comcast did not renew its support relationship with Oracle and instead obtained support for its Sun/Oracle hardware from HP and Terix, including Solaris Updates that neither HP nor Terix had the right to provide.  On information and belief, HP made similar representations to other customers that disrupted Oracle's economic relationships with those customers.

75.     Oracle's relationships or prospective relationships with these customers were disrupted when these customers decided not to contract with Oracle for support services and instead entered into support agreements with HP.  Oracle was damaged as a result of the disruption of these relationships in an amount to be proven at trial.  HP's wrongful conduct was a substantial factor in causing this harm to Oracle.

**Fourth Claim for Relief**

**Unfair Competition – Cal. Bus. & Prof. Code § 17200**

76.     Oracle incorporates each of the allegations in preceding paragraphs 1-55 and 68-75 of this Complaint as though fully set forth here.

1   77.   HP has engaged in unlawful and unfair business acts or practices,

2   including intentional interference with prospective economic relations and other illegal acts and

3   practices as alleged above, all in an effort to gain unfair competitive advantage over Oracle.

4   78.   These unlawful and unfair business acts or practices were committed

5   pursuant to business activity related to providing maintenance and support services for Oracle's

6   computer hardware and software.

7   79.   HP's acts and conduct constitute unlawful and unfair competition as

8   defined by California Bus. & Prof. Code §§ 17200, *et seq.*  HP is also liable for its co-

9   conspirators' conduct under Section 17200, including that of its co-conspirator, Terix.

10   80.   HP's conduct constitutes violations of the common law.  HP's conduct is

11   also unfair.

12   81.   HP devised its scheme by misrepresenting to customers the support that

13   HP (directly, or indirectly through its partners) could lawfully provide for the purposes of

14   inducing owners of Oracle/Sun computer hardware not to enter into support agreements with

15   Oracle, but rather to enter into profitable support contracts with HP or other parties affiliated

16   with HP.  As described above, Oracle has lost money and property and suffered injury in fact as

17   a result of Defendants' unlawful business acts and practices.

18   82.   HP has improperly and unlawfully taken commercial advantage of

19   Oracle's investments in its computers, support delivery infrastructure, intellectual property, and

20   customer relationships.  In light of HP's conduct, it would be inequitable to allow HP to retain

21   the benefit of the funds obtained through the unauthorized and unlawful use of that property.

22   83.   HP's unfair business practices have unjustly minimized Oracle's

23   competitive advantages and have caused and are causing it to suffer damages.

24   84.   As a result of such unfair competition, Oracle has also suffered irreparable

25   injury and, unless HP is enjoined from such unfair competition, will continue to suffer

26   irreparable injury, and Oracle has no adequate remedy at law.

27

28

26

85.     HP should be compelled to restore any and all revenues, earnings, profits, compensation, and benefits it may have obtained in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*., and should be enjoined from further unlawful and unfair business practices.

### Prayer for Relief

WHEREFORE, Oracle respectfully prays for the following:

A.     For a preliminary and permanent injunction restraining HP, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them, from the following:

(1)     Copying, distributing, using, or creating derivative works from—or conspiring with or facilitating others to do the same—Oracle's software, firmware or support materials in any way, including for any business purpose, except as allowed by express license from Oracle;

(2)     Facilitating, conspiring with others to accomplish, or encouraging the downloading or copying of any Oracle software, firmware or support materials from any Oracle website for, or on behalf of, any customer or party that does not have a valid, existing, and currently-Oracle-supported license for the specific materials being downloaded from Oracle entitling the customer to have and use that software, firmware or support materials;

(3)     Facilitating or encouraging the access to, use of, or downloading from any Oracle support website for, or on behalf of, any customer or party other than by using that specific customer's or party's valid login credentials;

(4)     Facilitating or encouraging the copying, distribution, or use of any Oracle software, firmware or support materials by, for, or on behalf of, any customer or party who does not have a current, valid, existing support license from Oracle entitling that customer or party to have and use the software, firmware and support materials at the time they were downloaded or obtained by or on behalf of the customer or party;

(5)     Accessing Oracle's support websites without authorization or in excess of authorization;

27

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    (6)    Falsely advertising its products or services, including their ability

2    to provide Solaris support or their relationship with Oracle;

3    (7)    Otherwise engaging in acts of unfair competition, unfair practices,

4    copyright infringement against Oracle;

5    B.    That the Court order HP to file with the Court and serve on Oracle within

6    30 days after the service on HP of such injunction a report in writing, under oath, setting forth in

7    detail the manner and form in which Defendants have complied with the injunction;

8    C.    For an Order directing HP to return Oracle's property, including, without

9    limitation, Oracle's confidential, proprietary, and/or copyrighted software, firmware and support

10   materials, that HP took from Oracle, as set forth in this Complaint;

11   D.    For an order directing HP to inform all technical support customers

12   running Oracle hardware (and such prospective customers for a period of three years) that it does

13   not have the lawful right to provide Solaris updates or firmware updates and that the only lawful

14   source of such updates is Oracle;

15   E.    For an Order impounding or destroying and all infringing materials

16   pursuant to 17 U.S.C. § 503;

17   F.    For an Order awarding Oracle punitive damages in a sum to be determined

18   at trial;

19   G.    For restitution of all ill-gotten gains unjustly obtained and retained by HP

20   through the acts complained of here;

21   H.    For an Order finding a constructive trust for Oracle's benefit, consisting of

22   all revenues received by HP from the wrongful conduct which should rightfully have been

23   received by Oracle and all profits derived from that wrongful conduct, and directing HP to pay

24   all such sums to Oracle;

25   I.    For damages to be proven at trial;

26   J.    For statutory damages pursuant to 17 U.S.C. § 504;

27   K.    For prejudgment interest;

28   L.    For an Order awarding Oracle its attorneys' fees and costs; and

1          M.      For an Order awarding Oracle such other and further relief as the Court

2    deems just and proper.

3

4    Dated:  March 22, 2016                    Respectfully submitted,

5                                              LATHAM & WATKINS LLP

6

7                                              By:  ___/s/ Christopher S. Yates_____
                                                   Christopher S. Yates
8                                                  Attorneys for Plaintiffs
                                                   Oracle America, Inc. and
9                                                  Oracle International Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. _____

1

<u>DEMAND FOR JURY TRIAL</u>

2

In accordance with Fed. R. Civ. P. 38(b), Plaintiffs Oracle America, Inc., and Oracle

3

International Corporation demand a trial by jury on all issues triable by a jury.

4

5

Dated:  March 22, 2016                                Respectfully submitted,

6

LATHAM & WATKINS LLP

7

8

By:    /s/ Christopher S. Yates
                                                                  Christopher S. Yates

9

Attorneys for Plaintiffs
Oracle America, Inc. and

10

Oracle International Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. _____