JEFFREY T. THOMAS, SBN 106409
  jtthomas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
Facsimile:  949.451.4220

SAMUEL LIVERSIDGE, SBN 180578
  sliversidge@gibsondunn.com
BLAINE H. EVANSON, SBN 254338
  bevanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendant
HEWLETT PACKARD ENTERPRISE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation<br><br>           Plaintiffs,<br><br>    v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation; and DOES 1-50,<br><br>          Defendants. | CASE NO. 3:16-cv-01393-JST<br><br>**DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**Hearing:**<br>Date:     July 14, 2016<br>Time:    2:00 p.m.<br>Place:   Courtroom 9, 19th Floor<br>Judge:  Judge Jon S. Tigar |

Gibson, Dunn &
Crutcher LLP

1

## **NOTICE OF MOTION AND MOTION**

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THE ABOVE-CAPTIONED CASE, PLEASE TAKE NOTICE that the following motion will be heard at 2:00 p.m. on July 14, 2016, or as soon thereafter as counsel may be heard, in Courtroom 9, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jon S. Tigar.

Defendant Hewlett Packard Enterprise Company ("HPE") will, and hereby does, move the Court for an order dismissing plaintiffs Oracle America, Inc. and Oracle International Corp.'s complaint under Federal Rules of Civil Procedure 12(b)(6) on the grounds that the claims for copyright infringement, intentional interference with prospective economic relations, intentional interference with contract, and unfair competition all fail to state a claim upon which relief can be granted. Dismissal is proper because Oracle has failed to allege facts supporting its infringement, interference, and unfair competition claims; in addition, aspects of the state-law claims are preempted. In the alternative, HPE will and hereby does move this Court, in accordance with Federal Rule of Civil Procedure 12(e), for an order requiring Oracle to provide a more definite statement of its claims for copyright infringement, intentional interference with contract, intentional interference with prospective economic relations, and unfair competition so that HPE may reasonably prepare a response to Oracle's claims.

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, any evidence or argument presented at the hearing on the motion, and any other matters the Court deems proper.

Dated: April 29, 2016

GIBSON, DUNN & CRUTCHER LLP

By:  /s/          *Blaine H. Evanson*          
             Blaine H. Evanson
Attorneys for Defendant
HEWLETT PACKARD ENTERPRISE COMPANY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

      A.    The Relevant Parties ................................................................................ 2

      B.    Oracle's Lawsuit Against Terix ............................................................... 3

      C.    Oracle's Lawsuit Against HPE ................................................................ 3

III.  LEGAL STANDARD ......................................................................................... 5

IV.   ARGUMENT ...................................................................................................... 5

      A.    Oracle Fails to State a Claim for Copyright Infringement ....................... 5

            1.    Oracle's Direct Copyright Infringement Allegations Are Deficient ............... 6

            2.    Oracle's Indirect Infringement Allegations Are Deficient ............................. 10

      B.    Oracle Fails to State a Claim for Tortious Interference ............................. 15

            1.    Oracle's Interference with Contract Allegations Are Deficient ...................... 16

            2.    Oracle's Interference with Prospective Economic Relations Allegations
                  Are Deficient ................................................................................................ 18

      C.    Oracle Fails to State a Claim for Unfair Competition ............................... 19

      D.    Oracle's State-Law Claims Are Preempted in Part .................................. 20

      E.    HPE Is Entitled to a More Definite Statement ......................................... 22

V.    CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Actuate Corp. v. Fidelity Nat'l Info. Servs., Inc.*,
  2014 WL 4182093 (N.D. Cal. Aug. 22, 2014)...............................................................10

*Addiction & Detoxification Inst. LLC v. Carpenter*,
  620 F. App'x 934 (Fed. Cir. 2015) .............................................................................13

*Aguirre v. Wells Fargo Bank*,
  2015 WL 4065245 (C.D. Cal. July 2, 2015)……………………………......................19

*Aqua Creations USA Inc. v. Hilton Hotels Corp.*,
  2011 WL 1239793 (S.D.N.Y. Mar. 28, 2011) ...............................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................5, 10

*Asset Vision, LLC v. Fielding*,
  2013 WL 6633743 (D. Id. Dec. 17, 2013) ..............................................................11, 12

*Atlas Equip. Co. v. Weir Supply Grp.*,
  2009 WL 4670154 (W.D. Wash. Sept. 15, 2009) ........................................................16

*Azpilcueta v. Nev. ex rel. Transp. Auth.*,
  2010 WL 2681855 (D. Nev. July 2, 2010) ...................................................................16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................5, 9

*Brown v. McCormick*,
  23 F. Supp. 2d 594 (D. Md. 1998) ...............................................................................21

*Carmichael Lodge No. 2103 v. Leonard*,
  2009 WL 2985476 (E.D. Cal. Sept. 16, 2009)...............................................................6

*Cascade Invs., Inc. v. Bank of Am., N.A.*,
  2000 WL 1842945 (D. Nev. Sept. 29, 2000) ...............................................................22

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .................................................................................................19

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
  2015 WL 3649187 (C.D. Cal. June 11, 2015) ..............................................................14

*Cutler v. Enzymes, Inc.*,
  2009 WL 482291 (N.D. Cal. Feb. 25, 2009) .............................................................9, 10

Gibson, Dunn &
Crutcher LLP

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

*Dahlia v. Rodriguez,*
  735 F.3d 1060 (9th Cir. 2013)................................................................5

4

5

*Ellison v. Robertson,*
  357 F.3d 1072 (9th Cir. 2004)..............................................................14

6

*Epikhin v. Game Insight N. Am.,*
  2015 WL 2412357 (N.D. Cal. May 20, 2015) ....................................14

7

8

*Fox Hollow of Turlock Owners' Ass'n v. Sinclair,*
  2007 WL 987873 (E.D. Cal. Mar. 30, 2007) ......................................22

9

10

*In re Gilead Scis. Sec. Litig.,*
  536 F.3d 1049 (9th Cir. 2008)................................................................5

11

*Girafa.com, Inc. v. Alexa Internet, Inc.,*
  2008 WL 4500858 (N.D. Cal. Oct. 6, 2008).......................................19

12

13

*Idema v. Dreamworks, Inc.,*
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ..............................................20

14

15

*Johnson v. Gordon,*
  409 F.3d 12 (1st Cir. 2005) ....................................................................6

16

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) .......................................................................18

17

18

*Laws v. Sony Music Entm't, Inc.,*
  448 F.3d 1134 (9th Cir. 2006)..............................................................20

19

20

*Ledesma v. Corral,*
  2016 WL 827743 (C.D. Cal. Mar. 2, 2016) ..........................................9

21

*Lefkowitz v. John Wiley & Sons, Inc.,*
  2014 WL 2619815 (S.D.N.Y. June 2, 2014)..................................11, 14

22

23

*Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.,*
  528 F. Supp. 2d 1106 (W.D. Wash. 2007)...........................................14

24

25

*Luvdarts, LLC v. AT&T Mobility, LLC,*
  710 F.3d 1068 (9th Cir. 2013)........................................................11, 12

26

*Med-Systems, Inc. v. Masterson Mktg., Inc.,*
  2011 WL 5873399 (S.D. Cal. Nov. 23, 2011) ................................11, 13

27

28

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
  545 U.S. 913 (2005)........................................................11, 12, 13

Gibson, Dunn &
Crutcher LLP

iii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Miller v. Facebook, Inc.,*
    2010 WL 1292708 (N.D. Cal. Mar. 31, 2010)..........................................................................9, 10

