1   LATHAM & WATKINS LLP
        Christopher S. Yates (SBN 161273)
2       Christopher B. Campbell (SBN 254776)
        Meaghan P. Thomas-Kennedy (SBN 303578)
3   505 Montgomery Street, Suite 2000
    San Francisco, California  94111-6538
4   Telephone:  415.391.0600
    Facsimile:  415.395.8095
5   Email:   chris.yates@lw.com
            christopher.campbell@lw.com
6           meaghan.thomas-kennedy@lw.com

7   ORACLE CORPORATION                          ORACLE CORPORATION
        Dorian Daley (SBN 129049)                   Jeffrey S. Ross (SBN 138172)
8       Deborah K. Miller (SBN 95527)           10 Van de Graaff Drive
    500 Oracle Parkway                          Burlington, MA 01803
9   M/S 5op7                                     Telephone:  781.744.0449
    Redwood City, CA 94065                      Facsimile:  781.238.6273
10  Telephone:  650.506.4846                     Email:   jeff.ross@oracle.com
    Facsimile:  650.506.7114
11  Email"   dorian.daley@oracle.com             Attorneys for Plaintiffs
            deborah.miller@oracle.com           Oracle America, Inc., and Oracle
12                                              International Corporation

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16

17  ORACLE AMERICA, INC., a Delaware        No.  3:16-cv-01393-JST
    corporation; ORACLE INTERNATIONAL
18  CORPORATION, a California corporation   **ORACLE AMERICA, INC. AND
                                            ORACLE INTERNATIONAL
19                  Plaintiffs,             CORPORATION'S OPPOSITION TO
                                            HEWLETT PACKARD ENTERPRISE
20          v.                              COMPANY'S MOTION TO DISMISS**

21  HEWLETT PACKARD ENTERPRISE             Date:    July 14, 2016
    COMPANY, a Delaware corporation; and DOES   Time:    2:00 PM
22  1–50,                                   Place:   Courtroom 9, 19th Floor
                                            Judge:   The Honorable Jon S. Tigar
23                  Defendants.

24

25                  **REDACTED PUBLIC VERSION**

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
3:16-cv-01393-JST

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................ 1

II. ORACLE'S COMPLAINT ............................................................................................. 3

  A. Oracle's Server and Support Business ................................................................ 3

  B. HP's HP-UX Operating System And Its Support Business .............................. 4

  C. Terix's Unlawful Business Model And Oracle's Lawsuit .................................. 5

  D. HP's Participation In And Knowledge Of Terix's Scheme To
   Infringe Oracle's Copyrights And Interfere With Oracle Support
   Customers ........................................................................................................... 6

III. LEGAL STANDARD ..................................................................................................... 8

IV. ARGUMENT .................................................................................................................. 9

  A. Oracle's Complaint States A Claim For Copyright Infringement ..................... 10

    1. Oracle's Complaint Adequately Identifies The Infringed
     Works ..................................................................................................... 10

    2. Oracle Pleads Direct Copyright Infringement By HP .......................... 14

    3. Oracle Pleads Contributory Copyright Infringement By HP ................ 17

    4. Oracle Pleads Vicarious Copyright Infringement By HP ...................... 19

  B. Oracle's Complaint States A Claim For Tortious Interference With
   Contract And Prospective Economic Relations ................................................ 20

  C. Oracle's Complaint States A Claim For Unfair Competition ........................... 23

  D. Oracle's State Law Claims Are Not Preempted ............................................... 23

  E. The Court Should Deny HP's Request For A More Definite
   Statement .......................................................................................................... 24

V. CONCLUSION ............................................................................................................. 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
3:16-cv-01393-JST

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ................................................................10, 17, 18, 19

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ..........................................................................24

*Apple Computer, Inc. v. Microsoft Corporation*,
  35 F.3d 1435 (9th Cir. 1994) .............................................................................11

*Aqua Creations v. Hilton Hotels Corporation*,
  2011 WL 1239793 (S.D.N.Y. Mar. 28, 2011) ...................................................13

*In re Arcacia Media Technologies Corporation*,
  2005 WL 1683660 (N.D. Cal. July 19, 2005)....................................................23

*Atlas Equipment Co. v. Weir Supply Group*,
  2009 WL 4670154 (W.D. Wash. Sept. 15, 2009)...............................................21

*Azpilcueta v. Nevada ex rel. Transportation Authority*,
  2010 WL 2681855 (D. Nev. July 2, 2010) .........................................................21

*Barker v. Riverside County Office of Education*,
  584 F.3d 821 (9th Cir. 2009) ...............................................................................8

*Batjac Productions, Inc. v. Goodtimes Home Video Corporation*,
  160 F.3d 1223 (9th Cir. 1998) ...........................................................................11

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544 (2007).................................................................................8, 9, 16

*BMG Rights Management (US) LLC v. Cox Communications, Inc.*,
  2015 U.S. Dist. LEXIS 161091 (E.D. Va. Dec. 1, 2015) ..................................17

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ...............................................................................8

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  873 F. Supp. 2d 1192 (N.D. Cal. 2012) ...............................................................1

*Cable/Home Communication Corporation v. Network Productions, Inc.*,
  902 F.2d 829 (11th Cir. 1990) ...........................................................................17

*Carmichael Lodge No. 2103 v. Leonard*,
  2009 WL 2985476 (E.D. Cal. Sept. 15, 2009)....................................................12

*Cascade Investments, Inc. v. Bank of America, N.A.,*
2000 WL 1842945 (D. Nev. Sept. 29, 2000) ........................................................25

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company,*
20 Cal. 4th 163 (1999) ........................................................................................23

*Craigslist, Inc. v. Autoposterpro, Inc.,*
2009 WL 890896 (N.D. Cal. Mar. 31, 2009) ........................................................24

*Cutler v. Enzymes, Inc.,*
2009 WL 482291 (N.D. Cal. Feb. 25, 2009) ........................................................16

*Ellison v. Robertson,*
357 F.3d 1072 (9th Cir. 2004) ..............................................................................10

*Erickson v. Pardus,*
551 U.S. 89 (2007) ..................................................................................................8

*Flatworld Interactives LLC v. Apple Inc.,*
2013 WL 6406437 (N.D. Cal. Dec. 6, 2013) ........................................................21

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
76 F.3d 259 (9th Cir. 1996) ..................................................................................20

*Fonovisa, Inc. v. Napster, Inc.,*
2002 WL 398676 (N.D. Cal. Jan. 28, 2002) ........................................................17

*G. Ricordi & Co. v. Paramount Pictures,*
189 F.2d 469 (2d Cir. 1951) ................................................................................12

*Gregory v. Albertson's, Inc.,*
104 Cal. App. 4th 845 (Ct. App. 2002) ................................................................23

*Johnson v. Gordon,*
409 F.3d 12 (1st Cir. 2005) ..................................................................................12

*Korea Supply Co. v. Lockheed Martin Corporation,*
29 Cal. 4th 1134 (2003) ........................................................................................22

*LaChapelle v. Fenty,*
812 F. Supp. 2d 434 (S.D.N.Y. 2011) ..................................................................24

*Ledesma v. Corral,*
2016 WL 827743 (C.D. Cal. Mar. 2, 2016) ........................................................16

*Little v. Amber Hotel Co.,*
202 Cal. App. 4th 280 (Ct. App. 2011), *as modified* (2012) ..............................21

*Live Face on Web, LLC v. Emerson Cleaners, Inc.,*
66 F. Supp. 3d 551 (D.N.J. 2014) ........................................................................20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

*Lucky Break Wishbone Corporation v. Sears, Roebuck and Co.*,
   528 F. Supp. 2d 1106 (W.D. Wash. Dec. 4, 2007) ................................................................19

*Luxul Technology, Inc. v. Nectarlux*,
   78 F. Supp. 3d 1156 (N.D. Cal. 2015) ........................................................................................23

*MDY Indus., LLC v. Blizzard Entertainment, Inc.*,
   629 F.3d 928 (9th Cir. 2010) .....................................................................................................24

*Med-Systems, Inc. v. Masterson Marketing, Inc.*,
   2011 WL 5873399 (S.D. Cal. Nov. 23, 2011) ...........................................................................19

*Medrano v. Kern County Sheriff's Officer*,
   921 F. Supp. 2d 1009 (E.D. Cal. 2013).......................................................................................24

*Merchant Transaction Systems, Inc. v. Nelcela, Inc.*,
   2009 WL 2355807 (D. Ariz. July 28, 2009) ..............................................................................12

