UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>　　　　Defendant. | Case No. 16-cv-01393-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 44 |

This is a copyright infringement action brought by Oracle America, Inc. ("Oracle") against Hewlett Packard Enterprise Company ("HP"). Before the Court is HP's Motion to Dismiss. ECF No. 44. The motion will be granted in part and denied in part.[1]

## I.  BACKGROUND

### A.  Factual Background[2]

Oracle is a supplier of enterprise hardware and software systems, as well as technical support and consulting services related to those systems, which include its line of Sun server systems. ECF No. 1 ¶¶ 2, 20. These servers generally run on Oracle's Solaris operating system. Id. ¶ 19. "[C]ustomers who own Oracle/Sun hardware may also purchase technical support services from Oracle which entitle those customers to Solaris Updates for their Oracle/Sun hardware, operating systems and firmware that run on that hardware." Id. ¶ 21. "Solaris Updates

---

[1] The Court has filed this order under seal because it contains certain material subject to a prior sealing order. Within seven days of the filing date of this order, the parties' shall provide the Court with a stipulated redacted version of this order, redacting only those portions of the order containing or referring to material for which the Court has previously granted a motion to seal and for which the parties' still request the material be sealed. The Court will then issue a redacted version of the order.

[2] For the purposes of this order, the Court accepts as true all of the well-pleaded factual allegations contained in Oracle's Complaint. ECF No. 1.

1   are available to customers with active support contracts with Oracle to download from Oracle's
2   password-protected, secure customer support website." Id.  Oracle owns copyrights covering the
3   software comprising its Solaris operating system, as well as the related system firmware. Id. ¶ 57,
4   60.
5        HP is also a supplier of enterprise hardware and software systems. Id. ¶ 25.  HP offers
6   support services related to Oracle's Sun-branded hardware systems, "often as part of a 'multi-
7   vendor' support solution that includes support for the customer's servers from other
8   manufacturers." Id. ¶ 4.  HP has subcontracted with other entities, including TERiX Computer
9   Company, Inc. ("Terix"), "to provide all or some of the support services for [its] customer's
10  Oracle servers." Id.
11       Oracle asserts that "[f]or years, HP distributed, and conspired with others to distribute,
12  copyrighted, proprietary Oracle software code without authorization and in knowing violation of
13  Oracle's intellectual property rights." Id. ¶ 1.  According to Oracle, HP partnered with Terix "to
14  sell hardware and software support services that included the provision of software patches,
15  updates, and bug fixes for Oracle's proprietary Solaris operating system and related system
16  firmware used on Oracle's Sun-branded computers (collectively, 'Solaris Updates')," despite the
17  fact that "HP knew that Oracle required customers who wanted to access and install Solaris
18  Updates to purchase a technical support agreement from Oracle that granted rights to [Oracle's]
19  intellectual property." Id.  Oracle further contends that "HP falsely represented to customers that
20  HP and Terix could lawfully provide Solaris Updates and other support services at a lower cost
21  than Oracle, and then worked with Terix to improperly access and provide Oracle's proprietary
22  Solaris Updates to customers." Id.  HP is also alleged to have "directly installed Solaris Updates
23  obtained from Terix on its customer's servers—even after HP employees raised concerns to HP
24  executives and its legal department that doing so violated Oracle's copyrights and technical
25  support policies." Id.
26       Oracle previously sued Terix for copyright infringement for the same underlying conduct,
27  resulting in Terix stipulating to judgment in favor of Oracle. Id.  Oracle claims that until mid-
28  2015 "Terix falsely told Oracle hardware customers that they did not need to purchase an annual

support agreement with Oracle to obtain Solaris Updates." Id. ¶ 31. Terix would put one of its customer's servers "on support with Oracle and then obtain access credentials that Terix then used to download Solaris Updates and firmware updates for Oracle's support website for *all of the customer's servers* on support with Terix" in violation of Oracle's technical support policies, which required a separate, active technical support agreement with Oracle for each server. Id. ¶ 32.

Terix created a presentation, known as "Clearvision," which it would give to customers, "stat[ing] incorrectly that customers were entitled to all Solaris Updates for free by virtue of the software license customers received when they first licensed Solaris." Id. ¶ 34. "HP knew about Clearvision and the purpose it served to secure support business from Oracle's customers [and] helped Terix set up Clearvision presentations with customers who questioned the legality of obtaining Solaris Updates from Terix/HP . . . ." Id.

