LATHAM & WATKINS LLP
    Christopher S. Yates (SBN 161273)
    Christopher B. Campbell (SBN 254776)
    Meaghan P. Thomas-Kennedy (SBN 303578)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email:  chris.yates@lw.com
        christopher.campbell@lw.com
        meaghan.thomas-kennedy@lw.com

ORACLE CORPORATION
    Dorian Daley (SBN 129049)
    Deborah K. Miller (SBN 95527)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114
Email:  dorian.daley@oracle.com
        deborah.miller@oracle.com

ORACLE CORPORATION
    Jeffrey S. Ross (SBN 138172)
10 Van de Graaff Drive
Burlington, MA 01803
Telephone: 781.744.0449
Facsimile: 781.238.6273
Email:  jeff.ross@oracle.com

Attorneys for Plaintiffs
Oracle America, Inc., and Oracle International Corporation

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation; and DOES 1–50,<br><br>Defendants. | No. 16-cv-01393-JST<br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

The parties have agreed to the terms of this [Proposed] Order Regarding Documents and Electronically Stored Information.

1. **Introduction**. The parties have conferred regarding certain matters affecting the discovery of Documents and electronically stored information ("ESI") and agreed on the following procedures and guidelines regarding the discovery of ESI in this Action ("e-discovery") as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **Cooperation**. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **Definitions**. Capitalized terms shall have the meanings ascribed to them in this Definitions Section.

(a) "Action" means the above-captioned litigation, *Oracle America, Inc., et al. v. Hewlett Packard Enterprise Company*, Case No. 3:16-cv-01393-JST, which is currently pending in the United States District Court for the Northern District of California.

(b) "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure and includes ESI existing in any medium from which information can be translated into reasonably usable form, including but not limited to email and attachments, word processing documents, spreadsheets, graphics, presentations, images, text files, databases, instant messages, transaction logs, audio and video files, voicemail, internet data, computer logs, text messages, or backup materials.

(c) "Extracted Text" means the text extracted from a Native File and includes all header, footer, comment, speaker notes, and document body information.

(d) "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or

otherwise manipulated by a user of such system.

(e) "Metadata Load File" means: the extracted Metadata values gathered during the process of converting to TIFF ESI from the electronic format of the application in which the ESI is normally created, viewed or modified.

(f) "Native File" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed or modified.

(g) "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

(h) "Producing Party" means a party or non-party that produces Documents or ESI in this Action.

(i) "Receiving Party" means a Party that receives Documents or ESI from a Party or non-party in this Action.

4. **Applicability**.  This stipulation does not constitute a waiver, by any party, of any objection to the production of particular ESI as unduly burdensome or not reasonably accessible.

5. **Custodians and Search Terms**.  Mindful of the permissible scope of discovery as described in Federal Rule of Civil Procedure 26(b), the parties agree to meet and confer in good faith regarding document custodians and search terms.

6. **Format for Production**.  Unless the parties agree otherwise, the parties shall work in good faith to produce documents pursuant to the provisions set forth in this paragraph, which shall govern the format for production of ESI; the parties will produce paper and electronic Documents in Tagged Image File Format ("TIFF" or ".TIF") files, except as provided in paragraphs 17, 18, and 20 below.

(a) Each image should have a unique file name, which is the control number of the page.  TIFF files shall be produced in single-page Group IV format with a minimum resolution of 300 dpi.

(b) If after receiving a production in TIFF, a Receiving Party discovers that a document is illegible or cannot be properly understood in TIFF format, then the Receiving Party

STIP AND [PROPOSED] ORDER RE: DOCUMENTS AND ELECTRONICALLY STORED INFORMATIONI
CASE NO. 3:16-CV-01393-JST

may request in writing that the Producing Party produce specific Documents in their native format. Aside from requests relating to a problem with the readability or usability of a previously produced TIFF file, the expenses of reproduction in native format of documents previously produced in TIFF format would be borne by the party making the request. Should the parties not reach agreement after meeting and conferring in good faith, the requesting party may move the Court for such production.

(c) Each Document production will be accompanied by two load files: an image load file and a Metadata Load File. Those load files shall be produced in Concordance format (.DAT file using Concordance standard delimiters for the Metadata Load Files, and .OPT file using Concordance standard fields for the image load files).

