LATHAM & WATKINS LLP
    Christopher S. Yates (SBN 161273)
    Christopher B. Campbell (SBN 254776)
    Brittany N. Lovejoy (SBN 286813)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:    chris.yates@lw.com
            christopher.campbell@lw.com
            brittany.lovejoy@lw.com

ORACLE CORPORATION
    Dorian Daley (SBN 129049)
    Deborah K. Miller (SBN 95527)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile:  650.506.7114
Email:    dorian.daley@oracle.com
            deborah.miller@oracle.com

ORACLE CORPORATION
    Jeffrey S. Ross (SBN 138172)
10 Van de Graaff Drive
Burlington, MA 01803
Telephone:  781.744.0449
Facsimile:  781.238.6273
Email:    jeff.ross@oracle.com

Attorneys for Plaintiffs
Oracle America, Inc., and Oracle
International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation; and DOES 1–50,<br><br>Defendants. | CASE NO. 3:16-cv-01393-JST<br><br>**ORACLE'S MOTION TO STRIKE HEWLETT PACKARD ENTERPRISE COMPANY'S AFFIRMATIVE DEFENSE NOS. 2-10**<br><br>Date:     December 1, 2016<br>Time:     2:00 p.m.<br>Place:    Courtroom 9, 19th Floor<br>Judge:    Judge Jon S. Tigar |

**REDACTED VERSION OF
DOCUMENT SOUGHT TO BE SEALED**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  LEGAL STANDARD ........................................................................................... 3

III.  BACKGROUND .................................................................................................. 5

IV.  ARGUMENT ....................................................................................................... 8

   A.  HP's Express/Implied License Defense Fails (Defense No. 8) ............................ 8

   B.  HP's Copyright Misuse Defense Fails (Defense No. 5) ..................................... 10

   C.  HP's Unclean Hands Defense Fails (Defense No. 10) ...................................... 15

   D.  HP's Estoppel Defense Fails (Defense No. 3) .................................................. 16

   E.  HP's Abandonment Defense Fails (Defense No. 4) ........................................... 17

   F.  HP's Statute of Limitations Defense Fails (Defense No. 6) ............................... 18

   G.  HP's Fair Use Defense Fails (No. 7) ................................................................ 19

   H.  HP's Copyright Act Section 117 Defense Fails (Defense No. 9) ....................... 22

   I.  HP's Laches Defense Fails (Defense No. 2) ..................................................... 23

   J.  Oracle's Motion To Strike Should Be Granted With Prejudice ......................... 24

V.  CONCLUSION .................................................................................................. 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## CASES

4

*5-Star Mgmt., Inc. v. Rogers,*
5
   940 F. Supp. 512 (E.D.N.Y. 1996) ............................................................................................ 8

6

*A&M Records, Inc. v. Napster, Inc.,*
   239 F.3d 1004 (9th Cir. 2001) ............................................................................... 10, 12, 20
7

*Abdul-Rahman v. City of New York,*
8
   No. 10-CV-2778, 2012 U.S. Dist. LEXIS 45653 (E.D.N.Y. Mar. 30, 2012) ...................... 8

9

*Allen v. AVT Event Tech., Inc.,*
10
   No. 13-CV-1922, 2013 U.S. Dist. LEXIS 87070 (N.D. Cal. June 20, 2013) ...................... 5

11

*Amini Innovation Corp. v. McFerran Home Furnishings Inc.,*
   No. 13-CV-6496, 2014 U.S. Dist. LEXIS 13342 (C.D. Cal. Jan. 31, 2014) ..................... 25
12

*Ansari v. Elec. Doc. Processing, Inc.,*
13
   No. 12-CV-01245, 2012 U.S. Dist. LEXIS 128622 (N.D. Cal. Sept. 10, 2012) ................. 5

14

*Apple Inc. v. Psystar Corp.,*
15
   658 F.3d 1150 (9th Cir. 2011) ........................................................................ 12, 13, 14, 15

16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................................... 1, 4, 5
17

*Authors Guild v. Google, Inc.,*
18
   804 F.3d 202 (2d Cir. 2015) ........................................................................................ 23, 24

19

*Barnes & Noble, Inc. v. LSI Corp.,*
20
   849 F. Supp. 2d 925 (N.D. Cal. 2012) ............................................................................... 5

21

*Barnes v. AT&T Pension Benefit Plan,*
   718 F. Supp. 2d 1167 (N.D. Cal. 2010) .......................................................................... 4, 5
22

*Bell Atlantic Corp. v. Twombly,*
23
   550 U.S. 544 (2007) ................................................................................................... passim

24

*Bhandari v. Capital One, N.A.,*
   No. 12-CV-04533, 2013 U.S. Dist. LEXIS 139712 (N.D. Cal. Sept, 27, 2013) ............. 28
25

*Bottoni v. Sallie Mae, Inc.,*
26
   No. C 10-CV-03602, 2011 U.S. Dist. LEXIS 93634 (N.D. Cal. Aug. 22, 2011) ............... 5

27

*Bourne v. Walt Disney Co.,*
28
   68 F.3d 621 (2d Cir. 1995) ............................................................................................... 10

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)................................................................................................ 22, 23

*Carmichael Lodge No. 2013 v. Leonard*,
   No. 07-CV-2665, 2009 U.S. Dist. LEXIS 84857 (E.D. Cal. Sept. 16, 2009)...................... 18

*Coach, Inc. v. Kmart Corps.*,
   756 F. Supp. 2d 421 (S.D.N.Y. 2010)............................................................................ 11

*CTF Dev., Inc. v. Penta Hospitality, LLC*,
   No. 09-CV-02429, 2009 U.S. Dist. LEXIS 99538 (N.D. Cal. Oct. 26, 2009)...................... 4

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ....................................................................................... 8

*Dion v. Fulton Friedman & Gullace LLP*,
   No. 11-CV-2727, 2012 U.S. Dist. LEXIS 5116 (N.D. Cal. Jan. 17, 2012) ......................... 5

*Dream Games of Arizona, Inc. v. PC Onsite*,
   561 F.3d 983 (9th Cir. 2009) ..................................................................................... 17

*Erickson Prods., Inc. v. Kast*,
   No. 13-CV-05472, 2014 U.S. Dist. LEXIS 56711 (N.D. Cal. Apr. 23, 2014) .................... 24

*G & G Closed Circuit Events, LLC v. Nguyen*,
   No. 10-CV-00168, 2010 U.S. Dist. LEXIS 104980 (N.D. Cal. Sept. 23, 2010) .................... 4

*Hampton v. Paramount Pictures Corp.*,
   279 F.2d 100 (9th Cir. 1960) ............................................................................... 18, 20

*Harper & Row Publishers v. Nation Enters.*,
   471 U.S. 539 (1985)............................................................................................ 22, 23

*Harris v. New York State Dep't of Health*,
   202 F. Supp. 2d 143 (S.D.N.Y. 2002)............................................................................. 8

*Hernandez v. Dutch Goose, Inc.*,
   No.13-CV-03537, 2013 Dist. LEXIS 153707 (N.D. Cal. Oct. 25, 2013)........................... 5, 6

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
   796 F.2d 1148 (9th Cir. 1986) .................................................................................... 25

*Jamison v. Capello*,
   No. 10-CV-01633, 2013 WL 618203 (E.D. Cal. Nov. 25, 2013)........................................ 28

*Joe Hand Promotions, Inc. v. Nguyen*,
   No. 11-CV-04745, 2012 WL 1183738 (N.D. Cal. Apr. 6, 2012) ...................................... 25

*Leadsinger, Inc. v. BMG Music Pub'g*,
   512 F.3d 522 (9th Cir. 2008) ...................................................................................... 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

*Malibu Media, LLC v. Doe*, No. 13-CV-30,
  2013 U.S. Dist. LEXIS 112265 (N.D. Ind. Aug. 9, 2013) ................................................... 11

*Marya v. Warner/Chappell Music, Inc.*,
  131 F. Supp. 3d 975 (C.D. Cal. 2015) ................................................................................. 20

*Matter of Yagman*,
  796 F.2d 1165 (9th Cir. 1986) ............................................................................................. 17

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................................................... 10

*Michaels v. Internet Entm't Grp., Inc.*,
  5 F. Supp. 2d 823 (C.D. Cal. 1998) ..................................................................................... 10

*Munno v. Town of Orangetown*,
  391 F. Supp. 2d 263 (S.D.N.Y 2005) ..................................................................................... 8

*Omega S.A. v. Costco Wholesale Corp.*,
  776 F.3d 692 (9th Cir. 2015) ......................................................................................... 13, 14

*Oracle Am., Inc. v. Terix Computer Company, et al.*,
  Case No. 13-cv-3385-PSG (N.D. Cal.) ......................................................................... passim

*Perez v. Wells Fargo & Co.*,
  No. 14-cv-0989, 2015 U.S. Dist. LEXIS 126119 (N.D. Cal. Sept. 21, 2015) ........................ 4

