LATHAM & WATKINS LLP
  Christopher S. Yates (SBN 161273)
  Christopher B. Campbell (SBN 254776)
  Brittany N. Lovejoy (SBN 286813)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:   chris.yates@lw.com
          christopher.campbell@lw.com
          brittany.lovejoy@lw.com

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  Deborah K. Miller (SBN 95527)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114
Email:    dorian.daley@oracle.com
          deborah.miller@oracle.com

ORACLE CORPORATION
  Jeffrey S. Ross (SBN 138172)
10 Van de Graaff Drive
Burlington, MA 01803
Telephone: 781.744.0449
Facsimile: 781.238.6273
Email:    jeff.ross@oracle.com

Attorneys for Plaintiffs
Oracle America, Inc. and Oracle
International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation; and DOES 1–50,<br><br>Defendants. | CASE NO. 3:16-cv-01393-JST<br><br>**ORACLE'S OPPOSITION TO HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OR A RULE 56(g) ORDER**<br><br>Date:     June 14, 2018<br>Time:     2:00 PM<br>Place:    Courtroom 9, 19th Floor<br>Judge:    The Honorable Jon S. Tigar |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................. 3

      A.   Oracle Requires Contracts To Access And Apply Solaris Patches ...................... 3

      B.   The Infringing HPE-Terix Business Model ................................................. 3

      C.   HPE's Direct Provision Of Patches ............................................................ 8

      D.   Oracle's Discovery Of HPE's And Terix's Misconduct................................. 8

III.  ARGUMENT ...................................................................................................... 9

      A.   Terix Infringed Oracle's Copyrights................................................... 9

      B.   HPE Is Vicariously Liable For Terix's Infringement ......................... 12

           1.   HPE Had The Right And Ability To Supervise Terix ........................... 12

           2.   HPE Obtained A Direct Financial Benefit From Terix's
                Conduct ............................................................................... 13

      C.   HPE Is Liable For Contributory Infringement................................... 13

           1.   HPE Promoted Terix's Unlawful Business Model ........................... 13

           2.   HPE Had Knowledge Of And Encouraged Terix's
                Infringing Conduct............................................................... 14

      D.   HPE Is Liable For Copyright Infringement With Respect To
           █████████ ............................................................................. 16

      E.   HPE Is Liable For Infringement As To The Direct Support
           Customers ........................................................................... 16

      F.   HPE Is Not Entitled To Summary Judgment On Oracle's
           Intentional Interference With Prospective Economic Advantage
           Claim................................................................................. 17

      G.   HPE Is Not Entitled To Summary Judgment On Oracle's Claim
           For Intentional Interference With Contractual Relations.................... 19

      H.   HPE Is Not Entitled To Summary Judgment On Statute of
           Limitations ......................................................................... 19

           1.   Terix And HPE Concealed Their Misconduct From Oracle.............. 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

2.      HPE's Evidence Is Insufficient, Disputed, And Fails Because Oracle Conducted A Reasonable Investigation And Found No Wrongdoing ................................ 22

3.      Both HPE And Terix Expressly Assured Oracle (and Sun) That They Were Not Violating Oracle Support Policies Or Infringing ................................ 24

I.      Oracle Owns All Copyrights At Issue ................................ 25

IV.    CONCLUSION ................................ 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1

**TABLE OF AUTHORITIES**

**PAGE**

2

3

**CASES**

4

*A&M Records, Inc. v. Napster, Inc.*,

5

239 F.3d 1023 .......................................................................................... 12, 13, 15

6

*April Enters. v. KTTV*,

7

147 Cal. App. 3d 805 (1983) ........................................................................... 22

8

*Baxter v. MCA, Inc.*,

9

812 F.2d 421 (9th Cir. 1987) ........................................................................... 11

10

*BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*,

11

2010 WL 3853025 (N.D. Cal. Sept. 29, 2010) ............................................... 18

12

*BMG Rights Mgmt. (US) v. Cox Commc'ns, Inc.*,

13

881 F.3d 293 (4th Cir. 2018) ........................................................................... 16

14

*Bridge Publ'ns, Inc. v. Vien*,

15

827 F. Supp. 629 (S.D. Cal. 1993) .................................................................. 27

16

*C.A. Inc. v. Rocket Software, Inc.*,

17

579 F. Supp. 2d 355 (E.D.N.Y. 2008) ............................................................ 27

18

*Columbia Pictures Indus., Inc. v. Fung*,

19

710 F.3d 1020 (9th Cir. 2013) ......................................................................... 14

20

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,

21

479 F.3d 1099 (9th Cir. 2007) ......................................................................... 19

22

*Data East USA, Inc. v. Epyx, Inc.*,

23

862 F.2d 204 (9th Cir. 1988) ........................................................................... 12

24

*Del Campo v. Am. Corrective Counseling Serv.*,

25

718 F. Supp. 2d 1116 (N.D. Cal. 2010) .......................................................... 21

26

*Dyniewicz v. United States*,

27

742 F.2d 484 (9th Cir. 1984) ........................................................................... 24

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1   *El Pollo Loco Inc. v. Hashim,*
2       316 F.3d 1032 (9th Cir. 2003) ......................................................................... 22, 23
3   *Ellison v. Robertson,*
4       357 F.3d 1072 (9th Cir. 2004) ......................................................................... 14, 15
5   *Fahmy v. Jay-Z,*
6       F. Supp. 2d 783 (C.D. Cal. 2011) .................................................................... 24, 25
7   *Fonovisa, Inc. v. Cherry Auction, Inc.,*
8       76 F.3d 259 (9th Cir. 1996) ............................................................................. 13, 14
9   *Goldberg v. Cameron,*
10      2009 WL 2051370 (N.D. Cal. July 10, 2009) .......................................................... 25
11  *Grant Heilman Photography, Inc. v. McGraw-Hill Cos.,*
12      2012 WL 5944761 (E.D. Pa. Nov. 28, 2012) ........................................................... 25
13  *Hopkins v. Andaya,*
14      958 F.2d 881 (9th Cir. 1992) ................................................................................... 12
15  *Intermedics, Inc. v. Ventritex, Inc.,*
16      775 F. Supp. 1258 (N.D. Cal. 1991) ................................................................ 22, 24
17  *Korea Supply Co. v. Lockheed Martin Corp.,*
18      29 Cal. 4th 1134 (2003) ........................................................................................... 18
19  *Loomis v. Cornish,*
20      836 F.3d 991 (9th Cir. 2016) ................................................................................... 11
21  *Luvdarts, LLC v. AT&T Mobility, LLC,*
22      710 F.3d 1068 (9th Cir. 2013) ................................................................................. 16
23  *Merck & Co. v. Reynolds,*
24      559 U.S. 633 (2010) ................................................................................................ 22
25  *MGM v. Grokster, Ltd.,*
26      545 U.S. 913 (2005) .......................................................................................... 14, 15
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-01393-JST

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,

    692 F.3d 983 (9th Cir. 2012) ................................................................................. 18

*mophie, Inc. v. Shah*,

    2014 WL 10988347 (C.D. Cal. Nov. 12, 2014)...................................................... 13

*Oracle USA, Inc. v. Rimini Street, Inc.*,

    6 F. Supp. 1108 (D. Nev. 2014).................................................................... 25, 26, 27

*Perfect 10, Inc. v. Amazon.com, Inc.*,

    508 F.3d 1146 (9th Cir. 2007) ......................................................................... 14, 16

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

    494 F.3d 788 (9th Cir. 2007) ................................................................................. 13

*Petrella v. MGM*,

    134 S. Ct. 1962 (2014) .......................................................................................... 21

*Polar Bear Prods., Inc. v. Timex Corp.*,

    384 F.3d 700 (9th Cir. 2004) ..................................................................... 21, 22, 23

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,

    668 F.3d 1148 (9th Cir. 2012) ............................................................................... 12

*Roley v. New World Pictures, Ltd.*,

    19 F.3d 479 (9th Cir. 1994) ................................................................................... 21

*Routt v. Amazon.com, Inc.*,

    584 Fed. App'x 713 (9th Cir. 2014) ...................................................................... 13

*Russell v. Price*,

    612 F.2d 1123 (9th Cir. 1979) ............................................................................... 28

*Swipe & Bite, Inc. v. Chow*,

    147 F. Supp. 3d 924 (N.D. Cal. 2015) .................................................................. 20

*Sylve v. Riley*,

    15 Cal. App. 4th 23 (1993) .................................................................................... 22

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
  1 Cal. 3d 586 (1970) ................................................................................................ 22

*Viasphere Int'l, Inc. v. Vardanyan*,
  12-cv-01536, 2017 WL 1065191 (N.D. Cal. Mar. 21, 2017) ............................................. 22

*Visto Corp. v. Sprogit Techs., Inc.*,
  360 F. Supp. 2d 1064 (N.D. Cal. 2005) ....................................................................... 19

*William A. Graham Co. v. Haughey*,
  568 F.3d 425 (3d Cir. 2009) ....................................................................................... 28

