1  JEFFREY T. THOMAS, SBN 106409
      jtthomas@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   3161 Michelson Drive
3  Irvine, CA  92612-4412
   Telephone: 949.451.3800
4  Facsimile:  949.451.4220

5  SAMUEL LIVERSIDGE, SBN 180578
      sliversidge@gibsondunn.com
6  BLAINE H. EVANSON, SBN 254338
      bevanson@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
8  Los Angeles, CA  90071-3197
   Telephone: 213.229.7000
9  Facsimile:  213.229.7520

10 Attorneys for Defendant
   HEWLETT PACKARD ENTERPRISE COMPANY

11

12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15               SAN FRANCISCO DIVISION

| | |
|---|---|
| 16  ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation, | CASE NO. 3:16-cv-01393-JST-EDL |
| 17 | **HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION FOR SANCTIONS** |
| 18  Plaintiffs, | |
| 19  v. | **Hearing:** |
|  | Date:      July 17, 2018 |
| 20 | Time:      9:00 a.m. |
|   HEWLETT PACKARD ENTERPRISE | Place:     Courtroom E, 15th Floor |
| 21  COMPANY, A DELAWARE | Judge:     Judge Elizabeth D. Laporte |
|   CORPORATION; AND DOES 1-50, | |
| 22 | |
| 23  Defendants. | |

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## **NOTICE OF MOTION AND MOTION**

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THE ABOVE-CAPTIONED CASE, PLEASE TAKE NOTICE that the following motion will be heard at 9:00 a.m. on July 17, 2018, or as soon thereafter as counsel may be heard, in Courtroom E, on the 15th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or at another location convenient for the Court, before the Honorable Judge Elizabeth D. Laporte.

Defendant Hewlett Packard Enterprise Company ("HPE") will, and hereby does, move the Court for an order granting HPE's Motion for Sanctions against Oracle America, Inc. and Oracle International Corp. ("Oracle") pursuant to Federal Rule of Civil Procedure 37(e) on the grounds that Oracle and its co-CEO Mark Hurd engaged in the intentional spoliation of documents relevant to the above-captioned proceeding.  As a result of this conduct, HPE seeks a permissive adverse inference instruction pursuant to Federal Rule of Civil Procedure 37(e)(2).  In the alternative, pursuant to Federal Rule of Civil Procedure 37(e)(1), HPE moves for an order that the parties are entitled to present evidence of the spoliation and the likely relevance of the spoliated documents, and that the jury be instructed that it may consider that evidence in making its decision in the case.

Pursuant to Civil Local Rule 37-1(a), the parties have met and conferred concerning the subject matter of this motion on numerous occasions, including during a lead counsel telephonic conference held on January 9, 2018.

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, any evidence or argument presented at the hearing on the motion, and any other matters the Court deems proper.

Dated: June 5, 2018

GIBSON, DUNN & CRUTCHER LLP

By:  /s/         *Jeffrey T. Thomas*

Attorneys for Defendant
HEWLETT PACKARD ENTERPRISE COMPANY

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND .................................................................................................... 2

III.    LEGAL STANDARD............................................................................................. 6

IV.     ARGUMENT ......................................................................................................... 7

        A.      Mr. Hurd's Preservation Obligations Date Back to 2010 ............................ 7

        B.      A Permissive Adverse Inference Is Warranted Because Mr. Hurd's Documents
                Were Intentionally Spoliated ................................................................... 12

        C.      At a Minimum, a Jury Instruction Is Warranted Because HPE Has Been
                Substantially Prejudiced by the Spoliation ................................................ 13

V.      CONCLUSION .................................................................................................... 19

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...................................................................8

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
  2016 WL 6609208 (C.D. Cal. July 12, 2016) .......................................................8, 12

*Brown Jordan Int'l, Inc. v. Carmicle*,
  2016 WL 815827 (S.D. Fla. Mar. 2, 2016) ............................................................13

*Compass Bank v. Morris Cerullo World Evangelism*,
  104 F. Supp. 3d 1040 (S.D. Cal. 2015) ..................................................................8

*Ericksen v. Kaplan Higher Educ., LLC*,
  2016 WL 695789 (D. Md. Feb. 22, 2016) ..........................................................14, 19

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
  2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) .......................................................12, 15

*Hewlett Packard Co. v. Oracle Corp.*,
  No. 1-11-CV-203163 (Cal. Super. Ct., filed June 15, 2011) ....................................11

*Keen v. Bovie Med. Corp.*,
  2013 WL 3832382 (M.D. Fla. July 23, 2013) ........................................................14

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ................................................................................7

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
  2016 WL 2957133 (N.D. Ca. May 23, 2016) .......................................................7, 14

*McQueen v. Aramark Corp.*,
  2016 WL 6988820 (D. Ut. Nov. 29, 2016) ............................................................14

*In re Napster Inc.*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) ..............................................................8, 12

*Nuvasive, Inc. v. Madsen Med., Inc.*,
  2016 WL 305096 (S.D. Cal. Jan. 26, 2016).......................................................7, 14, 19

*Oppenheimer v. City of La Habra*,
  2017 WL 1807596 (C.D. Cal. Feb. 17, 2017)......................................................12, 13

*Resendez v. Smith's Food & Drug Ctrs., Inc.*,
  2015 WL 1186581 (D. Nev. Mar. 16, 2015).............................................................7

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Stevenson v. Union Pac. R. Co.*,
354 F.3d 739 (8th Cir. 2004)..........................................................................................13

4

*West v. Goodyear Tire & Rubber Co.*,
167 F.3d 776 (2d Cir. 1999)...........................................................................................13

5

6

**Rules**

7

Fed. R. Civ. P. 37 Advisory Committee Notes, 2015 Amendment .......................................18

8

Fed. R. Civ. P. 37 ..............................................................................2, 6, 7, 12, 13, 14, 18, 19

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

HPE brings this motion for sanctions because it has become clear that, for years, Oracle's co-CEO Mark Hurd disregarded his document preservation obligations and deleted large numbers of relevant documents.  HPE is aware of *more than 500* documents that were deleted by Mr. Hurd, because these same documents were produced by other custodians.  Samplin Decl. ¶¶ 3-4.  The scope of the problem, however, undoubtedly is much broader.  This is not a situation of imperfect preservation efforts.  This is a situation of admitted and selective document deletion—including of hundreds of documents that Oracle itself deems relevant to this case.

