UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., ET AL., Plaintiffs, v. HEWLETT PACKARD ENTERPRISE COMPANY, Defendant. | Case No. 16-cv-01393-JST **ORDER RE: MOTIONS TO EXCLUDE EXPERT TESTIMONY** Re: ECF No. 607, 610, 614, 615, 618 |

Now before the Court are several motions to exclude expert testimony. Plaintiffs Oracle America, Inc. and Oracle International Corporation (collectively "Oracle") move to exclude the testimony of expert witnesses Vincent Cohan, Daniel McGavock, and Ronald Schnell. ECF Nos. 607, 610, 614. Defendant Hewlett Packard Enterprise Company ("HPE") moves to exclude the testimony of expert witnesses Christian Hicks and James E. Pampinella. ECF Nos. 615, 618. The Court will grant these motions in part and deny them in part as set forth below.

I. **LEGAL STANDARD**

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Trial courts serve a "gatekeeping" role "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993)). They should screen "unreliable nonsense

opinions, but not exclude opinions merely because they are impeachable." *City of Pomona v. SQM North America Corp.,* 750 F.3d 1036, 1044 (9th Cir. 2014). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010). The proponent of the expert testimony has the burden of proving admissibility. *Lust By & Through Lust v. Merrell Dow Pharms., Inc.,* 89 F.3d 594, 598 (9th Cir. 1996).

In the Ninth Circuit, "Rule 702 contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Acc. Ins. Co.,* 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.,* 42 F.3d 1266, 1269 (9th Cir. 1994)) (emphasis and internal quotation marks omitted). "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. To testify as an expert in a patent case, an individual "need not be officially credentialed in the specific matter under dispute." *United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993).

Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## II. OPINIONS SOUGHT TO BE EXCLUDED

### A. Vincent Cohan

HPE expert witness Vincent Cohan is "an independent information technology ("IT") consultant [who] provid[es] advisory and business development services in the areas of IT engineering, operations, and transformation." ECF No. 606-5 ¶ 2. Since October 2015, he has been a consultant. Before that, he led or worked in IT engineering and operations positions at Time Warner, the AXA Group, and other large companies. *Id.* ¶ 3. He states that

> In each of these roles, I had responsibility for IT infrastructure

transformation, design, deployment, and support in a large, dynamic, complex, and global environment – each including many thousands of servers of varying ages, manufacturers, and operating systems, in multiple large-scale data centers, as well as smaller facilities, world-wide."

*Id*. Relevant to this case, he has represented various employers as a customer of "Oracle, Sun Microsystems, Inc., Hewlett Packard, Dell, IBM, and numerous other IT hardware and software vendors. *Id.* ¶ 4.

Cohan summarizes his assignment in this case as follows:

> I have been asked by counsel for HPE to provide opinions concerning the decision criteria typically used by enterprise customers in developing server maintenance strategies, including selecting hardware/software support vendors and how the decisions, strategies, and actions of Oracle and HPE with respect to their respective support offerings impacted each company's ability to compete for hardware/software support sales to enterprise customers applying these typical decision criteria, including the relevant customers at issue in this case. I have also been asked to render opinions regarding the decision criteria typically used by enterprise customers in selecting server hardware and the impact, if any, of the conduct alleged by Oracle in this case on support or hardware purchasing decisions made by the relevant enterprise customers.

*Id.* ¶ 8. In other words, Cohan offers opinions about the purchasing criteria generally used by enterprise customers like those at issue in this case. In addition, Cohan renders opinions about the reasons for decisions customers in this case *actually made*:

> My opinion, informed by my own professional experience and consideration of the documents, depositions, and other materials listed in Appendix B, is that the alleged infringing or interfering conduct (i.e., the alleged promise or provision of free Solaris patches and firmware updates without an associated Oracle support contract) would not, and did not, cause the customers at issue to move away from Oracle support to HPE's multi-vendor support ("MVS") offering.

*Id.* ¶ 9. Oracle now moves to exclude Cohan's testimony on four main grounds: (1) he lacks sufficient expertise in the relevant field; (2) his opinions about the motives and intent of particular actors are inadmissible; (3) his opinions are "unreliable"; and (4) his opinions are an impermissible conduit of hearsay evidence. Oracle asks the Court to exclude Cohan's opinions under Rule 702 or, in the alternative, Rule 403.