*MiTek Holdings, Inc. v. Arce Eng'g Co.,*
    89 F.3d 1548 (11th Cir. 1996).............................................................................................................7

*Muench Photography, Inc. v. Pearson Educ., Inc.,*
    2013 WL 6172953 (N.D. Cal. Nov. 25, 2013)...............................................................................14

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.,*
    299 F. App'x 509 (6th Cir. 2008) ......................................................................................................8

*Oakley, Inc. v. Nike, Inc.,*
    988 F. Supp. 2d 1130 (C.D. Cal. 2013) .........................................................................................17

*Papa Berg, Inc. v. World Wrestling Entm't, Inc.,*
    2013 WL 2090547 (N.D. Tex. May 15, 2013) ..............................................................................13

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007)..........................................................................................................15

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
    494 F.3d 788 (9th Cir. 2007)............................................................................................................11

*ProconGPS, Inc. v. Star Sensor LLC,*
    2011 WL 5975271 (N.D. Cal. Nov. 29, 2011)...............................................................................19

*Quelimane Co. v. Stewart Title Guar. Co.,*
    19 Cal. 4th 26 (1998) .......................................................................................................................16

*Reid v. Am. Soc'y of Composers, Authors & Publishers,*
    1994 WL 3409 (S.D.N.Y. Jan. 5, 1994).............................................................................................9

*Sega Enterprises Ltd. v. Accolade, Inc.,*
    1992 U.S. Dist. LEXIS 4621 (N.D. Cal. Mar. 20, 1992)................................................................22

*Sevigny v. DG Fastchannel, Inc.,*
    2011 WL 6149284 (C.D. Cal. Dec. 12, 2011) ...............................................................................18

*Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.,*
    769 F. Supp. 1161 (D. Colo. 1991)..................................................................................................22

*Silvers v. Sony Pictures Entm't,*
    402 F.3d 881 (9th Cir. 2005)..............................................................................................................7

*State Farm Fire & Cas. Co. v. Super. Ct.,*
    45 Cal. App. 4th 1093 (1996) ..........................................................................................................19

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Summit Mach. Tool. Mfg. Corp. v. Victor CNC Sys., Inc.,*
7 F.3d 1434 (9th Cir. 1993)................................................................................20

*Sybersound Records, Inc. v. UAV Corp.,*
517 F.3d 1137 (9th Cir. 2008).............................................................................7

*Thrifty Payless, Inc. v. Americana at Brand, LLC,*
218 Cal. App. 4th 1230 (2013) ..........................................................................18

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.,*
682 F.3d 292 (4th Cir. 2012)..............................................................................20

*Tom Kelley Studios Inc. v. Int'l Collectors Soc'y Inc.,*
1997 WL 598461 (S.D.N.Y. Sept. 25, 1997) ....................................................22

*UMG Recordings, Inc. v. Global Eagle Entm't,*
117 F. Supp. 3d 1092 (C.D. Cal. June 22, 2015) ..............................................18

*Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.,*
2011 WL 281020 (C.D. Cal. Jan. 26, 2011) .......................................................8

*Vess v. Bank of Am., N.A.,*
2012 WL 113748 (S.D. Cal. Jan. 13, 2012)…………………………………...20

*Viesti Assocs., Inc. v. Pearson Educ., Inc.,*
2013 WL 4052024 (D. Colo. Aug. 12, 2013) ..............................................13, 15

*Wanland v. Los Gatos Lodge, Inc.,*
230 Cal. App. 3d 1507 (1991)............................................................................16

**Statutes**

17 U.S.C. § 501 ...........................................................................................................7

17 U.S.C. § 106 ...........................................................................................................8

**Rules**

Fed. R. Civ. P. 8 .........................................................................................................5

Fed. R. Civ. P. 12 ....................................................................................................4, 5

Fed. R. Civ. P. 26 .......................................................................................................2

# I.    INTRODUCTION

Three years ago, Oracle America, Inc. and Oracle International Corp. sued Terix Computer Company, Inc. for copyright infringement, resulting in a $57.7 million judgment.  *See* Compl. ¶ 40. Now, because Terix apparently refuses or cannot afford to pay the judgment, Oracle seeks to hold Hewlett Packard Enterprise Company ("HPE") responsible for Terix's conduct based on vague allegations of conspiracy and control.[1]  But Oracle does not come close to alleging a claim based on *HPE*'s conduct.  While Oracle recounts what Terix did to infringe Oracle's copyrights, it fails to plausibly allege facts demonstrating how HPE *knew* that Terix was infringing, what steps HPE took to *encourage* Terix to infringe, or that HPE had the *ability* to control Terix.  Oracle therefore fails in its attempt to hold HPE liable for the conduct of Terix, and its claim for contributory and vicarious infringement should therefore be dismissed.

In an effort to assert some wrongdoing against HPE, Oracle also tacks on completely conclusory allegations that HPE directly infringed Oracle's copyrights and interfered with Oracle's customer relationships (either on its own, or through Terix) in violation of state law.  But these claims are baseless and should be dismissed because, despite having had months of discovery on these issues in the *Terix* litigation, including a third-party subpoena to which HPE produced over 51,000 pages of documents and a Rule 30(b)(6) deponent, Oracle alleges *no facts* supporting its direct infringement theories against HPE.  Indeed, Oracle's complaint is so vague and general that it fails to allege, as it must, *which* of the fourteen listed copyright registrations have been infringed, or *how* HPE allegedly infringed Oracle's copyrights.  Nor does Oracle allege that HPE *knew* that its statements to customers were false—indeed, any such allegation would be completely implausible, given that Oracle at the same time alleges that Terix represented to HPE that Terix had entitlements to the Oracle software at issue.  Oracle's direct infringement claim and related state law claims therefore cannot stand.

If the Court does not dismiss Oracle's claims, the Court should order Oracle to provide a more definite statement under Federal Rule of Civil Procedure 12(e).  Clearly defining the scope of

---

[1]  HPE was formed on November 1, 2016, as a result of the separation of Hewlett-Packard Company into HPE and HP Inc.  For purposes of the present dispute, HPE is the successor to Hewlett-Packard Company.  For convenience, this motion refers only to "HPE," and not Hewlett-Packard Company.

Oracle's claims is critical as the parties enter discovery, which must be limited to matters relevant to the parties' claims or defenses.  Fed. R. Civ. P. 26(b)(1).  Requiring Oracle to clearly define its claims at this stage will prevent this case from turning into a discovery fishing expedition to support Oracle's vague allegations.  Accordingly, if the Court does not dismiss Oracle's complaint, the Court should grant HPE's alternative request for a more definite statement.

## II.   BACKGROUND

### A.   The Relevant Parties

Oracle is the world's largest enterprise hardware and software company.  Compl. ¶ 2.  One of Oracle's software products is the "Solaris operating system and related system firmware," which runs on Oracle hardware systems (e.g., Sun Microsystems servers).  *Id.* ¶ 1.  When Oracle customers use Oracle's software on their Oracle hardware systems, they do not actually own the software; rather, Oracle licenses the software to its customers for a substantial fee.  In addition to selling hardware and licensing software, Oracle also offers its customers the ability to purchase "support services" for their Oracle systems on a yearly basis.  *E.g.*, *id.* ¶¶ 9, 10, 24.  These support services can include the repair and maintenance of Oracle's hardware, as well as the installation of software "updates," "patches," and "fixes" to keep the Oracle software on the customer's systems current.  *Id.* ¶ 1.  Although Oracle claims to own copyrights in the software itself, Oracle owns no intellectual property giving it a right to exclude third parties from *supporting* the software.  *E.g.*, *id.* ¶ 6.  Indeed, Oracle concedes that customers may lawfully contract with third parties to provide "break-fix" support services on Oracle's hardware.  *Id.* ¶ 6.