*Miller v. Facebook, Inc.*,
   2010 WL 1292708 (N.D. Cal. March 31, 2010)........................................................................15

*MiTek Holdings, Inc. v. Arce Engineering Company*,
   89 F.3d 1548 (11th Cir. 1996) ..................................................................................................13

*Montgomery v. Noga*,
   168 F.3d 1282 (11th Cir. 1999) ................................................................................................12

*National Business Development Services v. American Credit Education &*
   *Consulting, Inc.*,
   299 Fed. Appx. 509 (6th Cir. Mich. 2008) ..............................................................................16

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
   50 C.3d 1118 (1990) ..................................................................................................................21

*Ramona Manor Convalescent Hospital v. Care Enterprises*,
   177 Cal. App. 3d 1120 (1986), *as modified* (1986) ................................................................21

*Reid v. American Society of Composers, Authors & Publishers*,
   1994 WL 3409 (S.D.N.Y. Jan. 5, 1994) ...................................................................................16

*Rubin v. Brooks/Cole Publishing Co.*,
   836 F. Supp. 909 (D. Mass. 1993) .............................................................................................24

*Russell v. Price*,
   612 F.2d 1123 (9th Cir. 1979) ..................................................................................................11

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
   2007 WL 1455903 (N.D. Cal. May 16, 2007)..........................................................................23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

*Silvers v. Sony Pictures Entertainment, Inc.*,
   402 F.3d 881 (9th Cir. Cal. 2005)........................................................................13

*Sybersound Records, Inc. v. UAV Corporation*,
   517 F.3d 1137 (9th Cir. 2008) ............................................................................13

*Tom Kelley Studios Inc. v. International Collectors Society Inc.*,
   1997 WL 598461 (S.D.N.Y. Sept. 25, 1997)......................................................25

*United States v. Washington Mint, LLC*,
   115 F. Supp. 2d 1089 (D. Minn. 2000)................................................................11

*Viacom International, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2013)..................................................................................17

*Visto Corporation v. Sprogit Technologies, Inc.*,
   360 F. Supp. 2d 1064 (N.D. Cal. 2005)..............................................................22

*Whiteway v. FedEx Kinko's Office & Print Services, Inc.*,
   2005 WL 3095864 (N.D. Cal. Nov. 14, 2005) ...................................................24

**STATUTES**

17 U.S.C. § 106............................................................................................10, 15, 16

17 U.S.C. § 301(a) ................................................................................................24

17 U.S.C. § 501(b) ................................................................................................13

Cal. Bus. & Prof. Code § 17200 ...........................................................................23

**RULES**

Fed. R. Civ. P. 12(b)(6)..........................................................................................8

Fed. R. Civ. P. 12(e) ........................................................................................24, 25

**OTHER AUTHORITIES**

2 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT (2015)

   § 7.16[B][5][b] ....................................................................................................11

   § 12.04................................................................................................................20

3 Levy, Golden, Sacks, CALIFORNIA TORTS § 40.112 (2016) ...................................21

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

v

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

## I.      INTRODUCTION

HP's motion to dismiss is baseless—and HP knows it.  Oracle's Complaint describes in painstaking detail HP's direct and contributory infringement of Oracle's copyrights through its longstanding partnership with Terix Computer Company ("Terix"), a "software support provider" that admitted to perpetrating a multi-year fraud against Oracle that HP both participated in and benefited from handsomely.  Nonetheless, ignoring essentially all of the factual allegations in Oracle's twenty-nine page Complaint, HP contends (as Terix did before it) that Oracle has not pleaded enough.  HP's motion has no merit and should be denied.

HP asserts that Oracle "fails to plausibly allege facts demonstrating how HPE *knew* that Terix was infringing, what steps HPE took to *encourage* Terix to infringe, or that HPE had the *ability* to control Terix."  Mot. at 1 (emphasis in original).  HP also asserts that Oracle includes only "conclusory allegations that HPE directly infringed Oracle's copyrights and interfered with Oracle's customer relationships."  *Id.*  HP can make these arguments only by ignoring the bulk of Oracle's Complaint or by taking single sentences out of context.  In fact:

- Oracle alleges extensive facts demonstrating that HP knew that Terix was infringing, including quotes from HP documents produced in the *Terix* litigation which establish that HP knew that the "███████████" required customers to enter into a support contract with Oracle to lawfully access and download Solaris Updates.  This establishes that HP knew Terix could not lawfully provide any customers with Solaris Updates and was thus infringing Oracle's copyrights every time it did so.  *See e.g.,* Complaint ¶¶ 1, 35, 42-49.

- Oracle also includes detailed allegations regarding the joint HP-Terix efforts to convince customers to contract with them instead of Oracle through HP's representations to customers such as ██████ that a joint HP-Terix solution could meet all of the customer's needs—including the provision of Oracle's copyrighted Solaris Updates.  *Id.* ¶¶ 1, 4, 29, 34-35, 41-42, 46-50.  These allegations establish how HP (alongside Terix) tortiously interfered with Oracle's existing contractual relationships and prospective economic advantage: by promising and providing Solaris Updates to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
15-cv-01393-JST

customers, even though HP knew that neither it nor Terix had a lawful right to provide customers with Oracle's copyrighted software.  Oracle also alleges that HP was typically the prime contractor and thus could have (but did not) control the unlawful acts of its subcontractor, Terix.  *Id.* ¶¶ 4, 29.

- Finally, Oracle alleges facts detailing HP's direct infringement.  The Court need look no further than paragraph 51 of the Complaint which summarizes the deposition testimony of a former HP employee:  "HP had a direct service relationship with ███████ that covered ████████'s Oracle/Sun servers.  HP engineers obtained Solaris Updates from Terix and then installed these updates on ████████'s Oracle/Sun servers. Moreover, HP did so knowing that such conduct violated Oracle's copyrights and intellectual property policies . . . ."  Indeed, Oracle alleges that HP continued to install Solaris Updates even after an HP employee "raised concerns with HP executives (that were escalated to the HP legal department) about whether Terix had the lawful right to provide Solaris Updates."  *Id.* ¶ 51.

Oracle's allegations far exceed what is required to plead claims for copyright infringement and tortious interference.  HP has sued alleged infringers based on far less, including a lawsuit against a company called Source Direct for the same kind of conduct Oracle alleges here—infringement of HP's copyrights through the unauthorized use of proprietary HP software patches as part of Source Direct's third party support offering.  HP's complaint against Source Direct was much less detailed than Oracle's Complaint, but HP plainly believed it stated a claim—and it did.

The detail in Oracle's Complaint is not guesswork.  Oracle's Complaint draws directly from and summarizes what Oracle learned in its litigation with Terix and another company called Maintech.  Terix stipulated to judgment in that case for, among other things, copyright infringement and intentional interference with Oracle's customer relationships.  *Oracle Am., Inc. v. Terix Comput. Co.*, Case No. 13-cv-3385-JST (N.D. Cal.) (ECF No. 652).  Maintech, a company that partnered with Terix in exactly the same way that HP did, also stipulated to judgment against it for copyright infringement and agreed to pay Oracle $14 million in damages. *Id.* at ECF No. 614.  It is frivolous to suggest that Oracle's Complaint, which relies on more than

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

1   a year of discovery over the course of that litigation, does not state a plausible claim for relief.

2          Oracle is not required at this stage to state with absolute precision all of HP's acts of

3   misconduct.  A fundamental premise of Oracle's claims (like its claims against Terix, Maintech

4   and other companies) is that HP and its partners purposefully concealed their misconduct from

5   Oracle to avoid detection.  Oracle has uncovered some of that misconduct through the prior case

6   against Terix, but party discovery from HP is needed to determine the full scope of HP's tortious

7   acts, including whether HP's infringement was broader than just the HP-Terix acts confirmed so

8   far.[1]  HP will of course be permitted to make whatever arguments it believes are supported by the

9   record at summary judgment or trial.  For now, Oracle's allegations are more than sufficient, and

10  HP's motion should be denied.

11  **II.      ORACLE'S COMPLAINT**

12          **A.      Oracle's Server and Support Business**

13          Oracle develops and sells enterprise hardware and software systems, including Oracle's

14  Sun-branded servers ("Oracle/Sun servers") which typically come with Oracle's proprietary

15  Solaris operating system.  Complaint ¶ 19.  Oracle spends many millions of dollars each year

16  developing, maintaining and improving the Solaris operating system, including developing new

17  versions of Solaris and developing software patches, updates, and bug fixes for Solaris and related

18  system firmware (collectively, "Solaris Updates").  *Id.* ¶¶ 1, 20.  Oracle owns valid and

19  enforceable copyrights in each version of Solaris and all Solaris Updates.  *Id.* ¶¶ 9, 11, 57-58, 60.