During the Terix litigation, Oracle claims it learned that "[p]ursuant to [an] arrangement between HP and Terix, HP would provide customers with Sun server hardware support and directed the customer to Terix for Sun server software support, including the provision of Oracle's copyrighted Solaris Updates, which neither HP nor Terix had authorization to provide." Id. ¶ 41. For example, after receiving a request from a customer to provide support for its Sun/Oracle servers, HP "worked with Terix to pitch a joint HP-Terix solution and told [the customer] that HP (via Terix) could provide Solaris Updates." Id. ¶ 42. After the customer's employees "raised concerns with HP that the HP-Terix solution might infringe Oracle's intellectual property rights," HP represented to the customer that it "was entitled to Solaris Updates by virtue of its original purchase of Solaris." Id. After the customer "moved [its support contract] to HP and Terix [from Oracle], HP facilitated Terix's provision of Solaris Updates by fielding requests from [the customer] and directing [the customer] to Terix to obtain numerous Solaris patches that were applied to some or all of [the customer's] Solaris servers." Id.

Oracle also alleges that "HP itself provided unlawfully obtained Solaris Updates and firmware updates to its customers." Id. ¶ 51. For example, Oracle identifies a particular customer with which HP had a direct service relationship that covered its Oracle/Sun servers. Id. Oracle

3

asserts that "HP engineers obtained Solaris Updates from Terix and then installed those updates on [that customer's] Oracle/Sun servers," despite the fact that an HP employee "raised concerns with HP executives (that were escalated to the HP legal department) about whether Terix had the lawful right to provide [such] Solaris Updates." Id.

### B. Procedural Background

On March 22, 2016, Oracle filed its Complaint against HPE, asserting claims for (1) copyright infringement under 17 U.S.C. §§ 101 *et seq.*, (2) intentional interference with contractual relations, (3) intentional interference with prospective economic relations, and (4) unfair competition under California Business and Professions Code § 17200. ECF No. 1. On April 29, 2016, HPE filed a Motion to Dismiss the Complaint, ECF No. 34, which motion the Court now considers.

### C. Jurisdiction

This Court has jurisdiction over Oracle's copyright infringement claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Oracle's state law claims under 28 U.S.C. § 1367.

## II. LEGAL STANDARD

On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 687. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." Id.  In the Ninth Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." Starr, 652 F.3d at 1216 (emphasis in original).

## III.   ANALYSIS

### A.   Copyright Infringement

Oracle's first claim alleges that HP directly and indirectly infringed various copyrights covering Oracle's software.  In its motion to dismiss, HP argues that Oracle has failed to state a claim for either direct or indirect copyright infringement.

#### 1.   Direct Copyright Infringement

To state a claim for direct copyright infringement, a plaintiff must plead "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  HP contends that Oracle has not sufficiently pleaded either of these elements.

First, HP argues that Oracle's direct copyright infringement claim fails because "Oracle has not alleged *what copyrighted works* were infringed." ECF No. 44 at 13.  HP notes that the Complaint lists fourteen copyright registrations, "but includes no allegations specifying which patches are covered, by which copyrights the patches are covered, or whether the Solaris updates and patches it alleges HPE copied were covered by any of the copyrights asserted." Id.

Oracle responds that the fourteen copyrighted works identified in its Complaint include "versions of Oracle's Solaris operating system and other software, including Solaris Updates thereto." ECF No. 46 at 16.  These updates, according to Oracle, "are derivative of the underlying work (Solaris or system firmware)" and therefore are "protected by copyright registrations covering the underlying work (Solaris)." Id. at 16–17 (citing Russell v. Price, 612 F.2d 1123, 1128 (9th Cir. 1979) ("The established doctrine prevents unauthorized copying or other infringing use of the underlying work or any part of that work contained in the derivative product so long as

5

1    the underlying work itself remains copyrighted.")).  Oracle goes on to argue that it is not required
2    at the pleading stage to "tie every act of infringement by HP to a particular protectable element of
3    the infringed derivative work," i.e., by pleading "forensic-level proof about precisely which update
4    or patch was provided to which customer . . . ."  Id. at 18.