(d) The image load file shall provide image and document break information for the TIFF files produced that correspond to the beginning control number contained in the Metadata Load File. Every TIFF file in each production must be referenced in the production's corresponding image load file. The total number of TIFF files referenced in a production's image load file should match the number of TIFF files in the production.

(e) For Documents that do not contain redactions, the Producing Party will produce an Extracted Text file for each electronic Document and an OCR text file for each imaged paper Document. For Documents that contain redactions, the Producing Party will provide an OCR text file for the unredacted portions of such Documents. All non-redacted Documents are to be provided with multi-page searchable text (.TXT) files. The OCR text files and image load files should indicate page breaks to the extent possible.

7. **Metadata**. To the extent they are reasonably available, the Metadata values that are to be extracted and produced in the Metadata Load Files, to the extent their production is reasonably possible, are:

Metadata from Email:

Email Subject

Email Author

Email Recipient


1. Email CC
2. Email BCC
3. Email Received Date
4. Email Sent Date
5. Email Received Time
6. Email Sent Time
7. Email Thread ID (*e.g.*, in MS Outlook, both the thread-index from
8. message header and "PR_conversation-index" from message properties)
9. <u>Metadata from Electronic Files</u>:
10. File Name
11. File Author
12. File Created Date
13. File Created Time
14. File Modified Date
15. File Modified Time
16. File Extension
17. <u>Metadata for both Email and Electronic Files</u>:
18. Custodian/Source
19. Attachment Count
20. Original Path or Parent Folder (of original item, not including structure of
21. capture device)
22. MD5 Hash (if generated when processed)
23. Native Link
24. Page Count
25. File Application Type (*e.g.*, Microsoft Excel 2009; PowerPoint; Microsoft
26. Word 2007)
27. Production Number Begin (ProdBegDoc)
28. Production Number End (ProdEndDoc)

This list of fields does not create any obligation to create or manually code fields that are not automatically generated for the processing of the ESI or that do not exist as part of the original Metadata of the Document; provided however, the Producing Party must populate the Custodian/Source field for all produced ESI as well as paper Documents converted to electronic form.

With respect to ESI gathered from an individual's hard drive or network share, Metadata will be provided in the Custodian/Source field sufficient to identify the individual custodian from whose hard drive or network share such ESI has been gathered. The Producing Party will identify the source for any data that is not collected from an individual's hard drive or network share and is not reasonably identifiable as to source as "company documents" (or some other such identifier of the documents as belonging to the company's central files) in the Custodian/Source field.

**8.     Processing Specifications**.

(a)     The preferred time zone of processing ESI is GMT. Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original Metadata of that ESI. To the extent that a party has already processed ESI using a different time zone, the Producing Party will identify the time zone used in its processing. Parties shall consistently produce all ESI processed using the same time zone and shall identify differences in the time zones used for processing ESI from different custodians if any.

(b)     When processing ESI for review and for production in TIFF format, the Producing Party will instruct its vendor to force off Auto Date and force on track changes, and comments.

**9.     Encrypted or Password-Protected ESI**. For any ESI that exists in encrypted format or is password-protected, the Producing Party shall undertake reasonable efforts to provide the Receiving Party a means to gain access to the files. The parties shall meet and confer in an effort to supply reasonably available passwords and other information that will enable the Receiving Party to obtain access as well as provide the Receiving Party with exception report(s).

**10.     Production of E-Discovery with Attachments**.   For all e-discovery, the following fields should be produced and populated as part of the Metadata Load File to provide the parent/child or parent/sibling relationship:

        Production Number Begin (ProdBegDoc)

        Production Number End (ProdEndDoc)

        Production Attachment Range Number Begin (ProdBegAttach)

        Production Attachment Range Number End (ProdEndAttach)

Parent-child relationships (the association between an attachment and its parent Document) should be preserved. Control numbering of a parent Document and any attachments shall be sequential such that a parent Document has the lowest number control number when compared to its attachment or attachments, and should, to the extent reasonably possible, be shown in the document field.

**11.     Hard-Copy or Paper Documents**.   With respect to the production of hard-copy Documents, the parties agree:

(a)     <u>Hard Copy Documents Will Be Produced in Electronic Format</u>.   Hard-copy Documents shall be produced as image files with related OCR text to the extent such Documents are converted into electronic format. At this time, each party contemplates converting all hard-copy Documents into electronic images for production purposes and agrees to address any exceptions with the other parties. The parties shall meet and confer to discuss Documents that present imaging or formatting problems. To the extent exceptions to the foregoing are required, the parties will meet and confer to discuss alternative production requirements, concerns, or formats. A Metadata field entitled "Paper" will be populated by a "Y" for all Documents scanned from hard copy to the extent reasonably possible.