*Perfect 10, Inc. v. Amazon*,
  508 F.3d 1146 (9th Cir. 2007) ............................................................................................. 22

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  134 S. Ct. 1962 (2014) ................................................................................................... 3, 27

*Polo v. Shwiff*,
  No. 12-CV-04461, 2013 U.S. Dist. LEXIS 60928 (N.D. Cal. April 29, 2013) ................... 5, 6

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
  2010 U.S. Dist. LEXIS 1433 (N.D. Cal. Jan. 8, 2010) .......................................................... 8

*S.E.C. v. First Pac. Bancorp*,
  142 F.3d 1186 (9th Cir. 1998) ............................................................................................... 8

*S.E.C. v. Sands*,
  902 F. Supp. 1149 (C.D. Cal. 1995) ...................................................................................... 8

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ............................................................................................. 28

*Sec. People, Inc. v. Classic Woodworking, LLC*,
  No. 04-CV-3133, 2005 U.S. Dist. LEXIS 44641 (N.D. Cal. Mar. 4, 2005) .......................... 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ....................................................................... 22

*Sprint Commc'ns Co. v. Big River Tel. Co.*,
    No. 08-CV-2046, 2008 U.S. Dist. LEXIS 68779 (D. Kan. Sept. 8, 2008) ........................ 10

*Starbuzz Tobacco, Inc. v. Saeed*,
    No. 13-CV-3837, 2013 U.S. Dist. LEXIS 171857 (N.D. Cal. Dec. 5, 2013) .................... 5, 6

*Sun Microsys., Inc. v. Versata Enters., Inc.*,
    630 F. Supp. 2d 395 (D. Del. 2009) ................................................................ 11

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*,
    786 F.2d 1400 (9th Cir. 1986) ................................................................. 17, 18

*Surface Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.*,
    No. 13-CV-0575, 2013 U.S. Dist. LEXIS 143478 (N.D. Cal. Oct. 3, 2013) ...................... 5

*Trading Tech. Int'l, Inc. v. CQG*,
    No. 05-CV-4811, 2012 WL 5383199 (N.D. Ill. Oct. 31, 2012) .................................. 11

*Triad Systems Corp. v. Southeastern Express Co.*,
    64 F.3d 1330 (9th Cir. 1995) ................................................................ 13, 14

*Vernor v. Autodesk*,
    621 F.3d 1102 (9th Cir. 2010) .................................................................. 27

*Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*,
    447 F.3d 769 (9th Cir. 2006) ................................................................... 24

*Wild v. Benchmark Pest Control, Inc.*,
    No. 15-CV-01876, 2016 U.S. Dist. LEXIS 34089 (E.D. Cal. Mar. 16, 2016) ..................... 25

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) .............................................................. 22, 23

*Wyshak v. City Nat. Bank*,
    607 F.2d 824 (9th Cir. 1979) ................................................................... 4

## STATUTES

17 U.S.C. § 107 ................................................................................... 19

17 U.S.C. § 117 ............................................................................... 22, 23

17 U.S.C. § 117(a) ............................................................................... 23

17 U.S.C. § 117(c) ............................................................................... 22

17 U.S.C. § 117(c)(1) ............................................................................ 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

17 U.S.C. § 117(c)(2) ............................................................................................ 22

Cal. Bus. & Prof. Code § 17208 ........................................................................... 24

Cal. Civ. Proc. Code § 339(1) ............................................................................... 24

**OTHER AUTHORITIES**

4 Nimmer on Copyright § 13.06; .......................................................................... 17

4 Nimmer on Copyright § 13.07[A] ................................................................. 16, 17

4 Nimmer on Copyright § 13.09[B] ...................................................................... 15

H.R. Rep. No. 105-796, 105th Cong., 2d Sess. 76 (1998) .................................... 22

Howard B. Abrams, 1 The Law of Copyright § 5:102 (October 2016 Update) ........................ 22

P. Leval, *Toward a Fair Use Standard*,
    103 Harv. L. Rev. 1105 (1990) ...................................................................... 19

**RULES**

97 F.R.D. 165 ........................................................................................................ 17

Fed. R. Civ. P. 12(f) ................................................................................................ 4

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1   **NOTICE OF MOTION AND MOTION**

2   TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN

3   THE ABOVE-CAPTIONED CASE, PLEASE TAKE NOTICE that the following motion will be

4   heard at 2:00 p.m. on December 1, 2016, or as soon thereafter as counsel may be heard, in

5   Courtroom 9, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, CA

6   94102, before the Honorable Jon S. Tigar.

7   Plaintiffs Oracle America, Inc. and Oracle International Corp. (together, "Oracle") will,

8   and hereby do, move the Court for an order striking Defendant Hewlett Packard Enterprise

9   Company's ("HP") affirmative defense Nos. 2, 3, 4, 5, 6, 7, 8, 9, and 10 under Federal Rule of

10  Civil Procedure 12(f) on the ground that HP's defenses are insufficient, fail to provide fair notice

11  of the bases of HP's defenses, and do not satisfy the pleading standards set forth in *Bell Atlantic*

12  *Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This

13  motion is based on this notice of motion and motion, the following memorandum of points and

14  authorities, Oracle's First Amended Complaint, HP's Amended Answer to Oracle's First

15  Amended Complaint, Oracle's Request for Judicial Notice, the pleadings and papers on file in

16  this action, any evidence or argument presented at the hearing on the motion, and any other

17  matters the Court deems proper.

18  **MEMORANDUM OF POINTS AND AUTHORITIES**

19  **I.     INTRODUCTION**

20  After Oracle filed a motion to strike HP's original answer, HP reviewed Oracle's motion

21  and, rather than respond, filed an amended answer.[1]  HP's amended answer fails to address the

22  issues identified by Oracle's original motion and continues to assert affirmative defenses that are

23  improper as a matter of law and which rely on conclusions as opposed to sufficient factual

24  allegations.

25

26  [1] Oracle filed its first motion to strike on September 7, 2016. *See* Oracle's Motion to Strike
    Hewlett Packard Enterprise Company's Affirmative Defense Nos. 1, 2, 4, 5, 6, 7, 8, and 11, Dkt.

27  No. 82. HP thereafter filed an amended answer on September 14, 2016. *See* Defendant Hewlett
    Packard Enterprise Company's Amended Answer to Oracle's First Amended Complaint ("Am.

28  Answer"), Dkt. No. 87.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

HP's license defense, for example, makes the conclusory assertion that "Oracle expressly or impliedly granted licenses to parties providing service support for Sun software, and/or to its customers . . . to use the protected materials."  Am. Answer at 18.  That is plainly insufficient because HP makes no attempt to identify the source of this purported license for Solaris Updates or under what circumstances Oracle allegedly granted it.  Indeed, HP cannot do so in good faith, as HP well knows.  With respect to Solaris, one of the primary software products in dispute, there is only one possible license that could apply—the original license for Solaris.  In Oracle's prior case against Terix (HP's support services partner for many of the relevant customers), Terix asserted that license as the core of its own "license defense," claiming that much of the same conduct at issue in this litigation was permitted.  However, Judge Grewal ruled on summary judgment that Terix's use of Solaris Updates "is clearly not contemplated on the face of the license agreements," and granted Oracle summary judgment on Terix's license defense.  *Oracle Am., Inc. v. Terix Computer Company, et al.*, Case No. 13-cv-03385-PSG (N.D. Cal.) ("*Terix*"), Dkt. No. 611.  For HP to assert this defense now after Judge Grewal disposed of it just a short time ago underscores the lengths to which HP will go to crowd this litigation with baseless claims.

Many of HP's other affirmative defenses rely on allegations that fail under the applicable legal standards in the Ninth Circuit and contradict HP's own admissions or judicially noticeable facts.  HP's copyright misuse defense relies on an assortment of allegations regarding Oracle's copyrights and support agreements, not one of which is remotely close to the legal requirements for copyright misuse as articulated by the Ninth Circuit in *Triad Systems Corp. v. Southeastern Express Co.* and *Apple Inc. v. Psystar Corp.*  That alone is grounds to strike HP's defense.  But in addition, HP's copyright misuse and other defenses depend on an allegation that HP knows is false:  that Oracle requires its customers to purchase a hardware support contract for the physical server in order to access Solaris Updates.  Oracle's public website make clear that Oracle offers two tiers of support, one of which (called Premier Support for Operating Systems) includes no hardware support and allows customers to obtain Solaris Updates from Oracle while procuring hardware support from other providers (including HP) if desired.  HP's copyright misuse,

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1   estoppel, and abandonment defenses all rely upon a similarly false allegation that "Sun supplied

2   Solaris updates and firmware (containing both copyrighted and uncopyrighted material) for little

3   or no cost and without any requirement that customers agree to support or service contracts."