**STATUTES**

17 U.S.C. § 106 ........................................................................................................ 16

17 U.S.C. § 106(1) ..................................................................................................... 9

17 U.S.C. § 106(3) ..................................................................................................... 9

17 U.S.C. § 507(b) .................................................................................................... 19

Cal. Bus. Prof. Code § 17208 .................................................................................... 20

Cal. Civ. Proc. Code § 339 ........................................................................................ 20

**OTHER AUTHORITIES**

4 Nimmer on Copyright § 13.01 ................................................................................. 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

**TABLE OF ABBREVIATIONS**

| | Document |
|---|---|
| LD Exs. 1-106 | Exhibits to the Declaration of Brittany N. Lovejoy in Support of Plaintiffs Oracle America, Inc. and Oracle International Corporation's Motion for Partial Summary Judgment (Dkt. No. 462) |
| LD Exs. 107-217 | Exhibits to the Declaration of Brittany N. Lovejoy in Support of Oracle's Opposition to Hewlett Packard Enterprise Company's Motion for Summary Judgement, or in the Alternative, Partial Summary Judgement or a Rule 56(g) Order, *filed concurrently herewith* |
| CD | Declaration of Samuel M. Chan in in Support of Oracle's Opposition to Hewlett Packard Enterprise Company's Motion for Summary Judgement, or in the Alternative, Partial Summary Judgement or a Rule 56(g) Order, *filed concurrently herewith* |
| ED | Declaration of Blaine H. Evanson in Support of Hewlett Packard Enterprise Company's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment or a Rule 56(g) Order (Dkt. No. 469) |
| Edwards Decl. | Declaration of Robert S. Edwards in Support of Oracle's Opposition to Hewlett Packard Enterprise Company's Motion for Summary Judgement, or in the Alternative, Partial Summary Judgement or a Rule 56(g) Order, *filed concurrently herewith* |
| GD | Declaration of Daniel A. Goe in Support of Oracle's Motion for Partial Summary Judgment (Dkt. No. 460) |
| Henslee Decl. | Declaration of Robin Henslee in Support of Oracle's Motion for Partial Summary Judgment (Dkt. No. 461) |
| HD | Declaration of Christian B. Hicks in Support of Plaintiffs Oracle America, Inc. and Oracle International Corporation's Motion for Partial Summary Judgment (Dkt. No. 472-13) |
| HD2 | Declaration of Christian B. Hicks in Support of Oracle's Opposition to Hewlett Packard Enterprise Company's Motion for Summary Judgement, or in the Alternative, Partial Summary Judgement or a Rule 56(g) Order, *filed concurrently herewith* |
| Liversidge Ex. | Exhibits to the Declaration of Samuel Liversidge in Support of Hewlett Packard Enterprise Company's Request for Judicial Notice (Dkt. No. 465-2) |
| PD | Declaration of Robert Edwards in Support of Oracle's Opposition to Hewlett Packard Enterprise Company's Motion for Summary Judgement, or in the Alternative, Partial Summary Judgement or a Rule 56(g) Order, *filed concurrently herewith* |
| RJN | Exhibits to Oracle's Oracle's Request for Judicial Notice in Support of its Opposition to Hewlett Packard Enterprise Company's Motion For Summary Judgment or, in the Alternative, Partial Summary Judgment or a Rule 56(g) Order, *filed concurrently herewith* |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

## I.  INTRODUCTION

HPE's Motion creates a strawman—arguing Oracle must show *installation* of a particular patch on a particular customer's server to establish copyright infringement—and then repeatedly claims that Oracle has no evidence of such installations.  Both contentions are wrong.  HPE's Motion ignores reams of evidence showing that HPE and its subcontractor, Terix, violated Oracle's intellectual property rights in its Solaris software in a variety of ways.  Terix made unlicensed copies when it downloaded thousands of patches from Oracle's support website. HPE and Terix made unlicensed copies when they built internal repositories of patches for use on HPE customer servers.  HPE and Terix also made illicit copies by placing patches on file transfer sites and servers that customers accessed and used.  Those copies were all made as part of Terix's unlawful business model, which Terix designed to ensure ready access to Solaris patches and installation on servers that were not covered by Oracle support agreements, and which HPE profited from.  HPE and Terix relied on this practice to entice Oracle customers with seemingly competitive support offerings at cut-rate prices.  Terix admitted in discovery to making unauthorized copies of Oracle's intellectual property, and stipulated to a $57 million judgment for copyright infringement.  Terix executives also pleaded guilty to federal wire fraud charges in connection with the same conduct.  All of this evidence—ignored by HPE— forecloses HPE's Motion and entitles Oracle to summary judgment on its copyright claims.

**HPE is Contributorily Liable for Terix's Infringement:** Internal HPE documents confirm that HPE promoted and contributed to Terix's infringement by sending customers to Terix who HPE *knew* required Solaris patches but did not have or were not intending to obtain Oracle support contracts.  HPE employees also facilitated Terix's delivery of unauthorized patches to customers despite knowing that Terix's conduct ran afoul of Oracle's rights.

**HPE is Vicariously Liable for Terix's Infringement:** HPE held the prime contract with the joint HPE-Terix customers, and served as the customers' single point of contact.  , and HPE had the unfettered ability to supervise and control Terix's infringing conduct as to their jointly serviced customers.  The law requires nothing more.

**HPE Directly Infringed Oracle's Copyrights:** HPE also ignores the substantial evidence that HPE directly infringed Oracle's copyrights.  HPE employees admitted in deposition to installing patches provided by Terix on ███ servers that did not have Oracle support contracts.  And HPE further admitted that, for █ customers that HPE supported directly without any Terix involvement, HPE employees downloaded Solaris patches and installed them on customer servers.  Forensic analysis of HPE's installation data for a subset of those servers revealed more than 200 installations of Solaris patches on servers during periods when the devices were not under Oracle support.

**HPE Interfered with Existing and Prospective Customer Relationships:** HPE likewise disregards the extensive evidence, including customer testimony, that HPE interfered with Oracle's customer relationships by telling customers that they could obtain Solaris patches from Terix if the customers entered into a support relationship with HPE instead of Oracle. HPE's own business records expressly describe its practice of directing to Terix any customer that wanted Solaris patches but did not want to pay Oracle for the required support contract. HPE's Motion likewise fails to address the multiple contractual relationships between the customers at issue and Oracle that HPE indisputably disrupted as a result of that practice.

**Oracle's Lawsuit is Timely:** Oracle did not discover and could not have reasonably discovered Terix's or HPE's misconduct until after May 2013.  The tactics Terix and HPE used to conceal their unlawful business model prevented Oracle from discovering their activity— indeed, Oracle investigated Terix in April 2012 and was unable to identify a single instance of unauthorized downloading.  Thus Oracle did not have reason to file suit against Terix until improper activity with a non-HPE customer came to light.  Further, Oracle only discovered Terix's misconduct with regard to an HPE-Terix customer in June 2013, and it was not until even later that discovery in the *Terix* litigation revealed HPE's involvement in Terix's scheme. Moreover, HPE's and Terix's false assurances to Oracle that they were not infringing Oracle's intellectual property alone preclude summary judgment; courts have awarded summary judgment to *plaintiffs* on similar facts.  Oracle's claims are timely, and HPE's Motion should be denied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

## II.  STATEMENT OF FACTS

### A.  Oracle Requires Contracts To Access And Apply Solaris Patches

Oracle requires hardware customers to purchase an annual support contract if they want the right to access patches and updates to Oracle's Solaris Operating System and system firmware (collectively "patches").  A customer must purchase a support contract for *every server* for which a customer wants to apply patches.  Henslee Decl. ¶¶ 5-9, 8; GD ¶¶ 4-6.  Customers with an active Oracle support contract receive credentials to access Oracle's secure website, My Oracle Support ("MOS"), to download patches for entitled servers.  Henslee Decl. ¶ 7.

### B.  The Infringing HPE-Terix Business Model

Terix and HPE are two of many third party maintainers ("TPMs") that provide support services to Oracle hardware customers.  TPMs may legitimately provide hardware "break-fix" support for Oracle servers.  However, because TPMs neither own nor have rights to distribute Oracle's proprietary Solaris patches, customers who want those patches must purchase a Premier Support contract from Oracle.[1]  HPE and Terix jointly serviced certain Oracle hardware customers, with Terix operating as HPE's subcontractor.  Unbeknownst to Oracle, their services went beyond break-fix support:  Terix and HPE told customers that they could provide patches *without* the customer purchasing a support contract from Oracle.  *See, e.g.*, LD Ex. 157 at 19:2-21:19 ("                                                      ");
Ex. 149 at 54:5-57:20, 62:8-24
                              "); Ex. 24 at -44 ("
                              "); Ex. 155 at 200:5-15; Ex. 61 at -53 ("

---

[1] Oracle offers two levels of support: Premier Support for Systems, which includes both break-fix and operating system/firmware support; and Premier Support for Operating Systems, which includes just operating system/firmware support (i.e., access to patches).  Henslee Decl. ¶ 4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-01393-JST

1 ▮▮▮▮▮"); Ex. 129 at -94 (▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮"); Ex.