Oracle, for its part, has not been transparent about the situation and has blocked HPE's efforts to understand the extent of the problem.  After countless meet-and-confers and twice being ordered by the Court to file a declaration explaining why relevant documents were produced by other custodians but not Mr. Hurd, Oracle finally admitted that Mr. Hurd's documents "appear to have been deleted." Yet Oracle refuses to say when, how or why these documents were deleted, or to offer any information about how many other relevant documents were destroyed.  Oracle has refused to even tell HPE exactly when Mr. Hurd was placed on document retention for this case and the prior *Terix* litigation.  Oracle provided the vague and imprecise representation that Mr. Hurd was "sent and received" litigation hold notices "before or shortly after each case was filed," but claimed that any further date specifics were "privileged and attorney work product."  This is not how the process is supposed to work.

Mr. Hurd was in charge of the Oracle business at issue in this case—the support business—during the relevant time period.  He met with customers, including those at issue in this case.  He received weekly updates describing the reasons why every customer, including those at issue in this case, made the decision to cancel their Oracle support contracts.  Customer reactions to Oracle's changing support policies and offerings, and the reasons they made the decision to leave Oracle support, are highly relevant to this case, in which Oracle alleges that HPE's promise of free patches was the but for cause of the profits Oracle lost from at least 58 customers who chose to leave Oracle for HPE.  Dkt. 306 ¶¶ 73-80; Thomas Decl. Ex. A [Am. Pampinella Rep.] ¶ 52 ("Absent HPE's alleged misconduct, Oracle would have provided support for all of the Sun servers for the affected customer.").  It is not acceptable that Mr. Hurd unilaterally decided if and when he was going to preserve evidence related to

these issues. Indeed, he deleted hundreds of emails on these topics that Oracle deemed relevant and produced from other custodians in this case. Nor is it acceptable that Oracle has refused to meaningfully engage in the process of determining the scope of the problem and the volume of documents that have been destroyed.

In October 2017, the Court ordered Oracle to explain the gaping holes in its document production in the form of a declaration that was to "*specifically* address *why* (1) seemingly relevant documents that appear in its productions for other custodians and (2) relevant emails and other Hurd documents that, based on other produced documents, appear to exist, did not appear in its production of documents from Hurd." Dkt. 394 (emphases added). The declaration Oracle provided evaded these questions entirely. Dkt. 421. HPE identified the omissions and put the "why" question to Oracle directly in numerous emails and meet-and-confer calls, only to be given the runaround and told by Oracle's counsel that they believed there was no obligation to provide that information at all, the Court's order notwithstanding. So HPE again sought court intervention, in response to which this Court issued an order admonishing Oracle and ordering it to file and produce an additional declaration that answers the questions Oracle had been avoiding. Dkt. 516. Oracle filed two declarations in response, both of which again evaded these questions. Dkts. 517-4 & 518.

HPE has been asking basic questions about Mr. Hurd's documents for *many* months now—questions this Court explicitly ordered Oracle to answer, but that Oracle has done everything in its power to avoid. Oracle does not deny that documents have been destroyed; it simply refuses to provide any answers to questions about the scope and nature of the destruction. Therefore, HPE respectfully submits that a permissive adverse inference instruction is the proper remedy at this point—and, in fact, a conservative one—for the widespread, selective, and inexplicable document destruction detailed herein. *See* Fed. R. Civ. P. 37(e). In the alternative, and at a minimum, the Court should allow the parties to present evidence and argument concerning the destruction at trial, and instruct the jury that it may consider the same in rendering its decision.

## II.     BACKGROUND

HPE first expressed concern about Mr. Hurd's deficient document productions in May 2017, when just a few months before the scheduled close of fact discovery, Oracle had produced fewer than

15 documents from Mr. Hurd—in a case where the parties agreed to produce *ten years'* worth of documents from each custodian, Mr. Hurd included.  In response, Oracle represented that it had collected all available documents from Mr. Hurd's files.  *See* Thomas Decl. Ex. C [5/30/2017 C. Campbell email].

Only once it became clear to Oracle that HPE intended to raise its concerns to the Court did Oracle begin to backpedal.  Oracle noted for the very first time—at the end of fact discovery and *months* after HPE first raised the issue—that it had a cache of *thousands* of files from Mr. Hurd that inexplicably were not searched in connection with this case, *95,000 such documents*.  HPE initiated a joint letter to the Court on October 3, 2017 concerning these collection and production deficiencies. Dkt. 354.  HPE noted that, in the past year of fact discovery, Oracle had produced *only 12 substantive documents from Mr. Hurd*, not a single one of which predated 2013, even though Mr. Hurd had been directly involved in Oracle's support businesses since 2010.  *Id.* at 1.  HPE further noted that, throughout a year of fact discovery, during which HPE raised concerns about the completeness of Oracle's productions from Mr. Hurd, Oracle had neglected to review, let alone reference, the additional 95,000 additional documents from Mr. Hurd's custodial files.  *Id.* at 2.  HPE also pointed to numerous examples of highly relevant documents involving Mr. Hurd that Oracle produced from other custodians, but not Mr. Hurd, as well as categories of documents involving Mr. Hurd to which HPE does not have access.  *Id.* at 2-4.