3

1    The Court overrules Oracle's first, third, and fourth objections.  Cohan has many years of
2 experience at a senior level in the acquisition and deployment of IT infrastructure.  Whether that
3 experience is an exact fit with the particulars of this case is a matter for cross-examination.  So is
4 whether he has examined sufficient material to support his opinions.  And questions of which
5 hearsay, if any, he can relay to the jury are best left for targeted motions in limine at trial.
6 "[A]n expert witness may offer opinions based on such inadmissible testimonial hearsay, as well
7 as any other form of inadmissible evidence, if 'experts in the particular field would reasonably rely
8 on those kinds of facts or data in forming an opinion on the subject.'  Moreover, the expert may
9 disclose to the jury the inadmissible evidence relied on in forming his opinion 'if [its] probative
10 value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect.'"
11 *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014) (quoting Fed. R. Evid. 703).

12    However, Oracle's second objection – that Cohan's opinions about the motives and intent
13 of particular actors are inadmissible – is on sounder footing.  Cohan is not allowed to testify
14 regarding the state of mind of HPE, Oracle, or Terix customers or opine as to why they did or did
15 not take a particular action.  "Courts routinely exclude as impermissible expert testimony as to
16 intent, motive, or state of mind."  *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon
17 Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (collecting cases).  That is because "[e]xpert
18 testimony as to intent, motive, or state of mind offers no more than the drawing of an inference
19 from the facts of the case.  The jury is sufficiently capable of drawing its own inferences regarding
20 intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject
21 would be merely substituting the expert's judgment for the jury's and would not be helpful to the
22 jury."  *Id.*; *see also Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL
23 1182550, at *2 (D. Ariz. Mar. 7, 2018) ("Though Hunton may present evidence, including in the
24 form of expert opinions, of pervasive claims handling failures, it is the jury that decides whether
25 the pervasiveness of these alleged failures warrant an inference that American Zurich acted
26 knowingly.  Accordingly, Flood will not be permitted to testify as to American Zurich's
27 knowledge or state of mind.")  Thus, Cohan will be permitted to testify about the considerations
28 on which persons in the field generally rely, but may not opine about why any person *in this case*

4

took or did not take a particular action or made or did not make a particular decision. Accordingly, Cohan may testify only to the topics set forth in Paragraphs 1-7, 11-13, 16-18, 20, 34, and 51 of his opening report, and in Paragraphs 1-4, 6-7, 9-10, and 12 of his rebuttal report.

### B. Daniel M. McGavock

HPE expert witness Daniel M. McGavock is a Vice President of Charles River Associates ("CRA") in its Chicago office and the leader of its intellectual property practice. ECF No. 609-5 at 6. He states that he was retained by HPE "to analyze accounting, financial, marketing, and other business records for the purpose of evaluating [Oracle's] potential damages" and "to review and assess" the expert report and amended expert report of Oracle expert James E. Pampinella. *Id.* ¶ 9.

McGavock obtained a Bachelor of Science in accounting in 1984. *Id.* His consulting work for the past 30 years has focused "broadly speaking" on "the application of accounting, business, financial, and economic analyses and expertise to matters involving IP rights" and that he has applied [his] expertise in both litigation matters and in business contexts outside of litigation." *Id.* He has "significant experience in IP valuation, damages assessment, and license audits involving software and hardware," has "testified on the subjects of lost profits, unjust enrichment and royalty damages in matters involving the alleged unlawful use of copyrighted software," and has assessed damages in situations involving large, complex contracts that require a customer by customer analysis "on numerous occasions." *Id.* at 7. He teaches a course on the valuation of IP assets at the Northwestern University Pritzker School of Law. *Id.*

Oracle makes four objections to McGavock's opinion: first, his "opinions roam far beyond his expertise in accounting"; second, "Second, McGavock's theories about liability and other 'factors' that he says influenced the customers' support decisions are not proper rebuttals to Mr. Pampinella or any of Oracle's experts, who were not tasked with assessing liability"; third, "McGavock's opinions are not the product of reliable expert work [because] . . . he improperly tries to adjust the 'but-for' damages world to suggest that, absent the allegedly wrongful conduct (i.e., the alleged interference and infringement), customers would not have contracted with Oracle"; fourth, "McGavock improperly relies on the expert report of Vincent Cohan in at least