Terix is an independent provider of hardware and software maintenance, including maintenance for Oracle's Sun Microsystems servers.  Compl. ¶ 5.  It is HPE's understanding that a significant portion of Terix's business was providing "hardware and software maintenance offerings" for customers using Oracle/Sun servers and the Solaris operating system.  *Id.* ¶ 30.

HPE also sells enterprise software and hardware as well as support contracts for HPE products.  Compl. ¶ 25.  Because many customers use multiple hardware and software products from multiple vendors (including HPE, Oracle, and others) to run their businesses, HPE also offers "multi-vendor services" to its customers.  *Id.* ¶ 4.  In this aspect of HPE's business, HPE provides support

services for its own hardware and software, but then subcontracts support services for third-party systems (like Oracle's) to other independent support providers (like Terix). *Id.* When HPE contracts with an independent support provider to provide multi-vendor support, that provider warrants to HPE that it will not infringe any copyrights or unlawfully access or download materials to which the customers are not entitled, and agrees to indemnify HPE for any liability arising out of such infringement.

**B.      Oracle's Lawsuit Against Terix**

Oracle sued Terix in July 2013, alleging copyright infringement and other causes of action based on its claim that Terix provided Oracle's software updates to Terix's customers without authorization. Compl. ¶ 36. In its defense, Terix contended that any Oracle customers that had a licensed copy of the Solaris software had a right to perpetual "updates" for that software. *Id.* ¶ 37. The court rejected Terix's defense at summary judgment and held that the Solaris software licenses did not permit Terix to download updates for these customers. *Id.* ¶ 38. Oracle and Terix ultimately stipulated to a judgment of $57.7 million in June 2015 (*id.* ¶ 40), but only after extensive discovery, including the production of over 10 million pages of documents and numerous discovery disputes between the parties. *See generally Oracle Am., Inc. v. Terix Computer Co.*, 5:13-cv-03385-HRL (N.D. Cal.). Oracle served over 75 third-party subpoenas, including on HPE; and HPE itself produced over 51,000 pages of documents—at a cost of nearly $100,000. *Id.* ECF 412.

Oracle alleges that it has agreed to allow Terix to pay an unknown amount less than the settlement under a payment plan, and alleges that Terix has paid only a "small fraction of the amount." Compl. ¶ 40. As a result, on March 18, 2016, Oracle initiated judgment-debtor examination proceedings against Terix concerning Terix's assertion "that after judgment was entered against it in this action it transferred away all of its assets" to another company, known as "Terix (assignment for the benefit of creditors), LLC." *Id.* ECF 679, 684.

**C.      Oracle's Lawsuit Against HPE**

Four days after initiating judgment-debtor examination proceedings against Terix, Oracle filed this lawsuit against HPE. Despite having had access to 51,000 pages of HPE-related documents produced by HPE during discovery in the *Terix* litigation, Oracle relies mostly on its allegations

against Terix, and alleges little in the way of facts to support its claims based on conduct *by HPE* for direct copyright infringement, indirect copyright infringement, intentional interference with contract, intentional interference with prospective economic relations, and unfair competition.

For example, Oracle lists fourteen copyrights in its complaint (Compl. ¶ 60), but does not allege *which* copyright(s) HPE allegedly infringed.  Rather, Oracle collectively refers to all of those copyrights as "Solaris Updates."  *Id.* ¶ 1.  These copyrights are held by both plaintiffs, Oracle America ("OA") and Oracle International Corp. ("OIC"), "either on its own or together."  *Id.* ¶¶ 9, 10.  Oracle does not allege *which* copyrights were infringed by HPE (as opposed to Terix), and it is therefore unclear *which* plaintiff is suing HPE for direct copyright infringement in this case.  In addition, Oracle alleges generally that HPE ("and others acting in concert with it") "installed," "copied," and "distributed" Oracle's copyrighted works "without a license" (*id.* ¶ 61), but does not allege specific actions that HPE took to infringe those copyrights.

As for indirect infringement, Oracle alleges generally that *Terix* unlawfully "gain[ed] access to and cop[ied] Oracle protected software" in violation of its customers' license agreements (Compl. ¶ 47), and that HPE supposedly *knew* "Terix's provision of Solaris Updates was unlawful" (*id.* ¶ 48).  But Oracle does not allege that HPE ever *saw* the customers' license agreements, learned that Terix was actually infringing Oracle's copyrights, or otherwise determined that Terix lacked authorization to secure the Solaris Updates.  Indeed, Oracle specifically alleges that Terix told HPE that it *did* have "the right to provide Solaris Updates."  *Id.* ¶ 49.  Oracle also alleges that HPE "facilitated Terix's unlawful conduct" (*id.* ¶ 50), but its examples of "facilitation" consist of vague allegations that HPE "field[ed] customer requests" and "direct[ed] customers to Terix."  *Id.*

Oracle's state-law claims largely revolve around allegations that HPE "directly and through Terix" lured Oracle customers away by unlawful means, i.e., that HPE "conspir[ed] with Terix to infringe Oracle's copyrights," "engag[ed] in unfair competition, and ... misrepresent[ed] to Oracle customers that they did not need a support contract with Oracle to obtain Solaris Updates and firmware updates."  *Id.* ¶¶ 70, 74; *see also id.* ¶¶ 77, 81.

### III.    LEGAL STANDARD

To state a claim for relief sufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2)); *id.* at 556–57 (allegations "must be placed in context" with "factual enhancement" to sufficiently plead the elements of the claim). A complaint falls short of that standard "if it tenders naked assertions devoid of further factual enhancement" or "pleads facts that are merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) ("it is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development"); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (internal quotation marks omitted). Further, where a plaintiff's claims are "so vague or ambiguous that" a defendant cannot reasonably respond, the court may order a "more definite statement." Fed. R. Civ. P. 12(e).

### IV.    ARGUMENT

Oracle's attempt to hold HPE liable for Terix's conduct under any theory fails because Oracle has alleged no facts sufficient to support its claims for (i) copyright infringement, (ii) intentional interference with contract, (iii) intentional interference with prospective economic relations, or (iv) unfair competition. Those claims should therefore be dismissed. Alternatively, this Court should order Oracle to provide a more definite statement of what unlawful conduct it believes HPE—separate and apart from Terix—engaged in.

#### A.    Oracle Fails to State a Claim for Copyright Infringement

Oracle does not come close to plausibly alleging either direct or indirect (contributory and vicarious) copyright infringement against HPE because, although the complaint discusses at length the allegations that *Terix* infringed Oracle's copyrights, the complaint does not allege facts suggesting that *HPE* is liable for infringement. *See* Compl. ¶¶ 56–67.

### 1.    Oracle's Direct Copyright Infringement Allegations Are Deficient

Oracle's claim that HPE should be held liable for directly infringing Oracle's copyrights fails because Oracle has not alleged *what copyrighted works* were infringed or *what infringing acts* HPE—separate and apart from Terix—allegedly committed.