20          Oracle offers technical support services for the Solaris operating system, typically through

21  annual contracts.  *Id.* ¶¶ 21, 22.  Only customers with an active Oracle support contract are

22  entitled to access Oracle's password-protected website in order to download, install and use

23  Solaris Updates for servers covered by their support contract.  *Id.*  If a customer elects not to

24  

---

25  [1] Oracle's knowledge of HP's misconduct is presently limited to the HP-Terix relationship, but HP also partnered with other third party support providers, and discovery is needed to explore whether HP

26  acted in a similar way in its relationship with those companies.  HP strenuously resisted Oracle's efforts to obtain discovery during the *Terix* case, bringing a motion to quash Oracle's subpoena.

27  Although the motion was denied in large part, HP did succeed in limiting the scope of discovery to elements of its relationship with Terix.  *Oracle Am., Inc. v. Terix Comput. Co.*, Case No. 13-cv-3385-

28  JST (N.D. Cal.) (ECF No. 474).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

purchase a support contract from Oracle, the customer is not entitled to download, receive or use Solaris Updates for its servers.  *Id.*  Since shortly after Oracle acquired Sun in January 2010, Oracle's published Hardware and Systems Support Policies have stated expressly that "[c]ustomers with unsupported hardware systems are not entitled to download or receive updates, maintenance releases, patches, telephone assistance, or any other technical support services for unsupported hardware systems."  *Id.*  Oracle (like Sun before it) prices the service contract "on a per system basis."  *Id.*

### B.    HP's HP-UX Operating System And Its Support Business

Just as Oracle does, HP develops and sells its own servers and its own proprietary operating system (HP-UX), and runs a support business that provides support services to enterprise server customers in exchange for support fees.  *Id.* ¶ 26.  HP's HP-UX support policies mirror Oracle's policies—customers that want updates and other support software for HP-UX must purchase a support contract from HP, and without it the customer may not access HP's password-protected support website or install HP-UX updates.  *Id.* ¶¶ 26-27.

HP also provides what is known as "third party support" for non-HP servers, including Oracle/Sun servers.  HP (and others) can lawfully provide break-fix support for the hardware (the Solaris servers), but just as HP is the only lawful provider of its HP-UX operating system and updates, Oracle is the only lawful provider of its Solaris operating system and Solaris Updates.  In an effort to generate additional support revenue, HP approached customers (sometimes jointly with Terix) and offered a complete suite of support services for all or a portion of their servers, including access to Solaris Updates for any Oracle/Sun servers.  *Id.* ¶¶ 28-29.  In many cases, HP subcontracted software support for the Oracle/Sun servers to Terix, which would provide Solaris Updates to the customer with the knowledge and assistance of HP.  *Id.*  HP understood that Solaris Updates were an essential component of the Solaris support that its customers required and knew that such customers would not have acquired support from HP if they were told that Solaris Updates were available from only Oracle.  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

### C.    Terix's Unlawful Business Model And Oracle's Lawsuit

Terix was HP's partner, and claimed that it could save customers "an average of 20% off the maintenance fees charged by OEMs [original equipment manufacturers] for equivalent" service levels, including for customers running Oracle/Sun servers and Solaris.  *Id.*  As part of its relationship with HP, Terix falsely told Oracle customers that they did not need an annual support agreement with Oracle to obtain Solaris Updates, and that Terix could itself provide such updates. *Id.* ¶ 31.

After it and HP diverted a customer from contracting with Oracle for support services, Terix would typically purchase a support contract from Oracle for *one* of the customer's servers in order to obtain access credentials to Oracle's secure support website, and then use that access to provide Solaris Updates for *all* of the customer's servers.  *Id.* ¶ 32.  This violated Oracle's support policies, which require an active support agreement with Oracle for each server to which a customer wants to apply Solaris Updates.  *Id.*  Terix developed a written presentation called "Clearvision" that falsely represented to customers that they were entitled to Solaris Updates without an Oracle support contract.  *Id.* ¶ 34.  Both Terix and HP used Terix's scheme (including the false Clearvision presentation) to win support business and, ultimately, provide Oracle's Solaris Updates in violation of Oracle's copyrights.  *Id.* at ¶¶ 34-35.

Oracle uncovered Terix's unlawful conduct in 2013 and filed suit against it for copyright infringement, violations of the Computer Fraud and Abuse Act, violations of the Lanham Act, breach of contract, intentional interference with prospective economic relations, and unfair competition.  *Id.* ¶ 36.[2]  Terix did not deny accessing and providing Solaris Updates to customers. Instead, Terix's core defense was the same baseless argument advanced in Clearvision—that customers received "perpetual license rights" to all Solaris Updates when they first licensed Solaris.  *Id.* ¶ 37.

---

[2] Oracle's complaint also named a company called Maintech as a defendant.  Maintech worked with Terix in much the same way that HP did.  Maintech was often the prime contractor and subcontracted software support services to Terix, which agreed to provide and did provide Solaris Updates to joint Maintech-Terix customers.  *See Oracle Am., Inc. v. Terix Comput. Co., Inc.*, Case No. 13-cv-3385-JST (N.D. Cal.) (ECF No. 248).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

On May 5, 2015, the Honorable Paul S. Grewal granted summary judgment for Oracle on Terix's license defense, ruling that "Defendants violated the terms of the relevant licenses by using a customer's credentials to—at the very least—download patches for any number of that customer's machines, whether covered by the license terms or not.  This type of use is clearly not contemplated on the face of the license agreements."  *Id.* ¶ 38.  On June 10, 2015, Terix stipulated to judgment against it for copyright infringement, fraud, and other violations, and agreed to pay Oracle $57.7 million—including for conduct related to certain of the joint HP-Terix customers at issue in this case.  *Id.* ¶ 40.[3]  To date, Terix has paid less than 1% of the stipulated judgment figure (*id.*), and recently informed Oracle and the Court that it had transferred all of its assets to another entity that its principals created.  *See Oracle Am., Inc. v. Terix Comput. Co., Inc.*, Case No. 13-cv-3385-JST (N.D. Cal.) (ECF No. 683).[4]  On April 20, 2016, Oracle filed suit against Terix and its principals (Bernd Appleby and James Olding) for copyright infringement, alter ego liability and fraudulent transfer.  *See Oracle Am., Inc. v. Appleby*, Case No. 16-cv-2090-JST (N.D. Cal.) (ECF No. 1).

### D.    HP's Participation In And Knowledge Of Terix's Scheme To Infringe Oracle's Copyrights And Interfere With Oracle Support Customers

HP was not an innocent bystander to Terix's unlawful conduct, as Oracle discovered during the *Terix* case.  Since at least 2007 or early 2008, HP worked hand-in-hand with Terix to jointly provide support to Oracle customers.  Complaint ¶ 29.  HP unquestionably knew that no customer was entitled to Solaris Updates without an Oracle support contract; indeed, numerous internal HP presentations summarized in the Complaint confirm that HP knew that a customer was required to have a support contract from Oracle to obtain Solaris Updates.

The HP documents make clear that Oracle (and Sun before it) required customers to purchase a support contract to access or use Solaris Updates, stating that a Sun "███████████

---

[3] Maintech also stipulated to judgment in favor of Oracle on Oracle's claims for copyright infringement.  *Oracle Am., Inc. v. Terix Comput. Co., Inc.*, Case No. 13-cv-3385-JST (N.D. Cal.) (ECF No. 614).

[4] Contrary to HP's suggestion that Oracle only brought suit because Terix has defaulted on its payment obligations (Mot. at 1), Oracle has pursued its claims against HP for over a year—as is evident from the face of the Complaint.  Complaint ¶ 55.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  ████████████████████████████████████;" "██████████████

2  ███████████████████████;" and a Sun "█████████████████████████

3  ██████████████████████████████." *Id.* ¶ 43.  Another internal HP

4  presentation acknowledges the "████████████," including that for "██████████████

5  ███████████████████," one "████████████████████████████████████." A

6  later HP presentation states that Oracle and most other server manufacturers (including █████

7  ██████████████) allow software updates only for customers that have an "████

8  ████████████████████████." *Id.*[5]  HP thus knew that Terix did not have the

9  lawful right to provide customers (or HP) with Solaris Updates.  Despite this knowledge, HP (1)

10  told customers that a joint HP-Terix solution could meet all of their needs, including the need for

11  Solaris Updates, (2) provided and installed Solaris Updates on customers' servers, and (3)

12  directed customers to Terix to obtain Solaris Updates.  *Id.* ¶¶ 41-51.