5         The Court agrees with Oracle.  HP does not contest that the Solaris Updates are protected
6    as derivative works of the fourteen copyrights identified in the Complaint.  ECF No. 48 at 10.
7    Rather, HP simply takes issue with the fact that Oracle's Complaint does not specifically identify
8    which of the 14 copyrights at issue HP is alleged to have infringed directly.  Id.  However, HP
9    does not cite any authority for the proposition that Oracle must tie specific acts of infringement to
10   individual copyright registrations.

11        The authority cited by HP is not helpful.  Universal Surface Tech., Inc. v. SAE Trading
12   Am. Corp., for example, is inapposite because the complaint in that case "allege[d] no facts
13   indicating what acts constitute the alleged infringement, and which copyrights have allegedly been
14   infringed."  No. 10-cv-6972, 2011 WL 281020 (C.D. Cal. Jan. 26, 2011).  By contrast, here, the
15   Complaint alleges that "HP engineers obtained Solaris Updates from Terix and then installed those
16   update on [HP's customer's] Oracle/Sun Servers."  ECF No. 1 ¶ 51.  The Complaint specifically
17   identifies that customer by name.  Id.  The Complaint goes on to allege that a specific former HP
18   employee who supported that customer's account "testified in the Terix litigation that he raised
19   concerns with HP executives (that were escalated to the HP legal department) about whether Terix
20   had the lawful right to provide Solaris Updates."  Id.  Nonetheless, "HP continued to install Solaris
21   Updates on [the customer's] servers."  Id.  While the Complaint does not state which of the 14
22   copyrights HP is alleged to have infringed in this manner, such specificity is not required at this
23   stage of the litigation, especially since HP is in a far better position to know which versions of the
24   Solaris Updates it may have installed on the specifically-identified customer's servers.

25        Second, HP argues that Oracle's direct copyright infringement claim fails because it does
26   not allege sufficient facts regarding *how* HP is alleged to have infringed Oracle's copyrights.  ECF
27   No. 44 at 15–17.  Oracle's response principally relies on Paragraph 51 in the Complaint, which
28   identifies a particular customer for which HP engineers are alleged to have installed Solaris

1  Updates.  In reply, HP contends that the allegations in Paragraph 51 of the Complaint are
2  insufficient because "Oracle has not alleged that [the customer] was not entitled to Solaris Updates
3  on its servers, that [the customer] did not have a support contract for the servers on which [HP]
4  allegedly installed updates, or that [HP] knew that [the customer] was not entitled to Solaris
5  Updates for the servers on which [HP] installed updates."  ECF No. 48 at 8.

6        Once again, the Court finds HP's arguments unconvincing.  Paragraph 51 of the Complaint
7  alleges that "HP engineers obtained Solaris Updates from Terix and then installed those update on
8  [HP's customer's] Oracle/Sun Servers."  ECF No. 1 ¶ 51.  Paragraph 51 also specifically identifies
9  that customer by name.  Id.  By contrast, in the Miller v. Facebook, Inc. case cited by HP, the
10  district court found direct infringement had not been sufficiently pleaded because it was unclear
11  from the complaint "whether defendant Facebook published a copy of the [copyrighted video]
12  game on its application directory, published a link to the game, included a place for Facebook
13  users to blog about the game, or published a combination of these and/or other things."  No. 10-
14  cv-002640-WHA, 2010 WL 1292708, at *3 (N.D. Cal. Mar. 31, 2010).  Here, no such confusion
15  exists.[3]

16        Moreover, the Court rejects HP's argument based on the Complaint's purported failure to
17  specifically state that the customer identified in Paragraph 51 "did not have a support contract for
18  the servers on which [HP] allegedly installed updates."  ECF No. 48 at 8.  The very same
19  paragraph of the Complaint states that HP engineers installed the Solaris Updates on HP's
20  customer's servers "knowing that such conduct violated Oracle's copyrights."  ECF No. 1 ¶ 51.
21  The Complaint also asserts that "a former HP employee who supported the [customer's] account,
22  testified in the Terix litigation that he raised concerns with HP executives (that were escalated to
23  the HP legal department) about whether Terix had the lawful right to provide Solaris Updates."
24  Id.  Additionally, the Complaint alleges that HP "ignored its employees' concerns . . . and

---

[3] Similarly, Cutler v. Enzymes, Inc. is distinguishable in that "[a]side from claims of ownership," the complaint in that case was "devoid of *any other specific facts* related to the Published Work and alleged copyright infringement."  No. 08-cv-04650 JF(RS), 2009 WL 482291, at *3 (N.D. Cal. Feb. 25, 2009) (emphasis added).  Here, Paragraph 51 provides sufficient detail regarding the alleged infringement.