(b)     <u>Document Unitization</u>.   To the extent possible and on a going-forward basis, the parties will endeavor to apply unitization practices consistent with the following description. Each page of a hard-copy Document shall be scanned into an image and, if a Document is more than one page, the unitization of the Document and any attachments shall be maintained as it existed in the original when creating the image file. For Documents that contain

affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same Document. The relationship of Documents in a Document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple Documents, or other Documents where a parent-child relationship exists between the Documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, Documents will be kept in order, but all will be treated as children of the initial parent Document. Such information shall be produced in the load file in a manner to enable the parent-child relationship among Documents in a Document collection to be reconstituted by the Receiving Party in Concordance.

12. **De-duplication**. A party is required to produce only a single copy of any responsive Document. A party may de-duplicate ESI across each party's custodians or sources, but, if that option is exercised, the Producing Party must identify each custodian or source where the Document was located in the Custodian/Source field or a custodian append file. De-duplication will be based on MD5 or SHA-1 hash values, and each party will disclose the methodology it uses to de-duplicate. However, (i) de-duplication shall be performed only at the Document family level so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa; (ii) attachments to emails or other Documents shall not be disassociated from the parent email or Document, even if they are exact duplicates of another Document in the production; and (iii) hard copy Documents may not be eliminated as duplicates of responsive ESI if there is anything written on the hard copy Document that makes it different from the electronic copy. A party may only de-duplicate "exact duplicate" Documents and may not de-duplicate "near duplicate" Documents, both of the quoted terms in this sentence being given their ordinary meaning in the e-discovery field.

13. **System and Program Files**. System and program files defined by the National Institute on Standards & Technology, available at http://www.nist.gov/, need not be processed, reviewed, or produced. Additional files may be added to the list of excluded files by mutual agreement of the parties.

**14.     Embedded Objects**.  Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like attachments to the document in which they were embedded.  Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

**15.     Compressed Files**.  Compression file types (*e.g.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed elements resulting in individual files.  The container file itself shall not be produced.

**16.     Searches – Key Words and Other Search Methodologies**.  To the extent that key words or other methodologies are to be used in limiting the universe of potentially responsive Documents to be reviewed in advance of production, the parties shall meet and confer to develop a mutually agreeable list of search terms and protocols.

**17.     Production of Excel and Database E-Discovery**.  Unless such materials contain privileged information, MS-Excel spreadsheets shall be produced as Native Files and need not be produced as full TIFFs.  If such spreadsheets include redacted information, they need not be produced in native format, but shall be produced as TIFFs with the redacted OCR-ed text and applicable Metadata fields set forth in Paragraphs 7 and 10 of this Order.

When producing spreadsheets in other than their native formats, the Producing Party shall include all hidden rows, columns, cells, worksheets, data, comments, or formulas, as well as any associated headers or footers.

Parties will meet and confer regarding production in a mutually agreeable format of responsive data contained in databases.

**18.     Production of Media Files**.  Unless otherwise mutually agreed by the parties, media files are to be produced in the native media file format in which they were maintained in the ordinary course of business unless redactions are needed.  If redactions are needed, the redacted media file may be produced either in the original native format or in a standard media format.

19. **Control Numbering for Productions in TIFF Format**. Each page of an e-discovery Document produced in TIFF format will contain a legible control number that is unique across the Document production; has a constant length (0- padded) across the production; and is sequential within a given Document. Each page of a produced e-discovery Document will also contain a confidentiality designation, if applicable. If a control number or set of control numbers is skipped in a production, the Producing Party will notify the Receiving Party in its cover letter to the production that the production contains skipped control numbers. Both the control number and confidentiality designation shall be placed on the page image in a manner that does not conceal or interfere with any information contained on the page. No other stamp or information will be placed on a Document other than a control number, confidentiality designation, and any redactions. This paragraph does not apply to Excel spreadsheets or other files produced in native electronic format.