4   Oracle's complaint quotes HP documents—which HP admits in its amended answer speak for

5   themselves—that state the opposite: that a Sun █████████████████████████████████

6   ████████████████████████████   And, HP expressly admitted in sworn testimony

7   in the *Terix* case that Sun required its customers to purchase support contracts in order to

8   download and install Solaris updates and firmware.  HP should not be permitted to unnecessarily

9   burden Oracle or the Court with defenses predicated on allegations it knows to be untrue.

10        HP's remaining affirmative defenses fall far short of the specificity required under the

11  *Twombly* pleading standard.  HP's defenses of estoppel, abandonment, statute of limitations, fair

12  use, and Section 117 are not supported by the factual allegations necessary to state such defenses

13  and are instead based on broad legal conclusions, unwarranted supposition, or allegations that

14  simply parrot the language of the statute.  As such, the allegations fail to provide Oracle with

15  sufficient notice of the factual bases for the defenses HP intends to present, and should be

16  stricken.  Similarly, HP's laches claim is improper as a matter of law because all of Oracle's

17  claims are governed by a statutorily fixed time limit, and therefore the Supreme Court's ruling in

18  *Petrella v. Metro-Goldwyn-Mayer, Inc*., 134 S. Ct. 1962 (2014) requires dismissal of those

19  defenses.  *See also Terix*, Dkt. No. 603 at 7 (dismissing a laches defense for state law claims with

20  a statutorily fixed period).

21        HP has now been given two opportunities to plead valid affirmative defenses.  It has

22  failed.  Oracle respectfully requests that the Court grant Oracle's motion to strike with prejudice.

23  **II.      LEGAL STANDARD**

24        Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

25  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

26  Civ. P. 12(f).  "A defense may be insufficient as a matter of pleading or a matter of law."  *G & G*

27  *Closed Circuit Events, LLC v. Nguyen*, No. 10-CV-00168, 2010 U.S. Dist. LEXIS 104980, at *3

28  (N.D. Cal. Sept. 23, 2010) (citing *Sec. People, Inc. v. Classic Woodworking, LLC*, No. 04-CV-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

3133, 2005 U.S. Dist. LEXIS 44641, at *5 (N.D. Cal. Mar. 4, 2005)). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

The Ninth Circuit has not resolved whether the "fair notice" standard requires a defendant to satisfy the *Twombly-Iqbal* requirements; however, courts in the Northern District routinely require defendants to do so.[2] "A showing of prejudice is not required" by the Plaintiff "to strike an 'insufficient'" affirmative defense under Rule 12(f), and "in any event, the obligation to conduct expensive and potentially unnecessary and irrelevant discovery is a prejudice." *Bottoni*, 2011 U.S. Dist. LEXIS 93634, at *4; *c.f. Barnes*, 718 F. Supp. 2d at 1173. Thus, courts in this District have frequently granted motions to strike affirmative defenses where the defendant failed to comply with the *Twombly-Iqbal* pleading standards.[3]

---

[2] *Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1171-72 (N.D. Cal. 2010) ("[T]he vast majority of courts [in this district] presented with the issue have extended *Twombly*'s heightened pleading standard to affirmative defenses.") (citing, among other cases, *CTF Dev., Inc. v. Penta Hospitality, LLC*, No. 09-CV-02429, 2009 U.S. Dist. LEXIS 99538, at *23 (N.D. Cal. Oct. 26, 2009) (Alsup, J.)); *see also Perez v. Wells Fargo & Co.*, No. 14-cv-0989, 2015 U.S. Dist. LEXIS 126119, at *10 (N.D. Cal. Sept. 21, 2015) (Hamilton, J.); *MIC Property & Casualty Corp. v. Kennolyn Camps, Inc.*, No. 15-CV-00589, 2015 U.S. Dist. LEXIS 101235, at *4-5 (N.D. Cal. Aug. 3, 2015) (Davila, J.); *Oracle Am. Inc. v. Terix Computer Co.*, No. 13-CV-03385, 2014 U.S. Dist. LEXIS 158060, at *47-49 (N.D. Cal. Nov. 7, 2014) (applying the *Twombly-Iqbal* standard to strike affirmative defenses) (Grewal, J.); *Ujhelyi v. Vilsack*, No. 12-CV-04282, 2013 U.S. Dist. LEXIS 169057, at *6 (N.D. Cal. Nov. 25, 2013) (White, J.) ("[T]he majority of courts within this District have applied *Twombly* and *Iqbal* to affirmative defenses."); *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323, 2012 U.S. Dist. LEXIS 41080, at *21-22 (N.D. Cal. Mar. 26, 2012) (Koh, J.) (applying *Twombly* and *Iqbal* to affirmative defenses because "'[a]ffirmative defenses are governed by the same pleading standards as complaints'" (quoting *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004)); *Bottoni v. Sallie Mae, Inc.*, No. C 10-CV-03602, 2011 U.S. Dist. LEXIS 93634, at *3 (N.D. Cal. Aug. 22, 2011) (Beeler, J.) ("[C]ourts in this district consistently have applied the *Twombly-Iqbal* pleading standard to the pleading of affirmative defenses, requiring a defendant to allege enough facts to state a claim to relief that is plausible on its face."); *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 928 (N.D. Cal. 2012) (Chen, J.); *Dion v. Fulton Friedman & Gullace LLP*, No. 11-CV-2727, 2012 U.S. Dist. LEXIS 5116, at *5-6 (N.D. Cal. Jan. 17, 2012) (Conti, J.) (citing *Barnes*, 718 F. Supp. 2d at 1172).

[3] *See Starbuzz Tobacco, Inc. v. Saeed*, No. 13-CV-3837, 2013 U.S. Dist. LEXIS 171857, at *4-6 (N.D. Cal. Dec. 5, 2013) (Illston, J.) (striking affirmative defenses); *Hernandez v. Dutch Goose, Inc.*, No. 13-CV-03537, 2013 Dist. LEXIS 153707, at *21 (N.D. Cal. Oct. 25, 2013) (Beeler, J.) (same); *Surface Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.*, No. 13-CV-0575, 2013 U.S. Dist. LEXIS 143478, at *28 (N.D. Cal. Oct. 3, 2013) (Chesney, J.) (same); *Allen v. AVT Event Tech., Inc.*, No. 13-CV-1922, 2013 U.S. Dist. LEXIS 87070, at *4-7 (N.D. Cal. June 20, 2013) (Chesney, J.) (same); *Polo v. Shwiff*, No. 12-CV-04461, 2013 U.S. Dist. LEXIS 60928, at *12-15 (N.D. Cal. April 29, 2013) (White, J.) (same); *Ansari v. Elec. Doc. Processing, Inc.*, No. 12-CV-

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

III.    BACKGROUND

Oracle develops and sells enterprise hardware and software systems, including Oracle's Sun-branded servers ("Oracle/Sun servers") and Oracle's proprietary Solaris operating system. Oracle's First Amended Complaint ("Am. Compl.") ¶ 19.[4]  Oracle spends many millions of dollars each year developing, maintaining and improving the Solaris operating system, including developing new versions of Solaris and developing software patches, updates, and bug fixes for Solaris and related system firmware (collectively, "Solaris Updates").  *Id.* ¶¶ 1, 20.  Oracle owns valid and enforceable copyrights in each version of Solaris and all Solaris Updates.  *Id.* ¶¶ 9, 11, 57-58, 60.

Like Sun before it, Oracle only sells access to Solaris Updates in the form of annual technical support services agreements.  *Id.* ¶¶ 21, 22.  Oracle makes two support service offerings available to its Sun branded hardware customers:  Premier Support for Operating Systems (which allows access to Solaris Updates as they are made commercially available) and Premier Support for Systems (which is the same as Premier Support for Operating Systems, but also includes support for the hardware device).  Customers that want only access to Solaris Updates may purchase the lower priced operating systems support, and are free to engage a third party to provide "break-fix" support on Oracle/Sun hardware.  *See id.* ¶ 6.  Regardless of the offering selected, in order for a customer to access and download Solaris updates for an Oracle/Sun server, the customer must have an active support agreement with Oracle for that server.  *Id.* ¶ 22.  Sun had very similar support policies in place for years prior to its acquisition by Oracle.  *Id.* ¶ 24.

In July 2013, Oracle filed a lawsuit against Terix Computer Company alleging various claims, including copyright infringement and tortious interference.  *Terix*, Dkt. No. 1.  Through

01245, 2012 U.S. Dist. LEXIS 128622, at *17 (N.D. Cal. Sept. 10, 2012) (Koh, J.) (same); *Dion*, 2012 U.S. Dist. LEXIS 5116, at *7-10 (same); *J&J Sports Productions, Inc. v. Mendoz-Govan*, No. 10-CV-05123, 2011 U.S. Dist. LEXIS 47075, at *20 (N.D. Cal. April 25, 2011) (Alsup, J.) (same); *Barnes*, 718 F. Supp. 2d at 1176 (same).