4 176; Ex. 37 at -04.

5      Terix used a formal presentation called "Clearvision" to convince customers it could

6 lawfully supply Oracle patches.  *See id.* Ex. 120; Ex. 188 at 19.  HPE claims it "did not

7 participate," Mot. at 6 n.2, yet HPE arranged Clearvision meetings between customers and Terix,

8 and sometimes took part.  *Id.* Ex. 138 at 89:8-11; Ex. 126; Ex. 127; Ex. 128.[2]  HPE knew exactly

9 what Clearvision and its intended purpose was.  *See id.* Ex. 138 at 73:19-23, 74:19-76:4, 82:10-

10 21; Ex. 139 at 121:5-13; Ex. 163; Ex. 53 at -302 ("▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮"); Ex. 158 at 87:1-89:4.

12      A centerpiece of Terix's Solaris support model was its covert "one-to-many" approach.

13 Terix gained access to patches on Oracle's website by putting a single server under support with

14 Oracle.  Then, in violation of Oracle's support policies and the MOS Terms of Use, Terix used

15 the customer's login credential associated with that server to obtain Solaris patches for the

16 customer's *other* Solaris servers that were *not* covered by a contract with Oracle—but which

17 HPE and Terix agreed to support.  *See, e.g., id.* Ex. 132 at 158:10-23, 174:18-175:3; Ex. 154 at

18 193:22-194:16; Ex. 147 at 19:8-22:10, 62:9-65:23, 74:19-75:3, 80:25-81:17.  ▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮, *id.* at -14-19.

21      Terix and HPE went to great lengths to conceal this illegal conduct from Oracle.  They

22 instructed customers to purchase the single support contract in the *customers' name*, using a

23 prepaid credit card provided by Terix, and had the customers correspond with Oracle using form

24 emails that Terix drafted.  *See id.* at -12-21; Ex. 179 at -10.  Terix also used "dummy" credentials

---

[2] Oracle only learned through discovery in the *Terix* litigation about Clearvision and its core proposition that customers acquired a "license" to all future patches simply by purchasing a server running Solaris.  *See* LD Ex. 188 at 19. Sun and Oracle never granted such a license. Judge Grewal confirmed this, granting summary judgment for Oracle and holding that Terix's conduct was "plainly" not authorized by any Solaris license agreement.  RJN Ex. 18.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1  to download patches for customers and avoid detection by Oracle.  For example, Terix created a

2  fictitious organization ("Summit") to "███████████████████" and then set up a fake support

3  contract under a race car driver's name that was used to download patches for unsupported

4  customer servers.  *See id.* Ex. 147 at 53:17-56:14, 72:2-73:1, 224:12-226:1; Ex. 133 at 380:4-

5  381:1; Ex. 148 at 524:1-526:20; RJN Exs. 3-6; HD Ex. 1, ¶¶ 69-71 (Terix downloaded 11 out of

6  20 patches requested by ██████ using the "Summit" credential, and Oracle's ARU database

7  shows more than 2,500 Summit downloads).  ████████████████████████████████████

8  ████████████████, *see* LD Ex. 28 at -407, which were designed to prevent Oracle from

9  discovering Terix's unlawful conduct, *see e.g.*, *id.* Ex. 133 at 493:2-495:13; Ex. 132 at 46:12-16,

10  174:15-175:-23.  HPE knew of and participated in this ruse.  *See id.* Ex. 29.

11        Oracle's expert confirmed that Terix used fraudulently obtained MOS access credentials

12  to download thousands of patches for dozens of customers, including customers at issue in this

13  case.  *See* Ex. 180; HD ¶ 15.  Terix also created repositories of patches and firmware, so that it

14  could fulfill customer requests for patches on demand.  *See* LD Ex. 147 at 28:15-25, 31:6-9;

15  32:2-18, 33:7-9; Ex. 148 at 524:1-526:20; Ex. 135 at 148:9-21.  After Terix downloaded patches,

16  Terix and HPE worked together to deliver them to customers using an FTP site.  *See id.* Ex. 147

17  at 20:24-21:6; Ex. 154 at 55:5-56:11; Ex. 129 at -94.  HPE employee Nancy Klevickis explained

18  the process to ████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ██" *Id.* Ex. 109; *see also* Ex. 149 at 126:10-21; Ex. 29.  HPE and Terix used the same process

21  with other customers, including ██████.  *See, e.g.*, *id.* Ex. 108 at -428 (HPE:

22  ████████████████████████████████████████████████

23  ████████████████████████████████") ; Ex. 70 at -79 ("████████████

24  ████████████████████████").  Customers would then install the patches on

25  servers that were not covered by Oracle support contracts.  *See, e.g.*, *id.* Ex. 157 at 137:12-23

26  ("████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1    ██████ "); Ex. 58. Terix admitted that it used this approach to deliver patches *or* set up access

2    credentials for almost every HPE-Terix customer at issue to ensure it could provide them with

3    patches on request. *See id.* Exs. 188, 130, 121; *see also* RJN Ex. 2. Four Terix executives

4    pleaded guilty to wire fraud in connection with this conduct. RJN Exs. 6-9.

5         HPE contributed to this unlawful support model. For the joint customers, HPE recruited

6    Terix so that the customers could avoid the cost of an Oracle support contract but still obtain

7    patches. A widely-distributed July 2011 communication covering HPE's "████████████

8    ████████████████████████████

9    ████████████████████████████" LD

10   Ex. 37. ████████████ *Id.* ████████████

11   ████████████████████████████

12   ████████████████████████████

13   ████████" *Id.* at -04 (emphasis added); *see also* Ex. 40 at -35 ("████████

14   ████████████████████████████

15   ████████"); Ex. 111 ("████████████████████

16   ████████████"); Ex. 41 at -58; Exs. 42, 177.

17        HPE had direct contractual oversight of Terix and the joint customers. ████████

18   ████████████████████████████

19   ████████████████████████████

20   ████████████████████████████" *Id.* Ex. 46 at

21   -487; *see also* Ex. 143 at 10:1-16 (HPE "████████████████████

22   ████████████████████████████

23   ████████████████████████████

24   ████████████" *Id.* Ex. 46 at -510. And HPE acted as a

25   liaison between the customer and Terix to ensure that customers received access to patches. *See,*

26   *e.g.*, *id.* Ex. 157 at 71:3-10 (HPE "████████████████████"); Ex. 47

27   (HPE to ████████████████████████

28   ████████"); Ex. 150 at 35:16-20 ("████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1  ██████████████████████████████████████████████████████████████████

2  ████████████"); *see also* Ex. 158 at 87:1-5, 88:4-12 (████████████████

3  ███████████████████████████████████████████████████").  In fact, HPE's

4  sales pitch touted its supervisory role as a customer's single point of contact.  *Id.* Ex. 151 at

5  159:15-160:11, 184:11-15; Ex. 145 at 43:16-25.

6          Contrary to HPE's claim, *see* Mot. at 11-12, the evidence shows that HPE understood

7  that Terix could not lawfully provide patches to customers for servers not covered by an Oracle

8  support contract.  HPE knew that Oracle always requires a support contract for all servers that

9  needed access to patches, and that Oracle prohibited use of patches on unsupported servers.  *See,*

10  *e.g.*, *id.* Ex. 156 at 212:18-23; Ex. 141 at 28:14-29:6, 41:3-11, 65:11-66:11, 80:5-8; Ex. 155 at

11  54:15-55:24; Ex. 23 ("████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████████████

13  ████████████████████████"); Ex. 22 ("█████████████████████████████

14  ██████████████████████████████████").  Oracle's

15  requirement is industry-standard, ED ¶ 12, and HPE has a nearly identical requirement for its

16  own operating system patches, LD Ex. 12 at 97:13-20, 118:18-119:3.  Nonetheless, HPE

17  engaged Terix to provide illegally acquired patches because it knew that it could not compete

18  effectively with Oracle for support services on Oracle hardware without providing Solaris patch

19  access.[3]  *See id.* Ex. 157 at 20:21-25 (████████████████████████████████); Ex. 65

20  ("█████████████████████████████████████████████████████████████████

21  ████████████████████████████████████"); Ex. 152 at 24:5-10 (patches

22  were an "█████████████████████████); Ex. 150 at 33:6-34:3 ("██████████████

23  ████████████████████").[4]

---

[3] HPE needed the revenue that the Terix relationship provided.  *See* LD Ex. 151 at 217:12-25.
Indeed, establishing a support relationship was only the first step in HPE's strategy to displace
Oracle hardware from a customer's datacenter.  *See, e.g.*, *id.* Ex. 189 at -66-67; Ex. 165 at -08.