***Oracle Does Not Comply with the Court's First Order.***  In response to the parties' October 3 joint letter, on October 16, 2017, the Court observed that "[Oracle] does not address HPE's argument that some of the produced documents suggest that there are other relevant documents that Oracle has not produced," and "Oracle also does not deny that it did not produce any documents from Hurd's collection regarding Hurd's relationship with [an] important customer."  Dkt. 394, at 2.  The Court ordered Oracle to conduct additional searches of Mr. Hurd's documents and produce a declaration that "specifically address[es] why (1) seemingly relevant documents that appear in its productions for other custodians and (2) relevant emails and other Hurd documents that, based on other produced documents, appear to exist, did not appear in its production of documents from Hurd."  *Id.*

Oracle subsequently served and filed a carefully worded declaration from its counsel,

Mr. Campbell.  Mr. Campbell declared that he and his team "ran term searches based on the contents of [the missing] documents through Mr. Hurd's collection in the above captioned litigation and received no hits," and that "[t]his suggests that the documents are not contained in Mr. Hurd's custodial collection."  Dkt. 421.  Mr. Campbell made no effort to "*specifically* address *why*" those documents are missing, as ordered.  Dkt. 394 (emphases added).  In defiance of the plain language of the October 16 Order, Oracle's counsel insisted in continuing meet and confer discussions with HPE that it did not need to answer the Court's explicit question.

Oracle subsequently produced additional documents "regarding [the] 'decline' in Oracle's [server] hardware business . . . including documents concerning the cause(s) of those declines," which was mandated by a separate court order (Dkt. 442), and that production shed further light on the widespread scope of Mr. Hurd's destruction.  Of the fewer than 400 documents produced by Oracle in December 2017, almost all were from 2016-2017, and *not a single document was from 2012 or 2014*— even though documents that Oracle produced from its two other hardware-related custodians, Ms. Catz and Mr. Dasteel, make clear that Mr. Hurd sent and received relevant communications during those years.  *See, e.g.*, Thomas Decl. Ex. J [ORCLHPE01661960] ██████████████████████████████ ████████████████████████████████.  Oracle thus not only refused to provide HPE with answers to the questions raised in the Court's October 16 Order, but also raised even more questions with its December 2017 production, which further confirmed that Mr. Hurd's relevant documents have not been adequately preserved.

***Oracle Refuses to Comply with the Court's Second Order.***  In light of Oracle's continued refusal to comply with the Court's directives, and the ever-growing holes in Oracle's productions from Mr. Hurd, HPE initiated a second joint letter to the Court on March 20, 2018.  In response, on April 3, 2018, the Court entered an "Order Admonishing Oracle as to the Parties' Joint Letter Brief Regarding Mark Hurd's Document Production."  Dkt. 516.  The Court "admonish[ed] Oracle for its failure to adhere to the Northern District of California's 'Guidelines for Professional Conduct'" by using "inappropriate language" and "extreme, unnecessary, overheated rhetoric" in its response to HPE's portion of the joint letter concerning Mr. Hurd's documents.  *Id.* at 1-2.  The Court also ordered Oracle to "serve and file a supplemental declaration to that of Mr. Campbell filed on October 23, 2017 in

1   response to the Court's October 16, 2017 order," and stated that "the declaration should, to the extent

2   possible, comply with the Court's direction to address *why the documents in question were not*

3   *produced*, explaining what happened to the documents in question, i.e., whether they were deleted and

4   if so *how and when*, rather than simply dispute whether they were required to be preserved." *Id.* at 2

5   (emphases added).

6          In response, Oracle served and filed declarations from its Assistant General Counsel, Jeffrey

7   Ross (Dkt. 517-4), and its Senior Manager of Enterprise Operations, Jeff Dalton (Dkt. 518).  In the

8   Ross Declaration, Oracle finally conceded that the missing Hurd documents "appear to have been

9   deleted." Dkt. 517-4 ¶ 9.  However, neither declaration answers the "***how*** and ***when***" of deletion, as

10  this Court ordered.  Dkt. 516, at 2 (emphases added).  All Mr. Dalton offers is his belief that the Oracle

11  email system has not experienced a failure or an outage that would have deleted or removed specific

12  documents from Mr. Hurd's account (Dkt. 518 ¶ 4), which does not address the "how" or the "when"

13  of the specific spoliation at issue.  Mr. Ross does not even purport to address the "how," and as to the

14  "when," he merely states that the documents appear to have been deleted "at some point in time after

15  they were sent or received but before the collection of documents that took place in 2013, 2016, and

16  2017." Dkt. 517-4 ¶ 9.  Of course, HPE was already fully aware that the documents were deleted at

17  some point *after* they came into existence and *before* Oracle collected documents from Mr. Hurd for

18  production, otherwise the parties would not be in a spoliation dispute.  The Court's October 16, 2017

19  Order contemplated more specific details concerning the timing of the destruction.

20         And these general statements from Mr. Ross pertain only to the documents HPE referenced by

21  bates number in the parties' March 20, 2018 joint letter; Mr. Ross does not address at all the additional

22  categories of documents that are missing from Mr. Hurd's files that HPE also raised in that joint letter

23  (*see* Dkt. 510, at 7 (e.g., 2012 communications and weekly reports)), and for which HPE cannot

24  possibly provide bates numbers, given that Oracle did not produce copies of those documents in this

25  case.  The point is that aside from finally admitting that the documents appear to have been deleted and

26  that it was not an Oracle-wide email system failure that caused the deletion, the declarations do nothing

27  to address this Court's repeated orders on this topic.

28         HPE raised a series of follow-up questions to Oracle's counsel upon its receipt and review of

the Ross and Dalton declarations.  For example, HPE again asked for the specific dates upon which Mr. Hurd received litigation holds in connection with this case, the *Terix* case, and the *Itanium* case. Thomas Decl. Ex. D [April 18, 2018 I. Samplin email].  HPE also asked what, if any, efforts were made to search back-up tapes, cloud storage, and any like alternatives for the missing Hurd emails, how the missing Hurd documents were deleted, and why Oracle failed to address many of the missing Hurd documents referenced in HPE's portion of the parties' March 20 joint letter.  *Id.*  Oracle refused to answer these questions on, *inter alia*, the following bases:

- unsubstantiated claims of privilege (*see* Thomas Decl. Ex. F [April 20, 2018 C. Campbell email]);

- unilateral assertions that its declarations "fully satisf[y] what Judge Laporte ordered Oracle to do" (*id.* Ex. G [April 25, 2018 C. Campbell email]); and

- HPE's failure to identify "particular document[s]" within the categories of documents that Mr. Hurd received but were not produced from his files (*id.* Ex. F[April 20, 2018 C. Campbell email]), even though HPE cannot possibly have any insight into the specific documents that at one time existed but have since been deleted and were not produced from other custodians' files.