5

forty instances," and Oracle has moved to exclude Cohan's opinion." ECF No. 609-4 at 9-10. Oracle asks the Court to exclude three categories of opinions from McGavock: "[o]pinions on issues related to liability and causation," including paragraphs 47-51, 61-122, and 127-132 of McGavock's report; "[o]pinions that implement and are based upon Mr. McGavock's [l]iability and [c]ausation [o]pinions," including paragraphs 127-132; "portions of . . . McGavock's damages 'adjustments' in Paragraph 167 and Table 9 that exclude servers actually supported by HPE and Terix for the customers at issue because they were more than five years old and/or do not appear in Oracle's OKS database"; and "[o]pinions based solely on the inadmissible expert reports of Vincent Cohan," including paragraphs 38-40, 44, 46-47, 49, 81-84, 87, 107-109. ECF No. 609-4 at 2-3.

Oracle's objection to McGavock's qualifications is overruled. As previously noted, Rule 702 contemplates a broad conception of expert qualifications. *Hangarter*, 373 F.3d at 1015. McGavock is qualified by virtue of his training, background, and experience to offer opinions regarding the market conditions for enterprise software and the factors that customers typically consider in purchasing such software, and may incorporate such opinions in his damages analysis.

The authority cited by Oracle on this point is not convincing. In *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, for example, the court's summary order excluded the testimony of an accountant regarding survey evidence (the nature of which is not disclosed in the opinion), but actually allowed the same expert to testify regarding "lack of damage to goodwill" and "reductions in compensatory damages due to market share." No. C08-1372 RSM, 2010 WL 11527273 at *2 (W.D. Wash. June 2, 2010). Thus, to the extent this Court draws anything from *Campagnolo*, it supports HPE's position, not Oracle's. Similarly, in *Apple, Inc. v. Samsung Elecs. Co.*, Judge Koh ruled that Apple expert Julie Davis could not testify regarding "whether Samsung copied Apple's products and patents," No. 11-CV-01846-LHK, 2013 WL 5955666 at *2 (N.D. Cal. Nov. 6, 2013), but she permitted Davis to offer opinions regarding topics that went beyond mere accounting, including whether internal Samsung documents constituted evidence of demand for particular features on Samsung's phones, *id.* at *5. McGavock should have similar latitude here. He may testify concerning the factors that customers typically consider in purchasing or licensing

6

enterprise software. Accordingly, for example, the request to exclude passages such as paragraphs 47-51 of his report is denied.

However, as with Vincent Cohan, McGavock may not render opinions about what particular customers would or would not have done, i.e., what licensing or purchasing decisions an HPE, Oracle, or Terix customer actually would have made in the absence of the allegedly infringing activity. *See, e.g.*, McGavock Decl. 92 ("For Joint HPE-Terix Customers who valued an MVS provider, even if HPE were not an option in the 'but for' world, it is likely they would have selected another MVS provider, such as IBM, Dell, Fujitsu, etc., instead of Oracle which did not offer an MVS option.").

On the other hand, he is permitted to *assume* that customers would have made such decisions, just as Oracle's damages expert assumes the reverse. The jury will then consider the evidence and decide for itself whether it agrees with McGavock's assumptions. The Court therefore overrules Oracle's objection that McGavock "improperly tries to adjust the 'but-for' damages world to suggest that, absent the allegedly wrongful conduct (i.e., the alleged interference and infringement), customers would not have contracted with Oracle" is denied. Paragraph 167 and Table 9 of his opinion specifically are admissible.

Lastly, for the same reasons that portions of the Cohan opinion are not admissible, the portions of the McGavock opinion that rely on the inadmissible portions of Vincent Cohan's opinion are themselves inadmissible. "Where the 'soundness of the underlying expert judgment is in issue,' the testifying expert cannot merely act as a conduit for the underlying expert's opinion." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (quoting *Dura Auto. Sys. Of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613-14 (7th Cir. 2002)).