***No Infringed Works.***  Oracle's failure to allege *which* copyrights HPE infringed is fatal to its entire complaint.  Oracle lists fourteen copyrights (*see* Compl. ¶ 60), and collectively refers to *all* "software patches, updates, and bug fixes for Oracle's proprietary Solaris operating system and related system firmware used on Oracle's Sun-branded computers" as "Solaris Updates."  *Id.* ¶¶ 1, 57; *see also id.* ¶ 64 ("HP also installed Solaris Updates").  But Oracle holds copyrights only in the underlying software, not the support for that software.  *Id.* ¶ 60.  Oracle claims those copyrights "cover" various "updates and patches" (*id.* ¶ 57), but includes no allegations specifying which patches are covered, by which copyrights the patches are covered, or whether the Solaris updates and patches it alleges HPE copied were covered by any of the copyrights asserted.  This gaping hole in Oracle's allegations is critically important, because to the extent Oracle is alleging that the "updates and patches" are derivative works of Oracle's copyrighted software, Oracle can recover only to the extent HPE improperly copied material in the derivative work that was also included as part of the original registration of the underlying work.  *See Johnson v. Gordon*, 409 F.3d 12, 20 (1st Cir. 2005); *Carmichael Lodge No. 2103 v. Leonard*, 2009 WL 2985476, at *6 (E.D. Cal. Sept. 16, 2009) ("an infringement action will succeed only if the third work copied from the unregistered derivative elements that were also present in the registered original").

Oracle's *only* allegation that HPE itself directly infringed Oracle's copyrights is its conclusory accusation that HPE "engineers obtained Solaris Updates from Terix and installed those updates on [an HPE customer's] Oracle/Sun servers."  Compl. ¶ 51.  But this allegation provides HPE with no notice whatsoever as to (i) which copyrighted works were allegedly "installed," or (ii) whether HPE is alleged to have infringed entire works, "portions" of works, or "derivative" works.  As defined by Oracle, "Solaris Updates" include five entire operating systems, nine firmware updates, and an unspecified number of derivative patches, updates, and fixes.  *Id.* ¶¶ 1, 57.  An operating system is comprised of numerous types and extensive amounts of potentially copyrightable components.  Yet

Oracle does not allege which components—which could include code, documentation, specifications, and other materials—are allegedly protected, or whether those protected components were allegedly infringed.  Because Oracle has not alleged *any* facts showing that HPE copied *any* software elements protected by copyright, the Court should dismiss Oracle's direct infringement claim.  *See MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1555 (11th Cir. 1996) ("Perhaps the best approach for a district court in any computer program infringement case, whether involving literal or nonliteral elements, is for it to require the copyright owner to inform the court as to what aspects or elements of its computer program it considers to be protectable"); *Aqua Creations USA Inc. v. Hilton Hotels Corp.*, 2011 WL 1239793, at *7 (S.D.N.Y. Mar. 28, 2011) (dismissal is appropriate where the plaintiff "has failed to plead facts demonstrating that [the allegedly copied elements] are entitled to copyright protection").

Oracle's failure to allege what copyright HPE allegedly infringed also highlights a standing deficiency in Oracle's complaint.  As noted above, there are two plaintiffs in this case—OA and OIC. Oracle alleges that OA holds the copyrights in the Solaris 8, 9, and 10 operating systems, and that OIC and OA together hold the rights to the Solaris 11 operating system.  Compl. ¶¶ 9, 10.  As for the nine "Oracle System Firmware" copyrights, OIC and OA allegedly hold them individually or together in various combinations.  *Id.* ¶ 10 ("OIC, either on its own or together with Oracle America (depending on the registration), holds all interest, right and title to the copyrights for Oracle System Firmware").  But because only the "legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of the right" (17 U.S.C. § 501(b)), Oracle's failure to include allegations as to *which* copyrights were infringed renders it impossible to determine whether the first element of its copyright infringement claim (ownership of an infringed copyright) has been adequately pleaded against HPE.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 885 (9th Cir. 2005).

In short, the complaint alleges that works were infringed, but does not allege whether they were entire works or derivative works, and if they were derivative works, what part of the derivative works contain elements protected by registered copyrights.  Nor does Oracle allege which plaintiff has the exclusive right to sue HPE for infringement—an essential element of its direct infringement

claim.  This absence of factual allegations to support Oracle's claims is particularly troublesome given that (i) the clear focus of Oracle's complaint is Terix, not HPE, and (ii) Oracle had an enormous amount of discovery already.  There is no excuse for Oracle's complete failure to identify any actual copyright infringement, and Oracle's direct infringement claim fails on this basis alone.

**No Infringing Acts.**  To state a claim for copyright infringement, a plaintiff must also allege *how* the defendant infringed the copyright, i.e., must identify the defendant's *acts* that are alleged to be infringing, rather than merely reciting the elements of an infringement claim.  *See Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*, 2011 WL 281020, at *6 (C.D. Cal. Jan. 26, 2011) ("plaintiff's complaint does not state a claim for relief" because it "alleges no facts indicating what acts constitute the alleged infringement" and contains merely "labels and conclusions, and a formulaic recitation of the elements of a cause of action") (internal quotation marks omitted).  Simply identifying a copyright and saying that it was infringed is insufficient to state a valid claim for relief.

For example, in *Miller v. Facebook, Inc.*, 2010 WL 1292708, at *3 (N.D. Cal. Mar. 31, 2010), the court dismissed a direct infringement claim where the complaint merely alleged that Facebook had "reproduced and distributed" an infringing work by, among other things, publishing the work in Facebook's application directory and allowing Facebook users to "search and view" the application. *Id.* at *2–3.  Absent, in the court's view, were "sufficient factual allegations to suggest *how* defendant Facebook copied, displayed or distributed infringing copies."  *Id.* at *3 (emphasis added); *see also id.* ("If plaintiff wishes to proceed with his direct copyright infringement claim, he must include sufficient factual allegations that explain how defendant Facebook copied, displayed or distributed infringing copies of [a copyrighted work].  Mere legal conclusions disguised as factual allegations will not suffice.") (citing *Twombly*, 550 U.S. at 555).

Similarly, in *Cutler v. Enzymes, Inc.*, 2009 WL 482291, at *3 (N.D. Cal. Feb. 25, 2009), the court dismissed a complaint for copyright infringement where it was devoid of "specific facts" relating to "what acts during what period of time" amounted to copyright infringement.  *Cf. Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 511–12 (6th Cir. 2008) (unpublished) (affirming dismissal of copyright infringement allegations where plaintiffs failed to allege "a description of the manner in which Defendants' works infringe upon Plaintiff's work")

Gibson, Dunn & Crutcher LLP

(internal quotation marks omitted); *Ledesma v. Corral*, 2016 WL 827743, at *3 (C.D. Cal. Mar. 2, 2016) ("Plaintiffs' factual allegations are not specific enough to raise a right to relief above more than just a speculative level" because "[n]o facts to support the unauthorized use of these copyrighted materials are presented to the Court"); *Reid v. Am. Soc'y of Composers, Authors & Publishers*, 1994 WL 3409, at *1–2 (S.D.N.Y. Jan. 5, 1994) (granting motion to dismiss where plaintiff failed to allege the acts by which the defendant infringed the copyright).

Oracle's complaint is similarly deficient, as it simply recites the exclusive rights listed in the Copyright Act (17 U.S.C. § 106), without providing any supporting facts as to how HPE purportedly violated those rights.  For example, Oracle alleges that HPE ("and others acting in concert with it") "copied and distributed" Oracle software even though HPE was "not authorized to copy, download, reproduce, create derivative works from, or distribute Oracle's copyrighted software."  Compl. ¶ 61; *see also id.* ¶ 62 (alleging HPE and those acting in concert with it violated Oracle's copyrights by "downloading, copying, and distributing Oracle's copyrighted software onto their customers' computers").  As in *Miller* and *Cutler*, however, these allegations provide no notice of the specific facts that "explain *how* [HPE] copied, displayed or distributed infringing copies." *Miller*, 2010 WL 1292708, at *3 (emphasis added).