13       Oracle's allegations about two customers alone, ███████ and ███████, present far more

14  than is required.  In 2011, ███████ sought quotes for support services from a number of different

15  providers, including HP.  *Id.* ¶ 42.  ███████ specifically stated that it needed the ability to obtain

16  Solaris Updates for its Oracle/Sun servers to address issues that might arise—a typical

17  requirement of enterprise customers that want to ensure the viability of servers powering their

18  business operations.  *Id.*  HP worked with Terix to present a joint proposal and HP told ████████

19  that Solaris Updates would be provided if ████████ chose the joint HP-Terix solution.  *Id.*

20  ████████ employees were concerned about the HP-Terix proposed solution and whether it might

21  infringe Oracle's intellectual property rights; those concerns were elevated to, among others, an

22  HP vice president in its support organization.  *Id.*  To assuage these concerns and win the

23  ████████ business, HP and Terix falsely represented that they could lawfully provide Solaris

24  Updates.  ███████ ultimately cancelled its multi-million dollar annual Oracle support services

25  agreement, instead entering into a support relationship with HP.  *Id.*  And after ████████ moved to

26  

27  [5] HP's knowledge that Terix had no lawful right to provide Solaris Updates is also confirmed in multiple internal HP emails in which HP employees specifically point to Oracle's public software

28  support policies and the conflict with what Terix and HP were jointly offering customers.  *Id.* ¶ 44.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

1  HP, HP facilitated Terix's provision of Solaris Updates by working as an intermediary between

2  ███████ and Terix to ensure that Solaris Updates were provided when needed.  *Id.*

3       The allegations regarding ███████ demonstrate that HP engineers obtained Solaris

4  Updates from Terix and then installed that stolen intellectual property on ███████'s Oracle/Sun

5  servers.  *Id.* ¶ 51.  HP did so despite its knowledge that such conduct violated Oracle's copyrights

6  and support policies.  *Id.*  In fact, a former HP employee who worked directly on the ███████

7  account was deposed in the *Terix* litigation and testified that he raised concerns with HP

8  executives (that were escalated to HP's legal department) about whether Terix had the right to

9  provide Solaris Updates and whether HP could lawfully install them.  *Id.*  Despite knowing that

10  only servers covered by a support contract with Oracle could benefit from Solaris Updates, HP

11  ignored his concerns and continued installing Solaris Updates supplied by Terix on ███████'s

12  servers.  *Id.*

13       Finally, HP knew that its conduct was wrong and violated Oracle's intellectual property

14  rights because it implements and enforces the exact same approach for its own software.  Just like

15  Oracle, HP sells support for its proprietary operating system through subscription contracts, and

16  access to patches and updates requires a valid services contract with HP.  *Id.* ¶ 45.  HP has

17  prosecuted violations of these policies by suing third party support providers that provide such

18  patches without the necessary support contract.  *See Hewlett-Packard Co. v. Infostaf Consulting,*

19  *Inc.*, No. 12-cv-01806 (N.D. Cal.) (ECF No. 8 at 2).

20  **III.    LEGAL STANDARD**

21       On a motion to dismiss, the Court takes all allegations of material fact in the complaint as

22  true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

23  544, 555–56 (2007)).  All reasonable inferences from the facts alleged are drawn in the

24  nonmoving party's favor.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)

25  ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice"); *Barker v.*

26  *Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (same).  So long as the

27  complaint states "enough facts to state a claim to relief that is plausible on its face," the Court

28  should deny a motion to dismiss.  *Twombly*, 550 U.S. at 570.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

## IV.    ARGUMENT

Oracle has been down this road before.  It has been forced to sue several competitors—large and small—for infringing its intellectual property rights.  Oracle has filed complaints against SAP, Terix, Rimini Street, SMS, Maintech and others for misappropriating its copyrighted software.  *See Oracle Am., Inc. v. SMS Sys. Maint. Servs., Inc.*, 15-cv-05264 (N.D. Cal.); *Oracle Am., Inc. v. Terix Comp. Co., Inc.*, 13-cv-03385 (N.D. Ca.); *Oracle Corp. v. SAP AG*, 12-cv-16944 (N.D. Cal.) (resulting in $356 million judgment) *Oracle USA Inc. v. Rimini St., Inc.*, 10-cv-00106 (D. Nev.) ($50 million jury verdict; judgment pending).  Each of these cases resulted in verdicts or judgments in favor of Oracle for the defendant's intentional misuse of Oracle's intellectual property.

Oracle is also not starting from scratch in its case against HP.  Oracle already sued Terix (HP's longtime business partner) and Maintech, a company that (just like HP) often used Terix as a subcontractor to provide system support to Oracle's hardware customers.  Maintech also tried to claim that it did not know the inner workings of Terix's business.  Discovery showed otherwise, and established that Maintech (like HP) knew that Terix's provision of Solaris Updates violated Oracle's support policies.[6]  Nonetheless, just like HP, Maintech worked with Terix so that it could win support business from customers who would have otherwise remained with Oracle.  After discovery, Maintech stipulated to a $14 million judgment in Oracle's favor prior to Terix doing the same soon thereafter for $57.7 million.

Over the course of the earlier litigation, Oracle discovered information about how HP's relationship with Terix operated and how HP contributed to Terix's unlawful (and now admitted) scheme to divert Oracle's customers.  Notwithstanding HP's barrage of hyperbolic proclamations to the contrary, Oracle's Complaint contains detailed facts about HP's misconduct, which are more than sufficient to meet the pleading threshold regarding HP's knowledge and participation in

---

[6] Maintech moved to dismiss Oracle's complaint and made similar arguments to HP's with respect to Oracle's copyright infringement and tortious interference claims. Judge Grewal properly rejected the motion to dismiss those claims. *Oracle Am., Inc. v. Terix Comput. Co., Inc.*, 13-cv-03385 (N.D. Cal. Jan. 3, 2014) (ECF No. 61).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

1  Terix's unlawful conduct, infringement of Oracle's copyrights, and intentional disruption of

2  Oracle's customer relationships.  HP's motion should be denied.

3  **A.     Oracle's Complaint States A Claim For Copyright Infringement**

4  A copyright owner holds the exclusive right both "to do and to authorize" each right

5  enumerated in the Copyright Act, including the reproduction and distribution of the copyrighted

6  work.  17 U.S.C. § 106.  A plaintiff who claims copyright infringement must show (1) ownership

7  of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights

8  under the Copyright Act.  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  Copyright

9  infringement may be either direct (if the defendant violated one or more of the plaintiff's exclusive

10  rights) or indirect (if the defendant knowingly contributed to the infringement of another, or

11  benefited from the infringing conduct and failed to exercise a right to stop it).  *Id.*; *A&M Records,*

12  *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013, 1019, 1022 (9th Cir. 2001).

13  1.     Oracle's Complaint Adequately Identifies The Infringed Works

14  HP's lead argument is that Oracle "has not alleged *what copyrighted works* were

15  infringed" because "Oracle holds copyrights only in the underlying software, not the support for

16  that software."  Mot. at 6.  Presumably, HP is suggesting that Oracle has not adequately alleged

17  that its copyrights in Solaris (the base operating system program) cover updates to Solaris.  This

18  ignores Oracle's Complaint, which clearly alleges that Oracle's copyrights cover Solaris Updates

19  as well as the "underlying software," and controlling Ninth Circuit law.