7

continued to install Solaris Updates on [the customer's] servers—even though it knew that Terix had no lawful right to provide Solaris Updates . . . ." Id. These allegations, especially when combined with the remainder of Oracle's complaint, make it abundantly clear that Oracle is alleging that HP installed Solaris Updates on its customers' servers and that neither HP, nor the customer had a support contract with Oracle covering those particular servers. See, e.g., ECF No. 1 ¶ 35 ("Yet HP continued to work with Terix, continued to facilitate the provision of Solaris Updates to customers that HP knew did not have a support contract with Oracle, and even directly installed Solaris Updates for certain customers.")

Accordingly, the Court denies HP's motion to dismiss Oracle's claim for direct copyright infringement.

### 2. Indirect Copyright Infringement

The Complaint alleges both contributory and vicarious copyright infringement. ECF No. 1 ¶ 64. HP argues that Oracle has not sufficiently pleaded either form of indirect copyright infringement. ECF No. 44 at 17–22.

#### a. Contributory Infringement

"To state a claim for contributory infringement, [Oracle] must allege facts sufficient to show that defendant '(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement.'" Actuate Corp. v. Fid. Nat'l Info. Servs., Inc., No. 14-cv-02274-RS, 2014 WL 4182093, at *3 (N.D. Cal. Aug. 22, 2014) (quoting Perfect 10, Inc. v. Visa Intern. Service Ass'n, 494 F.3d 788, 795 (9th Cir. 2007)). Regarding the first element, generally speaking, "'actual knowledge of specific acts of infringement' is required for contributory infringement liability." Luvdarts, LLC v. AT & T Mobility, LLC, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting A&M Records, Inc. v. Napster Inc., 239 F.3d 1004, 1021 (9th Cir. 2001)).

HP first argues that Oracle has failed to sufficiently plead knowledge because "although Oracle alleges that [HP] knew Terix was installing software, Oracle does not adequately allege that [HP] knew (or even should have known) that such installation was *infringing* or otherwise *unlawful*." ECF No. 44 at 18 (emphasis in original). This argument strains credibility. The

8

1   Complaint is replete with specific factual allegations, including quotes from HP's internal
2   presentations and HP's employee's emails, from which HP's actual knowledge of Terix's
3   infringing acts can be plausibly inferred.
4     For instance, the Complaint alleges that "HP knew that customers were required to have a
5   technical support agreement with Oracle in order to access and apply Solaris Updates to their
6   servers." ECF No. 1 ¶ 43.  To support this assertion, the Complaint identifies an HP presentation
7   deck, which "███████████████████████████████████████████████████████████████
8   █████████████████████████████████████'" ECF No. 1. ¶ 43.  Similarly, the
9   Complaint alleges that an HP employee emailed a Terix employee, remarking: "██████████
10  ███████████████████████████████████████████████████████████████████████████
11  ███████████████████████████████████████████████████████████████████████████
12  ███████████████████████████████████████████████████████████████████████████
13  █████████████████████████" Id. ¶ 44.
14    The Complaint alleges that despite this knowledge, "HP informed [a customer] that
15  software support for [the customer's] Sun servers was available under its contract with HP and
16  could be provided by Terix." Id. ¶ 47.  The customer "then canceled its support agreements with
17  Oracle and instead obtained support through [a] joint HP-Terix arrangement." Id.  After HP
18  quelled the customer's concerns regarding "████████████████████████████████████"
19  Terix then "gain[ed] access to and cop[ied] Oracle's protected software for a single Oracle-
20  serviced server," using a process outlined by HP in an email to the customer, "in order to provide
21  Solaris Updates and firmware updates to [the customer's] hardware not covered by an Oracle
22  support services agreement." Id.
23    The Complaint also alleges that "HP falsely represented to [a different customer] . . . that
24  [the customer] was entitled to Solaris Updates by virtue of its original purchase of Solaris." ECF

---

[4] "In January 2010, Oracle completed its acquisition of Sun Microsystems, Inc. ('Sun'), which was renamed Oracle America, Inc. Plaintiff Oracle America continues to hold all of Sun's interest, rights, and title to the copyrights for Solaris 8, 9 and 10 and the rights to bring claims for infringement of those copyrights." ECF No. 1 ¶ 9.