20. **Native File Production**. Any file produced in its native format is to be named with its corresponding control number and extension and produced with a corresponding placeholder image TIFF file that bears a confidentiality endorsement (if applicable), BATES number, and language referencing the Native File production (*e.g.*, "Produced in Native Format"). If any produced Native File is Confidential or Attorneys' Eyes Only under the terms of the Stipulated Protective Order, the file name should include the corresponding confidentiality designation following the control number to the extent reasonably possible. For example, Native Files that are designated "Confidential" must be named following the pattern, "ControlNumber_Confidential.extension," Native Files that are designated "Attorneys' Eyes Only" must be named following the pattern "ControlNumber_AEO.extension." If a control number or set of control numbers is skipped in a production, the Producing Party will notify the Receiving Party in its cover letter to the production that the production contains skipped control numbers. Any file produced in native format should be produced with its corresponding load file, including a coding field containing its original file name. The load file shall contain a link to any Native File produced.

1    **21.    Redacted E-Discovery**.  To the extent a Producing Party redacts any Document, such redaction shall be clearly marked on the TIFF image of the Document.  The party shall also either provide (a) a list identifying by control number those pages that have been redacted and all reasons for such redactions or (b) a database field populated with an indicator of redaction.  Any failure to redact information does not automatically waive any right to claims of privilege or privacy or any objection, including relevancy, as to the specific Document or any other Document that is or will be produced.

**22.    Inadvertently Produced Documents**.  Inadvertently produced Documents, testimony, information, or things that are protected from disclosure under the attorney-client privilege, work-product doctrine, or any other applicable privilege, protection, or immunity from disclosure shall be handled using the procedures set forth in the Stipulated Protective Order (ECF No. 73).

**23.    Confidential Material**.  ESI that contains Confidential or Attorneys' Eyes Only information shall be handled using the procedures set forth in the Stipulated Protective Order (ECF No. 73).

**24.    Production Media**.  The parties agree to produce Documents on CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media on which the parties may hereafter agree (the "Production Media").  Each item of Production Media shall identify on the Production Media: (1) who the Producing Party is (*e.g.*, Oracle America, Inc.; or Hewlett Packard Enterprise Company); (2) the control number range on that Production Media (*e.g.*, "ORCL-001 through ORCL-002"); (3) the case number of the case in which it is produced; and (4) the production date.  Notwithstanding the foregoing, the parties may produce Documents via SFTP or similarly secure facility, in which case, the required production related information set forth in the preceding sentence must be provided in a cover letter accompanying a party's instructions on how another party can access its document production.

**25.    Original Documents**.  The Producing Parties will retain the original Documents. Subject to preservation of appropriate privileges and other protections, the parties will consider reasonable requests, after any necessary meet-and-confer, to make originals of any produced

hard-copy Document available for inspection by the requesting party in the form in which such Documents are kept in the ordinary course of business.

26.  **Costs**.  Each party shall bear its own e-discovery costs unless otherwise ordered by the Court.  This document does not purport to alter any cost shifting determinations governed by the Federal Rules of Civil Procedure.

27.  **Modifications**.  In the event of individual issues that arise with regard to the identification and production of ESI and ESI-related information, any practice or procedure provided in this Order as to such identification or production may be varied by written agreement of the parties, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents, ESI, or ESI-related information.  The parties shall meet and confer in the event of any dispute over the need for or nature of such variance in practice or procedure in an effort to reach agreement prior to informing the Court of any unresolved issues.

**IT IS SO STIPULATED.**

Dated: August 11, 2016                          LATHAM & WATKINS LLP

                                                By: /s/ Christopher S. Yates
                                                    Christopher S. Yates
                                                    Attorneys for Plaintiffs
                                                    Oracle America, Inc. and
                                                    Oracle International Corporation

Dated: August 11, 2016                          GIBSON, DUNN & CRUTCHER LLP

                                                By: /s/ Blaine H. Evanson
                                                    Blaine H. Evanson
                                                    Attorneys for Hewlett Packard Enterprise
                                                    Company

**PURSUANT TO STIPULATION, IT IS SO ORDERED:**

DATED: August 16, 2016                          By: _____

*IT IS SO ORDERED*
*Judge Jon S. Tigar*

**ATTESTATION OF CONCURRENCE**

Pursuant to Civil Local Rule 5-1(i)(3), I declare that concurrence has been obtained from each of the above signatories to file this document with the Court.

Dated: August 11, 2016                          LATHAM & WATKINS LLP

                                                By: /s/ Christopher S. Yates
                                                    Christopher S. Yates
                                                    Attorneys for Plaintiffs
                                                    Oracle America, Inc. and
                                                    Oracle International Corporation