[4] Because courts typically evaluate affirmative defenses in the context of the plaintiffs' allegations and claims, *see, e.g.*, *Starbuzz*, 2013 U.S. Dist. LEXIS 171857, at *1-3; *Hernandez*, 2013 Dist. LEXIS 153707, at *2-5; *Polo*, 2013 U.S. Dist. LEXIS 60928, at *1-5, Oracle sets forth here background relevant to evaluating HP's affirmative defenses.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    discovery, Oracle learned that Terix engaged in a wide range of unlawful behavior, including

2    falsely telling Oracle hardware customers that they did not need to purchase an annual support

3    agreement with Oracle to obtain Solaris Updates and could instead obtain Solaris Updates from

4    Terix.  Am. Compl. ¶ 31.  Terix employed a number of techniques to copy and distribute

5    Oracle's copyrighted and proprietary Solaris Updates, all concealed by a carefully orchestrated

6    subterfuge under which Terix would put one of the customer's server under support with Oracle

7    and then use the access credentials associated with that support contract to support all of the

8    customer's other servers.  *Id.* ¶ 32.

9            In addition to Terix's own wrongdoing, discovery also revealed that Terix had a

10   longstanding partnership with HP—extending well prior to Oracle's acquisition of Sun in

11   2010—and that HP worked hand-in-hand with Terix to provide Solaris Updates to their joint

12   support customers.  HP represented to existing and prospective customers that the customer

13   could obtain Solaris Updates from HP and Terix, facilitated the provision of Solaris Updates to

14   customers that HP knew did not have a support contract with Oracle, and even directly installed

15   Solaris Updates for certain customers.  *Id.* ¶ 35.  After learning of HP's direct participation in

16   Terix's conduct, Oracle issued a subpoena to HP and HP made a small, limited document

17   production to Oracle.  Oracle then issued a deposition subpoena to HP, which refused to provide

18   a deponent on any topic.  On February 2, 2015, Judge Grewal ordered HP to provide a deponent

19   on a number of different topics, including all HP "internal Communications Concerning Terix

20   and Oracle Hardware Support" and HP's "access to . . . any Software and Support Materials

21   from any Oracle Support Website."[5]  *Terix*, Dkt. Nos. 412-1, 474.  HP's corporate designee,

22   ███████, was deposed on March 19, 2015.  Among other things, ██████ (testifying as HP)

23   testified that HP understood that Sun required a support contract for each server for which a

24   customer sought to download Solaris Updates:

25

26   _____

27   [5] The subpoena defined "Oracle" to include Sun Microsystems, and "Oracle Hardware Support"
     to include any technical support related to any computer or server manufactured by Oracle or
     Sun, or any server bearing the Oracle or Sun brand name that runs the Solaris operating system.

28   *Terix*, Dkt. No. 412-1.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST



The *Terix* litigation concluded shortly after Judge Grewal granted summary judgment in

Oracle's favor on Terix's and its codefendant's primary substantive defense that the original

---

[6] On a motion to strike, the Court is "not . . . required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998) (holding that the grounds for a motion to strike "must appear on the face of the pleading under attack or from matter which the court may judicially notice"). Courts often take judicial notice of a party's statements made in a prior judicial proceeding in weighing pleadings motions. *See, e.g.*, *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 2010 U.S. Dist. LEXIS 1433, at *12 (N.D. Cal. Jan. 8, 2010) (taking judicial notice of admissions made at trial and in declarations filed in a preliminary injunction proceeding when deciding a motion to dismiss; "The court will take judicial notice of admissions and concessions already made in this action; no rule of procedure requires a court to pretend these do not exist."); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y 2005) (taking judicial notice on a motion to dismiss of affidavits and pleadings submitted by plaintiff and letters written by plaintiff's counsel in another action where the documents contained statements by plaintiff which contradicted the factual allegations contained in the complaint; holding that a "court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action'" (internal citations omitted); *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 517-19 (E.D.N.Y. 1996) (taking judicial notice of an admission made in a hearing transcript in a former judicial proceeding when deciding a motion to dismiss); *Abdul-Rahman v. City of New York*, No. 10-CV-2778, 2012 U.S. Dist. LEXIS 45653, at *6-10 (E.D.N.Y. Mar. 30, 2012) (taking judicial notice of party admissions contained in trial testimony from former judicial proceeding in deciding a motion for judgment on the pleadings).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1  Solaris license agreement "provides the Solaris user with the perpetual, nonexclusive and

2  nontransferable right to use Solaris and to use patches and updates . . . ." *Terix*, Dkt. No. 359,

3  Terix Computer Company, Inc.'s Amended Answer at 29; *see also* Oracle's Am. Compl. ¶ 37.

4  This defense was premised on Terix's obvious misreading of the plain language in Sun's license

5  agreements and duplicated a misrepresentation that Terix made to countless customers (including

6  joint HP-Terix customers) as part of its "Clearvision" presentation to convince customers to

7  remain with Terix and HP.  Am. Compl. ¶ 34.  After many months of discovery on those issues,

8  Judge Grewal granted summary judgment in favor of Oracle, ruling that "Defendants violated the

9  terms of the relevant licenses by using a customer's credentials to—at the very least—download

10  patches for any number of that customer's machines, whether covered by the license terms or

11  not.  This type of use is clearly not contemplated on the face of the license agreements." *Terix*,

12  Dkt. No. 611.

13  **IV.    ARGUMENT**

14      **A.    HP's Express/Implied License Defense Fails (Defense No. 8)**

15         HP's license defense consists of two conclusory sentences:  "Upon information and

16  belief, Oracle expressly or impliedly granted licenses to parties providing service support for Sun

17  software, and/or to its customers and former customers with Solaris operating system, to use the

18  protected materials in the works that are the subject of the Asserted Copyrights.  Further, service

19  support providers and customers acted within the scope of such licenses."  Am. Answer at 18.

20  This fails to satisfy HP's obligations under *Twombly*, does not provide fair notice, and is clearly

21  contrary to Judge Grewal's ruling that no such license exists.

22         HP bears the burden of pleading sufficient factual allegations to establish a plausible

23  affirmative defense.  *See* Part II, *supra*.  To establish an express license defense, it is well

24  established that the defendant must identify the license agreements and provisions that it believes

25  excuse its infringement.  *See, e.g.*, *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995);

26  *Terix*, Dkt. No. 611 at 1; *Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1086, 1093-94 (D.

27  Nev. 2014); *Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 834 (C.D. Cal.

28  1998).  Implied license defenses are similar, and HP must allege sufficient factual allegations to

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

8

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1   establish that it or its customers were granted an implied license that covers HP's

2   infringement.  In the Ninth Circuit, the requirements for an implied license defense are

3   demanding:  "Courts have found implied licenses only in 'narrow' circumstances where one

4   party 'created a work at [the other's] request and handed it over, intending that [the other] copy

5   and distribute it.'"  *Terix*, Dkt. No. 611 at 12 (internal quotations and citation omitted); *A&M*

6   *Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001); *Metro-Goldwyn-Mayer*

7   *Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007) (rejecting implied

8   license defense where "[o]bviously, Plaintiffs did not create their copyrighted works at

9   StreamCast's request or for StreamCast's benefit").  At the pleadings stage, courts reject

10  attempts to plead license defenses where the defendant fails to plead facts sufficient to identify

11  the claimed license.  *See, e.g.*, *Sprint Commc'ns Co. v. Big River Tel. Co.*, No. 08-CV-2046,

12  2008 U.S. Dist. LEXIS 68779, *2-4 (D. Kan. Sept. 8, 2008) (striking express and implied license

13  defenses where defendant merely alleged that "[Defendant] and its accused products are

14  licensed, expressly or impliedly"; holding that such a "conclusory statement that it and its

15  products 'are licensed, expressly or impliedly,' does not sufficiently state an affirmative defense

16  under Rule 8" because "[s]uch a statement, without any identification of any particular license

17  agreement or facts giving rise to an implied license—or even an indication as to which of the two

18  types of license applies—fails to give [Plaintiff] fair notice of the defense being asserted");

19  *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 427 (S.D.N.Y. 2010) (striking a license

20  defense because the pleadings "lack any facts supporting an implied license defense"); *Sun*

21  *Microsys., Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 411 (D. Del. 2009) (striking

22  implied license defense where defendant "ha[d] not alleged the existence of an implied license

23  by any means"); *Malibu Media, LLC v. Doe*, No. 13-CV-30, 2013 U.S. Dist. LEXIS 112265, at

24  *10 (N.D. Ind. Aug. 9, 2013) ("The implied license defense is properly stricken when the

25  pleadings lack any factual support for it" (citation omitted)); *Trading Tech. Int'l, Inc. v. CQG*,

26  No. 05-CV-4811, 2012 WL 5383199, at *1 (N.D. Ill. Oct. 31, 2012) (striking implied license

27  defense where defense was "devoid of any factual basis").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    HP has made no effort to satisfy this obligation.  HP's entire defense consists of the

2    conclusory assertion that "Oracle expressly or impliedly granted licenses to parties providing

3    services for Sun support, and/or to its customers and former customers with [a] Solaris operating

4    system."  This does not specify what license HP is relying on or under what circumstances it was

5    supposedly granted.  In the *Terix* litigation, the issue of what license may have applied to permit

6    the otherwise unauthorized use of Solaris Updates was litigated extensively, as it was the

7    cornerstone of Terix's entire defense.  The only license adduced during that process was the

8    license granted by Sun and Oracle to customers with respect to the underlying Solaris operating

9    system (as distinct from Solaris Updates).  HP's defense does not even go so far as to identify

10   that as the license at issue.  But assuming that HP is, in fact, referring to the same license that

11   Terix relied on, Judge Grewal fully examined that license agreement and determined that it did

12   not authorize access to and use of Solaris Updates without the required technical support

13   agreement with Oracle.  The Court's order ruled explicitly that the type of use of Solaris Updates

14   engaged in by Terix "is clearly not contemplated on the face of the license agreements."  *See*

15   *Terix*, Dkt. 611 (granting Oracle's motion for summary judgment on Terix's express and implied

16   license defenses).  Because HP does not identify the facts underlying its license defense, most

17   notably the existence of any particular license that it contends authorized its conduct, the defense

18   should be stricken.