[4] HPE has often claimed in this case that its contracts do not include patches or covered
"advisory support" only, and required customers to have "valid rights" to them.  Such provisions
are irrelevant in the face of evidence that HPE knew the customers needed patches and
specifically engaged Terix to provide them.  *See supra* II.B; LD Ex. 139 at 215:5-12.  Moreover,
some HPE contracts expressly included patches.  LD Ex. 119 at -530; Ex. 161 at -67.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

7

C.     **HPE's Direct Provision Of Patches**

HPE also provided patches directly to customers for use on unsupported servers.  HPE employees admitted to installing Solaris patches obtained from Terix on ███████ servers that were not under Oracle support.  *See id.* Ex. 137 at 25:9-23, 68:14-23, 102:25-103:6, 221:15-222:6; *see also* Ex. 45 at 8; Ex. 142 at 58:3-6, 86:1-5, 88:17-23.  ████████ is just one example. HPE admits that it downloaded and installed patches for at least ███ other customers.  *See* Dkt. No. 133 at 5.  Oracle's expert analyzed data produced by HPE on those customers and found over 200 instances of patching on unauthorized servers.  HD ¶¶ 8-11; HD2 ¶¶ 10-14 & Exs. 4-5.

D.     **Oracle's Discovery Of HPE's And Terix's Misconduct**

Oracle knew that Terix and HPE, among many other TPMs, provided hardware break-fix support.  Moreover, a different arm of HPE's support business lawfully procures Solaris support (for customer servers not at issue here) by purchasing Oracle support contracts.  LD Ex. 155 at 75:21-80:14.  Despite having knowledge of Oracle's policies and a ready line of contact with Oracle's support organization, HPE did not alert Oracle to Terix's misconduct or ever ask Oracle if it was legitimate.  *See, e.g.*, *id.* Ex. 155 at 162:14-163:15; Ex. 137 at 103:14-104:4; Ex. 151 at 120:14-122:14, 239:1-22; Ex. 134 at 284:7-285:7.

Instead, Terix and HPE went to the extensive lengths described above to conceal their misconduct from Oracle and prevent detection.  *Supra* at II.B.  Terix's fraudulent model was effective because it was extremely difficult to detect. ████████████████████████████ ██████████████████████████████████████████████, CD Ex. ¶ 6, which is precisely what Terix and HPE exploited to hide their misconduct.  Even if Oracle had suspected improper access, Terix's use of customer and fake names meant that Terix's name never appeared in Oracle's systems for hardware support, and still does not today. HD Ex. 1, ¶ 92.  Moreover, Terix and HPE assured Oracle repeatedly that they were *not* improperly using any Oracle intellectual property or providing patches for unentitled servers. *See* LD Exs. 86-88, 122. ██████████████████████████████████ ████████████████████████████████████████" *Id.* Ex. 86.  And in 2013, when Oracle first learned of a potential issue at Bank of New York Mellon ("BNYM")—a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    customer *not* supported by HPE and not at issue here—Terix denied wrongdoing and assured

2    Oracle that Terix was not improperly accessing Oracle's intellectual property.  *See id.* Ex. 172.

3    HPE made similar assurances.  In 2011, the HPE employee responsible for the Oracle-HPE

4    relationship represented to Oracle that "█████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████████

6    ██████████████"  *Id.* Ex. 122 at -76-77; *see also* Ex. 155 at 157:5-162:13.

7           It was only by first uncovering Terix's conduct as to non-HPE customers, investigating,

8    and then suing Terix in July 2013 that Oracle discovered HPE's copyright infringement and

9    tortious interference with respect to the joint HPE-Terix customers.  This is consistent with how

10   Oracle typically pursues those who infringe its intellectual property.  RJN Exs. 14-17.  Terix

11   ultimately stipulated to judgment.  *Terix*, Dkt. No. 652.  This lawsuit followed.

## III.   ARGUMENT

### A.   Terix Infringed Oracle's Copyrights

14          HPE's lead argument is that no infringement occurred at all (*including* by Terix, even

15   though Terix stipulated to judgment for copyright infringement and its employees pleaded guilty

16   to wire fraud charges) because it contends that Oracle cannot point to evidence that Terix or HPE

17   installed a patch on any server not entitled to it.  HPE's argument is wrong and predicated upon

18   an incorrect, overly narrow view of infringement that ignores the many other forms of illicit

19   copying by Terix.  The Copyright Act grants copyright holders exclusive rights to "reproduce"

20   and "distribute copies" of a copyrighted work.  *See* 17 U.S.C. § 106(1), (3).  Terix, acting as

21   HPE's subcontractor, engaged in at least *four* distinct forms of unauthorized copying:

22   downloading, internal copying, delivering patches to customers, and the installation of patches

23   on customer servers.  Each form of copying is unlawful because none was licensed:[5]  the very

24   purpose of the Terix/HPE business model was to provide access to patches for servers that were

25   *not* under Oracle support.

---

[5] For this reason, HPE's voluminous appendices are incomplete and irrelevant.  They purport to list "alleged acts of infringement" but include *only* the "delivery" step and ignore the thousands of other unlawful copies made by Terix for the customers.  HPE also omits ████████ entirely.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1  **Terix Improperly Downloaded Patches From MOS**: Oracle's expert analyzed the

2  customer-specific and "dummy" MOS credentials that Terix admitted to creating pursuant to its

3  one-to-many process and determined that ██████████████████████████████████

4  ██████████.  HD Ex. 1, ¶ 93.  Terix did not download and deliver these patches "as an

5  agent of the customer with a license to obtain that software," as HPE states.  Mot. at 9 & n.5.

6  Terix performed the downloads using fraudulent access credentials that Terix obtained for the

7  sole purpose of obtaining patches for servers not under Oracle support.  *See* RJN Exs. 6-9; Ex.

8  188; *supra* II.B.  Oracle certainly did not authorize Terix's one-to-many process, as it violated

9  Oracle's fundamental requirement that customers have an Oracle support contract for *each* server

10  requiring patches.  *Supra* at II.A, II.B; *see also* Dkt. No. 466-5 at 17-21.[6]  HPE's Motion

11  studiously ignores this evidence and argues, as if by fiat, that Oracle has "not established specific

12  acts of direct infringement by Terix."  Mot. at 10.  That does not carry HPE's burden.

13  **Terix Improperly Copied Patches to Internal Repositories:** Terix admitted that, after

14  performing unauthorized downloads, it copied Oracle's proprietary patches to internal

15  repositories so that it could provide them to customers on demand.  *See* LD Ex. 147 at 28:16-

16  29:2, 32:14-18, 33:7-9; Ex. 148 at 524:25-526:20; Ex. 135 at 148:9-21.

17  **Terix Delivered Patches to Customers Who Did Not Have Support Contracts With**

18  **Oracle**: When a customer needed a patch, Terix copied the patch to a file transfer site ████

19  ████████████████████████████████████████████"  *Id.* Ex. 147 at 20:24-21:6.

20  Terix used the same process with multiple HPE-Terix customers, including ████████████.

21  *Supra* at II.B.  ████████████████████████████████████████████

22  ███████████████████████.  HD Ex. 1, ¶ 104.

23  **HPE Installed Patches on Unentitled Customer Servers & Helped Customers Do So:**

24  HPE argues that "Oracle has no evidence at all about the actual installation of the software on

25  specific servers."  Mot. at 9-10.  This ignores mountains of evidence showing that the HPE-Terix

26  support model resulted in the installation of patches on servers that were not under Oracle

27  ─────────────

28  [6] Nor is such piracy "fair use," Mot. at 9 n.5.  Oracle moved for and is entitled to summary judgment on HPE's fair use defense.  *See* Dkt. No. 466-5 at 24-25.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

10

1   support. ████, for example, testified that it had a support contract with Sun/Oracle for its

2   Solaris servers, which it terminated when it went to HPE and Terix for support.  LD Ex. 157 at

3   26:11-31:23; *see also* Ex. 58. ████ then received approximately ████ from HPE and

4   Terix via FTP, which it installed on the servers that were no longer under Oracle contract.  *Id.*

5   Ex. 157 at 71:11-17, 137:12-23.  Other customers testified similarly.  *See id.* Ex. 149 at 54:11-

6   24, 127:13-128:9, 129:21-130:11; *see also* Ex. 182 (████████████████████████

7   ████████████████████”). ████████████████████████

8   ████████████████████. *See infra* at III.D.[7]

9          Other evidence also exists from which a reasonable jury could infer that similar unlawful

10  installations occurred for every other joint HPE-Terix customer—not least of which is Terix's

11  admission that the *very purpose and design* of its business model was to provide customers

12  access to Solaris patches and updates for use on servers *not* under an Oracle support contract.

13  *Supra* at II.B.  And what possible use would Terix and HPE have had for the thousands of

14  downloaded patches if not to install them on servers?

15         If HPE's position is that "installation" can only be proven through some digital trail

16  pulled directly from a server, that is incorrect as a matter of law.[8]  Copyright law recognizes

17  circumstantial evidence of copying "[b]ecause direct evidence of copying is rarely available."