To date, HPE has received no further documents from Mr. Hurd or information concerning Mr. Hurd's spoliation from Oracle.

## III.    LEGAL STANDARD

Sanctions are appropriate where a party fails to preserve electronically stored information ("ESI") that it had a duty to preserve in anticipation of litigation, either with intent to deprive another party of the evidence or in a manner that prejudices the non-spoliating party.  Fed. R. Civ. P. 37(e). Federal Rule of Civil Procedure 37(e) provides for two types of sanctions that a Court may award in situations where ESI that should have been preserved was spoliated because a party failed to take reasonable steps to preserve it:

1. if the court finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," it may (i) "presume that the lost information was unfavorable to the spoliating party"; (ii) "instruct the jury that it may or must presume the

information was unavailable to the party" (a permissive or mandatory adverse inference instruction); or (iii) "dismiss the action or enter a default judgment," Fed. R. Civ. P. 37(e)(2); or

2. if the court finds "prejudice to another party from the loss of the information, [it] may order measures no greater than necessary to cure the prejudice," Fed. R. Civ. P. 37(e)(1), such as allowing a party to present evidence and argument to the jury regarding the loss of information, *see, e.g.*, *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *5 (N.D. Cal. May 23, 2016) (allowing party to "present evidence and argument about [] spoliation of customer communications" at trial, pursuant to Fed. R. Civ. P. 37(e)(1)), and/or an instruction to the jury that it may consider the evidence of spoliation in rendering its decision, *see, e.g.*, *Nuvasive, Inc. v. Madsen Med., Inc.*, 2016 WL 305096, at *3 (S.D. Cal. Jan. 26, 2016) (allowing the parties to "present evidence to the jury regarding the loss of electronically stored information and the likely relevance of that information, and [] instruct[ing] the jury that the jury may consider such evidence along with all other evidence in the case in making its decision," pursuant to Fed. R. Civ. P. 37(e)(1)).

## IV.   ARGUMENT

Relevant documents from Mr. Hurd's files were destroyed when they should have been preserved, and HPE will not have access to many of those relevant documents for trial.  Thus, as a result of Mr. Hurd's spoliation, Oracle's failure to course correct in advance of the destruction, and Oracle's inability to course correct now, HPE has been "[d]epriv[ed] . . . of relevant evidence" in a manner that "undermines the integrity of judicial proceedings and the purpose of a trial which is the search for truth."  *Resendez v. Smith's Food & Drug Ctrs., Inc.*, 2015 WL 1186581, at *8 (D. Nev. Mar. 16, 2015).  Sanctions are warranted to deter such conduct and to address the harm to HPE.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *see also* Fed. R. Civ. P. 37(e).

### A.   Mr. Hurd's Preservation Obligations Date Back to 2010

Under the law of this Circuit, Mr. Hurd has been under an obligation to preserve since 2010 that continues through today.

The issuance of a litigation hold or the filing or anticipation of a lawsuit triggers preservation

obligations.  *See Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1055 (S.D. Cal. 2015) (lawsuit); *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1145 (N.D. Cal. 2012) (litigation hold).  Oracle informed HPE that Mr. Hurd was sent and received litigation holds before or shortly after the *Terix* lawsuit was filed in July 2013, and before or shortly after this action was filed in March 2016.  Thomas Decl. Ex. D [1/26/2018 B. Lovejoy Email].[1]  HPE has on numerous occasions requested that Oracle provide the specific dates on which these litigation holds issued, but each time Oracle has refused to provide that information.  In other words, Oracle has denied HPE the basic, non-privileged information it needs to fully evaluate the timing of Mr. Hurd's preservation obligations and Oracle's efforts—or lack thereof—to facilitate Mr. Hurd's preservation.  But even working from the general time frames of the litigation holds that Oracle has provided, Mr. Hurd admittedly has been under a duty to preserve, *inter alia*, software and TPM-related documents since at least July 2013.  Yet, many of those documents are missing from his produced files in this case, including all such non-privileged documents from the 2014 calendar year.

The law is equally clear that the duty to preserve can be triggered *before* litigation is filed or a litigation hold issues, whenever a party reasonably should have known that the evidence was relevant to anticipated litigation.  *In re Napster Inc.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).  Courts routinely rely on privilege logs as evidence of the date on which a party reasonably should have anticipated litigation, triggering preservation obligations.  *See, e.g.*, *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *11 (C.D. Cal. July 12, 2016), *adopted*, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016).  And while Oracle has previously argued that Mr. Hurd was "free to keep or delete" pre-July 2013 correspondence because they are "dated approximately two to three years before Oracle filed its complaint in the Terix litigation on July 19, 2013" (Dkt. 421 ¶ 6), Oracle's privilege logs in this case tell a very different story.

Those logs—which list all of the documents Oracle deemed *responsive and relevant* to this case but nevertheless withheld from production, in whole or in part, on the basis of privilege—make clear

---

[1] It is unclear why Mr. Hurd may have first received a litigation hold in connection with this case "shortly after" its March 2016 filing, given that Oracle and HPE signed a tolling agreement back in June 2015.  Thomas Decl. Ex. I [Tolling Agreement].