Applying these principles, the Court rules as follows regarding the specific paragraphs at issue:

The objections to Paragraphs 47-51, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 74, 75, 76, 77 [treating the "I also understand" language as an assumption to support his testimony], 78, 80, 81, 82, 83, 85, 115, 117, and 127-132 are overruled.

1    The objections to Paragraphs 73, 84, 87-89, 90-114, 116, and 118-122 are sustained.

2    The objection to Paragraph 79 is overruled with the proviso that what McGavock states as his "understandings" are assumptions that must be identified as such and supported by admissible evidence.

The objection to Paragraph 81 is sustained as to the sentence, "Below I address these, and the manner in which, from a business perspective and based on my review of information in this case, Oracle's support offerings and departure from the support offerings that had been available under Sun affected customers' support decisions." The objections to the remainder of this paragraph are overruled.

The objection to Paragraph 86 is sustained as to the sentence, "It is my understanding that there could be no infringement associated with the TWC account, then, because TWC would have been legally entitled to any Patches and Updates it received pursuant to its still-operative Sun/Oracle support contract." The objections to the remainder of this paragraph are overruled with the proviso that what McGavock states as his "understandings" are assumptions that must be identified as such and supported by admissible evidence.

### C. Ronald S. Schnell

Oracle also moves to exclude the testimony of HPE rebuttal expert Ronald S. Schnell. HPE retained Schnell to rebut the opinions of Oracle expert witness Christian Hicks and to "assess and address certain portions of the expert reports written by Dr. Benjamin Goldberg, Mr. James E. Pampinella, and Mr. Robert S. Edwards." ECF No. 613-5 at 4. Schnell is currently an adjunct professor of computer science and an advisory board member at the College of Engineering and Information Science at Nova Southeastern University. 613-5 ¶ 2. He has a wide variety of experience in the computer science and software fields. From 2005 to 2011, he was the Chief Executive and General Manager of the corporation formed by the United States to oversee Microsoft's compliance with the judgments in the Microsoft antitrust litigation. For three years in the early 1990s, he was a kernel programmer and consultant at Sun Microsystems, whose Solaris operating system is relevant to this litigation.

Oracle does not dispute that Schnell is an expert in certain computer science and software

fields. It objects, however, to his providing opinions in four areas that Oracle contends are outside that expertise and which constitute "non-computer-science opinions," ECF No. 614 at 6: "HPE's participation in Terix's conduct and HPE's offer of Solaris patches and firmware to customers"; "Sun's and Oracle's support policies"; "customer preferences regarding patching"; and "the evidence required to establish copyright infringement." *Id.* at 2. Oracle identifies the objectionable paragraphs of Schnell's report as 19-20, 22, 25, 36, 43, 48-57, 64, 87, 91.c, and 91.d. ECF No. 613-4 at 2. Oracle also objects to opinions based solely on the expert report of Vincent Cohan, including the opinions disclosed in paragraphs 49, 50, and 91.d of Schnell's report. *Id.*

Like other expert witnesses in this case, Schnell offers opinions about typical customer preferences in the enterprise software market. *See, e.g.,* ECF No. 613-5 at ¶ 43 (stating that "enterprise customers like those at issue in this case are disinclined to patch mission-critical servers when they are functioning properly."); *id.* ¶ 22 ("In reality, based on my experience in the industry, and as discussed in further detail below, there are many reasons why customers do *not* want patches for their servers."). Oracle does not appear to object to this testimony and it is admissible. The Court also agrees with HPE that Schnell has adequate background, training, and expertise to opine regarding customer preferences regarding patching and the support of enterprise servers.

In several other respects, however, Schnell purports to tell the jury what happened in the case. *See, e.g., id.* ("the evidence and testimony in this Action shows that HPE signed up multivendor customers exclusively for services unrelated to the provision of patches or updates (e.g., hardware break-fix services)."*id.* ¶ *91.d. ("*As Mr. Cohan describes in his Rebuttal Report, however, HPE ES provided a vast array of support functions for its customers; support for software (e.g., Solaris software) was only a small part of those relationships."); ECF 613-9 at 32 (wherein Schnell testifies that he plans to offer the opinion that "the evidence and testimony shows that HPE signed up multivendor customers exclusively for services unrelated to the provision of patches or updates"). An expert witness may not usurp the function of the jury to weigh the evidence and determine credibility. Those portions of Schnell's testimony in which he purports to

9

state conclusions about disputed issues of fact are inadmissible.