Oracle's allegation that HPE "directly *or* indirectly provided" its customers with Oracle's "copyrighted proprietary Solaris Updates" (Compl. ¶ 7 (emphasis added)) is even more deficient insofar as it fails to allege whether it was HPE or some other party that committed the allegedly infringing act or acts.  "Providing" infringing copies—directly, or "indirectly," whatever that might mean—is not infringement.  *See Miller*, 2010 WL 1292708, at *2–3 (dismissing complaint that alleged defendant "distributed" infringing copies).  This deficiency is particularly problematic in this case, where the focus of the complaint is on Terix's conduct, not HPE's.

The only allegation in the complaint that even comes close to alleging that HPE itself actually made an unlawful copy of some unspecified copyrighted work is the allegation that HPE engineers "obtained Solaris Updates from Terix and then installed those updates on [an HPE customer's] Oracle/Sun servers."  Compl. ¶ 51.  But this is merely a legal conclusion disguised as a factual allegation:  As discussed above, this statement fails to allege *which* copyright HPE allegedly

infringed because it does not allege *what* was "obtained" or "installed," whether what was obtained or installed was a derivative work, whether the derivative work contained elements protected by a copyright, or which copyright was supposedly infringed. *See supra* pp. 6–7. Nor does Oracle allege *how* or *from whom* HPE "obtained" these "updates." Such conclusory allegations, with no facts to support them, are indistinguishable from boilerplate allegations that HPE "copied" or "distributed" works, which is plainly insufficient. *See Miller*, 2010 WL 1292708, at *2–3 (dismissing complaint that merely alleged Facebook "reproduced and distributed" infringing work without "sufficient factual allegations to suggest *how* defendant Facebook copied, displayed or distributed infringing copies") (emphasis added). This claim also fails because it is devoid of "specific facts" relating to "what acts during what period of time" amounted to copyright infringement. *Cutler*, 2009 WL 482291, at *3.

In sum, because Oracle has failed to allege both the *infringed* works and the infringing *acts*, its infringement claim should be dismissed to the extent it relies on allegations of direct infringement.

## 2.   Oracle's Indirect Infringement Allegations Are Deficient

After obtaining an infringement judgment against Terix that Terix allegedly cannot pay or refuses to pay, Oracle now attempts to attribute Terix's acts to HPE by making vague and conclusory allegations that HPE "knew or should have known" that Terix was infringing but "took no steps to stop" it. Compl. ¶¶ 64, 65; *see also id.* ¶ 64 ("HP has contributorily and/or vicariously infringed Oracle's exclusive rights in the software by controlling, directing, intentionally encouraging, inducing, or materially contributing to the copying, distribution, and/or creation of derivative works"). These bare assertions of knowledge, control, and encouragement, "devoid of further factual enhancement," are insufficient to allege either contributory or vicarious infringement, and Oracle's indirect infringement claim should therefore be dismissed. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted); *Actuate Corp. v. Fidelity Nat'l Info. Servs., Inc.*, 2014 WL 4182093, at *4 (N.D. Cal. Aug. 22, 2014) (granting motion to dismiss because "[a]llegations that defendant was aware of or permitted 'overdeployment' of the Software" in violation of licensing agreements "not sufficient" to state a claim for contributory or vicarious infringement).

### a.      Contributory Infringement

To successfully allege a claim for contributory infringement, a plaintiff must plead that the defendant (i) had knowledge of a third party's specific infringing acts, and (ii) took active steps to encourage that infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) ("One infringes contributorily by *intentionally* inducing or encouraging direct infringement") (emphasis added).  Oracle's complaint does not adequately plead either element.

***No Knowledge.***  To satisfy the knowledge element of contributory infringement, Oracle must allege facts showing that HPE knew what Terix was doing *and* that such conduct was infringing.  *See Med-Systems, Inc. v. Masterson Mktg., Inc.*, 2011 WL 5873399, at *6 (S.D. Cal. Nov. 23, 2011) ("To be liable for contributory infringement, the party must not only have knowledge of the infringing activities, it must also have knowledge that those activities are infringing"); *Asset Vision, LLC v. Fielding*, 2013 WL 6633743, at *4 (D. Id. Dec. 17, 2013) ("Contributory liability requires actual knowledge of specific acts of infringement").  Where, as here, the infringing party is engaged in both infringing and non-infringing conduct, this knowledge element "requires more than a generalized knowledge" "of the *possibility* of infringement."  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (emphasis added); *see* Compl. ¶¶ 5, 6.  Rather, "'actual knowledge of specific acts of infringement' is required for contributory infringement liability."  *Luvdarts*, 710 F.3d at 1072 (quoting *A & M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)).  In other words, the party accused of contributory infringement must know more than simply what the direct infringer was generally doing; to give rise to contributory infringement, there must be knowledge that the direct infringer's specific acts *were infringing*.

Oracle's complaint fails to allege contributory infringement here because, although Oracle alleges that HPE knew Terix was installing software, Oracle does not adequately allege that HPE knew (or even should have known) that such installation was *infringing* or otherwise *unlawful*. Instead, Oracle alleges—correctly—that Terix represented to HPE that it had permission to make copies of Oracle software under Oracle's licenses.  *E.g.*, Compl. ¶ 44.  Indeed, when a customer "raised concerns" in an email to Terix and HPE about Terix's business model, Terix responded by

sharing a presentation called "Clearvision" with the customer during which certain HPE representatives were present.  *Id*. ¶ 42.  Oracle alleges that through the Clearvision presentation, Terix communicated to its customers and to HPE "that Oracle's licenses permitted Terix's conduct."  *Id*. ¶ 67.

These allegations "fail[] to allege that [HPE] had the requisite specific knowledge of infringement" (*Luvdarts*, 710 F.3d at 1072)—in fact, they establish the opposite.  Oracle does not allege any actual statements in the Clearvision presentation that would have communicated to HPE that Terix's process for obtaining Solaris Updates infringed Oracle's copyrights.  To the contrary, Oracle admits that in the presentation Terix stated that customers were lawfully "entitled to all Solaris Updates" under their license agreement (Compl. ¶ 34), which accords with Terix's representations to HPE that it had entitlements to the software.  And there is no allegation that HPE saw any of Oracle's license agreements with its customers, knew about the terms of the licenses, learned that Terix was infringing Oracle's copyrights, or had any other reason to know that the customers were not, in fact, entitled to the updates by virtue of having a license to the software.  Rather, Terix repeatedly insisted that its model was lawful even when questioned by HPE employees.  *Id*. ¶ 44.

In essence, Oracle seeks to hold HPE liable for "willful blindness" for "never [having] confirmed" whether Terix's representations were accurate or whether the customers in fact had permission to obtain Solaris Updates.  Compl. ¶ 35.  But the complaint does not plausibly allege facts supporting those conclusions.

Even if the complaint did allege such facts, indifference to or negligence toward the risk or fact of infringement is wholly insufficient to state a claim for contributory infringement.  *Luvdarts*, 710 F.3d at 1073.  After all, a claim for contributory infringement seeks to hold a third party liable for the acts of another and has its roots in *intentional* torts.  *Grokster*, 545 U.S. at 937.  As a result, to adequately allege a contributory infringement claim based on willful blindness, Oracle must allege that HPE "(1) subjectively believed that infringement was likely occurring . . ., and (2) took deliberate actions to avoid learning about the infringement."  *Luvdarts*, 710 F.3d at 1072 (must allege defendant "took active steps to avoid acquiring knowledge").  Oracle's allegations that HPE should have been more diligent in investigating customer contracts and in ascertaining the truth of Terix's

representations simply do not meet this standard.  Oracle's contributory infringement claim should be dismissed.