20  Oracle's Complaint lists fourteen specific copyright registrations that are owned by Oracle

21  and that HP infringed, including copyrights for Solaris 8, Solaris 9, Solaris 10, Solaris 11, and

22  various versions of Oracle's system firmware.  Complaint ¶¶ 60, 61.  Oracle further alleges that

23  these registrations "cover versions of Oracle's Solaris operating system and other software,

24  *including the Solaris Updates thereto*, as well as versions of Oracle System Firmware, *including*

25  *firmware updates*."  *Id.* ¶ 61 (emphasis added).  That is because Solaris Updates are not created

26  from scratch; most of the code in each update comes from the current version of the underlying

27  operating system software, with whatever modifications are necessary to implement the update or

28  fix.  These updates are derivative of the underlying work (Solaris or system firmware) and,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

1   accordingly, Oracle alleged that the copyright registrations for Solaris and system firmware "cover

2   . . . Solaris Updates" and "firmware updates." *Id.*

3         Ninth Circuit law holds that derivative works (Solaris Updates) are protected by copyright

4   registrations covering the underlying work (Solaris).  "[E]stablished doctrine prevents

5   unauthorized copying or other infringing use of the underlying work *or any part of that work*

6   *contained in the derivative product* so long as the underlying work itself remains copyrighted."

7   *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979) (emphasis added).  In *Russell*, the court

8   affirmed judgment for the plaintiff where the defendant distributed an unregistered film version of

9   the copyright registered George Bernard Shaw play "Pygmalion."  *Id.* at 1124.  The court ruled

10   that "since exhibition of the film 'Pygmalion' necessarily involves exhibition of parts of Shaw's

11   play," the defendants infringed the underlying work.  *Id.* at 1128; *see also Batjac Prods., Inc. v.*

12   *Goodtimes Home Video Corp.*, 160 F.3d 1223, 1232-33 (9th Cir. 1998) (noting the continued

13   validity of *Russell*'s holding); *Apple Comput., Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1447-48 (9th

14   Cir. 1994) (holding that Apple could bring a copyright infringement suit for the alleged copying of

15   both the Lisa Desktop Graphic User Interface and its *derivative* Finder Desktop, because the owner

16   of exclusive right in an underlying work could "base [an] infringement suit on derivative works").

17   HP concedes that this is the applicable standard (Mot. at 6) (noting that Oracle can recover "to the

18   extent HPE improperly copied material in the derivative work that was also included as part of the

19   original registration of the underlying work"), and courts around the country agree.  *See, e.g.*,

20   *United States v. Wash. Mint, LLC*, 115 F. Supp. 2d 1089, 1099 (D. Minn. 2000) ("[C]ourts in other

21   jurisdictions uniformly appear to agree that copying a derivative work may give rise to liability

22   based upon copyright ownership in the original work from which it is derived.") (collecting cases);

23   *see also* 2 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT, § 7.16[B][5][b] (2015)

24   ("Given that a derivative work by definition consists of matter that would be infringing if it had

25   been derived from the pre-existing work without the copyright proprietor's consent, it follows

26   analytically that the owner of a registered underlying work, in that capacity alone, should be able

27

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

to maintain such a suit.").[7]  The analysis is the same in cases involving derivative software code; infringement may be pursued where the infringed derivative work incorporates elements of the registered underlying work.  *See Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999) (affirming judgment for copyright infringement based on distribution of a later version of the copyrighted software because the later version "incorporated over seventy percent of the original source code from the registered work"); *see also Merchant Transaction Sys., Inc. v. Nelcela, Inc.*, 2009 WL 2355807, *3 (D. Ariz. July 28, 2009) (discussing computer software code, "it appears undisputed that a plaintiff may bring a suit for unauthorized distribution of an unregistered derivative work as long as the suit is based on elements 'borrowed' from a registered underlying work").  In short, Oracle need only allege that the derivative works (the Solaris Updates) are covered by its copyrights and that HP infringed them; Oracle has plainly done so.

HP's argument that Oracle must, at the pleading stage, specifically tie every act of infringement by HP to a particular protectable element of the infringed derivative work is baseless. Mot. at 7.  Oracle alleges that HP provided, and worked with Terix to provide, Solaris Updates to customers that were covered by one or more of the fourteen specified copyrights.  Complaint ¶¶ 60-62.  Oracle is not required to plead forensic-level proof about precisely which update or patch was provided to which customer—and HP's own copyright complaint confirms that HP knows this to be the law.  That is what discovery is for; indeed, HP knows far better than Oracle which software was stolen and then provided to HP-Terix customers, not to mention to other customers that HP may have serviced on its own or with other partners.  At this point, Oracle's well-pleaded allegation that HP provided protected Solaris Updates in violation of Oracle's copyrights is more than sufficient.

---

[7] HP's cases also confirm this standard.  *Johnson*, a summary judgment case, affirmed that "a valid, enforceable copyright on an underlying work extends to protect those elements of a new work that are derived directly from the underlying work."  *Johnson v. Gordon*, 409 F.3d 12, 20 (1st Cir. 2005) (citing *G. Ricordi & Co. v. Paramount Pictures*, 189 F.2d 469, 472 (2d Cir. 1951)).  *Carmichael Lodge*, also a summary judgment case, similarly affirmed that an infringement action will succeed if a plaintiff copies elements in the unregistered derivative work "that were also present in the registered original".  *Carmichael Lodge No. 2103 v. Leonard*, 2009 WL 2985476, *6 (E.D. Cal. Sept. 15, 2009).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

HP's cases do not remotely support the standard it urges this Court to adopt. *MiTek Holdings, Inc. v. Arce Engineering Company* does not address the burden for pleading copyright infringement, nor does it mention derivative works. 89 F.3d 1548 (11th Cir. 1996). Reviewing judgment after a full bench trial, the question was "whether the defendant, as a factual matter, copied portions of the plaintiff's program," which required comparing the protected elements of the plaintiff's program against the defendant's program. *Id.* at 1554. The district court relied on the plaintiff's list of protectable elements in conducting its comparison, and the Eleventh Circuit affirmed. *Id.* at 1555. That says nothing whatsoever about derivative works, their enforceability, or the pleading standards that may apply to them. And the issue in *MiTek* (whether the defendant's computer program was "substantially similar" to the plaintiff's program) is not even relevant here. Oracle does not allege that HP created software that was substantially similar to Oracle's; it alleges that HP unlawfully installed and infringed Oracle's *actual software*. HP also cites *Aqua Creations v. Hilton Hotels Corporation*, which has nothing to do with derivative works. 2011 WL 1239793 (S.D.N.Y. Mar. 28, 2011). There, the court analyzed whether the plaintiff's light fixtures were copyrightable *at all* after the Copyright Office rejected the plaintiff's registration (the court ruled they were not). *Id.* at *5-7. Here, Oracle has obtained and pleaded that it has valid and enforceable copyright registrations for the underlying software, and that the derivative updates to that software are covered by its registrations.

Finally, HP's assertion that Oracle has "a standing deficiency" because Oracle does not allege "which copyrights were infringed" is meritless. Mot. at 7. Oracle's complaint identifies fourteen specific copyrights owned by either Oracle America or Oracle International Corporation and alleges that HP infringed *each of them*. Complaint ¶¶ 57-60. Nothing more is needed to establish "standing" under the Copyright Act. 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it.").[8]

---

[8] HP's cases again confirm the standard. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (noting that "copyright owners and exclusive licensees of copyright may enforce a copyright or a license"); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. Cal. 2005) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

2.      Oracle Pleads Direct Copyright Infringement By HP

HP next argues that Oracle has not pleaded any infringing acts, arguing that "[s]imply identifying a copyright and saying that it was infringed is insufficient to state a valid claim for relief." Mot. at 8. To make this argument, HP isolates two sentences from the end of Oracle's Complaint—which allege that HP "copied and distributed" Oracle software and violated Oracle's copyrights by "downloading, copying, and distributing Oracle's copyrighted software"—and claims that they "provide no notice of the specific facts that 'explain *how* [HPE] copied, displayed or distributed infringing copies." Mot. at 9.