1   No. ¶ 42. HP then "facilitated Terix's provision of Solaris Updates by fielding requests from [the
2   customer] and directing [the customer] to Terix to obtain numerous Solaris patches that were
3   applied to some or all of [the customer's] Solaris servers." Id. These allegations are more than
4   sufficient to plead HP's knowledge of Terix's alleged infringement.
5       Next, HP argues that "[e]ven if Oracle had sufficiently alleged knowledge, . . . Oracle must
6   allege that [HP] took *affirmative*, 'purposeful, culpable' steps to 'encourage direct infringement.'"
7   ECF No. 44 at 20 (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913,
8   936–37 (2005)). However, the Complaint alleges, among other things, that "HP facilitated Terix's
9   provision of Solaris Updates by fielding requests from [a particular customer] and directing [that
10  customer] to Terix to obtain numerous Solaris patches that were applied to some or all of [the
11  customer's] Solaris servers." ECF No. 1 ¶ 42. Similarly, the complaint alleges that "HP
12  facilitated Terix's unlawful conduct by fielding customer requests for Solaris Updates and then
13  directing customers to Terix," specifically identifying a particular occasion on which an HP Senior
14  Program Manager made an "███████" to Terix to expedite a customer's request to install a
15  Solaris Update. Id. ¶ 50. While HP is free to argue at summary judgment that Oracle has not
16  sufficiently proven this element, at the motion to dismiss stage, these allegations plausibly allege
17  that HP "materially contribute[d] to" or "induce[d]" the alleged infringement, especially when
18  combined with Oracle's allegations regarding HP's direct copyright infringement. Actuate Corp.,
19  2014 WL 4182093, at *3.
20              **b.   Vicarious Infringement**
21      "To state a claim for vicarious infringement, [Oracle] must allege that defendant had
22  '(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the
23  infringing activity.'" Actuate, 2014 WL 4182093, at *3 (quoting Perfect 10, 494 F.3d at 802). HP
24  does not dispute that it had a direct financial interest in the infringing activity. ECF No. 44 at 14–
25  15. Rather, HP argues that the Complaint fails to sufficiently allege that HP had any ability to
26  control Terix because its allegations merely amount to the assertion that "HP took no steps to stop
27  its subcontractor [Terix]." ECF No. 14 (quoting ECF No. 1 ¶ 64).
28      Oracle's arguments to the contrary are not persuasive. Oracle notes that the Complaint

10

alleges that "HP operated as the primary support provider for the joint HP-Terix customers and subcontracted certain support services to Terix, including the provision of Solaris Updates." ECF No. 46 at 25 (citing ECF No. 1 ¶¶ 4, 29, 41–42, 64). According to the allegations in the Complaint, "[w]hen HP employs a subcontractor like Terix to provide support services for a customer's Oracle servers, HP typically remains the customer's primary contact for support needs and is involved in facilitating the provision of support to the customer." ECF No. 1 ¶ 4. However, simply because HP may have remained a customer's "primary contact for support needs" does not mean that HP had the "right and ability to supervise" Terix's conduct. Actuate, 2014 WL 4182093, at *3 (quoting Perfect 10, 494 F.3d at 802). Moreover, in the primary case cited by Oracle to support its argument, Fonovisa, Inc. v. Cherry Auction, Inc., the court found that vicarious copyright infringement had been sufficiently pleaded where the defendant, an owner of a swap meet, "had the right to terminate vendors for any reason whatsoever and through that right had the ability to control the activities of vendors on the premises." 76 F.3d 259, 262 (9th Cir. 1996). Oracle alleges no such relationship between HP and Terix. Nor does Oracle cite any authority for the proposition that allegations of a contractor-subcontractor relationship alone are sufficient to plead a claim for vicarious copyright infringement.

Accordingly, the Court grants HP's motion with respect to Oracle's claim for vicarious copyright infringement.