19       **B.    HP's Copyright Misuse Defense Fails (Defense No. 5)**

20       HP's copyright misuse defense is similarly insufficient because it fails to allege the

21   necessary facts for such a defense in the Ninth Circuit and, separately, because it relies on

22   allegations that contradict HP's own documents and prior testimony.

23       "Copyright misuse is a judicially crafted affirmative defense to copyright infringement,

24   derived from the long-standing existence of such a defense in patent litigation."  *Apple Inc. v.*

25   *Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011).  The doctrine "does not prohibit using

26   conditions to control use of copyrighted material;" instead, it only "prevent[s] copyright holders

27   from using the conditions to stifle competition."  *Id.* at 1159.  The purpose of the defense is to

28   prevent copyright holders "from leveraging their limited monopoly to allow them control of

LATHAM&WATKINS^{LLP}
ATTORNEYS AT LAW
SAN FRANCISCO

10

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    areas outside the monopoly" and the Ninth Circuit has "applied the doctrine sparingly." *Id.* at

2    1157 (quoting *A&M Records v. Napster*, 239 F.3d 1004, 1026 (9th Cir. 2001)); *see also Practice*

3    *Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 521 (9th Cir. 1997) (finding misuse where the

4    copyright holder "[c]ondition[ed] the license on [the customer's] promise not to use competitors'

5    products").

6         In the software licensing context, the Ninth Circuit expressly held that "[a] software

7    licensing agreement may reasonably restrict use of the software as long as it does not prevent the

8    development of competing products." *Psystar*, 658 F.3d at 1159.  Moreover, "copyright holders

9    may also use their limited monopoly to leverage the right to use their work on the acceptance of

10   specific conditions" and "such licensing arrangements are . . . firmly rooted in the history of

11   copyright law." *Id.*

12        *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330 (9th Cir. 1995), is

13   illustrative.  In *Triad*, the plaintiff designed computers for use in the automotive industry, and

14   licensed unique diagnostic software to service those computers. *Id.* at 1333.  The defendant was

15   an independent service organization (like HP) that serviced Triad computers. *Id.*  Triad sued the

16   defendant for copyright infringement, asserting that, in servicing Triad computers, the defendant

17   necessarily copied Triad's proprietary software to the computer's random access memory and

18   thereby infringed Triad's copyright. *Id.*  Affirming a preliminary injunction, the Ninth Circuit

19   rejected the defendant's copyright misuse claim because "Triad did not attempt to prohibit [the

20   defendant] or any other [independent service organization] from developing its own service

21   software to compete with Triad." *Id.* at 1337.  Similarly, in *Psystar*, the Ninth Circuit ruled that

22   copyright misuse did not apply to a software license agreement that restricted use of the

23   plaintiff's software to the plaintiff's own hardware because the agreement "did not restrict

24   competitor's ability to develop their own software" or preclude customers from using competing

25   components and products with the plaintiff's hardware. *Psystar*, 658 F.3d at 1160.[7]

26

27   _____

28   [7] Judge Grewal rejected a similar attempt to plead copyright misuse in the *Terix* litigation.  *See*
     *Terix*, Dkt. No. 354, at 16.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    A Ninth Circuit concurrence recently reaffirmed these holdings in *Omega S.A. v. Costco*

2  *Wholesale Corp.*, 776 F.3d 692 (9th Cir. 2015).  There, a watch manufacturer (Omega) sued

3  Costco (a discount retailer) for copyright infringement because Costco sold Omega watches

4  engraved with a minuscule copyrighted Omega logo unrelated to the watch.  *Id.* at 696, 697 n.4.

5  While the majority opinion decided the case based on unrelated copyright issues, Judge Wardlaw

6  wrote a lengthy concurrence that reaffirmed the principles articulated in *Triad* and *Psystar*.  In

7  her opinion, copyright misuse did apply to Omega's conduct.  *Id.* at 704-05.  But significantly,

8  Judge Wardlaw distinguished Omega's conduct from *Triad* and *Psystar* because, in those cases,

9  the copyright holder sought only to prohibit unlawful infringement of the copyrighted software,

10  and did not restrict customers from obtaining un-copyrighted products or services from other

11  sources.  *See id.* at 705.  Thus, Judge Wardlaw's concurrence reaffirms that Ninth Circuit law

12  squarely rejects a copyright misuse defense where the copyright holder does not prohibit

13  customers from obtaining legitimate, competing products and services from competitors, or

14  otherwise restrict competitors' ability to provide them.

15    HP does not allege any of the facts that the Ninth Circuit has made clear are necessary to

16  plead a copyright misuse defense.  HP does not allege that Oracle has ever taken steps to prevent

17  HP (or any other competitor) from developing or offering its own competing products or

18  services.  *See Triad*, 64 F.3d at 1337; *Psystar*, 658 F.3d at 1160.  Nor does HP allege that Oracle

19  prohibited its customers from obtaining un-copyrighted products from other sources.  *See*

20  *Omega*, 776 F.3d at 704-05.  The closest HP comes is a conclusory statement that Oracle

21  "misuses" its copyrights because, in addition to copyrighted Solaris Updates, Oracle's support

22  contracts also include other "non-copyrighted materials and services, including support for

23  hardware."  Am. Answer at 15.  As an initial matter, this allegation ignores the fact that Oracle

24  allows customers to choose whether to obtain hardware support from Oracle or from a different

25  provider, and (to enable this choice) offers a support service contract that does not include

26  hardware support at all:  Premier Support for Operating Systems.[8]  Moreover, nothing about

27

28  [8] Oracle's publicly available technical support policies detail its two levels of support and
describe Premier Support for Operating Systems as including only "services in support of (i)

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    HP's allegation (even if it were true) would preclude a customer from procuring hardware

2    support or any other "non-copyrighted materials and services" from an independent support

3    provider, nor do HP's allegations state that Oracle prohibits third parties from providing such

4    materials and services.  To the contrary, Oracle's complaint makes clear that customers are free

5    to obtain hardware break-fix support from third party service providers, an issue that HP

6    conceded in filings with the Court.[9]  Am. Compl. ¶ 6.

7         HP also appears to allege that Oracle engaged in copyright misuse by "inducing" its

8    customers to either purchase Oracle support agreements or violate Oracle copyrights by taking

9    "inconsistent positions" with regard to its support policies.  Am. Answer at 15-16.  Specifically,

10   HP alleges that although Oracle now requires its customers to purchase an Oracle support

11   contract in order to access software updates and patches, prior to Oracle's acquisition of Sun,

12   "Sun provided software updates and patches to its customers for little or no cost and without any

13   agreement that those customers sign up or contract with Sun for software or hardware support

14   contracts."  *Id.* at 15.  This allegation also fails to meet the standards articulated in *Triad*,

15   *Psystar*, and *Omega*.  Even if Oracle did take "inconsistent positions" with respect to how

16   customers are permitted to access Oracle's *copyrighted* Solaris Updates (as described below,

17   HP's own testimony establishes it did not), that does not constitute copyright misuse because it

18   does nothing to stop customers from seeking *uncopyrighted* materials or services from other

19   support providers.  Absent such allegations, this theory of "inconsistent positions" fails to meet

20   the standards in the Ninth Circuit because the restriction HP has identified speaks only to how

21   customers may access Oracle's proprietary, copyrighted software—something that *Triad* and

22   *Psystar* say is perfectly legitimate and does not constitute copyright misuse.

23

24

25   operating system and virtualization software for Oracle Solaris . . . and (ii) integrated software."
     RJN, Ex. 3 (making clear that customers who desire hardware support have the option of
26   purchasing a *different* level of support if they choose).