18  *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987); *Loomis v. Cornish*, 836 F.3d 991, 994

19  (9th Cir. 2016) ("Proof of copyright infringement is often highly circumstantial[.]"); *Data East*

20  *USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206 (9th Cir. 1988); 4 Nimmer on Copyright § 13.01 ("It

21  is generally not possible to establish copying as a factual matter by direct evidence, as it is rare

22  that the plaintiff has available a witness to the physical act of copying.").  And such evidence is

---

[7] There is evidence that HPE and Terix installed or assisted with the installation of patches on
other customers' servers as well.  *See* LD Ex. 190; Ex. 191; Ex. 192 at -811.

[8] HPE claims that Oracle's forensic expert "admitted" that Oracle has "no evidence of improper
patching—none" and "no way of proving whether the software was installed."  Mot. at 1, 10.
Mr. Hicks admitted no such thing.  He testified only that Oracle does not possess data regarding
the physical act of installation by customers, and that his analysis does not rely on such data.  He
testified repeatedly that he *does* have extensive evidence of improper downloads, internal
copying, and deliveries by Terix/HPE.  LD Ex. 144 at 163:7-167:13.  HPE also ignores all non-
expert evidence of improper copying, e.g., HPE's own admissions.  And, while irrelevant, HPE
is also wrong to claim that Oracle did not seek this information from customers.  *Id.* Ex. 160 at 2.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-01393-JST

11

1    enough to defeat summary judgment. *Cf. Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992)

2    (at summary judgment "circumstantial evidence can speak clearly and often unequivocally").

3            **B.      HPE Is Vicariously Liable For Terix's Infringement**

4            Vicarious liability exists where the defendant (1) had "a legal right to stop or limit the

5    directly infringing conduct, as well as the practical ability to do so," and (2) derived a direct

6    financial benefit. *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1155 (9th Cir.

7    2012); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).

8            **1.      HPE Had The Right And Ability To Supervise Terix**

9            The master agreement between HPE and Terix gave HPE express supervisory rights over

10   Terix, LD Ex. 46 at -487, as well as the right to terminate Terix's role with any customer "

11   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" *id.* at -510.  HPE employees were active in the joint accounts and

12   were well-positioned to police Terix's conduct, but instead promoted Terix's activities by

13   directing customers to Terix for patches. *See supra* at II.B; *see also* Dkt. No. 159 at 4.  HPE thus

14   had a legal right and practical ability to stop Terix's infringement.

15           HPE argues only that HPE-Terix customers represented "less than 5%" of Terix's overall

16   business, and that HPE could not stop Terix from infringing as to non-HPE customers. *See* Mot.

17   at 14.  This is misleading, as that "5%" accounted for over 30% of Terix's revenue. *See* PD Ex.

18   1, Sch. 11.  More importantly, the customers that HPE claims it could not control are beyond the

19   scope of this case; Oracle's vicarious infringement claim includes *only* the joint HPE-Terix

20   customers, over whom HPE does not dispute that it had contractual and practical control.  That is

21   all the law requires. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262-63 (9th Cir. 1996)

22   (finding swap meet owner vicariously liable where it had "the ability to control the activities of

23   vendors on [its] premises" but no ability to stop sales at other venues); *Napster*, 239 F.3d at 1023

24   (finding that Napster's "ability to block infringers' access to a particular environment for any

25   reason whatsoever," was "evidence of the right and ability to supervise").

26           The cases HPE cites are inapposite.  Each involved circumstances where the defendant

27   only had control over some *instrument* that facilitated infringement, but no control over the

28   actual infringer or infringing activity. *See Routt v. Amazon.com, Inc.*, 584 Fed. App'x 713, 714

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-01393-JST

12

1   (9th Cir. 2014) (defendant only controlled participation in "AdSense" program, not third party

2   websites where infringement occurred); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788,

3   803 (9th Cir. 2007) (declining to process payments "may have the indirect effect of reducing

4   infringing activity" but Visa did not have "any ability to directly control th[e infringing]

5   activity"); *mophie, Inc. v. Shah*, 2014 WL 10988347, at *17 (C.D. Cal. Nov. 12, 2014) (right to

6   cancel promotional voucher for sales made through independent infringing website not

7   controlled by defendant was insufficient).  HPE maintained direct control over Terix *and* each

8   customer account, and thus had the right to stop Terix's activity for these customers at any time.

9                    **2.      HPE Obtained A Direct Financial Benefit From Terix's Conduct**

10          A "financial benefit" is shown where infringement makes the defendant's services more

11  attractive, even if there is no payment tied directly to the infringing product.  *See, e.g., Fonovisa*,

12  76 F.3d at 263 (swap meet owner benefited from admission fees and concession sales to those

13  who came to buy counterfeit recordings); *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir.

14  2004) (financial benefit exists where the infringing material "acts as a draw for customers").  The

15  customers at issue would not have contracted with HPE without Terix, as HPE had no other way

16  to provide them with the patches they required.  *Supra* at II.B.  HPE earned tens of millions in

17  revenue from that infringement.  LD Ex. 58 at -26 (describing ████████████████████

18  ██████████████████████████████████████████"); PD Ex. 1, Tbl. 16.

19          **C.      HPE Is Liable For Contributory Infringement**

20                    **1.      HPE Promoted Terix's Unlawful Business Model**

21          Contributory copyright infringement lies where a defendant makes a device or service

22  available "with the object of promoting its use to infringe copyright, as shown by clear

23  expression or other affirmative steps taken to foster infringement."  *MGM v. Grokster, Ltd.*, 545

24  U.S. 913, 936-37 (2005).  In *Grokster*, the Supreme Court vacated summary judgment and ruled

25  that contributory infringement is shown where a defendant tried "to satisfy a known source of

26  demand for copyright infringement," took no action "to diminish the infringing activity" enabled

27  by its service, and profited from the activity.  *Id.* at 939-40; *see also Columbia Pictures Indus.,*

28  *Inc. v. Fung*, 710 F.3d 1020, 1033 (9th Cir. 2013) (liability exists for those who "provid[e] some

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

13

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1    service used in accomplishing the infringement"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d

2    1146, 1171-72 (9th Cir. 2007) (intent is imputed where infringement is the "natural and probable

3    consequence" of defendant's conduct").

4        That is exactly what the evidence shows here.  HPE knew that Solaris patches were

5    proprietary and that Oracle required customers to purchase a support contract for each server that

6    required access to patches.  *Supra* at II.B.  HPE then promoted Terix specifically in situations

7    where a customer wanted to obtain Solaris patches *without* the cost of an Oracle support contract.

8    *See* LD Ex. 37; Ex. 113 at -19.  HPE took no steps to stop Terix's infringing activity, even

9    though it maintained the right to supervise and control Terix.  *Supra* at III.B.1.  And HPE reaped

10   an enormous financial benefit as a result.  *Supra* at III.B.2.  That conduct satisfies *Grokster*.

11       **2.    HPE Had Knowledge Of And Encouraged Terix's Infringing Conduct**

12       Contributory infringement is also shown where the defendant "know[s] or has reason to

13   know" of direct infringement and causes or materially contributes to the infringing conduct.

14   *Napster*, 239 F.3d at 1022; *Ellison*, 357 F.3d at 1076.  Undisputed evidence shows that HPE had

15   actual knowledge of infringement, that it was the intended result of HPE's engagement of Terix,

16   and that HPE materially contributed to that infringement.  *See* Dkt. No. 466-5 at 14-17.  HPE

17   documents and testimony unequivocally show that HPE knew that Solaris was proprietary and, if

18   a customer wanted the right to use patches for a server, Oracle required a support contract for

19   that device.  *Supra* at II.B.  For example, by enlisting Terix, HPE was able to assure

20   that HPE and Terix would provide it patches *after*                cancelled its Oracle support contract

21   for its several thousand servers.  *See* LD Ex. 67; Ex. 157 at 21:1-19.  Then, fully aware that

22              had terminated Oracle support, HPE worked with Terix to deliver patches.[9]  *Id.* Ex. 157

23   at 71:1-72:7; Ex. 47; Ex. 44 at -28 (HPE: "

24                                       "); Ex. 118; Ex. 70.  HPE's dealings with

25

26   _____

      [9] HPE argues that the Court should limit Oracle's indirect infringement claim to five customers
27   Mr. Hicks discusses as examples of facilitation in his report.  Mot. at 17.  Mr. Hicks was clear
      that those were merely *examples* and that it was "not [his] view that it's limited to those."  *See*
28   LD Ex. 144 at 162:3-13.  Further, the record contains copious non-expert evidence from which a
      jury will conclude that HPE facilitated Terix's conduct for the joint customers.  *Supra* at II.B.

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

14

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1    ███████████████████. *See id.* Ex. 123 (████████████████████

2    ███████); Ex. 186 (███████████████████████████████████).  This was

3    part of a broader business model that HPE deployed for *any* customer that needed access to

4    patches but did not have a contract with Oracle.  *Id.* Ex. 37; Ex. 78 at -13-14; Ex. 166 at -96

5    ("███████████████████████████████████████████████

6    ████████████████████" (emphasis added)).