Gibson, Dunn &
Crutcher LLP

that Oracle contemplated litigation on matters involving Mr. Hurd well before Oracle's July 2013 filing of the *Terix* case.  Oracle redacted or withheld from production in this case documents dating back to June 2010, and for years prior to the filing of *Terix* in July 2013, under the work product doctrine because they were created, according to Oracle's privilege log, "in anticipation of litigation."  *E.g.,* ORCLPRIV09545 (6/24/2010 document ███████████ ████████████████████████ and withheld from production under the work product doctrine); ORCLPRIV11211 (7/29/2010 document ████████████ ████████████████████████ and withheld from production under the work product doctrine); Thomas Decl. Ex. K  [ORCLHPE01221043] (10/25/2010 email discussion ███████████ ████████████████████████████ redacted pursuant to the work product doctrine); ORCLPRIV15665 (8/31/2011 email ███████████████████ ████████ and withheld from production under the work product doctrine); ORCLPRIV15722 (10/7/2011 email discussion with subject ███████████████████ ████████████████████████████████████████ and withheld from production under the work product doctrine); ORCLPRIV16694 (10/17/2011 ████████████ ████████████████████████████████████████ and withheld from production under the work product doctrine); ORCLPRIV08964 & ORCLPRIV08965 (11/9/2011 documents ████████████████████████████ ████████ and withheld from production under the work product doctrine); ORCLPRIV17358 (2/10/2012 email discussion ██████████████████████ ████████ and withheld from production under the work product doctrine).  In fact, many relevant emails sent to and received by Mr. Hurd's then Co-President (now Co-CEO), Ms. Catz, that were withheld from production in this case under the work product doctrine are dated two or three years *before* Oracle filed the *Terix* case.  *E.g.,* ORCLPRIV25816 & ORCLPRIV25817 (11/2/2011 documents ████████████████████████████ ████████ ).

Oracle also withheld emails dating back to November 2010 that directly involve Mr. Hurd. *E.g.,* ORCLPRIV09357 (11/29/2010 email to Mr. Hurd "reflecting a request for legal advice regarding

Gibson, Dunn &
Crutcher LLP

technical support services"); *see also* Thomas Decl. Ex. L [ORCLHPE00604766] (12/5/2010 email to Mr. Hurd ███████████████████████████████████████████████. That trend continued for documents dating into 2011 and beyond. *E.g.*, ORCLPRIV08536 (6/19/2011 email cc'ing Mr. Hurd ████████████████████████████████████████████████████████████████████████; ORCLPRIV25884 (8/28/2011 email cc'ing Mr. Hurd ████████████████████████████████; ████████████████); Thomas Decl. Ex. M [ORCLHPE00834687] (10/25/2011 ███████████ document for Mr. Hurd concerning ███████ threatened departure from Oracle support in light of ██████████████████████ and the less expensive offer it received from ████████████ ███████ with redactions ████████████████████████████████████████████; ORCLPRIV25893 (one of many 4/1/2013 and 4/2/2013 emails from Mr. Hurd withheld as work product and ██████████████████████████████████████████████████████████████████████; ORCLPRIV08550 (6/15/2013 email to Mr. Hurd ████████████████████████████████████████; ORCLPRIV31345 (7/15/2013 email to Mr. Hurd withheld as work product and ████████████████ ████████████████████████████████████████); ORCLPRIV31830 (2/3/2014 email to Mr. Hurd withheld as work product and ████████████████████████████████████████ ██████████.[2]   Oracle's contention that Mr. Hurd's preservation obligations with respect to documents relevant to the *Terix* case and this case did not arise until the filing of the *Terix* litigation in 2013 simply is inaccurate, or the aforementioned documents would not have been placed on Oracle's privilege logs in the *Terix* case and this case.

Moreover, years before Oracle filed suit against Terix, Hewlett Packard sued Oracle alleging

---

[2]   Oracle previously argued that certain of these withheld documents do not prove that Oracle contemplated litigation.  Dkt. 510, at 11.  HPE does not have access to the documents Oracle withheld as privileged and therefore cannot describe their substance beyond their privilege log descriptions.  But even if Oracle is correct that certain of these particular documents from 2010 and 2011 were not created in anticipation of litigation, abundant evidence indicates that Oracle clearly was anticipating litigation as of those dates.  Indeed, many documents from that time period have been withheld in anticipation of litigation, and many of the documents from that time period that are being withheld specifically involve Mr. Hurd.  Moreover, Oracle previously conceded that ORCLPRIV08550 shows that Oracle was contemplating litigation against Terix and/or HPE at least as early as June 2013.  *Id.* at 11 n.8.  Oracle admits that it was contemplating litigation in June 2013, yet relevant documents from late 2013, 2014, and 2015 that HPE knows to exist involving Mr. Hurd are inexplicably missing from Mr. Hurd's files.  *See infra* Part IV.C.  Oracle has not attempted to reconcile that discrepancy in any of the declarations it has served and filed on this issue.

that Oracle impermissibly stopped making its software available on HPE servers to harm Hewlett Packard and advantage Oracle's server business. *See Hewlett Packard Co. v. Oracle Corp.*, No. 1-11-CV-203163 (Cal. Super. Ct., filed June 15, 2011) ("*Itanium*"). Oracle's and HPE's server businesses were at issue in *Itanium*, just as they are here. Indeed, this Court has already ordered Oracle to reproduce in this case numerous documents that it produced in *Itanium* (Dkt. 435), including emails sent and received by Mr. Hurd concerning Oracle's changing support policies and the reasons why customers chose to leave Oracle following its acquisition of Sun—both of which are highly relevant issues in this case. *See, e.g.*, Thomas Decl. Ex. N [ORCLHPE01651448] (February 2011 email exchange between Mr. Hurd and Charles Rozwat, Oracle's Executive Vice President of Customer Services at the time,

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████ ). Mr. Hurd was a custodian and witness in *Itanium*, and *Itanium* remains pending for appeal. It therefore is indisputable that Mr. Hurd has been under obligation to preserve documents concerning its server business, which is directly relevant to, among other things, causation in this case (i.e., the actual reasons customers left Oracle for other support providers, like HPE), since at least June 2011 (if not earlier).