With these principles in mind, the Court rules as follows on the particular disputed paragraphs of Schnell's expert report:

The objection to Paragraph 19 is overruled. This paragraph quotes from the evidence but does purport to resolve disputed facts.

The objection to Paragraph 20 is sustained.

The objection to the first three sentences of paragraph 22 is overruled, but the objection to the last sentence ("In fact, my understanding is that the evidence and testimony in this Action shows that HPE signed up multivendor customers exclusively for services unrelated to the provision of patches or updates (e.g., hardware break-fix services") is sustained.

The objection to Paragraph 25 is overruled.

Although Paragraph 36 recites some of the underlying facts, those facts do not appear to be disputed. Oracle identifies this testimony as objectionable but does not state that the testimony is inaccurate. The objection is overruled.

The objections to Paragraphs 43 and 48 are overruled.

The objections to Paragraphs 49-51 are sustained. The witness may state these facts are being an assumption, but may not assert them as proven facts.

The witness may identify an alleged flaw in the Hicks report ("These distinctions in the policies and practices as between Sun and Oracle are not addressed at all in Mr. Hicks's report"). The objection to the remainder of Paragraph 52 is sustained.

The objections to Paragraphs 53-57, 87, and 91.c. are sustained. In these paragraphs, the witness expresses opinions about disputes of material facts and offers legal opinions that are beyond his expertise.

The objection to Paragraph 64 is overruled.

The following sentence in Paragraph 91.d is admissible: "Based on my experience in the industry, I can confirm that this is common, as customers will often hire companies like HPE ES for end-to-end IT solutions, which can include managing applications, business processes, facility security and data center moves, among a variety of other services." The objection to the balance

of the paragraph is sustained.

### D. Christian Hicks

Oracle expert witness Christian Hicks is a computer scientist whose expertise includes data forensics. ECF No. 617-16 ¶¶ 1-5. Oracle retained him to "investigate the following topics: (1) HPE's acquisition and use of Oracle materials for providing customer support, [and] (2) HPE's engagement of Terix to download and provide Oracle materials to customers as part of HPE customer support." Id. ¶ 6.

HPE now moves to exclude portions of Hicks's testimony. ECF No. 617-3. It argues that Hicks offers improper opinions in the following areas: (1) "[t]he opinion that HPE had 'control' over Terix"; (2) "[t]he opinion that HPE 'facilitated' Terix's provision of patches"; (3) "[t]he opinion that HPE 'created archives of Oracle patches' for Symantec servers"; (4) "[t]he opinion that Terix delivered patches to unsupported HPE customer servers"; (5) "[t]he opinion that HPE installed patches on unsupported direct-support customer servers"; and (6) "[t]he opinion that Terix 'violated' Oracle contracts." Id. at 7-8.

HPE is correct that an expert witness is not permitted simply to review deposition testimony and other evidence and then proffer an opinion about "what actually happened in the case at hand." *S.E.C. v. Daifotis*, No. C 11-00137 WHA, 2012 WL 2051193, at *1 (N.D. Cal. June 7, 2012). An expert witness may not usurp the jury's role in making fact determinations. *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, No. CV 08-04310 MMM PLAX, 2009 WL 8591607, at *3 (C.D. Cal. July 14, 2009) (citing *Patsy's Italian Restaurant, Inc. v. Banas,* 531 F.Supp.2d 483, 486 (E.D.N.Y.2008)). And the categories of opinion HPE identifies seem likely to require impermissible weighing of the evidence and testimony about "what happened in the case."