**No Affirmative Acts to Encourage Infringement.**  Even if Oracle had sufficiently alleged knowledge, "mere knowledge of infringing potential or of actual infringing uses would not be enough" to establish contributory infringement.  *Grokster*, 545 U.S. at 937.  Rather, Oracle must allege that HPE took *affirmative*, "purposeful, culpable" steps to "encourage direct infringement."  *Id.* at 936–37 (internal quotation marks omitted); *Papa Berg, Inc. v. World Wrestling Entm't, Inc.*, 2013 WL 2090547, at *11 (N.D. Tex. May 15, 2013) ("Even assuming Plaintiffs have adequately [pled] how each Defendant had knowledge of the infringing activity, the Complaint does not allege how Defendants either induced, caused, or materially contributed to infringing conduct of another"); *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013) (granting motion to dismiss contributory copyright infringement claim because "[t]here are no factual assertions describing *how* [the defendant] enabled, induced, or facilitated the infringement of the photographs") (emphasis added) (citing *Grokster*, 545 U.S. at 936 (examples of classic cases of contributory infringement include "instructing how to engage in an infringing use" or "advertising an infringing use")).  Oracle's complaint contains no such allegations.

Oracle asserts that HPE "faciliat[ed] the provision of Solaris Updates to its customers," "address[ed] customer concerns about the impropriety of Terix's conduct," "field[ed] customer requests," and "direct[ed] customer" requests to Terix (Compl. ¶¶ 46, 49, 50), but these amorphous allegations demonstrate only that HPE was engaged in business with Terix.  They do not adequately allege that HPE took purposeful steps to *encourage Terix's infringement*.  There is no such thing as infringement by association, and Oracle's allegations do not state a claim for contributory infringement.  *See*, *e.g.*, *Med-Systems*, 2011 WL 5873399, at *7 (holding that an allegation that a defendant was "involved in all of the contracting" between the third-party infringer and the plaintiff was insufficient to state a claim for contributory infringement); *Viesti Assocs.*, 2013 WL 4052024, at *7 ("Although the complaint states that [the defendant] 'transmitted' the photographs, simple transmission does not equate [to] inducement"); *cf. Addiction & Detoxification Inst. LLC v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (unpublished) ("Simply repeating the legal

conclusion that Defendants induced infringement or contributorily infringed does not plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'"); *Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*, 528 F. Supp. 2d 1106, 1125–27 (W.D. Wash. 2007) ("negotiating, drafting" agreements on behalf of third party insufficient to show a material contribution to infringing activity).

Oracle attempts to attribute Terix's conduct to HPE by alleging that HPE "directly *or* through Terix's Clearvision presentation"—again, the complaint does not allege which—represented to a customer that the customer "was entitled to Solaris Updates by virtue of its original purchase of Solaris." Compl. ¶ 42 (emphasis added). But this conclusory allegation is totally implausible and insufficient to establish contributory infringement. Oracle does not allege that HPE provided the Clearvision presentation, which suggests that Terix, not HPE, made the representation. Moreover, an allegation that HPE provided Terix with the means to infringe, without the necessary intent, is not indirect infringement. *See Lefkowitz*, 2014 WL 2619815, at *11 (dismissing contributory infringement claim and holding that "allegation[s] that a defendant merely provid[ed] the means to accomplish an infringing activity" are insufficient) (internal quotation marks omitted); *Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL 6172953, at *6 (N.D. Cal. Nov. 25, 2013) (granting motion to dismiss contributory infringement claim that failed to include "factual allegations *describing instances* of Pearson encouraging or promoting third parties to infringe") (emphasis in original).

### b.    Vicarious Infringement

Oracle's vicarious infringement allegations fare no better. Vicarious infringement requires allegations that (i) HPE "profit[s] from direct infringement," and (ii) "declin[es] to exercise a right to stop or limit it." *China Cent. Television v. Create New Tech. (HK) Ltd.*, 2015 WL 3649187, at *11 (C.D. Cal. June 11, 2015) (internal quotation marks omitted); *Ellison v. Robertson*, 357 F.3d 1072, 1078–79 (9th Cir. 2004); *Epikhin v. Game Insight N. Am.*, 2015 WL 2412357, at *5 (N.D. Cal. May 20, 2015) (dismissing claim for vicarious copyright infringement).

Oracle alleges that HPE "took no steps" to stop Terix's infringement and/or failed to "confirm" that Terix was not infringing (Compl. ¶ 35), but fails to allege that HPE had any ability to

control Terix.  If anything, Oracle's allegations suggest that Terix was *not* controlled by HPE.  For example, the complaint alleges that HPE employees raised concerns about the business model with Terix but that Terix ignored them and reassured its customers that its model was lawful.  *See id.* ¶ 44.  Oracle contends that HPE should have been more suspicious and "terminate[d] its relationship" with Terix (*id.* ¶ 51), but a defendant is not vicariously liable for failing to *report* a suspected infringer, or for not immediately ceasing to do business with them.  *See Viesti Assocs.*, 2013 WL 4052024, at *8 (granting motion to dismiss vicarious infringement claim because the allegations did not permit a "plausible inference that [the defendant] had the right or ability to prevent infringing conduct").  Rather, to be liable for vicarious infringement, a defendant must have "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).  Oracle does not allege that HPE had either a right or the ability to stop Terix, and so its vicarious infringement allegations fail.

*     *     *

Oracle has received a voluminous amount of discovery on the events and conduct at issue in this case, including HPE's relationship with Terix.  It litigated these issues to summary judgment against Terix, and even obtained significant discovery from HPE.  Yet despite all this discovery Oracle has failed to state a claim against HPE for either direct or indirect copyright infringement.  Oracle's extraordinary access to pre-suit discovery leaves Oracle with no excuse for the shortcomings in its complaint, and this Court should therefore dismiss the infringement claim with prejudice.

**B.      Oracle Fails to State a Claim for Tortious Interference**

Oracle brings two separate causes of action alleging that HPE prevented its customers from renewing support contracts with Oracle by making false statements about the kinds of support services Terix could provide.  The interference with contract claim fails because Oracle does not allege, as it must, that HPE actually knew about Oracle's support contracts with its customers and intended to disrupt them.  And the prospective economic relations claim fails because Oracle has failed to allege any actionable false statements against HPE.

### 1.    Oracle's Interference with Contract Allegations Are Deficient

"In order to establish a claim for interference with contract, a plaintiff must plead and prove (1) a valid and existing contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Wanland v. Los Gatos Lodge, Inc.*, 230 Cal. App. 3d 1507, 1522 (1991).  For a claim to be viable, the plaintiff must show that the defendant "knows that the interference is certain or substantially certain to occur as a result of [its] action." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998) (internal quotation marks omitted).  Oracle cannot allege a plausible claim for interference with its support contracts because it has failed to allege facts showing that HPE (1) in fact knew that Oracle's customers had a preexisting contract for support services with Oracle, and (2) intended to disrupt the contract.

As to the "knowledge" element, while Oracle alleges (in conclusory fashion), that "HPE knew about the contracts" (Compl. ¶ 69), and that HPE's "support policies regarding its enterprise and software products mirror Oracle's policies" (*id*. ¶ 45), there are no allegations that HPE ever saw the terms of the support contracts between Oracle and its customers.  Nor are there any allegations explaining how HPE's business model was so similar to Oracle's that HPE should have known it was interfering with Oracle customers' support contracts, particularly given Oracle's concession that certain forms of support, such as "break fix," were permitted.  *Id*. ¶ 6.