If that were all Oracle alleged, HP might have a point. Of course, HP ignores the twenty-one pages of detailed factual allegations that precede those sentences, which are incorporated into Oracle's copyright infringement cause of action. Among those allegations are the following:

- "HP . . . directly installed Solaris Updates obtained from Terix on its customers' servers" (Complaint ¶ 1);

- "HP . . . directly or indirectly, provided its end customers—including but not limited to ██████████████████████████████████████—with Oracle's copyrighted, proprietary Solaris Updates (*id.* ¶ 7);

- "HP facilitated Terix's provision of Solaris Updates by fielding requests from ██████ and directing ██████ to Terix to obtain numerous Solaris patches" (*id.* ¶ 42);

- "HP informed ██████ that software support for ██████'s Sun servers was available under its contract with HP and could be provided by Terix" and "HP intended that Terix would, and Oracle knows that Terix did, use this process to gain access to and copy Oracle's protected software" (*id.* ¶ 47);

- "██████, an HP Account Delivery Manager, directed customer ██████ to Terix in order to download a Solaris patch via an FTP site" and later stated, "██████████████████████████████████████████████████████████████████" (*id.* ¶ 50); and

- "HP engineers obtained Solaris Updates from Terix and then installed those updates on ██████'s Oracle/Sun servers" (*id.* ¶ 51).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

These allegations are more than sufficient to plead direct infringement, which merely requires that the infringer violated one of the exclusive rights in Section 106, including "reproduc[ing] the copyrighted work" and "distribut[ing] copies . . . of the copyrighted work".  17 U.S.C. § 106. Oracle's allegations clearly meet and exceed this standard by presenting specific facts, incidents and customers that were the target of HP's conduct.  Indeed, Oracle's Complaint alleges HP's course of conduct with regard to one customer (████) that involved the serial distribution and installation of Solaris Updates on the customer's Oracle/Sun servers *after* HP had already determined that the customer did not have the right to such software and *after* the issue had been raised to (and apparently disregarded by) HP executives and legal personnel.  Complaint ¶ 51.

HP tries to dismiss these allegations as "a legal conclusion disguised as a factual allegation" and claims that Oracle fails to "provide[] any supporting facts as to how HPE purportedly violated" Oracle's copyrights.  Mot. at 9.  It is hard to see how HP can make this argument in good faith since Oracle's Complaint references the sworn testimony of the former HP employee that carried out the ████ infringement at the direction of HP executives.  Complaint ¶ 51.  HP also argues that Oracle does not identify "how or from whom HPE 'obtained' these 'updates'" (Mot. at 10), but that ignores Oracle's express allegation that "HP engineers *obtained Solaris Updates from Terix* and then installed those updates on ████'s Oracle/Sun servers." Complaint ¶ 51.  These are not "legal conclusions"—these are allegations of specific acts by actual HP employees installing Oracle's copyrighted material, without license, on an HP customer's server.

HP's claim that "[p]roviding infringing copies . . . is not infringement" blatantly misstates the law.  Mot. at 9.  Section 106 sets forth the exclusive rights of a copyright holder, which include the right "to reproduce the copyrighted work" and "to distribute copies . . . of the copyrighted work." 17 U.S.C. § 106.  The language could not be any more clear, and Oracle's allegations that HP provided protected Solaris Updates directly to customers without authorization by Oracle is a classic form of direct infringement.  *Miller v. Facebook, Inc.*, 2010 WL 1292708, *3 (N.D. Cal. Mar. 31, 2010), the lone case cited by HP, provides absolutely no support.  Indeed, Judge Alsup *confirmed* that reproduction and distribution of the protected work are exclusive rights under

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

Section 106.  *Id.*  He granted a motion to dismiss not because "'providing' infringing copies . . . is not infringement" (Mot. at 9), but because the plaintiff did not allege anything *at all* about how the Defendant even published the protected work.  *Miller v. Facebook, Inc.*, 2010 WL 1292708, at *3.

The other cases HP cites are similarly unavailing.  In *Cutler v. Enzymes, Inc.*, the court granted a motion to dismiss where the plaintiff alleged only that the defendants "increased their use of . . . the Published Works" and from that sought to infer the very different proposition that the defendant "posted her copyright material on its website."  2009 WL 482291, *3 (N.D. Cal. Feb. 25, 2009).  The court not surprisingly ruled that these allegations were insufficient because "[a]side from claims of ownership, the complaint is devoid of any other specific facts . . . ."  *Id.*  HP's other cases are similar examples of courts dismissing complaints that alleged essentially no facts whatsoever.  *See Nat'l Bus. Dev. Servs. v. Am. Credit Educ. & Consulting, Inc.*, 299 Fed. Appx. 509, 511 (6th Cir. 2008) (affirming dismissal where the complaint "[a]t no point . . . identif[ies] any specific works by defendants that infringe on plaintiff's copyright"); *Ledesma v. Corral*, 2016 WL 827743, *3 (C.D. Cal. Mar. 2, 2016) (dismissing claim where plaintiff alleged nothing more than the existence of a copyright and that the defendant "performe[d] sound recordings embodying the Composition"); *Reid v. Am. Soc'y of Composers, Authors & Publishers*, 1994 WL 3409, *1-2 (S.D.N.Y. Jan. 5, 1994) (dismissing complaint that did not set forth the original works, whether the plaintiff owned a copyright in those works, whether the copyrights were registered, or by what acts the defendant infringed).

Here, Oracle has provided pages of detailed allegations about how the HP-Terix business model worked; how HP and Terix jointly pursued Oracle customers and falsely represented that they could provide protected Solaris Updates; how HP and Terix then followed through on that promise by improperly obtaining and distributing Solaris Updates to customers, including ██████████████████████████████; and the specific copyrights that HP and Terix infringed.  That is more than sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Indeed, it bears repeating that Terix and Maintech have already stipulated to judgment in Oracle's favor for precisely this sort of conduct.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

### 3.   Oracle Pleads Contributory Copyright Infringement By HP

Oracle's allegations are also sufficient to plead contributory infringement. "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *A&M Records*, 239 F.3d at 1019. "Actual knowledge is not required; a defendant may possess constructive knowledge if he has reason to know of a third party's direct infringement." *Fonovisa, Inc. v. Napster, Inc.*, 2002 WL 398676, *5 (N.D. Cal. Jan. 28, 2002) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 846 (11th Cir. 1990)). Courts have interpreted "knowledge" in this context to include actual knowledge as well as willful blindness to the infringing activity. *See A&M Records*, 239 F.3d at 1020; *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 2015 U.S. Dist. LEXIS 161091, *91 (E.D. Va. Dec. 1, 2015) ("[t]he knowledge requirement is met by a showing of actual or constructive knowledge or by evidence that a defendant took deliberate actions to willfully blind itself to specific infringing activity."); *see also Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) (for DMCA safe harbor from infringement, "[a] person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person 'was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'").

HP's primary argument is that Oracle does not "adequately allege that HPE knew (or even should have known) that [the installation of Solaris Updates by Terix] was infringing or otherwise unlawful." Mot. at 11. Accepting this argument would require the Court to ignore the majority of Oracle's Complaint, which recites in detail facts showing that HP knew that Terix's conduct infringed Oracle's intellectual property or, at the very least, that HP "was aware of a high probability" of the infringement. *See Viacom, Int'l*, 676 F.3d at 35 (internal quotation marks omitted). Oracle's Complaint quotes from internal HP documents produced in the *Terix* litigation that state expressly that Oracle did not allow customers to use or install Solaris Updates unless they purchased an annual support contract for each server to which the updates were applied. Complaint ¶ 43. Yet HP partnered with Terix and was actively involved in providing those very Solaris Updates to customers that HP knew did not have an annual support contract. *Id.* ¶¶ 44, 46-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

1    48, 50, 51.  HP employees also knew from Oracle's website that an annual support contract was

2    required for Solaris Updates, and raised concerns about whether Terix's provision of Solaris

3    Updates was lawful.  HP customers (including ███████) also asked HP how Terix could provide

4    Solaris Updates without an Oracle support contract since that is precisely what Oracle's policies

5    forbade.  *Id.* ¶¶ 42, 44.  These allegations show HP's knowledge that its conduct (with Terix) was

6    forbidden by Oracle, the rights holder.  Finally, HP is not a newcomer to this industry, and knows

7    exactly how copyright and intellectual property rules apply to enterprise software and software

8    updates.  HP itself sues third party support providers that provide HP's proprietary software

9    updates to customers without purchasing the required annual support contract from HP.  *Id.* ¶ 45.

10   There is no doubt that the Complaint adequately alleges that HP knew that Terix's conduct was

11   infringing.