### B. Intentional Interference with Contract

Oracle's second claim is for intentional interference with contract. Under California law, to state a claim for intentional interference with contractual relations, a plaintiff must plead:

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

Swipe & Bite, Inc. v. Chow, 147 F. Supp. 3d 924 (N.D. Cal. 2015) (quoting Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990)). HP argues that "Oracle cannot allege a plausible claim for interference with its support contracts because it has failed to allege facts

11

showing that [HP] (1) in fact knew that Oracle's customers had a preexisting contract for support services with Oracle, and (2) intended to disrupt the contract." ECF No. 44 at 23.

Regarding the knowledge element, HP argues that "there are no allegations that [HP] ever saw the terms of the support contracts between Oracle and its customers." ECF No. 44 at 23. However, as Oracle notes, to state a claim for intentional interference with contractual relations, a plaintiff "need only show that Defendants had 'knowledge of the contract,' not that they knew the precise terms of the contract." Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., 873 F. Supp. 2d 1192, 1221–22 (N.D. Cal. 2012). Here, the Complaint identifies a specific organization as an "Oracle customer with an operating system support contract for its Sun server." ECF No. 1. ¶ 47. The Complaint goes on to allege that "HP informed [that customer] that software support for [its] Sun servers was available under its contract with HP and could be provided by Terix." Id. When the customer, expressed doubts about the legality of the HP-Terix arrangement, an HP representative responded to the customer, alleviating his fears. Id. Terix then "provided Solaris Updates [for the customer's] hardware not covered by an Oracle support services agreement." Id. These allegations are more than sufficient to satisfy the knowledge prong of Oracle's claim for intentional interference with contract.

Regarding the "intent to disrupt" element, HP argues that it was entitled to rely on Terix's representations that customers did not need to purchase an annual support agreement with Oracle to obtain Solaris Updates. ECF No. 44 at 24 (citing Oakley Inc. v. Nike, Inc., 988 F. Supp. 2d 1130, 1136 (C.D. Cal. 2013) ("[A] party accused of intentional interference is entitled to have relied on factual representations from a person in a position to know those facts.")). This argument fails because, as explained at length above, the Complaint alleges that HP had actual knowledge that Terix's representations to this effect were incorrect. See, e.g., ECF No. 1 ¶ 43 ("HP knew that customers were required to have a technical support agreement with Oracle in order to access and apply Solaris Updates to their servers."). Once again, HP is free to make an argument based on its alleged reliance on Terix's statements at summary judgment, but at the pleadings stage, the Court concludes that Oracle has presented sufficient factual allegations to state a claim for intentional interference with contract.

1      Accordingly, the Court denies HP's motion regarding Oracle's second claim.

**C. Intentional Interference with Prospective Economic Relations**

Oracle's third claim is for intentional interference with prospective economic relations. Under California law, to state a claim for intentional interference with prospective economic relations, a plaintiff must plead:

> (1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

Swipe & Bite, 147 F. Supp. 3d at 924 (quoting Youst v. Longo, 43 Cal. 3d 64, 71 n. 6 (1987)). Unlike a claim for intentional interference with contract, claims for intentional interference with prospective economic relations "require that a defendant's conduct be independently wrongful." Oakley, 988 F. Supp. 2d at 1135.

HP argues that Oracle has not alleged "independently wrongful" conduct because HP was entitled to rely on statements from Terix that customers did not need to purchase an annual support agreement with Oracle to obtain Solaris Updates. ECF No. 44 at 25–26. This argument fails for the same reasons stated above, namely, because the Complaint alleges that HP had actual knowledge that Terix's representations to this effect were incorrect. As Oracle put it in its Opposition: "Oracle alleges that HP *knew* that Oracle licenses for the underlying Solaris product *did not* include Solaris Updates . . . and that an annual support contract with Oracle was required to get them . . . . HP's statements to customers that they, in fact, did *not* need an Oracle support contract to obtain Solaris Updates were therefore false, and constitute wrongful conduct adequate to support the interference claim." ECF No. 46 at 26–27.

Accordingly, the Court denies HP's motion regarding Oracle's third claim.

**D. Unfair Competition**

Oracle's fourth claim is for unfair competition under California Business and Professions Code § 17200. "California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" In re Pomona Valley Med.