27   [9] HP itself has characterized Oracle's copyright claim as about "the software itself" and
     recognized in filings with the Court that "Oracle concedes that customers may lawfully contract
28   with third parties to provide 'break-fix' support services on Oracle's hardware."  HP Mot. to
     Dismiss, Dkt. No. 34 at 2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    Further, the suggestion that Sun provided software updates "without any agreement that

2 those customers sign up or contract with Sun for software or hardware support contracts" is false,

3 as HP well knows.  HP was ordered to and did provide a corporate witness in the *Terix* litigation

4 on a number of topics, including HP's internal communications concerning support services

5 related to Oracle/Sun servers, and HP's access to any support materials on the Oracle/Sun

6 websites.  *Terix*, Dkt. Nos. 412-1, 474.  HP's designated witness testified unequivocally and

7 repeatedly that HP understood—both before and after Oracle's acquisition of Sun—that Sun

8 required its customers to obtain a support contract for each server for which it sought to

9 download Solaris Updates.  *See* Part III, *supra*.

10    This testimony is corroborated by internal HP documents obtained in the *Terix* litigation

11 that are referenced in Oracle's complaint, which HP admits in its answer "speak for themselves."

12 The HP presentations recognize that the ███████████ required that customers ███

13 █████████████████ that a Sun ████████████████████████

14 ████████████████ and that █████████████████████

15 ████████████████████  Am. Compl. ¶ 43.  Similarly, HP's answer admits

16 that Oracle's complaint accurately quotes an email written by an HP employee who quoted Sun's

17 public support website as stating: █████████████████████

18 █████████████████████████████████████████

19 ████████████████████████████

20 Am. Compl. ¶ 44.  Now, seeking to avoid liability in this action, HP wants to walk away from its

21 own testimony and documents and allege the exact opposite—that Sun did *not* require a support

22 contract.  That allegation is both untrue and flatly inconsistent with HP's own admissions.[10]

23    HP should not be permitted to waste Oracle's—and this Court's—resources litigating

24 defenses with no good faith basis in fact.  Allowing HP to proceed to discovery on defenses

25

26 [10] Sun's Form 10-K filed with the United States Securities and Exchange Commission also
confirms the baselessness of HP's allegation.  For the fiscal year ending June 30, 2009, Sun's 10-
27 K shows over $4 billion in Support Services Revenue, of which 77% was "maintenance contract
revenue" for "technical support, software and firmware updates."  RJN, Ex. 2 (Sun
28 Microsystems, Inc. Form 10-K) at 29, 90.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1   predicated upon facts *it knows are false* would unnecessarily expand the scope of this matter and

2   force Oracle to endure pointless and burdensome discovery.  And, in any event, HP's allegations

3   are insufficient under binding Ninth Circuit law.  HP's copyright misuse defense should be

4   stricken.

5        In the alternative, if the Court allows HP to pursue this defense on the basis of these false

6   allegations, the Court should do so with notice to HP that Oracle will be permitted to seek

7   sanctions when the defense is proven false.  *See* Advisory Comm. Note to Rule 11, reprinted in

8   Federal Rules of Civil Procedure, 97 F.R.D. 165, 200-01 (1983) (stating that pleadings sanctions

9   may be determined at the end of litigation); *Matter of Yagman*, 796 F.2d 1165, 1183-84 (9th Cir.

10  1986) (holding that "in situations where a complaint or other paper is obviously and recognizably

11  frivolous when filed, or as circumstances lead the court to strongly suspect that a filed paper may

12  not be well-grounded in fact or law, the court should at a minimum provide notice to the

13  certifying attorney that Rule 11 sanctions will be assessed at the end of trial if appropriate").

14  **C.    HP's Unclean Hands Defense Fails (Defense No. 10)**

15       The Ninth Circuit applies the unclean hands defense very narrowly in the context of

16  copyright infringement.  For example, in *Supermarket of Homes, Inc. v. San Fernando Valley*

17  *Bd. of Realtors*, the court approved application of the defense only if the "defendant establishes

18  that plaintiff's evidence was false and that plaintiff was involved in a scheme to defraud the

19  public."  786 F.2d 1400, 1408 (9th Cir. 1986).  The Ninth Circuit has rejected broader

20  application of the unclean hands defense in other situations.  *See Dream Games of Arizona, Inc.*

21  *v. PC Onsite*, 561 F.3d 983, 991 (9th Cir. 2009) (rejecting an unclean hands defense even where

22  use of the copyrighted work was illegal); *see also* 4 Nimmer on Copyright § 13.09[B] ("[S]uch a

23  defense is recognized only rarely," such as "when the plaintiff misused the process of the courts

24  by falsifying a court order, by falsifying evidence, or by misrepresenting the scope of his

25  copyright to the court and opposing party.").

26       HP's unclean hands defense falls well short of what is required.  Instead, HP repeats the

27  same false allegations from its copyright misuse defense, specifically that customers purchased

28  Sun products in reliance on Sun's supposed practice of providing software updates and patches

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

15

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    to its customers without a support contract, only to be later "subject to a lawsuit for copyright

2    infringement" if they did not purchase technical support agreements.  Am. Answer at 18-19.  As

3    detailed above, HP knows these allegations are false as they contradict HP's own documents and

4    sworn testimony.

5           But even if they were true, at most HP has alleged that Sun took one approach to support

6    while Oracle took another (in truth, both companies required support agreements in order to

7    obtain access to the full suite of Solaris Updates).  That does not rise to the level of intentional

8    fraud required under the unclean hands doctrine.  *See Supermarket Homes*, 786 F.2d at 1408.

9    Nor could it for obvious reasons:  customers purchased servers from Sun for decades prior to

10   Sun's acquisition by Oracle and, even with its demonstrated willingness to stretch the limits of

11   good faith pleading, HP could not possibly allege that Sun "induced" those sales planning that,

12   years later, Oracle (an independent company until 2010) would acquire Sun and then change its

13   approach to support.  HP's defense does not (and cannot) allege facts sufficient under Ninth

14   Circuit standards, and should therefore be stricken.

15          **D.     HP's Estoppel Defense Fails (Defense No. 3)**

16          HP's estoppel defense is similarly deficient.  There are four "necessary elements" to the

17   defense of estoppel:  (1) the plaintiff must know the facts of the defendant's infringing conduct;

18   (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant

19   has a right to believe that it is so intended; (3) the defendants must be ignorant of the true facts;

20   and (4) the defendant must rely on the plaintiff's conduct to its injury.  4 Nimmer on Copyright

21   § 13.07[A] (following *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.

22   1960)); *see also Carmichael Lodge No. 2013 v. Leonard*, No. 07-CV-2665, 2009 U.S. Dist.

23   LEXIS 84857, at *49 (E.D. Cal. Sept. 16, 2009).

24          With respect to Oracle's knowledge of the infringing conduct, HP alleges only that

25   during the time period at issue, "Terix participated in [a] third-party marketplace and provided its

26   customers with Solaris updates and firmware with Sun's knowledge," Am. Answer at 6,

27   presumably to support an argument that Sun was aware of and consented to Terix's misconduct.

28   But this conclusory allegation does not state how Sun could have possibly been aware that Terix

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    was infringing its copyrights, particularly in light of the "cloak and dagger" tactics Terix

2    employed to avoid detection.[11]  *See* Am. Compl. ¶¶ 32-33.  HP does not allege any facts to

3    explain how Sun or Oracle could have nonetheless discovered Terix's true conduct, or that they

4    had actual notice of the infringing activities.  HP has therefore provided Oracle with insufficient

5    notice of the facts supporting this defense.

6         HP similarly fails to allege facts sufficient to establish that Oracle or Sun engaged in any

7    conduct evidencing relinquishment of its copyrights, much less with the intent that HP rely on it.

8    HP states that "it was reasonable to infer that Sun intended to relinquish enforcement of its

9    copyrights when it did not attempt to enforce them by charging for them or requiring that

10   customers agree to support or service contracts."  Am. Answer at 13.  However, as explained

11   above, *supra* at Section IV.B, this allegation contradicts HP documents that, in its amended

12   answer, HP admits are accurately quoted in Oracle's complaint.  This allegation also contradicts

13   admissions by HP's corporate deponent in the *Terix* litigation that Sun required support

14   agreements, and thus is not plausible or pleaded in good faith.  Finally, HP fails to allege that

15   either it or Terix was "ignorant of the true facts" underlying Oracle's infringement allegations, as

16   required for an estoppel defense.  *See* 4 Nimmer on Copyright § 13.07[A].  HP's estoppel

17   defense therefore fails.