7         HPE claims that knowledge is established only if "HPE knew which servers Terix was

8    providing patches for" and that "*particular* installations constituted infringement."  Mot. at 12.

9    That is not the standard.  The only cases HPE cites involve a plaintiff seeking to hold an internet

10   service provider or wireless carrier liable for infringement committed by of one of the thousands

11   or millions of users on an otherwise legitimate platform.  *See Luvdarts, LLC v. AT&T Mobility,*

12   *LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013); *Amazon*, 508 F.3d at 1171-72 (9th Cir. 2007).[10]  Here,

13   Oracle need only show that HPE knew that Oracle requires a support contract if a customer

14   wanted the right to patches and that Terix was providing patches to customers who did not have

15   such contracts.  The evidence of that knowledge is overwhelming.

16        The knowledge element is also satisfied because, as HPE concedes, willful blindness is

17   sufficient.  Mot. at 11; *Luvdarts*, 710 F.3d at 1073.  Here, too, the evidence is extensive.  HPE

18   employees were told "█████████████████████████████████████

19   ███████████."  LD Ex. 124 at -500.  HPE's corporate designee admitted that Terix's deals

20   were "████████████" and were "████████████," and that Terix "████████

21   ████████████████████████████" *Id.* Ex. 21 at 210:20-214:4, 248:17-249:10.

22   Skepticism of Terix was widespread within HPE.  *See, e.g., id.* Ex. 142 at 56:11-23 ("████

23   ████████████████████████████████████████████████████

24

25   ───────────────────

[10] *BMG Rights Mgmt. (US) v. Cox Commc'ns, Inc.*, 881 F.3d 293 (4th Cir. 2018), does not aid

26   HPE.  *BMG* was also an internet service provider case and made clear that "the proper standard
     requires a defendant to have specific enough knowledge of infringement that the defendant could

27   *do* something about it."  *Id.* at 311-12.  In that case, "do[ing] something" required knowledge as
     to which of the defendants' 4.5 million internet subscribers were infringing.  Here, HPE knew

28   who was acting—Terix—and the only question is whether HPE knew Terix was providing
     patches to customers who did not have Oracle support contracts.  HPE clearly did.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1   ██████████ .”); Ex. 39 at -15; Ex. 111 at -69-70; Ex. 196 at -32.  Yet when

2   concerns were raised to HPE management and legal, HPE did nothing.  ██████████

3   ██████████████████████████ ” *Id.* Ex. 142 at

4   56:11-58:2, 84:2-12.  HPE simply "████████████████████████

5   ██████████ ” *Id.* Ex. 74; *see also* Ex. 115.  This is textbook willful blindness.

### D.   HPE Is Liable For Copyright Infringement With Respect To ████████

7   HPE summarily concludes in seven lines that it is entitled to summary judgment with

8   respect to ████████ because "Oracle cannot prove that HPE installed any patch on a server that

9   was not entitled to receive it."  Mot. at 19.  Incorrect.  HPE employees *admitted* that HPE

10  "████████████████████████████████████████

11  ██████████████████████ .  *Supra* at II.C; LD Ex. 137 at 68:14-23;

12  Exs. 114, 164.  HPE also committed other forms of unauthorized copying in serving the

13  ████████ account, including (1) unlawfully *downloading* ████████ of patches from MOS for

14  servers without an Oracle support contract; (2) *procuring* over ████ distinct patches (more than

15  ████ downloads) from Terix; (3) *copying* unlawfully obtained patches to patch repositories; and

16  (4) *installing* the patches on ████████ systems.[11]  Each of these unlicensed acts constitutes a

17  direct violation of Oracle's exclusive rights as the copyright holder under 17 U.S.C. § 106.

### E.   HPE Is Liable For Infringement As To The Direct Support Customers

19  HPE largely thwarted discovery on these customers (*see* Dkt. No. 524), yet even the

20  limited record shows that HPE infringed Oracle's copyrights.  HPE produced patch installation

21  records showing the actual date of patch installation, server-by-server, in a field self-

22  descriptively titled "████████████ " which HPE admits can mean the ████████████

23  ████████ "[12] LD Ex. 125 at -09.  Oracle's expert compared the "████████████████ "

---

[11] *As to (1):* HD Ex. 1, ¶¶ 118-20; LD Ex. 137 at 264:16-265:8; *id.* Ex. 116 at -39.  *As to (2):* HD Ex. 1, ¶¶ 113-17; LD Ex. 137 at 68:14-23 ████████ .  *As to (3):* HD Ex. 1, ¶¶ 109-10.  As to (4): Dkt. No. 133 at 3; LD Ex. 45; Ex. 137 at 25:9-23, 221:15-222:6; Ex. 142 at 58:3-6, 86:1-5, 88:17-23.

[12] HPE claims that this field can also contain less accurate sources of patch installation information, including the ██████████████████████████ and ████████████ LD Ex. 125 at -09.  ██████████████ *Id.* Ex. 174 at 84:23-85:5, 88:12-89:12.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1   to the dates when those servers were under support with Oracle.  HPE performed more than 200

2   installations for 11 different customers on servers that were not under an active Oracle support

3   contract (188 of which were patches released only after Oracle support ended).  *See* HD ¶ 11.

4         HPE speculates that some entity other than HPE might have installed patches, citing

5   inapposite cases where the evidence showed that the defendant did not cause any copies to be

6   made.  Mot. at 2, 18.  Yet HPE's records contain patch installation data for these customers, *see,*

7   *e.g.*, LD Ex. 167 at 236-38 (listing "███████████████"), and HPE confirmed in filings with the

8   Court that HPE (not the customer) downloaded and installed patches from Oracle's MOS

9   website for these customers.  *See* Dkt. No. 133 at 5 (HPE "downloads patches from Oracle's

10  website ... and installs the patches for the customers").  HPE is judicially estopped from taking a

11  contrary position now.  *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d

12  983, 993 (9th Cir. 2012).

13  **F.     HPE Is Not Entitled To Summary Judgment On Oracle's Intentional**

14  **Interference With Prospective Economic Advantage Claim**

15        Oracle's interference claim is established where: (1) there was a relationship "with the

16  probability of future economic benefit to the plaintiff"; (2) the defendant knew of that

17  relationship; and (3) the defendant engaged in wrongful conduct that disrupted the relationship.

18  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003).  An act is

19  wrongful if it is proscribed by some constitutional, statutory, or other legal standard.  *Id.* at 1159.

20  Misrepresentations are sufficient.  *See, e.g.*, *BioResource, Inc. v. U.S. PharmaCo Distribution,*

21  *Ltd.*, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010); *Visto Corp. v. Sprogit Techs., Inc.*,

22  360 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005).  So is interference with contractual relations.

23  *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1110-11 (9th Cir. 2007).

24        HPE first argues that Oracle "cannot establish a misstatement or some unlawful act that

25  could support an interference claim."  Mot. at 25.  Once again, HPE ignores evidence that HPE

26  promoted Terix as its subcontractor that could lawfully provide Solaris patches to support

27  customers who HPE knew wanted them.  *Supra* at II.B; LD Ex. 37 at -04 ("███████████

28  ████████████████████████████████████████████████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1    ███████████████████████████████████). Both ███████████

2    testified that HPE and Terix promised to provide Solaris patches, *id.* Ex. 157 at 21:11-19; Ex.

3    149 at 54:5-24-57:20, 62:8-20, even though HPE knew that both customers intended to move the

4    support for their Oracle servers to HPE, *see id.* Ex. 58; Ex. 63 at -85; Ex. 149 at 62:8-65:6.

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████ *See id.* Ex. 139 at

7    121:5-13, 124:8-11.  Indeed, ███████████████████████████████

8    █████████████████████ *See id.* Exs. 65, 60.  Similarly, after HPE and

9    Terix represented that they could provide █████ with access to patches, *see id.* Ex. 61 at -53; Ex.

10   129 at -94, █████████████████████████████████████████

11   ███████████████████████████████████████████" *id.* Ex. 176.

12         HPE also promised ████████████████████—the three customers HPE raises

13   in its Motion—that HPE/Terix would provide access to Solaris patches, or at least led them to

14   believe they would.  *See id.* Ex. 131 at -77 (████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████"); Ex. 110 at -85 (HPE "████████████████████████

18   ███████████ (emphasis added)); Exs. 130 & 121 (███████████████████████

19   ████████);[13] Ex. 162 at -36-37 (███████████████████████████████

20   ███████████████████████████████████"); Exs. 130 & 121 (█████████████

21   ██████████████████████████████).  Similar misrepresentations were made to

22   other HPE-Terix customers.  *See id.* Ex. 24 at -44; Ex. 155 at 200:5-15; Ex. 150 at 33:6-34:3.[14]

---

[13] The unlawful provision of Solaris patches to a given customer is, by itself, evidence from which a reasonable jury could infer that promises of patch access were made.  *See supra* at III.A.