Thus, even a conservative approach dictates that Mr. Hurd was under a duty to preserve software and TPM-related documents by late 2010, and documents concerning its server and associated businesses by June 2011. Yet many such documents have been deleted from Mr. Hurd's files.

Even if Mr. Hurd somehow was not under an obligation to preserve documents until 2013, when Oracle filed its lawsuit against Terix, even though Oracle admits it was anticipating litigation years earlier, the evidence indicates that Mr. Hurd destroyed massive numbers of relevant documents after that time. In fact, in each of the years following the filing of the *Terix* litigation, Mr. Hurd selectively deleted significant numbers of relevant documents. Indeed, Mr. Hurd failed to produce a single substantive document from 2014. And the small handful of documents that exist from Mr. Hurd's files

from 2014 (all of which have been withheld as privileged, with only non-substantive logo files produced), does not include relevant, non-privileged documents that Mr. Hurd received during that year. *See, e.g.*, Thomas Decl. Exs. Z [ORCLHPE01185763], AA [ORCLHPE00893201], & BB [ORCLHPE00551469]. Thus, it is undisputed that Mr. Hurd deleted relevant documents while under a duty to preserve them.

### B.    A Permissive Adverse Inference Is Warranted Because Mr. Hurd's Documents Were Intentionally Spoliated

A "finding that the [spoliating] party acted with the intent to deprive another party of [ESI's] use in the litigation" may warrant an adverse inference instruction. Fed. R. Civ. P. 37(e)(2). A moving party need not show prejudice resulting from the spoliating party's document destruction to obtain an adverse inference instruction. Fed. R. Civ. P. 37(e)(1) & (e)(2) (prejudice not required for adverse inference instruction). The moving party simply must establish the spoliating party's intent to deprive the other party of evidence, which intent, if so established, permits the Court to "presume that the lost information was unfavorable to the [spoliating] party" and issue an adverse inference instruction. Fed. R. Civ. P. 37(e)(2). Courts in this Circuit have held that the intent requisite for an adverse inference instruction can be found where the spoliating party acted with "a conscious disregard towards its [preservation] obligations," *Blumenthal Distrib.*, 2016 WL 6609208, at *25, or "did not provide any other reason for" the deletion, *Oppenheimer v. City of La Habra*, 2017 WL 1807596, at *13 (C.D. Cal. Feb. 17, 2017). *See also, e.g.*, *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (that the spoliating party had been warned "there would be a lawsuit" was sufficient to infer that its subsequent deletion of text messages was made "with the intent to deprive" the opposing party of their use); *In re Napster, Inc.*, 462 F. Supp. 2d at 1068 ("once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent") (citation omitted).

That Mr. Hurd failed to preserve relevant documents is undisputed. Mr. Campbell's declaration confirms that the exemplar documents HPE previously raised to this Court's attention, and which HPE again cites in this brief, *see infra* at pp. 16–18—relevant documents that custodians *other than* Mr. Hurd took steps to preserve—cannot be located anywhere in Mr. Hurd's files. Dkt. 421 ¶ 6. Mr. Ross's declaration further confirmed that those documents "appear to have been deleted." Dkt. 517-4 ¶ 9.

And Mr. Campbell's and Mr. Ross's declarations provide no explanation for the deletion. *See generally* Dkts. 421 & 517-4. That Oracle "[can]not provide any other reason for why" an experienced executive like Mr. Hurd "deleted the e-mails" when he knew he had a duty to preserve them is more than sufficient to satisfy the intent standard requisite for an adverse inference. *Oppenheimer*, 2017 WL 1807596, at *13 (citing Fed. R. Civ. P. 37(e)(2)); *see also Brown Jordan Int'l, Inc. v. Carmicle,* 2016 WL 815827, at *36 (S.D. Fla. Mar. 2, 2016) (imposition of sanctions was appropriate where spoliating party "knew or should have known that he was obligated to take precautions to preserve" the information, particularly given his "professional background" and ongoing involvement by legal counsel), *aff'd,* 846 F.3d 1167 (11th Cir. 2017).

Moreover, that Mr. Hurd deleted specific documents from the years at issue—documents that Oracle agrees are relevant, as evidenced by its decision to produce them from other custodians in this case in response to HPE's document requests—further indicates that Mr. Hurd's spoliation was selective, calculated, and intentional, and thus deserving of sanctions in the form of an adverse inference instruction. *See Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004) (party's selective preservation of certain "evidence," while choosing to destroy other evidence, supports a "strong inference of an intent to destroy it for the purpose of suppressing evidence").

HPE is not asking for an extreme remedy under the law. More drastic sanctions, including terminating sanctions and *mandatory* adverse inference instructions, are available for intentional conduct of the type at issue here. HPE requests a reasonable remedy in the form of a permissive adverse inference instruction designed to deter parties from engaging in spoliation and to attempt to restore HPE to as similar of a position as possible to the one it would have been in absent the wrongful destruction of evidence by Mr. Hurd and/or Oracle—the very goals of sanctions in this context. *See, e.g.*, *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

### C.   At a Minimum, a Jury Instruction Is Warranted Because HPE Has Been Substantially Prejudiced by the Spoliation

If the Court does not agree that a permissive adverse inference instruction is warranted, HPE requests that it be permitted to present evidence and argument to the jury concerning the admitted spoliation and the likely relevance of the spoliated documents, and that the Court instruct the jury that