Nonetheless, the Court cannot grant the motion. HPE moves to exclude only portions of his testimony, not all of it. However, HPE has not identified the particular paragraphs or sentences it wants the Court to exclude. *See Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*, No. C 09-2007 SBA, 2012 WL 243308, at *2 (N.D. Cal. Jan. 25, 2012) ("Plaintiff had failed to properly identify the specific portion of Mr. Carrasco's deposition testimony that it seeks to exclude. Plaintiff's brief did not direct the Court to the specific place in the record where the objectionable

testimony appears. This alone constitutes a sufficient basis to deny the motion in limine.");

*RePET, Inc. v. Zhao*, No. EDCV1502315VAPSPX, 2018 WL 3372749, at *4 (C.D. Cal. Mar. 20, 2018) (Zhao also does not identify any particular portion of Yip's report or testimony in which Yip simply conveys someone else's opinion. The Court therefore finds Zhao's final challenge to Yip without merit."). "The Court cannot 'make evidentiary determinations in a vacuum.' *M.H. v. Cty. of Alameda*, No. 11-CV-02868-JST, 2015 WL 894758, at *9 (N.D. Cal. Jan. 2, 2015) (quoting *CadleRock Joint Venture, L.P. v. Royal Indem. Co.,* 872 F.Supp.2d 592, 602 (N.D.Ohio 2012).

Accordingly, the motion is denied without prejudice to HPE's ability to object at trial.

### E. James E. Pampinella

Oracle expert witness James E. Pampinella is a certified public accountant and "a Managing Director in the San Francisco, California office of Navigant." ECF No. 619-2 ¶ 3. Navigant is a consulting firm that provides, among other things, litigation consulting services. *Id.* Pampinella "ha[s] been providing consultation services in the area of complex commercial litigation and valuation services for over 20 years, specializing in intellectual property strategic consulting and disputes."

Oracle retained Pampinella as a damages expert. It asked him to calculate both the profits that Oracle would have made in the absence of HPE's allegedly infringing conduct, and to estimate the amount of HPE's unjust enrichment, i.e., the amount of HPE's profits from the alleged infringement. *Id.* ¶ 43. HPE objects to Pampinella's lost profits calculation on the ground that he assumes that every Solaris patch that was downloaded by any HPE or Terix customer is a patch Oracle would otherwise have sold, a theory HPE calls Pampinella's "1-for 1 lost sales assumption." HPE contends that the evidence is inconsistent with Pampinella's assumption. It says that customers who obtained patches from HPE or Terix would not have purchased the same patches from Oracle because some of the servers at issue were too old for full-priced patches to make economic sense; because there is no evidence that Oracle ever supported 100 percent of the servers at issue; or simply because customers felt the price Oracle charged for its patches was too high.

12

As an initial matter, the Court notes that Pampinella may not offer opinions regarding causation or attempt to resolve factual disputes that are the province of the jury. So, for example, he may not provide the testimony contained in his expert report that "[a]bsent HPE's alleged misconduct, Oracle would have provided support for all of the Sun servers for these customers, rather than just a single server (or subset of servers)," [a]bsent HPE's alleged misconduct, Oracle would have provided support for all of the Sun servers for the affected customers," "it's my opinion that but for the misconduct at issue, these servers would not have gone to HPE and would have stayed with Oracle," or other similar opinions. But he may assume these scenarios for purposes of his analysis.

However, he may offer testimony as to what Oracle's lost profits would have been if every patch Oracle contends was improperly downloaded was instead purchased from Oracle. In other words, he may utilize a 1-for-1 assumption. If the assumption is not supported by sufficient evidence at trial, the Court can strike it, although the Court also notes Oracle's avowal that Pampinella prepared "an individual lost profits figure for every single server and every single customer that HPE/Terix supported under the allegedly unlawful business model." ECF No. 671-3 at 15. That means that "if HPE convinces the jury at trial that a particular set of servers or a particular customer either did not have access[1] to patches and firmware from HPE in the actual world or would not have sought it from Oracle in the but-for world, the model allows the jury to take those servers or customers out and award damages on the remainder." *Id.* Thus, it appears that Pampinella's opinion will be useful to the jury even if his 1-for-1 assumption turns out to be incorrect. HPE does not respond to this point.

HPE's remaining objections are properly the subject of cross-examination. The motion to exclude Pampinella's testimony is denied.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in the part the parties'

---

[1] Of course, for liability purposes, there is a big difference between "having access" to an infringing patch and actually downloading it. But the Court assumes that Pampinella's analysis is flexible regardless.

13

motions to exclude expert testimony.

**IT IS SO ORDERED.**

Dated: December 11, 2018



JON S. TIGAR
United States District Judge