Oracle accuses HPE of "never [having] confirmed (or attempted to confirm) that joint Terix-HP customers actually had such contracts with Oracle" (Compl. ¶ 35), but that allegation directly refutes Oracle's claim for tortious interference because it proves that HPE was not familiar with Oracle's support contracts with its customers.  *See Atlas Equip. Co. v. Weir Supply Grp.*, 2009 WL 4670154, at *14 (W.D. Wash. Sept. 15, 2009) (knowledge element not established where there was no evidence showing that the defendant "knew about the terms of, or had access to" the contract in question); *Azpilcueta v. Nev. ex rel. Transp. Auth.*, 2010 WL 2681855, at *8 (D. Nev. July 2, 2010) (dismissing interference with contract claim where plaintiff "[did] not allege any facts suggesting

that" the defendants knew about her contract).  Oracle has therefore failed to allege that HPE knew about the contracts in question.

As to the "intent to disrupt" element, if HPE believed Terix's representation that customers had entitlements from Oracle to access Solaris Updates, it could not have formed the intent to disrupt those customers' contracts with Oracle.  "[A] party accused of intentional interference is entitled to have relied on factual representations from a person in a position to know those facts."  *Oakley, Inc. v. Nike, Inc*., 988 F. Supp. 2d 1130, 1136 (C.D. Cal. 2013).  Here, it was Terix that had the direct relationship with at least some of the customers (*see* Order Granting-in-Part Defendants' Motion to Dismiss, *Oracle Am., Inc. v. Terix Comput. Co*., 5:13-cv-03385 (ECF 61) at 3 (N.D. Cal. Jan. 3, 2014)), and it was Terix that made representations about its ability to provide Solaris Updates to those customers.

For example, Oracle alleges that "Terix falsely told Oracle hardware customers that they did not need to purchase an annual support agreement with Oracle to obtain Solaris Updates" and could instead provide support based on the customer's "perpetual entitlement to access and use Solaris Updates."  Compl. ¶ 31.  Oracle further alleges that the Clearvision presentation, which HPE representatives had allegedly seen, "stated incorrectly that customers were entitled to all Solaris Updates for free by virtue of the software license customers received when they first licensed Solaris."  *Id*. ¶ 34.  While Judge Grewal rejected Terix's arguments on that point in his summary judgment order, Terix, which actually provided the support services to customers, was in the best position to know whether the customers had any entitlements from Oracle through their software licenses (or any other means).  HPE, which is not alleged to have ever seen those licenses, was reasonable in relying on Terix's representations about what those licenses permitted, and Oracle does not allege any statements in the Clearvision presentation that would have shown to HPE that Terix's conduct was infringing.  Accordingly, HPE could not have known that interference was certain or substantially likely to occur.

2.      **Oracle's Interference with Prospective Economic Relations Allegations Are Deficient**

Claims for interference with prospective economic relations are similar to claims for interference with contract, except that a plaintiff must allege "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff" instead of a contract, and must also show that the defendant engaged in some wrongful conduct "apart from the interference itself." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153–54 (2003).

Oracle alleges that HPE interfered with its prospective customers "through Terix," by "misrepresenting to Oracle customers that they did not need a support contract with Oracle to obtain Solaris Updates and firmware updates."  Compl. ¶ 74.  As an example, Oracle alleges that "HP solicited [a customer] (then an existing Oracle support customer) and told [that customer] that it could provide support for [its] Sun/Oracle hardware and software, including providing Solaris Updates using Terix as a subcontractor." *Id*.; *see also id*. ¶ 42 ("HP also falsely represented to [the customer] (directly or through Terix's Clearvision presentation) that [the customer] was entitled to Solaris Updates by virtue of its original purchase of Solaris"); ¶¶ 70, 74 ("HP informed [another customer] that software support for [that customer's] Sun servers was available under its contract with HP and could be provided by Terix").

But "software support" could refer to legally providing recommendations as to what patches, fixes, or updates a customer should obtain from Oracle, and Oracle does not specify whether these "misrepresentations" were negligent or fraudulent.  Regardless, Oracle cannot meet even the lower standard.  Oracle has not adequately alleged that HPE "should have known" that its statements to the identified customers were false or that HPE did not have "reasonable grounds for believing [those statements] to be true." *Thrifty Payless, Inc. v. Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1239–41 (2013) (internal quotation marks omitted); *see also UMG Recordings, Inc. v. Global Eagle Entm't*, 117 F. Supp. 3d 1092, 1112 (C.D. Cal. June 22, 2015) (dismissing negligent misrepresentation claim where party pled "no facts supporting their bare allegation[s]" that there

were no reasonable grounds for believing representations were true).[2]  As noted above, there are no allegations that HPE ever saw the licenses between Oracle and its customers or that it had any independent basis to know what those licenses permitted.  Thus, HPE could not have known that customers were not in fact entitled to updates "by virtue of [their] original purchase of Solaris," or that HPE was not in fact able to provide support services to the customers through Terix.  Absent facts showing that HPE knew or should have known the statements were false, Oracle cannot allege that HPE's conduct was independently wrongful and this claim should be dismissed.

## C.    Oracle Fails to State a Claim for Unfair Competition

Oracle's claim under section 17200 of the Business and Professions Code is based on allegations that HPE engaged in "unlawful" and "unfair" conduct by, among other things, interfering with Oracle's prospective economic relations.  Compl. ¶ 77.  Conduct is "unlawful" for section 17200 purposes if it "can properly be called a business practice" and "is forbidden by law."  *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103 (1996) (internal quotation marks omitted).  "[C]ommon law claims cannot be used as the predicate for an unlawful UCL claim."  *Aguirre v. Wells Fargo Bank*, 2015 WL 4065245, at *13 (C.D. Cal. July 2, 2015).  Conduct is "unfair" where it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [it] otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Oracle has not alleged a section 17200 violation under either prong.

Oracle has not plausibly alleged a claim for "unfair" conduct under section 17200 because it has not alleged that HPE has violated, or is about to violate, the antitrust laws, nor has it tied any of its theories of wrongdoing to such laws or the policies underlying them.  Oracle does allege that HPE attempted to "gain an unfair competitive advantage over Oracle" and has "unjustly minimized

---

[2]  Nor can Oracle succeed on a negligent misrepresentation claim based on HPE's purported representation that the customer's "original purchase of Solaris" entitled it to further updates, as that constitutes a legal opinion that is not actionable as a factual misrepresentation.  *See Sevigny v. DG Fastchannel, Inc.*, 2011 WL 6149284, at *3 (C.D. Cal. Dec. 12, 2011) ("Unicast's alleged representation that the non-compete agreement would be unenforceable, is, at most, a legal opinion and not a statement of a past or existing fact").

Oracle's competitive advantages" (Compl. ¶¶ 77, 83), but "[h]arm to a competitor is not the same as harm to competition" and is insufficient to state a claim. *ProconGPS, Inc. v. Star Sensor LLC*, 2011 WL 5975271, at *3 (N.D. Cal. Nov. 29, 2011) (allegations that plaintiff had lost "at least one customer based on [defendant's] alleged misrepresentations" did not state claim under unfair prong of UCL); *Girafa.com, Inc. v. Alexa Internet, Inc.*, 2008 WL 4500858, at *2 (N.D. Cal. Oct. 6, 2008) ("To be sure, [defendant's] conduct threatens its *competitor* … but that is not the same as threatening *competition*").