12           HP's argument that it was duped by Terix because "Terix represented to HPE that it had

13   permission to make copies of Oracle software under Oracle's licenses" and that Terix did not tell

14   HP that "Terix's process for obtaining Solaris Updates infringed Oracle's copyrights" is laughable.

15   Mot. at 11-12.  The gist of this argument is that HP was entitled to believe whatever Terix said—

16   even if it was flatly contrary to what HP already knew *from Oracle itself* about Oracle's Solaris

17   support policies, and contrary to what HP's own internal documents (alleged in the Complaint)

18   confirmed.  HP is free to try that argument at summary judgment and/or at trial, but Oracle's

19   allegations for the purposes of this motion must be taken as true.  Those allegations are that "HP

20   knew that customers were required to have a technical support agreement with Oracle in order to

21   access and apply Solaris Updates to their servers" (Complaint ¶ 43) and that HP knew "that Terix's

22   provision of Solaris Updates was unlawful" (*id.* ¶ 49)  But rather than sever its ties with Terix, or

23   at least contact Oracle to determine if Terix had some special right to distribute Solaris Updates to

24   allay its concerns, HP buried its head so that it could continue the Terix relationship in order to win

25   support business away from Oracle and generate support revenues.  Those allegations are more

26   than sufficient.  *See A&M Records*, 239 F.3d at 1023 ("Turning a blind eye to detectable acts of

27   infringement for the sake of profit gives rise to liability.")

28           HP's final argument is that Oracle does not allege any affirmative acts by HP because the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

allegations that HP "facilitat[ed] the provision of Solaris Updates to its customers," "address[ed] customer concerns about the impropriety of Terix's conduct," "field[ed] customer requests," and "direct[ed] customer" requests to Terix show only that HP "was engaged in business with Terix." Mot. at 13.  These allegations certainly show that HP was engaged in business with Terix.  But as the rest of Oracle's Complaint alleges, Terix was in the business of stealing Oracle's intellectual property and providing it to customers at cut-rate prices.  HP knew it and went along with Terix anyway so that it could take business away from Oracle.[9]

### 4.    Oracle Pleads Vicarious Copyright Infringement By HP

Vicarious copyright infringement is established where a defendant draws a "direct financial benefit from another's infringing activity and 'has the right and ability to supervise' the infringing activity."  *A&M Records*, 239 F.3d at 1022.  HP does not dispute Oracle's allegation that HP drew a direct financial benefit from Terix's conduct; HP's sole argument is that Oracle has not pleaded facts to show that HP had the right to stop Terix's conduct.  Mot. at 14-15.

Again, HP ignores Oracle's allegations—specifically, that HP operated as the primary support provider for the joint HP-Terix customers and subcontracted certain support services to Terix, including the provision of Solaris Updates.  Complaint ¶¶ 4, 29, 41-42, 64.  Oracle further alleges that "[w]hen HP employs a subcontractor like Terix to provide support services for a customer's Oracle servers, HP typically remains the customer's primary contact for support needs and is involved in facilitating the provision of support to the customer."  *Id.* ¶ 4.  HP was therefore the primary point of contact for the customer, with the ability to direct the provision of support and control what support materials the customer received.  As Oracle alleges, HP exercised that control whenever customers requested Solaris Updates from HP—not by preventing Terix from unlawfully providing the updates to customers, but instead by either providing the updates itself or

---

[9] Oracle's detailed allegations go far beyond the bare-bone allegations in the cases relied on by HP.  *See, e.g., Med-Systems, Inc. v. Masterson Mktg Inc.*, 2011 WL 5873399, *7 (S.D. Cal. Nov. 23, 2011) (the plaintiff failed to allege that the CEO of the defendant had any direct connection to the infringement beyond his title); *Lucky Break Wishbone Corp. v. Sears, Roebuck and Co.*, 528 F. Supp. 2d 1106, 1116−17 (W.D. Wash. 2007) (the defendant provided plaintiff's product to a client for promotional use, but had no idea that its client then purchased infringing products).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

1   directing Terix to do so.  *Id.* ¶¶ 47, 50, 51.  That is more than enough to plausibly allege that HP

2   had the right to supervise Terix's conduct.

3        *Fonovisa, Inc. v. Cherry Auction, Inc.* is instructive on this point.  There, the defendant

4   operated a swap meet at which third party vendors sold counterfeit recordings that the plaintiff

5   alleged violated its copyrights.  76 F.3d 259, 260 (9th Cir. 1996).  The plaintiff asserted vicarious

6   copyright infringement against the defendant and the district court dismissed the complaint.  The

7   Ninth Circuit reversed, holding that vicarious liability requires only allegations that the defendant

8   has the "right and ability to supervise the infringing activity and also has a direct financial interest

9   in such activities."  *Id.* at 262 (quotation omitted).  The court held that the allegations were

10  sufficient even though the defendant did not have formal, contractual control over the infringers

11  because the defendant controlled the premises where the infringing activity occurred, had the right

12  to terminate vendors, and promoted the swap meet to "reap substantial financial benefits."  *Id.* at

13  262-63.  This case is even stronger than *Fonovisa*, given Oracle's allegation that HP facilitated the

14  infringement and directed customers to Terix to obtain the infringing software.  Indeed, for

15  ███████, HP went so far as to obtain Solaris Updates from *Terix*, which HP engineers then

16  installed over a period of months.  *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d at 263; *see*

17  *also Live Face on Web, LLC v. Emerson Cleaners, Inc.*, 66 F. Supp. 3d 551, 557 (D.N.J. 2014)

18  (denying motion to dismiss vicarious infringement claim where the defendant simply hosted third

19  party's infringing software on its website); 3 NIMMER ON COPYRIGHT § 12.04 ("vicarious liability

20  exceeds the traditional scope of the master-servant theory—the proprietor of a dance hall is liable

21  for infringing performances of the orchestra, even if the orchestra is hired as an independent

22  contractor and exclusively determines the music to be played.").  Oracle's vicarious infringement

23  allegations are sufficient.

24       **B.    Oracle's Complaint States A Claim For Tortious Interference With Contract
              And Prospective Economic Relations**
25

26       HP's argument regarding Oracle's interference claims boils down to the following alleged

27  deficiency:  "there are no allegations that HPE ever saw the terms of the support contracts between

28  Oracle and its customers."  Mot. at 16.  That is so far from the standard that it is both remarkable

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

and telling that a sophisticated litigant represented by able counsel would make it.  A plaintiff must plead the defendant's knowledge of the contract between the plaintiff and a third party (*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 C.3d 1118, 1126 (1990)), but "need not establish that the defendant had full knowledge of the contract's terms."  *Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 301 (Ct. App. 2011), *as modified* (2012).  *See also Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1221-22 (N.D. Cal. 2012) ("[the plaintiff] need[s] only show that Defendants had 'knowledge of the contract,' not that they knew the precise terms of the contract"); *Flatworld Interactives LLC v. Apple Inc.*, 2013 WL 6406437, *8 (N.D. Cal. Dec. 6, 2013) (holding same); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1129, 1132 (1986), *as modified* (1986) (defendant's knowledge only of the existence of plaintiff's contractual relationship with *someone*, but not its name or identity, sufficient to support liability); 3 Levy, Golden, Sacks, CALIFORNIA TORTS § 40.112 (2016) ("[if] the defendant has knowledge of the contract and the fact that [it] is inducing a breach of that contract, the plaintiff need not establish that the defendant had full knowledge of all of the contract's terms").

HP's cases do not establish that knowledge of the specific terms of each customer's support contract is required.  *Atlas Equipment* was a summary judgment case decided under Washington state law and (unlike this case) turned on whether the counter-defendant knew about a specific license agreement and termination agreement *at all*.  *Atlas Equip. Co. v. Weir Supply Grp.*, 2009 WL 4670154, *14 (W.D. Wash. Sept. 15, 2009).  Here, Oracle's allegations establish that HP knew that the customers it pursued had contractual support relationships with Oracle, and indeed HP's internal documents state that an Oracle support contract is *required* to "access, download and install Solaris updates."  Complaint ¶¶ 16, 43, 70.  HP's other case, *Azpilcueta v. Nev. ex rel. Transportation Authority*, actually *denied* a motion to dismiss where the plaintiff (like Oracle) alleged that the defendant "threatened to make sure that [the third party] did not renew the contract with Plaintiff" which "suggests" that the defendant knew about the contract.  2010 WL 2681855, *8 (D. Nev. July 2, 2010).  Similarly, Oracle alleges both that HP knew about customers' support contracts with Oracle (Complaint ¶ 70), and that HP informed customers that they did not need such support contracts and should instead contract with HP (*id.* ¶¶ 42, 49).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

HP also argues that it could not have formed an "intent to disrupt" the contract "if HPE believed Terix's representation that customers had entitlements from Oracle to access Solaris Updates." Mot. at 17.  A claimed belief in Terix's misrepresentations may be an argument that HP elects to make at summary judgment or trial—but nothing in Oracle's Complaint suggests that HP believed (or could possibly have believed) anything Terix said about customers' entitlements.  To the contrary, the Complaint lays out in detail the fact that HP already knew—*from Oracle*—that customers had no such entitlements and that a support contract was required to access any Solaris updates.  Those allegations easily distinguish the cases HP cites regarding a party's right to rely on "factual representations from a person in a position to know those facts."  Mot. at 17.