13

1  Grp., Inc., 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200). The
2  UCL's coverage is "sweeping," and its standard for wrongful business conduct is "intentionally
3  broad." In re First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006). Each prong—
4  fraudulent, unfair, and unlawful—is independently actionable. Lozano v. AT & T Wireless
5  Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007). Here, the Complaint asserts claims only under the
6  unlawful and unfair prongs. See ECF No. 1 ¶ 77.

7  "When a party sues an ostensible competitor under the unfair prong of § 17200, the claim
8  may be proven only on the basis of conduct that threatens an incipient violation of an anti-trust
9  law, or violates the policy or spirit of one of those laws because its effects are comparable to or the
10 same as a violation of the law, or otherwise significantly threatens or harms competition."
11 ProconGPS, Inc. v. Star Sensor LLC, No. 11-cv-3975 SI, 2011 WL 5975271, at *3 (N.D. Cal.
12 Nov. 29, 2011) (internal quotation marks omitted). HP argues that Oracle's claim under the unfair
13 prong fails because Oracle has only pleaded harm to a competitor (as opposed to harm to
14 competition). ECF No. 44 at 27 (citing ProconGPS, 2011 WL 5975271, at * 3 ("Harm to a
15 competitor is not the same as harm to competition, and Skypatrol must allege conduct that
16 significantly threatens or harms competition in order to state a claim.")). Oracle does not respond
17 to this argument and fails to identify any allegations in the complaint from which it could be
18 plausibly inferred that HP's conduct threatens harm to competition as opposed to harm to an
19 individual competitor. ECF No. 46 at 29. Accordingly, the Court grants HP's motion with respect
20 to the unfair prong of Oracle's section 17200 claim.

21 Regarding the unlawful prong, "Section 17200 borrows violations from other laws by
22 making them independently actionable as unfair competitive practices." CRST Van Expedited,
23 Inc. v. Werner Enterprises, Inc., 479 F.3d 1099, 1107 (9th Cir. 2007) (internal quotation marks
24 omitted). Here, HP's alleged interference with Oracle's technical support agreements is a business
25 practice. See id. Moreover, "intentional interference with contract is a tortious violation of duties
26 imposed by law." Id. Therefore, because the Court has already concluded that Oracle has
27 sufficiently pleaded a claim for intentional interference with contractual relations, Oracle has also
28 sufficiently pleaded a claim under the unlawful prong of section 17200. See ProconGPS, 2011

WL 5975271, at *3 ("Therefore, so long as the underlying claim for interference with contractual relations is adequately pleaded, so is the UCL Claim to the extent that it is based on the tortious interference claim."). As a result, the Court denies HP's motion with respect to the unlawful prong of Oracle's section 17200 claim.[5]

## CONCLUSION

The Court denies HP's motion to dismiss Oracle's claims for direct copyright infringement, contributory copyright infringement, intentional interference with contractual relations, intentional interference with prospective economic relations, and violation of section 17200's unlawful prong. The Court grants HP's motion to dismiss Oracle's claims for vicarious copyright infringement and violation of section 17200's unfair prong.[6] Should Oracle decide to file an amended complaint, Oracle shall do so within thirty days of the filing date of this order.

IT IS SO ORDERED.

Dated: July 15, 2016

_____
JON S. TIGAR
United States District Judge

---

[5] The Court also rejects HP's argument that "to the extent Oracle relies on [allegations regarding a conspiracy between HP and Terix to violate copyright laws] in support of its state-law claims, these claims are preempted by the Copyright Act. While "[t]he Copyright Act specifically preempts 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright,'" Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005) (quoting 17 U.S.C. § 301(a)), Oracle's state law tortious interference claims are "not within the rights protected by the federal Copyright Act," and therefore are not preempted by the Copyright Act. Id. at 1090.

[6] The Court denies HP's motion for a more definite statement. ECF No. 44 at 29. As Oracle notes, "[a] Rule 12(e) motion for more definite statement is disfavored and is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response." Craigslist, Inc. v. Autoposterpro, Inc., No. 08-cv05069-SBA, 2009 WL 890896, at *4 (N.D. Cal. Mar. 31, 2009). Given the degree of detail in Oracle's 29-page Complaint, HP's request does not come close to reaching this standard.