18        **E.      HP's Abandonment Defense Fails (Defense No. 4)**

19        "Abandonment of the copyright occurs only if there is an intent by the copyright

20   proprietor to surrender rights in his work.  There is, moreover, strong authority holding that an

21   overt act evidencing such an intent is necessary to establishment abandonment."  4 Nimmer on

22   Copyright § 13.06; *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).

23        Here too, HP's primary theory is that Sun "abandoned any right it may have to enforce its

24   copyrights when it supplied Solaris updates and firmware . . . for little or no cost and without any

25   _____

26   [11] As alleged in Oracle's complaint, Terix would advise a customer to purchase a single support
     contract to lawfully obtain log-in credentials to download Solaris Updates, which Terix then
27   *unlawfully* used to supply such updates for *all* of the customer's servers.  Am. Compl. ¶ 32.  This
     "one-to-many" approach, together with other fraudulent conduct, prevented Oracle from
28   discovering Terix's infringement.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1   requirement that customers agree to support or service contracts." Am. Answer at 14. As

2   described above, this allegation contradicts HP's own documents and prior sworn testimony, and

3   is therefore implausible.

4          HP also appears to allege that Sun abandoned its copyrights by knowingly allowing Terix

5   to supply its customers with Solaris updates and firmware. Am. Answer at 15. However, once

6   again, HP does not allege any facts to support its conclusory allegation that Sun was even aware

7   of Terix's conduct—and in any event, knowingly allowing something does not constitute an

8   overt act for purposes of abandonment. *See Hampton v. Paramount Pictures Corp.*, 279 F.2d

9   100, 104 (9th Cir. 1960) (holding that a "lack of action" did not amount to abandonment); *Marya*

10  *v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975 (C.D. Cal. 2015) (holding that "evidence of

11  mere inaction or 'lack of action' is insufficient" to establish abandonment). HP has thus failed to

12  allege facts sufficient to satisfy the requirements for an abandonment defense.

13         **F.      HP's Statute of Limitations Defense Fails (Defense No. 6)**

14         HP's statute of limitations defense is similarly conclusory. HP alleges that Sun "should

15  have" been aware of Terix's conduct as early as 2008 because Oracle "did or should have" had

16  conversations with "Oracle's own customers who were allegedly receiving those infringing uses"

17  from Terix. Am. Answer at 16. This is pure conclusion and speculation. Indeed, if a customer

18  left Sun/Oracle to obtain "support" from Terix, there is no reason for that customer to speak to

19  Sun/Oracle about services Sun/Oracle were no longer providing. Any allegation that Oracle "did

20  or should have" had such conversations—without some specificity about whether such

21  conversations actually took place, or even would plausibly have taken place—is mere conclusion

22  without substance.

23         HP also asserts that Sun and Oracle were aware of downloads from its customer support

24  websites, which HP argues should have given Sun and/or Oracle knowledge of its claims. Am.

25  Answer at 16. Again, this allegation is entirely conclusory. It provides Oracle with no notice as

26  to how HP intends to establish that Oracle could have discovered Terix's conduct. This is

27  especially true when the assertion is viewed in the context of Oracle's allegations regarding the

28  numerous subterfuges engaged in by Terix to avoid detection—including Terix's "one-to-many"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1  tactic.  Am. Compl. ¶ 32.  Even if Sun and Oracle had download records of the type HP refers to,

2  as a result of the fraudulent conduct by Terix that Oracle alleges, they would show a single

3  download for a single server under a valid support contract with Oracle.  They would not show

4  what Terix and HP did next—install that patch on all of the customer's other servers that were

5  *not* covered by a support contract with Sun or Oracle.  The point of this scheme was to gain

6  access to Oracle's proprietary software and then abuse that access without detection, and nothing

7  about HP's allegations explains how Sun's or Oracle's download logs would have revealed such

8  conduct.  HP's statute of limitations claim thus fails to provide Oracle with sufficient notice as to

9  its factual basis, and should be stricken.

10  **G.     HP's Fair Use Defense Fails (No. 7)**

11       A court considering whether a defendant's infringing use of a copyrighted material is

12  excused under the fair use doctrine must consider:  (1) the purpose and character of the use,

13  including whether such use is of a commercial nature or is for non-profit educational purposes;

14  (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in

15  relation to the copyrighted work as a whole; and (4) the effect of the use on the potential market

16  for or value of the copyrighted work.  *See* 17 U.S.C. § 107.  Of these four factors, the first and

17  fourth are generally considered the most important.  *See Harper & Row Publishers v. Nation*

18  *Enters.*, 471 U.S. 539, 566 (1985) ("This last factor is undoubtedly the single most important

19  element of fair use."); *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d

20  1110, 1120 (9th Cir. 2000) ("'[N]otwithstanding the importance of the market factor, especially

21  when the market is impaired by the secondary use, it should not overshadow the requirement of

22  justification under the first factor, without which there can be no fair use.'" (quoting P. Leval,

23  *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1124 (1990))).  HP has not alleged facts

24  that could establish fair use under either factor.

25       The first factor considers whether the use is commercial and/or transformative.  *See*

26  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  Commerciality weighs against

27  fair use, while transformativeness favors it.  *See Perfect 10, Inc. v. Amazon*, 508 F.3d 1146, 1166

28  (9th Cir. 2007).  HP's use is, concededly, purely commercial.  That might not be fatal if HP's use

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    were nevertheless "transformative" in the relevant sense, *see Campbell*, 510 U.S. at 579—but it

2    plainly is not.  Here, HP has not alleged a legally cognizable transformative use of Oracle's

3    copyrighted works.  A transformative use requires that the defendant "add[] something new, with

4    a further purpose or different character, altering the first with new expression, meaning or

5    message."  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (quoting *Campbell*,

6    510 U.S. at 579) (internal quotations omitted).  Simply "combining customers' original Oracle

7    software installations with the various coding patches and other updates for each customer's

8    unique server configuration," Am. Answer at 17, does not meet this standard.  Indeed, that is

9    *precisely* the use intended when Oracle created Solaris Updates—that they be "combine[d]" with

10   the customer's "original [and copyrighted] Oracle software" in order to support the customer's

11   products.  HP is alleging the exact opposite of a transformative use—that HP used Oracle's

12   proprietary software updates in the way they were intended to be used, but *without* authorization

13   by the rights holder.  *Cf. Worldwide Church of God*, 227 F.3d at 1117 ("[W]here the use is for

14   the same intrinsic purpose as the copyright holder's such use seriously weakens a claimed fair

15   use." (quotation marks and alterations in original omitted)).  Therefore, under HP's allegations,

16   the first factor weighs heavily against a finding of fair use.[12]

17           With respect to the third factor, HP's only allegation is that "the portions of the

18   copyrighted materials allegedly used was slight in relation to the copyrighted works as a whole."

19   Am. Answer at 17.  HP's implicit premise here is that updates are not "works" in their own

20   right—because, after all, HP does not dispute that the *updates* were used in their entirety.  Even

21   accepting that (contestable) suggestion as true, the third factor still weighs against fair use

22   because the relevant analysis is not an arithmetic calculation of the fraction of the work that was

23   used, but a targeted inquiry into the *importance* of the stolen material.  Thus, in *Harper & Row*

24   *Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985), the Supreme Court reversed the Second

25   Circuit principally on the basis that that court erred in failing to consider the qualitative

26

27   [12] HP makes no allegations regarding the second factor, which "has rarely played a significant
     role in the determination of a fair use dispute."  *See Authors Guild v. Google, Inc.*, 804 F.3d 202,
28   220 (2d Cir. 2015).

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

significance of the relatively small portion of the plaintiff's work that the defendant took, *id*. at 564-65; *see also Authors Guild*, 804 F.3d at 221 ("[T]he more important the part[] of the original that is copied, the greater the likelihood that the secondary work might serve as an effective competing substitute for the original."). Here, HP itself alleges that the updates at issue were a *sine qua non* of the customers' ability to use their software. *See* Am. Answer at 17.  In view of the importance of the unauthorized material at issue, the third factor also weighs against fair use.

      HP's attempt to satisfy the fourth fair use factor similarly fails.  The fourth factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild*, 804 F.3d at 223.  Here, there is no question that it does.  Importantly, the fourth factor takes into account not just "the extent of market harm caused by the particular actions of the alleged infringer" but also the projected implications of those actions if "*unrestricted and widespread conduct* of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original."  *Green Day*, 725 F.3d at 1179 (quoting *Campbell*, 510 U.S. at 579) (internal quotations omitted) (emphasis added).  As a result, HP's allegation that, presently, "only a small fraction of customers running Oracle/Sun server hardware obtained service from Terix or HPE," Am. Answer at 17, is irrelevant because a fair use defense fails where the conduct at issue, *if it became widespread*, would have an adverse impact on the market for the original.  This legal principle comports with common sense: HP cannot be rewarded for *unsuccessfully* orchestrating a business plan predicated on infringing conduct that, if widely replicated, could seriously impact the market value of Oracle's copyrighted software.  *See Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 781 (9th Cir. 2006) ("Whenever a user puts copyrighted software to uses beyond the uses it bargained for, it affects the legitimate market for the product."); *see also* Am. Compl. ¶¶ 52-53, 67-68 (describing Oracle's injuries).