[14] HPE argues that Oracle does not have evidence of causation, citing only testimony by Oracle's co-CEO, Mark Hurd, stating that he did not know which specific customers were at issue or how much revenue Oracle specifically lost as a result of HPE's misconduct.  Mot. at 24.  But Oracle's claim does not rely on Mr. Hurd's personal knowledge of the facts in this case, particularly as he had minimal involvement in Oracle's contracting with customers for hardware support.  LD Ex. 195 at 15:14-22.  The record is replete with other evidence showing that access to Solaris patches was a requirement for customers, that HPE/Terix promised that access, and that, without such access, HPE's deals were "████████████████."  *See supra* at II.B.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

18



**G.     HPE Is Not Entitled To Summary Judgment On Oracle's Intentional Interference With Contractual Relations Claim**

To establish its interference with contract claim, Oracle need only show that HPE caused customers to breach a contract with Oracle and resulting harm.  *See Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 934 (N.D. Cal. 2015).  HPE interfered with two contracts.  *First*, for any server that remained under Oracle support (e.g., the "one" server in Terix's one-to-many model), the customer was required to honor Oracle's technical support policies, which state that Solaris patches may only be used on servers under a valid support agreement.  *See* LD Ex. 218; Henslee Decl. ¶ 6.  *Second*, to access Solaris patches on MOS, customers must accept the MOS Terms of Use, which state that customers may access MOS only to support "authorized use of the Oracle programs and/or hardware for which you hold a current support contract from Oracle."  Henslee Decl. ¶ 8.  The HPE/Terix business model was custom-built to breach these contractual terms.  *Supra* at II.B-III.C.  The end result of the induced breach was that customers took or kept their servers with HPE/Terix instead of purchasing lawful support from Oracle.  *See, e.g.*, LD Ex. 58.  This is sufficient to establish Oracle's claim at trial.[15]

**H.     HPE Is Not Entitled To Summary Judgment On Statute of Limitations**

Copyright infringement actions must be filed "within three years after the claim accrued."  17 U.S.C. § 507(b).  The statute of limitations runs separately from each violation, and "each infringing act starts a new limitations period."  *Petrella v. MGM*, 134 S. Ct. 1962, 1969 (2014).  A claim for copyright infringement does not accrue until the plaintiff "has knowledge of a violation or is chargeable with such knowledge."  *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).  A plaintiff is chargeable with knowledge of copyright infringement only if the plaintiff reasonably could have discovered the infringement.  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004).

The statute of limitations is two years for intentional interference and four years for the

---

[15] Because HPE is not entitled to summary judgment on Oracle's interference claims, it is not entitled to summary judgment on Oracle's UCL claim.  *See, e.g., Del Campo v. Am. Corrective Counseling Serv.*, 718 F. Supp. 2d 1116, 1137-38 (N.D. Cal. 2010).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

UCL.  Cal. Civ. Proc. Code § 339; Cal. Bus. Prof. Code § 17208.  As above, under California's "discovery rule" the period is tolled until a plaintiff knows or should know of the wrongful conduct.  Courts apply the discovery rule where "the injury or the act causing the injury, or both, have been difficult for the plaintiff to detect" based on the principle that "plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed" and that "defendants should not be allowed to knowingly profit from their injuree's ignorance."  *See April Enters. v. KTTV*, 147 Cal. App. 3d 805, 831 (1983); *see also El Pollo Loco Inc. v. Hashim*, 316 F.3d 1032, 1040 (9th Cir. 2003); *Viasphere Int'l, Inc. v. Vardanyan*, 12-cv-01536, 2017 WL 1065191, at *3 (N.D. Cal. Mar. 21, 2017).

Statutes of limitation must not be applied "in a way that pressures litigants to file suits based merely on suspicions and fears.  At least in the commercial setting ... suspicion and fear are not sufficient predicates for launching a lawsuit."  *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991).  While suspicion may trigger a duty to investigate, suspicion alone does not trigger the limitations period.  *See Merck & Co. v. Reynolds*, 559 U.S. 633, 652-53 (2010).  And, where a plaintiff undertakes a reasonable investigation, the plaintiff is not charged with knowledge that the investigation fails to reveal.  *Intermedics*, 775 F. Supp. at 1266.

These issues are fact-dependent and generally reserved for the jury.  *See Polar Bear*, 384 F.3d at 707 (for copyright, "the date of discovery is an issue of fact"); *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 597 (1970) ("There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge…. It is a question for the trier of fact."); *Sylve v. Riley*, 15 Cal. App. 4th 23, 26 (1993) ("Whether reasonable diligence was exercised is generally a question of fact ... precluding summary judgment.").  Here, after Oracle learned of HPE's misconduct, it executed a tolling agreement with HPE effective May 6, 2015, demonstrating Oracle's diligence in preserving its claims.  Thus, HPE must present undisputed facts showing that, as a matter of law, Oracle knew or should have known of HPE's misconduct prior to May 6, 2012[16] (for prior

---

[16] HPE concedes that any infringement on or after May 6, 2012 is not barred.  Mot. at 15, 21.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-CV-1393-JST

1   infringement) or May 6, 2013 (for the interference claims).  HPE cannot make this showing as

2   Oracle did not discover and could not reasonably have discovered Terix's and HPE's

3   infringement or interference as to the relevant customers until after May 2013.

### 1.   Terix And HPE Concealed Their Misconduct From Oracle

5   Terix admitted to using complex subterfuges to prevent Oracle from discovering Terix's

6   conduct, including creating fake companies, using fake names and addresses, and hiding behind

7   fraudulent MOS credentials to get access to Solaris patches for unentitled servers.  *Supra* at II.B;

8   *see also* LD Ex. 132 at 46:12-24, 113:6-19; Ex. 148 at 314:25-315:2.  Terix's CEO instructed his

9   employees to "███████████████" to avoid detection by Oracle.  LD Ex. 178 at -489; Ex. 132 at

10  108:15-24.  HPE knew perfectly well what it and Terix were doing and helped hide the

11  misconduct.  *Supra* at III.C.2; LD Ex. 117 (████████████████████████████████

12  ████████████████████████████████████████").  These efforts to deceive

13  Oracle worked, making it difficult for Oracle to discover the misconduct and tolling the statute of

14  limitations.  *See, e.g., El Pollo Loco*, 316 F.3d at 1040 (limitations period tolled where

15  misrepresentations hindered plaintiff's discovery); *Polar Bear*, 384 F.3d at 706 (9th Cir. 2004).

16  Indeed, ██████████████████████████████████████

17  ██████████████████████████████████████████████████

18  ████████████████████████████████████  *See* CD

19  ¶ 4.  ██████████████████████████████████████

20  ████████████████████████████████  *Id.* ¶¶ 10-12.

21  ████████████████  *Id.*  ████████████████████

22  ████████████████████████████████████  *See* HD

23  Ex. 1, ¶ 92.  Oracle only learned why *after* it sued Terix in July 2013—discovery revealed that

24  Terix used shell corporations and "cloak and dagger" tactics to hide any evidence that Terix was

25  taking patches and providing them to customers.  But as of April 2012, Oracle's reasonable

26  investigation suggested that Terix had never taken a single Solaris patch from MOS, and where a

27  reasonable investigation into potential wrongdoing reveals nothing, the limitations period does

28  not begin.  *See Intermedics*, 775 F. Supp. 1258 at 1266.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

21

1           **2.**       **HPE's Evidence Is Insufficient, Disputed, And Fails Because Oracle**

2                     **Conducted A Reasonable Investigation And Found No Wrongdoing**

3      HPE's alleged evidence of Oracle's earlier knowledge is legally insufficient and disputed.

4 HPE suggests incorrectly that alleged knowledge of Terix's conduct as to non-HPE customers

5 means Oracle was on notice of misconduct as to separate HPE customers. Mot. at 15-16. This

6 misstates the law. *Dyniewicz v. United States*, HPE's primary authority, has nothing to do with

7 secondary liability for copyright infringement; it states generally that a cause of action accrues

8 when the plaintiff discovers "both the fact of injury and its immediate physical cause"—there, a

9 flood that swept a car off the highway. 742 F.2d 484, 487 (9th Cir. 1984). Unlike *Dyniewicz*,

10 which involved a single injury and a discrete set of parties responsible, this case deals with

11 independent acts across distinct customer relationships. Before suing Terix, Oracle knew at most

12 that Terix supported a number of customers with a disparate set of needs, most without HPE

13 involvement (as HPE points out). Terix confirmed this again in discovery, ███████████

14 ████████████████████████████████████. *See* LD Ex. 188 at 5-14; LD Ex. 185 at

15 147:18-148:23. Contrary to HPE's suggestion, alleged suspicion about a non-HPE customer

16 does not create knowledge of misconduct as to entirely distinct customers (including HPE's).[17]

17      In any event, HPE's evidence does not show that Oracle knew about Terix's misconduct.

18 HPE first cites emails between Terix and Sun in April 2008 about a "███████████." Mot. at

19 16. But in those emails, Terix assured Sun repeatedly that it did not distribute patches or violate