Gibson, Dunn & Crutcher LLP

it may consider that evidence in making its decision.  *Nuvasive, Inc.*, 2016 WL 305096, at *3 ("Instead of giving an adverse inference instruction, the Court will allow the parties to present evidence to the jury regarding the loss of electronically stored information and the likely relevance of that information, and will instruct the jury that the jury may consider such evidence along with all other evidence in the case in making its decision."); *see Matthew Enter., Inc.*, 2016 WL 2957133, at *5 (court opts for the "middle ground" of allowing party to "present evidence and argument about [] spoliation of customer communications" at trial); *see also, e.g.*, *McQueen v. Aramark Corp.*, 2016 WL 6988820, at *4 (D. Ut. Nov. 29, 2016) (ordering that the "parties will be permitted to present evidence to the jury regarding spoliation . . . and to argue any inferences they want the jury to draw"); *Ericksen v. Kaplan Higher Educ., LLC*, 2016 WL 695789, at *1 (D. Md. Feb. 22, 2016) (permitting non-spoliating party to "present evidence related to the loss of evidence and instruct the jury that they may consider the circumstances of the loss, in addition to all other evidence presented at trial"); *Keen v. Bovie Med. Corp.*, 2013 WL 3832382, at *3 (M.D. Fla. July 23, 2013) (denying adverse inference instruction, but holding that the non-spoliating party is "not precluded from presenting evidence of [spoliation] or arguing as part of its closing argument that adverse inferences should be drawn from [that] conduct"). No finding that Mr. Hurd acted with the "intent" to deprive HPE of the use of the information contained within the spoliated documents is required for this remedy.  *See* Fed. R. Civ. P. 37(e)(1).  The only finding required is that of prejudice.  *Id.*  Here, it cannot credibly be denied that HPE has been prejudiced by Mr. Hurd and/or Oracle's spoliation of indisputably relevant documents.  This necessitates, at a minimum, the remedy of presenting evidence and argument to the jury concerning the spoliation and the likely relevance of the spoliated documents, and instructing the jury that it may consider that evidence in making its decision.

As the head of Oracle's sales organization since 2010, Mr. Hurd has had direct involvement in Oracle's hardware and support policies and product offerings, and insight into customer reactions to and perceptions of those policies and product offerings, throughout the relevant time period.  In that capacity, Mr. Hurd has been uniquely involved in matters relevant to Oracle's claims and HPE's defenses to a degree that cannot fully be appreciated or ascertained in light of the large swaths of missing documents—the sum-total of which Oracle cannot possibly represent have been produced by

other custodians, because they clearly have not.  Even despite the fact that HPE cannot possibly know the content of all of the relevant information that has been lost as a result of this spoliation, the prejudice to HPE is obvious.  *See, e.g.*, *First Fin. Sec.*, 2016 WL 5870218, at *3 (presumption that destroyed evidence goes to the merits of the case and was adverse to the party that destroyed it).

For example, throughout his tenure with Oracle, Mr. Hurd has ███████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████  Thomas Decl. Ex. H [Dec. 12, 2017 Hurd Depo. Tr.] at 122:5-25.  Mr. Hurd testified that these reports show █████████████████████████████████████ looked at these reports to try and █████████████████████████████████████████████ ████████████  with Oracle (*id.* 123:7-13), which is critically relevant to the reasons customers left Oracle support and, in turn, to the causation element of Oracle's claims and to HPE's related defenses in this case.  Yet Oracle only produced a handful of these ████████████████████████████ from Mr. Hurd's files, and Oracle's productions from other custodians do not include the balance of these relevant reports.  HPE has repeatedly requested the balance of the reports from Oracle to no avail.

Mr. Hurd also has not produced a single document from 2012, even though Mr. Hurd's actions in 2012 are critically relevant to this case.  In 2012, Oracle and ██████ egotiating for support, including during a meeting between Jennifer Yohe Wagner of ██████. Hurd in November 2012.  *See, e.g.*, Thomas Decl. Ex. O [ORCLHPE00029517].  Oracle has not produced any documents from Mr. Hurd's files memorializing that meeting.  Similarly, documents produced in this case indicate that Mr. Hurd worked on a ██████████████████████.  *Id.* Ex. P [ORCLHPE00706546].  Yet Oracle has not produced a single document concerning Mr. Hurd's work on this offering, even though ████████ tomer for which Oracle seeks damages in this case.  *See id.* Ex. B  [Am. Pampinella Rep. Schedule 5A], at 1.  Oracle has yet to refute that such documents at one time existed in Mr. Hurd's files—documents that are highly relevant to Oracle's claims of improper conduct by HPE with respect to relevant customers.

Moreover, the myriad relevant documents sent by or to Mr. Hurd that were produced from *other* custodians' files but not Mr. Hurd's (Samplin Decl. ¶¶ 3-4) serve as illustrative examples of the type of relevant information that has been permanently deleted from Mr. Hurd's files:

1  • *Id.* Ex. Q [ORCLHPE00673403] (Nov. 2010 emails involving Mr. Hurd discussing research ███

2  ███████████ wherein Mr. Hurd requests a ████████████████████████████

3  ████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████ Larry Abramson, an

6  Oracle Senior Vice President at the time, provides Mr. Hurd with █████████████████

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████

10  • *Id.* Ex. R [ORCLHPE00017123] (January 2011 email to Mr. Hurd ██████████████

11  ██████████████████████████████████████████

12  • *Id.* Ex. N [ORCLHPE01651448] (February 2011 email to Mr. Hurd noting that ████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ██████████████████.

17  • *Id.* Ex. S [ORCLHPE01651480] (March 2011 email from Ms. Catz to Mr. Hurd addressing

18  ████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████

21  ██████████████████████████

22  • *Id.* Ex. T [ORCLHPE00712199] (March 2011 email to Mr. Hurd discussing the impacts of the

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ███████████████████████████████████

26  • *Id.* Ex. U  [ORCLHPE00515757] (July 2011 email to Mr. Hurd listing ████████████████

27  ████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████

- *Id.* Ex. V [ORCLHPE00892672] (August 2011 email from Mr. Rozwat to Mr. Hurd attaching ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ as well as a ██████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████)

- *Id.* Ex. W [ORCLHPE00517339] (March 2012 email to Mr. Hurd and others attaching the final ██████████████████████████████████████████████████████████████.)

- *Id.* Ex. X [ORCLHPE01191350] (July 2013 emails from Rich Allison, Oracle's Senior Vice President, to Mr. Hurd concerning Oracle's dispute with ██████████ relating to Solaris patches, which dispute was eventually settled between the parties and now forms the basis for conduct alleged against HPE in this case).