Second, because liability under the unlawful prong is largely derivative of liability under substantive causes of action—such as the Copyright Act or the interference claims—should the Court decide that Oracle has not stated a claim under those causes of action, it should dismiss Oracle's "unlawful" allegations as well. *See Vess v. Bank of Am., N.A.*, 2012 WL 113748, at *10 (S.D. Cal. Jan. 13, 2012) (dismissing UCL claim to the extent it relied on failed statutory allegations).

### D.  Oracle's State-Law Claims Are Preempted in Part

At several points in its complaint, Oracle repeats the refrain that HPE and Terix "conspired" to commit copyright infringement by providing Solaris Updates to customers. *See, e.g.*, Compl. ¶¶ 1, 41, 44, 48, 49. Oracle also specifically refers to "conspiring" in its claim for interference with contract and interference with prospective economic relations. *See id.* ¶ 70 (alleging that "HPE engaged in wrongful conduct by, among other things, conspiring with Terix to infringe Oracle's copyrights"); ¶ 74 (same allegations). To the extent Oracle relies on these conspiracy allegations in support of its state-law claims, these claims are preempted by the Copyright Act.

State law claims are preempted by the Copyright Act where they (1) involve the same subject matter as copyright law, and (2) involve rights that are "equivalent" to the rights conferred by section 106 of the Copyright Act. *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137–38 (9th Cir. 2006). In order to avoid preemption, "the state law claim [must] contain[] an element not shared by the federal law; an element which changes the nature of the action so that it is *qualitatively* different from a copyright … infringement claim." *Summit Mach. Tool. Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439–40 (9th Cir. 1993) (internal quotation marks omitted).

Gibson, Dunn & Crutcher LLP

A number of courts have concluded that state-law claims based on a conspiracy to violate the Copyright Act are preempted under this standard.  For example, in *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001), the court held that a claim for civil conspiracy was preempted where the object of the conspiracy was simply to commit copyright infringement.  *Id.* at 1193–94. Similarly, in *Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292 (4th Cir. 2012), the court concluded that a conspiracy to infringe copyrights claim did not have the extra element needed to survive preemption because it would simply remedy "the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose."  *Id.* at 311–12 (internal quotation marks omitted); *see also Brown v. McCormick*, 23 F. Supp. 2d 594, 608 (D. Md. 1998) ("while the formulation for civil conspiracy adds the element of agreement to the elements that copyright infringement requires, the right protected by such a cause of action in this case would serve merely to vindicate the same right as under the Copyright Act").

Here, the state law claims concern the provision of Solaris Updates, which Oracle alleges fall within the Copyright Act's protection.  Compl. ¶ 57.  No "extra element" is present, as all of Oracle's conspiracy allegations pertain to HPE's supposed infringement, directly or indirectly, of Oracle's intellectual property.  *See id.* ¶ 1 (alleging HPE "conspired with others to distribute copyrighted, proprietary Oracle software code without authorization and in knowing violation of Oracle's intellectual property rights"); ¶ 41 (alleging that HPE "conspired with Terix to subcontract hardware support, software support … or both for the Oracle/Sun hardware and software to Terix"); ¶ 44 (alleging that HPE "conspired with Terix to provide Solaris Updates to customers"); ¶ 48 (alleging that the "HP-Terix conspiracy worked generally the same way for other joint customers," referring to HPE and Terix's supposed provision of Solaris Updates to customers); ¶ 49 (alleging that HPE "continued to conspire with Terix and participated in, directed, and contributed to the infringement of Oracle's intellectual property").  At no point does Oracle allege any conspiracy to violate any laws other than the Copyright Act, or any rights other than Oracle's rights to "distribute" and "provide" Solaris Updates to customers.  As such, Oracle cannot base its state-law claims on a purported

1   conspiracy to commit copyright infringement, and those claims should be dismissed to the extent they

2   rely on a copyright infringement conspiracy.

3   **E.      HPE Is Entitled to a More Definite Statement**

4          If the Court declines to dismiss Oracle's complaint in whole or in part, HPE respectfully asks

5   the Court to order Oracle to provide a more definite statement of its claims under Federal Rule of

6   Civil Procedure 12(e).   Oracle's allegations against HPE are so vague and ambiguous, and so

7   muddled to the extent they refuse to distinguish between HPE and Terix, that HPE cannot reasonably

8   prepare an answer to them.   Other courts have adopted this approach in dealing with vague

9   infringement allegations:  For example, in *Sega Enterprises Ltd. v. Accolade, Inc.*, 1992 U.S. Dist.

10  LEXIS 4621 (N.D. Cal. Mar. 20, 1992), this Court ordered the plaintiff to amend its complaint "to

11  specify the particular 'other works' which are the subject [of] the copyright claim and registration of

12  those works, the acts constituting infringement of those works, and the dates when infringement

13  occurred." *Id.* at *4; *see also Tom Kelley Studios Inc. v. Int'l Collectors Soc'y Inc.*, 1997 WL

14  598461, at *1 (S.D.N.Y. Sept. 25, 1997) (granting motion for more definite statement where "there

15  are no allegations of specific *acts* of infringement with respect to *specific* copyrights owned by

16  plaintiffs"); *Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*, 769 F. Supp. 1161, 1166–67 (D. Colo.

17  1991) (granting motion for more definite statement where the "complaint [did] not adequately specify

18  the copyrights allegedly infringed" and failed to "identify the allegedly infringing works"); *Cascade*

19  *Invs., Inc. v. Bank of Am., N.A.*, 2000 WL 1842945 (D. Nev. Sept. 29, 2000) (granting motion for

20  more definite statement as to interference with prospective economic relations claim); *Fox Hollow of*

21  *Turlock Owners' Ass'n v. Sinclair*, 2007 WL 987873 (E.D. Cal. Mar. 30, 2007) (granting motion as

22  to UCL claim).

23         As discussed above, Oracle fails to allege the *acts* that were infringing (or when those acts

24  occurred) and which *copyrights* were infringed (and which party holds the copyrights that were

25  infringed).   It also fails to allege which *facts* give rise to Oracle's claim for indirect infringement

26  (*supra* pp. 10–15), tortious interference (*supra* pp. 15–19), and unfair competition (*supra* pp. 19–20).

27  Further specificity is warranted as to these allegations as well.

28

1    An order compelling a more definite statement is essential to provide HPE with fair notice of

2    the claims against it—as opposed to the claims Oracle already won against Terix.  That is doubly true

3    here, where Oracle has *already* received a substantial amount of discovery on these issues during the

4    *Terix* litigation, including thousands of documents from HPE.  Oracle should be required to allege

5    sufficient facts to support its claims against HPE (if there are any to allege) before the doors to

6    discovery are unlocked so that the parties can proceed to litigate Oracle's allegations appropriately.

7                                   **V.    CONCLUSION**

8    HPE's motion to dismiss Oracle's complaint for failure to state a claim under Federal Rule of

9    Civil Procedure 12(b)(6) should be granted.  Alternatively, this Court should order Oracle to provide

10    a more definite statement of its claims under Federal Rule of Civil Procedure 12(e).

11

12    Dated: April 29, 2016

13                                    GIBSON, DUNN & CRUTCHER LLP

14

15                                    By:   /s/               *Blaine H. Evanson*
                                               Blaine H. Evanson

16                                    Attorneys for Defendant
17                                    HEWLETT PACKARD ENTERPRISE COMPANY

18

19

20

21

22

23

24

25

26

27

28