HP's argument regarding Oracle's interference with prospective economic relations claim similarly lacks merit.  Oracle need only allege facts showing that there was "an economic relationship . . . with the probability of future economic benefit to the plaintiff," the defendant's knowledge of that relationship, and that the defendant engaged in some wrongful conduct that disrupted the relationship.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003).  HP contends that there are no allegations of wrongful conduct because its promise to customers that it would provide "software support" "could refer to legally providing recommendations" about patches.  Mot. at 18.  That is not what Oracle alleges.  Oracle alleges that HP and Terix falsely represented that they could lawfully provide Solaris Updates, and through those misrepresentations induced Oracle's customers to abandon working with Oracle to work with HP instead.  *Supra* at 4-5.  Those misrepresentations are independently wrongful—and thus support Oracle's interference with prospective economic relations claim.  *See Korea Supply Co.*, 29 Cal. 4th at  954; *see also Visto Corp. v. Sprogit Techs., Inc.*, 360 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005) (noting that false allegations of patent infringement would be sufficient to satisfy wrongful conduct element).  HP's argument that it might not have known that its representations to customers were false because it did not "know what [Oracle's software licenses] permitted" similarly fails.  Mot. at 19.  Oracle alleges that HP *knew* that Oracle licenses for the underlying Solaris product *did not* include Solaris Updates (Complaint ¶¶ 34, 49) and that an annual support contract with Oracle was required to get them (*id.* ¶¶ 35, 43).  HP's statements to customers that

they, in fact, did *not* need an Oracle support contract to obtain Solaris Updates were therefore false, and constitute wrongful conduct adequate to support the interference claim.

### C.    Oracle's Complaint States A Claim For Unfair Competition

HP contends that Oracle's claim under California Business and Professions Code § 17200 ("UCL") fails because it has not alleged that HP violated the antitrust laws or tied its theories of HP's misconduct to the policies underlying the antitrust laws.  Mot. at 19-20 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)).  Multiple courts have found that unfair competition claims were sufficiently pleaded in the absence of allegations concerning the specific elements of an antitrust claim.  *See, e.g., Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 WL 1455903, *3 (N.D. Cal. May 16, 2007); *In re Arcacia Media Techs. Corp.*, 2005 WL 1683660, *4 (N.D. Cal. July 19, 2005).  Even so, read fairly, Oracle's Complaint alleges conduct by HP that significantly threatens or harms competition; that is enough to support a UCL claim.  *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187; *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 850 (Ct. App. 2002).

Oracle alleges numerous unlawful acts that are sufficient to support a UCL claim, including copyright infringement and tortious interference.  *See Silicon Image, Inc.*, 2007 WL 1455903, *3 ("So long as the underlying claim for interference with contractual relations is adequately pleaded, so is the UCL Claim . . . .").  Oracle also satisfies the unfair and fraudulent prongs because it alleges that HP made intentional, false representations to customers regarding their ability to lawfully obtain Solaris Updates from HP/Terix without an Oracle support contract.  *Supra* at 4-5. Those allegations are sufficient.  *See Luxul Tech., Inc. v. Nectarlux*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) (denying a motion to dismiss where the defendant allegedly made unfair representations to third parties about "legal issues that do not exist").

### D.    Oracle's State Law Claims Are Not Preempted

HP's argument that Oracle's state law claims are preempted also fails.  HP's argument appears to be that claims for "civil conspiracy" are preempted by the Copyright Act.  Mot. at 21. Oracle does not assert a cause of action for civil conspiracy, so HP's argument is irrelevant.

To the extent HP is arguing that Oracle's tortious interference and unfair competition

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

claims are preempted, HP is again wrong on the law.  "The Copyright Act specifically preempts 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright.'"  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (quoting 17 U.S.C. § 301(a)).  Such exclusive rights are reproduction, distribution, public display, public performance, and creation of derivative works.  *Id.*; *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010).  The Ninth Circuit has found that tortious interference claims—which concern the enforcement of contractual rights outside the ambit of copyright law— involve an "extra element" making them qualitatively different from those protected by the Copyright Act, and therefore are not preempted.  *Altera Corp.*, 414 F.3d at 1089 (tortious interference claim not preempted); *MDY Indus., LLC*, 629 F.3d at 957 (same).  Moreover, a defendant's *misrepresentations* about its ability to copy or distribute protected works—separate and apart from actual infringement itself—are also outside the scope of the Copyright Act and are not preempted.  *Rubin v. Brooks/Cole Publ'g Co.*, 836 F. Supp. 909, 924 (D. Mass. 1993); *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 444 (S.D.N.Y. 2011).  Each of Oracle's state law claims relies on HP's misrepresentations to customers, and also involves additional elements beyond Oracle's copyright infringement claim.  Therefore, the state law claims are "qualitatively different" from Oracle's copyright claims and are not preempted.

**E.      The Court Should Deny HP's Request For A More Definite Statement**

Finally, HP's request for a more definite statement should also be denied.  Rule 12(e) motions are "disfavored and [are] proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted."  *Craigslist, Inc. v. Autoposterpro, Inc.*, 2009 WL 890896, *4 (N.D. Cal. Mar. 31, 2009).  Motions for a more definite statement are "ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail."  *Medrano v. Kern Cty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1013 (E.D. Cal. 2013) (internal quotations omitted).  "The inability to ascertain all of the facts from a complaint is not an adequate ground for a more definite statement, as these concerns can be addressed through discovery."  *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, 2005 WL 3095864, *1 (N.D. Cal. Nov. 14, 2005).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

Oracle's Complaint provides copious detail about the nature of the claims asserted against HP, including HP's relationship with Terix, HP's knowledge of Oracle's intellectual property rights, HP's misrepresentations to specific customers, HP's direct infringement of Oracle's copyrights, and HP's active facilitation of Terix's infringement. *Supra* at 3-8, 10, 13-20. These allegations are more than enough to allow HP to ascertain the nature of Oracle's claims, and discovery will reveal whatever additional detail HP contends it may need.

Oracle's fact-intensive, 29-page complaint is easily distinguishable from the cases HP cites. For example in *Tom Kelley Studios Inc. v. International Collectors Society Inc.*, the court granted a Rule 12(e) motion because there were "no allegations of specific *acts* of infringement with respect to *specific* copyrights owned by plaintiffs." 1997 WL 598461, *1 (S.D.N.Y. Sept. 25, 1997). By contrast, Oracle identifies the specific copyrights that it owns and alleges facts regarding particular customers and acts of direct and indirect infringement by HP. *Supra* at 10, 13-20. Similarly, in *Cascade Investments, Inc. v. Bank of America, N.A.*, a motion for more definite statement was granted for an interference claim where the plaintiff did not "identify the prospective contractual relations" or "how the defendant interfered." 2000 WL 1842945, *3 (D. Nev. Sept. 29, 2000). Here, Oracle has alleged both the prospective contractual relations (Oracle's support contracts for customers that required Solaris Updates) and how HP interfered (by falsely representing that an Oracle support contract was not required for Solaris Updates, and then unlawfully providing such updates). *Supra* at 20-22. HP has not shown that additional detail is required to respond to Oracle's claims, so the motion for a more definite statement should therefore be denied.

## V.   CONCLUSION

Oracle's Complaint includes a detailed description of HP's unlawful conduct, including the identification of specific customers involved in the conduct and particular episodes of infringement and interference by HP and its partner Terix. Indeed, Oracle's Complaint is far more detailed than complaints that HP has filed when seeking to assert its own intellectual property rights against third party support providers. Oracle's Complaint, which is based in part on a judgment Oracle obtained against HP's partner Terix, states a plausible claim for relief. HP's motion to dismiss should be denied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST

1   Dated:  May 24, 2016                    LATHAM & WATKINS LLP

2

3                                           By:   /s/ Christopher S. Yates
                                                  Christopher S. Yates

4                                                 Attorneys for Plaintiffs
                                                  Oracle America, Inc. and
5                                                 Oracle International Corporation

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

ORACLE'S OPPOSITION TO
HP'S MOTION TO DISMISS
16-cv-01393-JST