      On the facts alleged, HP's conduct is not fair use as a matter of law.  The Court should thus strike its fair use defense.  *See, e.g.*, *Erickson Prods., Inc. v. Kast*, No. 13-CV-05472, 2014

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    U.S. Dist. LEXIS 56711, at *9 (N.D. Cal. Apr. 23, 2014) (granting motion to strike fair use

2    defense and holding that "if, even after resolving all issues in favor of the opposing party, a

3    reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law

4    whether the challenged use qualifies as fair use of the copyrighted work." (quoting *Hustler*

5    *Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986)); *see also*

6    *Leadsinger, Inc. v. BMG Music Pub'g*, 512 F.3d 522, 530 (9th Cir. 2008) (holding that the

7    "assertion of fair use may be considered on a motion to dismiss, which requires the court to

8    consider all allegations to be true, in a manner substantially similar to consideration of the same

9    issue on a motion for summary judgment, where no material facts are in dispute").[13]

10   **H.      HP's Copyright Act Section 117 Defense Fails (Defense No. 9)**

11          17 U.S.C. Section 117 provides that it is not an infringement under the Copyright Act for

12   "the owner or lessee of a machine to make or authorize the making of a copy of a computer

13   program *if such copy is made solely by virtue of the activation of a machine that lawfully*

14   *contains an authorized copy of the computer program*, for purposes only of maintenance or

15   repair of that machine."  § 117(c) (emphasis added).  "It is critical to understand how extremely

16   limited this exception really is.  Making a copy is permitted only if it is automatically made by

17   turning on the machine, and then only if the machine lawfully contains an authorized copy of the

18   program."  Howard B. Abrams, 1 The Law of Copyright § 5:102 (October 2016 Update); H.R.

19   Rep. No. 105-796, 105th Cong., 2d Sess. 76 (1998) (explaining that the purpose of this addition

20   to § 117 is to "ensur[e] that an independent service provider may turn on a client's computer

21   machine in order to service its hardware components").  Indeed, under Section 117, HP must

---

[13] *See also e.g.*, *Wild v. Benchmark Pest Control, Inc.*, No. 15-CV-01876, 2016 U.S. Dist. LEXIS 34089, at *9-10 (E.D. Cal. Mar. 16, 2016) ("[D]efendants asserting a fair use of a copyrighted work must allege some facts to give a plaintiff notice of how the defense is applicable in the action."; striking fair use defense); *Amini Innovation Corp. v. McFerran Home Furnishings Inc.*, No. 13-CV-6496, 2014 U.S. Dist. LEXIS 13342, at *4 (C.D. Cal. Jan. 31, 2014) (striking fair use defense where "Defendants' First Amended Answer fails to set forth facts regarding the elements of this defense and how the defense applies to the instant Action"); *Joe Hand Promotions, Inc. v. Nguyen*, No. 11-CV-04745, 2012 WL 1183738, at *2 (N.D. Cal. Apr. 6, 2012) (striking fair use defense where allegations were "wholly insufficient in providing plaintiff adequate notice of the facts supporting the defense.  They are mere legal conclusions that fail to give plaintiff, or the court, any factual support to determine the applicability of such defenses.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1  allege and ultimately prove that the only copies created were made "by virtue of the activation of

2  a machine," and then (1) that such copies were used only for the provision of maintenance or

3  repair and were destroyed immediately after the maintenance or repair was completed; and (2)

4  any computer program or part thereof that was not necessary for the machine to be activated was

5  not accessed or used (except to the extent necessary to make the authorized copy). *See* 17 U.S.C.

6  § 117(c)(1)-(2).  HP does not allege any facts that, if taken as true, would satisfy these

7  requirements.  Its Section 117 defense fails on this basis alone.

8          Ignoring the "extremely limited" nature of Section 117, HP seeks to leverage this section

9  as a shield against HP's and Terix's rampant and intentional copying and installation of Solaris

10 Updates on their joint customers' servers, claiming that "HPE and Terix customers authorized

11 the making of a copy of Sun material as an essential step in the utilization of Sun software in

12 conjunction with the customers' servers for the sole purpose of maintaining or repairing the

13 servers."  Am. Answer at 18.  This allegation is both inadequately pleaded and immaterial to this

14 litigation.  HP has not alleged that it copied Oracle's software for the purpose of "activating" (i.e.

15 turning on) a machine that *already lawfully contained* an authorized copy of the program.  Nor

16 could it.  As Oracle's complaint alleges, HP infringed Oracle's copyrights by partnering with

17 Terix to download Solaris Updates that its customers *did not* already have from Oracle's secure

18 support website and then install that proprietary software on their customers' *unauthorized*

19 servers.  Am. Compl. ¶¶ 41-51.  Absent at least some facts indicating that Section 117 applies,

20 HP's attempt to plead this defense fails.[14]

21     **I.     HP's Laches Defense Fails (Defense No. 2)**

22          Laches is not a viable defense to a copyright claim.  In *Petrella v. Metro-Goldwyn-*

23 *Mayer, Inc.*, the Supreme Court considered whether laches could serve as a defense to copyright

24

---

25 [14] Insofar as HP is alleging that its conduct is protected under 17 U.S.C. § 117(a), it has not, and
   cannot, allege that it is an "owner" of a copy within the meaning of that provision.  *See Vernor v.*
26 *Autodesk*, 621 F.3d 1102, 1110-11 (9th Cir. 2010) (holding that licensees are not entitled to the
   essential step defense under Section 117(a) and that, to assess ownership for the purposes of
27 Section 117, a Court must consider: "whether the copyright owner specifies that a user is granted
   a license"; "whether the copyright owner significantly restricts the user's ability to transfer the
28 software"; and "whether the copyright owner imposes notable use restriction.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1    infringement.  134 S. Ct. 1962 (2014).  The Court held that "laches is a defense developed by

2    courts of equity; its principal application was, and remains, to claims of an equitable cast for

3    which the Legislature has provided no fixed time limitation."  *Id.* at 1973.  Accordingly, "we

4    adhere to the position that, in [the] face of a statute of limitations enacted by Congress, laches

5    cannot be invoked to bar legal relief."  *Id.* at 1974.  Because the Copyright Act has a three-year

6    statute of limitations that starts running each time a new infringing act is discovered, the Court

7    held that laches could not bar the claim.  *Id.* at 1973 & 1969 n.4.  *Petrella*'s reasoning applies

8    equally to prohibit the application of the laches doctrine to Oracle's state law claims, which are

9    governed by two-year statutory limitations periods.  *See Terix*, Dkt. No. 603 at 7 (ruling that

10   "[w]hile the case primarily addressed the Copyright Act, the Court's reasoning logically extends

11   the basic premise to all statutory frameworks that include a statute of limitations" and striking a

12   laches defense as to state law fraud and tort claims); *see also* Cal. Code Civ. Proc. § 339(1) (two-

13   year statute of limitations for tortious interference with contract and prospective economic

14   advantage); Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action

15   pursuant to [the UCL] shall be commenced within four years after the cause of action accrued.").

16   HP's laches defense thus fails as a matter of law.

17          **J.      Oracle's Motion To Strike Should Be Granted With Prejudice**

18          Oracle's motion to strike should be granted with prejudice.  HP already amended its

19   answer once in an attempt to address the deficiencies Oracle identified in its first motion to

20   strike.  *See* Part I & n.1, *supra*.  In addition, prior to filing this motion, Oracle twice requested

21   that HP further amend its answer to omit the allegations that contradict its documents and

22   corporate deposition testimony.  The "failure to correct the deficiencies" in a pleading

23   "reasonably suggests" the inability to do so, and therefore "[l]eave to amend" should be

24   "denied."  *Jamison v. Capello*, No. 10-CV-01633, 2013 WL 6182035, at *5 (E.D. Cal. Nov. 25,

25   2013).  HP has had ample opportunity to properly plead its affirmative defenses.  It should not be

26   given a third bite at the apple.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir.

27   2013) ("A district court's discretion to deny leave to amend is particularly broad" where the

28   party "has previously amended." (quotation marks omitted)); *Bhandari v. Capital One, N.A.*, No.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST

1 | 12-CV-04533, 2013 U.S. Dist. LEXIS 139712, *16 (N.D. Cal. Sept. 27, 2013) (Grewal, J.)

2 | (denying leave to amend where plaintiff had previously amended, was on notice of what was

3 | defective in the pleading, and the amendment failed to cure it).

4 | **V.     CONCLUSION**

5 |      In light of the foregoing, Oracle respectfully requests that the Court strike HP's

6 | affirmative defense Nos. 2, 3, 4, 5, 6, 7, 8, 9, and 10.

7 |

8 | Dated:  October 18, 2016                    Respectfully submitted,

9 |                                                            LATHAM & WATKINS LLP

10 |

11 |                                             By:    /s/ Christopher S. Yates
   |                                                     Christopher S. Yates

12 |                                                     Attorneys for Plaintiffs
   |                                                     Oracle America, Inc. and
13 |                                                     Oracle International Corporation

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

ORACLE'S MOTION TO STRIKE HP'S
AFFIRMATIVE DEFENSES
CASE NO. 3:16-CV-01393-JST