20 Sun's rights, which forecloses HPE's Motion. *Infra* at 24. HPE then cites documents from just

21 after Oracle acquired Sun suggesting only that Oracle knew TPMs like Terix competed in the

22 support market, that Oracle generally sought to protect its intellectual property, or that some

---

[17] *Fahmy v. Jay-Z* is also easily distinguished. There, the only question was whether the plaintiff's admitted knowledge of an infringing song triggered knowledge that other versions of *the same song by the same artist* were infringing. F. Supp. 2d 783, 790 (C.D. Cal. 2011); *see also Grant Heilman Photography, Inc. v. McGraw-Hill Cos.*, No. 12-CV-2061, 2012 WL 5944761, at *6-7 (E.D. Pa. Nov. 28, 2012) (distinguishing *Fahmy* where infringement was not "open and notorious"). *Goldberg v. Cameron* is also inapposite, and holds only that contributory infringement accrues once the plaintiff discovered, or reasonably should have discovered, the direct infringement induced by the defendant. 2009 WL 2051370, at *10 (N.D. Cal. July 10, 2009). Neither case bears on whether Oracle's alleged suspicion that Terix provided patches to a *non*-HPE customer triggered notice as to entirely different customers. HPE itself contended that Oracle could not state a claim against HPE even after Terix *admitted* infringement. Dkt. No. 34.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

22

1    TPMs claimed to offer Solaris patches.  *See* ED Exs. 67-73.  But "mere general knowledge that a

2    competitor is going to enter the market and compete is ... insufficient to put a party on notice of

3    copyright infringement," *Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp. 1108, 1124 (D. Nev.

4    2014), especially here, where HPE bought Oracle support contracts for customers not at issue.

5         HPE then asserts that "multiple customers informed Oracle that they believed they could,

6    and planned to, obtain patches and updates through Terix."  Mot. at 16.  HPE's primary

7    evidence, ED Ex. 74, does not support that assertion as it is simply a summary of customers who

8    Oracle knew obtained support from Terix; it does not list customers who "informed Oracle" that

9    Terix would provide patches.  HPE also cites emails from August-October 2011 that relay

10   secondhand statements by certain customers that Terix supposedly claimed (in conversations

11   Oracle was not privy to) that it could provide patches.  Mot. at 16, 22.  HPE presents these

12   emails out of context, ignoring the unique facts related to each customer relationship.  As just

13   one example, HPE points to emails from mid-2011 indicating that Oracle employees heard from

14   ██████████ that Terix had claimed it could provide patches.  ED Exs. 76-78, 81.  HPE fails to

15   mention that, at that time, ███████ still had its several thousand servers under Oracle support

16   and did not leave support until June 2012.  LD Ex. 58.  Therefore, Oracle had *no* claim related to

17   ██████████ at the time of the 2011 emails.  Nor did Oracle know that Terix was, in fact, illicitly

18   accessing MOS to download patches for unentitled servers for other customers.  In part because

19   of chatter like this, ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████████████    *Supra* at 21.  So when ███████ and other customers at

22   issue cancelled support contracts with Oracle, Oracle had already confirmed to the best of its

23   ability that what it had heard about Terix from some customers was not true.

24        Over a year after the emails HPE cites, Oracle was told by BNYM (a *non*-HPE customer)

25   that Terix was, in fact, providing it with patches.  Oracle then confronted Terix, who denied

26   wrongdoing and assured Oracle twice that neither Terix nor BNYM infringed Oracle's

27   intellectual property.  LD Ex. 172, 181.  This had nothing to do with HPE or its customers, and

28   Oracle did not uncover anything regarding any HPE customer until June 2013, when Oracle first

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

23

1   found improper downloads concerning ████ and contacted ████ as it had with BNYM.

2   *Id.* Ex. 103. ████████████████████████████

3   ████████████████ *See id.* Ex. 173 at -10.  After further investigation, Oracle

4   sued Terix in July 2013.  Only through discovery did Oracle uncover the extent of Terix's and

5   HPE's misconduct as to ████ and the other joint customers.  None of Oracle's claims are

6   time-barred and, at a minimum, substantial factual disputes exist regarding this issue.

7         **3.**      **Both HPE And Terix Expressly Assured Oracle (and Sun) That They**

8                   **Were Not Violating Oracle Support Policies Or Infringing**

9       HPE's defense fails for another reason: HPE and Terix expressly assured Oracle that they

10   were *not* abusing Oracle's intellectual property rights.  That alone forecloses a statute of

11   limitations defense.  *See Oracle USA, Inc.*, 6 F. Supp. 3d at 1124 (granting summary judgment in

12   favor of *the plaintiff* where the defendant assured the plaintiff that it "respect[ed]" plaintiff's

13   intellectual property rights); *Bridge Publ'ns, Inc. v. Vien*, 827 F. Supp. 629, 634 (S.D. Cal.

14   1993); *C.A. Inc. v. Rocket Software, Inc.*, 579 F. Supp. 355, 360-63 (E.D.N.Y. 2008).

15       Terix provided such assurances on multiple occasions from 2008 to 2013.  In April 2008,

16   Terix's CEO assured Sun that Terix "████████████████████████████

17   ████████████████████████████████

18   ████████████████████████████████████

19   ████████████████████████████" LD Exs. 87-

20   88.  Terix provided the same assurances in 2013, after BNYM said Terix was providing patches.

21   *Id.* Exs. 172, 181.  These pledges were false, as Terix was (unbeknownst to Oracle) unlawfully

22   providing patches to unentitled customers throughout this period.

23       HPE independently assured Oracle that it did not patch unentitled servers.  In February

24   2011, Oracle contacted HPE to confirm that HPE was not providing Solaris patches to a former

25   Oracle customer.  HPE told Oracle that ████████████████████████

26   ████████████████████████" *Id.* Ex. 122; *see* Ex. 155 at 148:5-

27   161:17.  These representations were also false, as HPE was at that very time employing Terix to

28   provide Solaris patches to customers who did not have Oracle support contracts.  *Supra* at II.B.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

1    HPE's and Terix's assurances, together with their extensive subterfuges above, prevented

2    Oracle from discovering their misconduct.  In *Rimini*, the defendant assured Oracle that it

3    "respects the intellectual property rights of software providers," would only provide consulting

4    services, and would stay within any software license agreements.  6 F. Supp. 3d at 1124.  Those

5    assurances were enough to grant summary judgment *for Oracle* because "where a defendant

6    expressly assures competitors that it is not violating the competitor's intellectual property rights,

7    a plaintiff cannot be charged with knowledge of the infringing conduct."  *Id.*; *see also William A.*

8    *Graham Co. v. Haughey*, 568 F.3d 425, 439-41 (3d Cir. 2009).  Viewed alongside years of active

9    concealment, HPE's and Terix's assurances are more than sufficient to defeat HPE's Motion.

10    **I.    Oracle Owns All Copyrights At Issue**

11    HPE concedes that Plaintiffs own the copyrights at issue, Mot. at 24-25, but argues that

12    "all claims relating to" copyrights owned by Oracle America, Inc. ("OA") must be dismissed as

13    to Oracle International Corporation ("OIC"), and vice versa.  HPE does not explain what "all

14    claims relating to" a copyright means or what specific relief it is seeking.  It cannot include

15    Oracle's interference or UCL claims, as copyright ownership is not an element.  HPE's request is

16    also improper as to the copyright claims.  OIC and OA are listed as claimants for system

17    firmware 6.7.10, 7.3.0.a, and 8.0.0.e (Liversidge Exs. F-H; LD Ex. 214 at 44:12-45:14) and OIC

18    is the claimant for version 8.0.4.b (Liversidge Ex. I), yet HPE seeks judgment against OIC on all

19    of those works.  Dkt. No. 471-1 at 3.  OIC and OA are listed as claimants for Solaris 11, LD Ex.

20    106, yet HPE seeks judgment against OIC for that too.  HPE also ignores that each version of

21    Solaris and firmware incorporates code from prior versions.  LD Ex. 98 at 270:12-23; Ex. 215 at

22    227:10-15.  So, if OA owns a version, and portions of the protected code appear in a later version

23    owned by OIC, OA may assert a claim "related to" the later release if copies are made that

24    include protected code from the earlier version.  *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir.

25    1979) (unauthorized copying of derivative works is barred).  HPE's request should be denied.

26    **IV.    CONCLUSION**

27    Oracle respectfully requests that the Court deny HPE's Motion for summary judgment

28    and its request under Rule 56(g), and grant partial summary judgment for Oracle.  Dkt. No. 466.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S OPPOSITION TO HPE'S MSJ OR, IN THE
ALTERNATIVE, PARTIAL MSJ
CASE NO. 3:16-cv-1393-JST

25

1    Dated:  April 27, 2018                    Respectfully submitted,

2                                              LATHAM & WATKINS LLP

3

4                                              By:    /s/ Christopher S. Yates
                                                     Christopher S. Yates

5

6                                              Attorneys for Plaintiffs
                                               Oracle America, Inc. and
7                                              Oracle International Corporation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28