- *Id.* Ex. Y [ORCLHPE00862900] (November 2013 redacted emails from Oracle's General Counsel to Mr. Hurd and others concerning Oracle's negotiations with Hewlett Packard's Enterprise Services business ("HP ES") about the contract relationship between the two entities regarding the resale of Oracle support contracts, which is relevant to, among other things, the direct support customer allegations in this case).

- *Id.* Ex. Z [ORCLHPE01185763] (January 2014 redacted email from Oracle's Assistant General Counsel to Mark Hurd and others with subject, ████████████████████████████ █████████████████████ following an email between Oracle and ███████ concerning pre-settlement communications between the parties related to Solaris patches, which now form the basis for conduct alleged against HPE in this case).

- *Id.* Ex. AA [ORCLHPE00893201] (April 2014 emails to Mr. Hurd and others concerning a ███████████████████████ a relevant customer in this case).

- *Id.* Ex. HH [ORCLHPE01187596] (July 2014 email discussion involving Mr. Hurd concerning Oracle's ██████████████████████████████████████████████████████ ████████████████████████████████████████████████ Kari Schwartz of Oracle

1    replies, ████████████████████████████████████████████████████████

2    ██████████████

3    • *Id.* Ex. BB [ORCLHPE00551469] (November 2014 email to Mr. Hurd and others, including

4    █████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████

6    • *Id.* Ex. CC [ORCLHPE00862772] (May 2015 email from Mr. Allison to Mr. Hurd and Ms. Catz

7    concerning HP ES's reselling relationship with Oracle, which is relevant to, among other things,

8    the direct support customer allegations in this case).

9    • *Id.* Ex. GG [ORCLHPE01209695] (May 2015 redacted emails from Ron Kirk, Oracle's Vice

10   President of Business Development, to Mr. Hurd concerning ████████ responses to Oracle's

11   proposal for ████████ return to Oracle support, following Oracle's threat of litigation against

12   ████████ concerning Solaris patches, which now form the basis for conduct alleged against HPE

13   in this case).

14   • *Id.* Ex. DD [ORCLHPE00530145] (August 2015 email from the President and CEO of relevant

15   customer ████████ to Mr. Hurd, raising a support delivery ████████ on ████████ Sun Solaris

16   environment, and requesting that ██████████████████ followed by internal Oracle

17   communications involving Mr. Hurd).

18   • *Id.* Ex. EE [ORCLHPE00543192] (August 2015 email to Mr. Hurd discussing a $1.8M HW

19   contract with relevant customer ████████).

20   • *Id.* Ex. FF [ORCLHPE00560921] (April 2016 email to Mr. Hurd and others containing a

21   ██████████████████████████████████████████████ which sets forth

22   ██████████████████████ reasons for numerous Oracle customers, including relevant

23   customer ████████).

24   These documents and others like them show that Mr. Hurd was a key player in events across a wide

25   range of issues (and customer accounts) relevant to this dispute, making it highly likely that he sent

26   and received *even more* relevant documents that are not traceable through other custodians' files and

27   thus are not presently known to HPE. *See* Fed. R. Civ. P. 37 Advisory Committee Notes, 2015

28   Amendment (noting that while "[r]equiring the party seeking curative measures to provide prejudice

1   may be reasonable in [certain] situations[,] . . . [d]etermining the content of lost information may be a

2   difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose

3   the information may be unfair" in such cases).

4          Mr. Hurd also has not produced highly relevant documents concerning customer dissatisfaction

5   with, and complaints about, Oracle's product offerings.   Documents this Court ordered Oracle to

6   reproduce from *Itanium* (Dkt. 435, at 3), make clear that such discovery exists but has not been

7   produced from Mr. Hurd's files.   *See, e.g.*, Thomas Decl. Exs. N [ORCLHPE01651448] (February

8   2011 email to Mr. Hurd re: customer dissatisfaction with Oracle's hardware support offerings) & S

9   [ORCLHPE01651480] (March 2011 email to Mr. Hurd re: customer complaints about Oracle

10  hardware).   In fact, these highly relevant documents were not produced by Oracle during the course of

11  fact discovery in this case from *anyone's* files; HPE only now has possession of them because certain

12  of its attorneys remembered the documents from their involvement in the *Itanium* case and moved to

13  compel Oracle's production of them here, after fact discovery closed and it was clear that Oracle

14  intended to withhold the documents wholesale.   Dkt. 380.   Of course, HPE does not have insight into

15  how many more documents concerning these highly relevant topics are missing from production in this

16  case, including documents that should reside in Mr. Hurd's files.   And this *Itanium* situation proves

17  that Oracle cannot be trusted to have produced all of the relevant documents Mr. Hurd sent and received

18  via other custodians' files, further compounding the prejudice to HPE.

19         All of these facts establish clear prejudice to HPE that warrants sanctions—even if not in the

20  form of an adverse inference, Fed. R. Civ. P. 37(e)(2), then in the form of, *inter alia*, a jury instruction.

21  Fed. R. Civ. P. 37(e)(1); *see, e.g.*, *Nuvasive, Inc.*, 2016 WL 305096, at *3; *Ericksen*, 2016 WL 695789,

22  at *1.

23                              **V.     CONCLUSION**

24         For these reasons, HPE respectfully requests that the Court order a permissive adverse inference

25  instruction.   This is a highly reasonable ask given the gravity of Oracle's misconduct and this Circuit's

26  spoliation law and precedent.   Alternatively, the Court should order that the parties are entitled to

27  present evidence of the spoliation and the likely relevance of the spoliated documents, and that the jury

28  be instructed that it may consider that evidence in making its decision in this case.

Dated: June 5, 2018                     GIBSON, DUNN & CRUTCHER LLP

                                        By:  /s/         *Jeffrey T. Thomas*

                                        Attorneys for Defendant
                                        HEWLETT PACKARD ENTERPRISE COMPANY