JEFFREY T. THOMAS, SBN 106409
  jtthomas@gibsondunn.com
BLAINE H. EVANSON, SBN 254338
  bevanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
Facsimile:  949.451.4220

SAMUEL LIVERSIDGE, SBN 180578
  sliversidge@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendant
HEWLETT PACKARD ENTERPRISE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>              Plaintiffs,<br><br>    v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation; and DOES 1-50,<br><br>              Defendants. | CASE NO. 3:16-cv-01393-JST<br><br>**DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**<br><br>**<u>Hearing</u>:**<br>Date:     June 13, 2019<br>Time:    2:00 p.m.<br>Place:   Courtroom 9, 19th Floor<br>          450 Golden Gate Avenue<br>          San Francisco, CA 94102<br>Judge:  Hon. Jon S. Tigar |

REDACTED VERSION OF DOCUMENT SOUGHT
TO BE SEALED

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION AND MOTION

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that the following motion will be heard at 2:00 p.m. on June 13, 2019, or as soon thereafter as counsel may be heard, in Courtroom 9, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jon S. Tigar.

As the prevailing party in this copyright infringement action, defendant Hewlett Packard Enterprise Company ("HPE") will, and hereby does, move the Court for an award of attorneys' fees under 17 U.S.C. § 505.  Pursuant to N.D. Cal. Local Rule 54-5(b)(1), HPE met and conferred with Oracle on March 21, 2019, for the purpose of attempting to resolve any disputes with respect to HPE's Motion for Attorneys' Fees.  The parties were unable to resolve their disputes.

HPE intends to submit supplemental documentation of its fees incurred related to this motion and its supporting documents after it files its reply brief on May 13, 2019.  HPE also has separately filed a bill of costs.  *See* ECF No. 895.

This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Samuel Liversidge, the Declaration of Deanna Kwong, the Declaration of Kenneth Moscaret, the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, any evidence or argument presented at the hearing on the motion, and any other matters the Court deems proper.

Dated: March 22, 2019

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Samuel Liversidge*
Samuel Liversidge

Attorneys for Defendant
HEWLETT PACKARD ENTERPRISE COMPANY

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................. 3

    A.    Oracle Acquires Sun Microsystems in 2010 and Sues Terix in 2013 ......................... 3

    B.    Oracle Rebuffs HPE's Mediation Efforts, and Files This Lawsuit ............................. 3

        1.    HPE's Motion to Dismiss for Failure to Plead a Single Instance of Infringement ........................................................................................... 4

        2.    Oracle's Dogged Attempts to Expand the Case to Inflate Damages Exposure ............................................................................................ 4

        3.    Oracle Resists HPE's Early Attempts to Streamline the Case .......................... 6

        4.    The Court Admonishes Oracle .................................................................. 7

        5.    Oracle Fails to Obtain Evidence of Even a Single Instance of Infringement ........................................................................................... 7

    C.    The Court Grants Summary Judgment in HPE's Favor on All Claims ....................... 9

III.    ARGUMENT ....................................................................................................... 10

    A.    HPE Is Entitled to Attorneys' Fees Under the Copyright Act ................................... 10

        1.    HPE Achieved Total Success ................................................................... 11

        2.    Oracle's Delay in Suing HPE and Attempt to Dramatically Expand the Case Warrant an Attorneys' Fee Award ....................................................... 11

        3.    Fees Are Necessary to Compensate HPE and to Deter Oracle ....................... 15

        4.    A Fee Award Would Ensure That The Copyright Act Is Being Applied in an Evenhanded Manner ...................................................................... 17

    B.    HPE's Requested Fees Are Reasonable .............................................................. 18

        1.    The Amount Involved and the Results Obtained ........................................... 18

        2.    The Time and Labor Required .................................................................. 19

        3.    The Skill Requisite to Perform the Legal Service Properly ............................. 21

        4.    The Customary Fee ............................................................................... 22

        5.    The Experience, Reputations, and Ability of the Attorneys ............................. 24

        6.    The Nature and Length of the Professional Relationship with the Client ........... 25

        7.    Awards in Similar Cases ......................................................................... 25

IV.    CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. Urban Outfitters, Inc.*,
　431 F. Supp. 2d 351 (S.D.N.Y. 2006) ........................................................................16

*Banas v. Volcano Corp.*,
　47 F. Supp. 3d 957 (N.D. Cal. 2014) .........................................................................23

*Bridgeport Music, Inc. v. Dimension Films*,
　410 F.3d 792 (6th Cir. 2005) .........................................................................13, 15, 16

*Camacho v. Bridgeport Fin., Inc.*,
　523 F.3d 973 (9th Cir. 2008)........................................................................................22

*Carter v. Caleb Brett LLC*,
　757 F.3d 866 (9th Cir. 2014) ......................................................................................18

*Chalmers v. City of Los Angeles*,
　796 F.2d 1205 (9th Cir. 1986) .....................................................................................22

*Choyce v. SF Bay Area Indep. Media Ctr.*,
　2014 WL 5597274 (N.D. Cal. Nov. 3, 2014) .........................................................11, 16

*Counts v. Meriwether*,
　2016 WL 1165888 (C.D. Cal. Mar. 9, 2016) ..............................................................20

*Dillard v. City of Greensboro*,
　213 F.3d 1347 (11th Cir. 2000) ...................................................................................22

*Elser v. I.A.M. Nat'l Pension Fund*,
　579 F. Supp. 1375 (C.D. Cal. 1984)............................................................................22

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
　122 F.3d 1211 (9th Cir. 1997) ................................................................................13, 15

*Fogerty v. Fantasy, Inc.*,
　510 U.S. 517 (1994) ...............................................................................1, 11, 17, 18

*Fosson v. Palace (Waterland) Ltd.*,
　78 F.3d 1448 (9th Cir. 1996) .......................................................................................14

*G. F. v. Contra Costa Cty.*,
　2015 WL 7571789 (N.D. Cal. Nov. 25, 2015)............................................................23

*Gates v. Deukmejian*,
　987 F.2d 1392 (9th Cir. 1992) .....................................................................................21

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Glacier Films (USA), Inc. v. Turchin*,
  896 F.3d 1033 (9th Cir. 2018) ................................................................................10, 11

*Goldberg v. Cameron*,
  2011 WL 3515899 (N.D. Cal. Aug. 11, 2011) ..................................................................12

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ..................................................................................18, 19

*Gusman v. Unisys Corp.*,
  986 F.2d 1146 (7th Cir. 1993) ...........................................................................................23

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2015 WL 2438274 (N.D. Cal. May 21, 2015) ..................................................................23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................18, 19, 20

*Hewlett Packard Co. v. Oracle Corp.*,
  No. 1-11-cv-203163 (Cal. Super. Ct., filed June 15, 2011) ............................................7

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
  912 F.3d 1147 (9th Cir. 2019) .........................................................................................20

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ......................................................................................21, 25

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (2016) ...........................................................................11, 15, 16, 17, 18

*Kourtis v. Cameron*,
  358 F. App'x 863 (9th Cir. 2009) ................................................................................15, 22

*U.S. ex rel. Lee v. Corinthian Colls., Inc.*,
  2013 WL 12114064 (C.D. Cal. June 6, 2013) ................................................................23

*Lexar Homes, Inc. v. Port*,
  2013 WL 6498293 (E.D. Wash. Dec. 11, 2013) ..............................................................14

*Love v. Mail on Sunday*,
  2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) ............................................................14, 16

*Lugus IP, LLC v. Volvo Car Corp.*,
  2015 WL 1399175 (D.N.J. Mar. 26, 2015) ......................................................................24

*Luvdarts, LLC v. AT & T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ...............................................................................1, 4, 13

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
  2007 WL 5279897 (C.D. Cal. Nov. 5, 2007) ..................................................................24

*Mattel, Inc. v. MGA Entm't, Inc.*,
  2011 WL 3420603 (C.D. Cal. Aug. 4, 2011) ..........................................................16, 25

*Mattel, Inc. v. MGA Entm't, Inc.*,
  705 F.3d 1108 (9th Cir. 2013) ..........................................................................17, 18

*Max Sound Corp. v. Google, Inc.*,
  2017 WL 4536342 (N.D. Cal. Oct. 11, 2017) ..................................................................23

*Minow v. Lexus*,
  2008 WL 11338145 (C.D. Cal. Aug. 15, 2008) ..................................................................21

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ..........................................................................24

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ..........................................................................19, 21

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
  2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) ..................................................................23

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*,
  675 F.2d 1319 (D.C. Cir. 1982) ..........................................................................22

*Norton v. City of Springfield*,
  281 F. Supp. 3d 743 (C.D. Ill. 2017) ..................................................................24

*Oracle Am., Inc. v. CedarCrestone*,
  3:12-cv-04626 (N.D. Cal., filed Sept. 5, 2012) ..................................................................3

*Oracle Am., Inc. v. Serv. Key, LLC*,
  4:12-cv-00790 (N.D. Cal., filed Feb. 17, 2012) ..................................................................3

*Oracle Am., Inc. v. SMS Sys. Maint. Servs., Inc.*,
  3:15-cv-05264 (N.D. Cal., filed Nov. 17, 2015) ..................................................................3

*Oracle Am., Inc. v. Terix Comp. Co.*,
  5:13-cv-03385 (N.D. Cal.) ..........................................................................3

*Oracle America, Inc. v. Google Inc.*,
  3:10-cv-03561 (N.D. Cal., filed Aug. 12, 2010) ..................................................................3

*Oracle Corp. v. Rimini St., Inc.*,
  2:10-cv-00106 (D. Nev., filed Jan. 25, 2010) ..................................................................3, 17

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

*Oracle Corp. v. SAP AG*,
   4:07-cv-01658 (N.D. Cal., filed Mar. 22, 2007) ...................................................3, 17

*Perfect 10, Inc. v. Giganews, Inc.*,
   2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ...................................17, 19, 22, 24, 25

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980) ........................................................................................14

*Schwarz v. Sec'y of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995) ...............................................................................21

*Scott v. Meyer*,
   2010 WL 2569286 (C.D. Cal. June 21, 2010) ......................................................17

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
   2016 WL 6871280 (C.D. Cal. Jan. 12, 2016) .......................................................23

*Shame on You Prods., Inc. v. Banks*,
   893 F.3d 661 (9th Cir. 2018) ....................................................................11, 15, 16

*Spanski Enters., Inc. v. Tlewizja Polska S.A.*,
   278 F. Supp. 3d 210 (D.D.C. 2017) ....................................................................24

*Stern v. Does*,
   978 F. Supp. 2d 1031 (C.D. Cal. 2011) ...............................................................12

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
   340 F.3d 829 (9th Cir. 2003) .............................................................................20

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
   2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) ......................................................22

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   130 F. Supp. 3d 1331 (C.D. Cal. 2015) ...............................................................23

*Urban Textile v. Specialty Retailers*,
   2017 WL 5983761 (C.D. Cal. June 15, 2017) .......................................................13

*Van Gerwen v. Guar. Mut. Life Ins.*,
   214 F.3d 1041 (9th Cir. 2000) ...........................................................................18

*Visa Outdoor Inc. v. Reeves Family Tr.*,
   2018 WL 3104631 (S.D.N.Y. May 24, 2018) .......................................................23

*Webb v. Sloan*,
   330 F.3d 1158 (9th Cir. 2003) ...........................................................................20

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Wynn v. Chanos,*
   2015 WL 3832561 (N.D. Cal. June 19, 2015) ...........................................................23, 25

4

5

*Xu v. Yamanaka,*
   2014 WL 3840105 (N.D. Cal. Aug. 1, 2014)...............................................................24

6

**Statutes**

7

17 U.S.C. § 505 ...............................................................................................................1, 10

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

After three years of complex litigation, this Court "grant[ed] summary judgment to HPE on all claims," and denied Oracle's competing motion for summary judgment "in full." ECF No. 893 at 20. HPE is the prevailing party in this lawsuit, and the Copyright Act allows HPE to seek its reasonable attorneys' fees. *See* 17 U.S.C. § 505 ("the court may also award a reasonable attorney's fee to the prevailing party"). Given HPE's complete success in the case, Oracle's unreasonable and aggressive approach in the litigation, and the need to compensate HPE and to deter Oracle, the Court should grant HPE's motion and award HPE the reasonable fees it requests. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994). Indeed, in other copyright cases where Oracle has *prevailed*, it has been awarded fees—between $28 million and $121 million. By the same token, Oracle should be required to pay fees when it *loses*—particularly given the Supreme Court's instruction that "prevailing plaintiffs and prevailing defendants are to be treated alike" for purposes of awarding fees under the Act. *Id.* at 534.

For three years, Oracle did what it could to expand the scope of this litigation beyond what the evidence could show, trying to turn this case into something it was not, in an attempt to put a nine-figure damages number before a jury. Oracle repeatedly overreached with allegations related to scores of customers that it *admitted* it could not support with any evidence. Oracle had no evidence of any specific instances of improper patching, and Oracle *admitted* that it had no evidence of improper patching at many customers, yet nevertheless included these customers in the damages claim it planned to present to the jury. HPE was forced to spend significant resources defending against allegations on customers that Oracle included in the case for no reason other than to prop up its damages number. This approach by Oracle permeated the case.

HPE argued at the motion to dismiss stage that Oracle had not alleged a single instance in which HPE or Terix installed a Solaris patch on an unentitled server. This Court deemed Oracle's allegations sufficient at that stage, but also pointed out that "actual knowledge of *specific acts of infringement* is *required* for contributory infringement liability." ECF No. 68 at 8 (emphases added) (quoting *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013)). Oracle chose to ignore that element, and rather than use discovery to seek evidence of specific unauthorized installations,

1    Oracle aggressively expanded the scope of this case, focusing on evidence of a supposed "scheme"

2    between HPE and Terix.  Oracle's litigation tactics also at times crossed the line from zealous to

3    inappropriately hostile and aggressive.  *See* ECF No. 516 at 1 (Judge Laporte "admonish[ing] Oracle

4    for its failure to adhere to the Northern District of California's 'Guidelines for Professional Conduct'").

5         Despite expanding the case, and imposing enormous undue burdens on HPE and the Court,

6    Oracle *still* failed to uncover evidence proving even a single instance of infringement.  Oracle's strategy

7    at summary judgment, and its clear plan for trial, was to paper over this evidentiary void by pointing

8    to inflammatory guilty pleas in a separate, irrelevant criminal matter and to the stipulated judgment

9    from the *Terix* case—hoping the Court and the jury would overlook that Oracle could not prove a *single*

10   *instance* in which HPE or Terix installed a Solaris patch on an unentitled server.

11        Oracle showed no interest in litigating a case focused on specific instances of infringement

12   because that approach would not have led to significant damages.  Had Oracle sought to prove specific

13   improper installations, the case could have been manageable, and the potential damages realistic.  But

14   Oracle chose a different path, and the case mushroomed into something much different.  Oracle lost

15   that case.  And because Oracle's approach to the litigation was unreasonable and imposed incredible

16   burdens on HPE and the Court, HPE should be compensated (and Oracle deterred) by a fee award—

17   particularly given that Oracle has recovered fees in the copyright cases in which it has prevailed.

18        HPE's request for $17,879,638.03 in fees is reasonable.  The fees incurred in defending this

19   lawsuit were substantial—to date $19,756,517.79.  HPE has conducted a detailed review of its billing

20   records and has unilaterally eliminated $1,876,879.76 in fees from the requested amount, roughly 10%

21   of the total fees incurred.  As established in the Declarations of Samuel Liversidge, Deanna Kwong,

22   and attorneys' fees expert Kenneth Moscaret, this request is reasonable for a case of this type.  The

23   number of hours expended is commensurate with the complex and contentious nature of this lawsuit.

24   And the rates charged by HPE's counsel are in line with the prevailing rates for similar services in the

25   Northern District of California, and with the rates historically charged by Oracle's counsel, Latham &

26   Watkins.  HPE also should recover the fees incurred successfully defending against Oracle's state-law

27   claims because they arise out of the same common course of conduct as Oracle's copyright claims.

28

## II.  FACTUAL BACKGROUND

### A.  Oracle Acquires Sun Microsystems in 2010 and Sues Terix in 2013

Oracle acquired Sun in January 2010, along with Sun's rights, interests, and title in the Solaris enterprise operating system, which is used primarily with Oracle's Sun-branded servers.  ECF No. 893 at 2.  ███████████████████████████████████

███████████████████████████████ (ECF No. 476-21 at 28), and accused both of "[c]laiming to legitimately source and install Sun's non-security related software patches and Sun spares" (ECF No. 893 at 10).  Oracle also stated in November 2010 that it would "be forced to approach [customers] over IP issues" if they "go to HP [and Terix] for support."  ECF No. 893 at 10–11.  And "in October 2011, Oracle employees confirmed that … a customer that was no longer under Oracle support, was receiving patches from Terix, and characterized it as 'a big deal,' saying, '[w]e need to push on this.'"  *Id.* at 11.

Despite suspecting since 2010 that Terix provided patches to unentitled servers, Oracle did not sue Terix until July 2013.  *Oracle Am., Inc. v. Terix Comp. Co.*, 5:13-cv-03385 (N.D. Cal.) ("*Terix*").  And even then, Oracle did not sue HPE, despite knowing that HPE used Terix's services, and that at least Comcast was in September 2011 considering "HP/Terix" for support.  ECF No. 893 at 11.

Oracle and Terix settled and stipulated to a judgment without a final disposition on the merits (ECF No. 473-8), after extensive discovery, including over 10 million pages of produced documents.  Oracle served over 75 third-party subpoenas, including one on HPE—in response to which HPE produced over 51,000 pages of documents and a Rule 30(b)(6) deponent.  *See Terix*, ECF No. 412.[1]

### B.  Oracle Rebuffs HPE's Mediation Efforts, and Files This Lawsuit

After settling with Terix, Oracle turned its attention to HPE.  Relying on documents produced in *Terix*, Oracle asserted that any customer that HPE and Terix supported jointly must have been stolen from Oracle because of Terix's misconduct, and that HPE is responsible for all of Oracle's lost profits.

Oracle and HPE participated in an initial mediation session in early February 2016, during

---

[1]  Oracle routinely sues competing software support providers for copyright infringement.  *E.g.*, *Oracle Am., Inc. v. SMS Sys. Maint. Servs., Inc.*, 3:15-cv-05264 (N.D. Cal., filed Nov. 17, 2015); *Oracle Am., Inc. v. CedarCrestone*, 3:12-cv-04626 (N.D. Cal., filed Sept. 5, 2012); *Oracle Am., Inc. v. Serv. Key, LLC*, 4:12-cv-00790 (N.D. Cal., filed Feb. 17, 2012); *Oracle America, Inc. v. Google Inc.*, 3:10-cv-03561 (N.D. Cal., filed Aug. 12, 2010); *Oracle Corp. v. Rimini St., Inc.*, 2:10-cv-00106 (D. Nev., filed Jan. 25, 2010); *Oracle Corp. v. SAP AG*, 4:07-cv-01658 (N.D. Cal., filed Mar. 22, 2007).

Gibson, Dunn &
Crutcher LLP

which HPE argued, among other things, that Oracle had not identified a specific instance of unauthorized copying, that a portion of Oracle's copyright claims are barred by the statute of limitations, and that Oracle's damages claims vastly overreached. Declaration of Deanna Kwong ¶ 2. The parties continued to explore settlement into March, and HPE requested that the parties engage in a second mediation session. *Id.* Oracle refused, and instead stated that it would be filing a lawsuit. *Id.*

Oracle filed this lawsuit on March 22, 2016. ECF No. 1. Oracle asserted claims for indirect (vicarious and contributory) and direct copyright infringement, intentional interference with contract, intentional interference with prospective economic relations, and unfair competition. *See id.* Oracle sought lost profits and punitive damages, injunctive relief, and attorneys' fees and costs. *See id.*

### 1.     HPE's Motion to Dismiss for Failure to Plead a Single Instance of Infringement

In May 2016, HPE moved to dismiss Oracle's complaint because it contained several "gaping hole[s]" (ECF No. 44 at 6), including Oracle's failure to allege a single instance in which "HPE obtained or installed—by itself or along with Terix—Solaris Updates *for a server without an Oracle support contract*" (ECF No. 48 at 1). HPE argued that the "central allegation in the Complaint" is that HPE and Terix engaged in a "scheme" to install Solaris patches onto servers without a support contract, yet Oracle failed to plead a single instance in which that occurred. Ex. 1 (7.14.16 Hr'g Tr.) at 14:8–16:17. Oracle failed to identify an instance in which an HPE employee "installed an update on an Oracle server that did not have a subscription for that update" (*id.* at 5:15–17), or "knew that Terix was installing an update on a server without a support contract" (*id.* at 7:7–9; *see* ECF No. 48 at 3). This Court denied HPE's motion in relevant part, but made clear that Oracle would need to prove "specific acts of infringement" to prevail in the case. ECF No. 68 at 8 (quoting *Luvdarts*, 710 F.3d at 1072).

### 2.     Oracle's Dogged Attempts to Expand the Case to Inflate Damages Exposure

A few months after filing this lawsuit, Oracle embarked on a campaign to expand the scope of this case beyond the allegations in its complaint.

***Hardware support, irrelevant software, international customers, and non-Terix TPMs.*** In June 2016, Oracle began demanding discovery on: HPE customers receiving hardware-only support, all Oracle software (beyond Solaris) for which HPE provides support, HPE-Terix customers with servers located abroad, and non-Terix subcontractors. ECF Nos. 96, 105, 106; Ex. 2 (10.24.16 Hr'g

Tr.) at 20–26.  HPE argued that Oracle was not entitled to these broad categories of discovery, because Oracle's complaint focused only on "Terix's and (to a far lesser extent) HPE's support for Oracle's Solaris software" for domestic customers (ECF No. 96 at 7), and because Oracle's demand "could increase discovery potentially tenfold" (Ex. 2 (10.24.16 Hr'g Tr.) at 9:19–11:9).  Judge Laporte agreed and ruled that Oracle failed to show it was entitled to this discovery.  ECF No. 106 at 3–8.

***Direct support customers.***  From late 2016 to mid-2018, Oracle sought discovery on the substantial number of customers associated with HPE's separate ES business.  *E.g.*, ECF No. 151-3. HPE argued that Oracle was not entitled to this discovery, because (among other reasons) Oracle had known about and participated in HPE ES's outsourcing business for years, "yet chose not to include [allegations about it] in its complaint."  *Id.* at 7.  HPE explained that it conducted a "substantial and time consuming" investigation into its direct support accounts, but found no evidence of any effort to install patches on unsupported servers, let alone any accounts structured like the HPE-Terix accounts alleged in Oracle's complaint.  *Id.* at 8–10.  Although Judge Laporte allowed "some testing" for these customers, the Court warned Oracle that it "can't chase down speculation" (Ex. 3 (1.17.17 Hr'g Tr.) at 14:7–16), and later limited Oracle to only reasonably available centralized data (ECF No. 302).  Oracle continued to seek additional direct support discovery up to six months *after* the fact discovery cutoff.

***Oracle's Second Amended Complaint.***  Oracle moved in May 2017 for leave to file a Second Amended Complaint to add allegations about the direct support customers and Terix's distribution of Solaris patches to international customers, among other allegations.  ECF No. 231.  HPE argued that "Oracle's motion attempts to dramatically expand the scope of the case" solely so it can "expand discovery to additional customers and [] inflate its potential damages estimate."  ECF No. 245-3 at 9, 20.  Indeed, "Oracle's proposed amended complaint [*did*] *not allege a single additional act of infringement*."  *Id.* at 2.  HPE stressed—as it had done from day one—that "there isn't … any evidence that any such server received a patch or an update at a time when there wasn't a support contract."  Ex. 4 (7.6.17 Hr'g Tr.) at 10:12–14.  The Court recognized that Oracle was trying to "expand[] the scope of discovery and of the case," but allowed Oracle to file an amended complaint.  ECF No. 303 at 5, 7.

***Oracle continues seeking discovery after the discovery cutoff.***  Fact discovery closed on October 2, 2017, yet Oracle continued to press for additional discovery well after that date.  By August

10, 2017, for instance, HPE had provided Oracle with all reasonably available centralized data relating to the direct support customers.  But Oracle demanded in March 2018—nearly *six months* after fact discovery ended—that HPE provide all "access credentials [that] HPE used to access Oracle's support website" for direct support customers, and "installation logs" for some unspecified number of directly supported servers.  ECF No. 505 at 1.  In April 2018, Judge Laporte rejected Oracle's late demand for more direct support discovery and request that HPE be precluded from even arguing that Oracle lacks evidence relating to the direct support customers.  ECF No. 515.  This Court denied Oracle's motion for relief from Judge Laporte's order.  ECF No. 605 at 3.

***HPE hardware sales.***  On October 10, 2017, Oracle sought "non-custodial data related to [HPE's] sale of hardware to the customers at issue," on the theory that HPE convinced customers to replace Oracle servers with HPE hardware using the relationships it developed purportedly by offering free patches.  ECF No. 382 at 1.  Judge Laporte denied Oracle's request for broad discovery, but ordered the parties to exchange limited data (ECF No. 442), which they did on December 1, 2017.  HPE emailed Oracle on December 5, 2017, requesting that the parties commence court-ordered meet and confers for any additional custodian-based discovery (ECF No. 497 at 7), but Oracle did not respond.  Oracle let months pass, and then demanded—on February 22, 2018—that HPE produce custodial data.  *Id.*  Oracle attempted to justify its failure to respond by saying that HPE's meet-and-confer request was "buried" in its email.  *Id.* at 4.  Judge Laporte found this explanation "disturb[ing]," and denied Oracle discovery because it "offer[ed] no reasonable explanation" for its "unreasonable" delay.  ECF No. 514 at 3.

### 3.   Oracle Resists HPE's Early Attempts to Streamline the Case

While Oracle was trying to expand and complicate this case, HPE was trying to streamline it.  In March 2017, HPE moved for leave to file an early motion for partial summary judgment on its statute of limitations defense.  ECF No. 194.  HPE submitted three documents it later presented at summary judgment, and argued (like it did during mediation) that Oracle "reasonably *could have* discovered the facts underlying its allegations in this case, and in fact *did* discover those facts six years ago."  *Id.* at 1.  HPE explained that early resolution of its defense "would create substantial efficiencies in this case" (*id.*), but Oracle opposed HPE's motion (ECF No. 200), and the Court denied it (ECF No. 214).

1

#### 4.      The Court Admonishes Oracle

Oracle's approach to this litigation was aggressive and, at times, inappropriately so.  For instance, the parties filed a letter brief in October 2017 on Oracle's refusal to produce a discrete set of 12 documents that Oracle had previously produced in *Hewlett Packard Co. v. Oracle Corp.*, No. 1-11-cv-203163 (Cal. Super. Ct., filed June 15, 2011) ("*Itanium*").  The documents would have been trial exhibits (*see* Liversidge Decl. ¶ 15), as they concerned Oracle's support services and hardware offerings—both of which Oracle put at issue in this case (ECF No. 380 at 2).  Rather than produce the documents, Oracle accused HPE's counsel of violating the protective order in *Itanium*, and threatened to move for sanctions.  ECF No. 380 at 7–10.  Judge Laporte rejected Oracle's argument, found that it would place an unnecessary "burden on the court" even to review the documents *in camera* (Ex. 5 (10.31.17 Hr'g Tr.) at 52:8–13), and ordered Oracle to produce all 12 documents (ECF No. 435 at 3).

The parties also submitted letter briefing in October 2017 and March 2018 on Oracle's refusal to produce documents from its co-CEO Mark Hurd.  ECF Nos. 353-22, 510.  In those briefs, Oracle suggested that HPE's arguments were not made "in good faith," and insisted that "HPE should be compelled to produce its CEO … for deposition" if HPE continues to seek the documents.  ECF No. 353-22 at 5–8.  Oracle also responded to HPE's queries, not with answers, but with *ad hominem* attacks on HPE and its counsel.  *See* ECF No. 510 at 8.  As a result, in April 2018, Judge Laporte issued an "Order Admonishing Oracle As To The Parties' Joint Letter Brief Regarding Mark Hurd's Document Production."  ECF No. 516.  Judge Laporte stated:

> The Court is very disappointed by the extreme, unnecessary, overheated rhetoric employed primarily by Oracle, such as its opening salvo—"Time and time again, HPE and its counsel have shown that there is no game they will not play in the pursuit of misperceived litigation advantage …"—which is followed by phrases such as "blatant gamesmanship," "knowingly misrepresenting facts in an attempt to slander," "empty accusations," "supposed grievances," "Nonsense" and the like.

*Id.* at 1.  In response to Oracle's threat to file a spoliation motion, Judge Laporte stated that "[d]iscovery motion practice should not be an exercise of 'tit for tat' retaliation," and "admonishe[d] Oracle for its failure to adhere to the Northern District of California's 'Guidelines for Professional Conduct.'"  *Id.*

#### 5.      Oracle Fails to Obtain Evidence of Even a Single Instance of Infringement

Despite expanding the case in every direction, Oracle failed to uncover the most basic evidence necessary for its claims—that HPE or Terix installed a single Solaris patch on a single unentitled server

1    belonging to a joint customer, a direct support customer, or ██████ .

2          ***Joint HPE-Terix customers.***  For the approximately 37 joint customers, Oracle failed to obtain

3 evidence that a Solaris patch was ever installed on a particular server that was not entitled to receive it.

4 ECF No. 475-7 at 186:11–16, 249:15–24.  Oracle subpoenaed customers who would have possessed

5 installation information, but Oracle's subpoenas focused on finding evidence of an alleged "scheme."

6 ECF Nos. 474-11, 474-12, 474-13.  For example, Oracle issued a subpoena to ████████████ ,

7 requesting documents concerning support services that HPE had provided ████ .  ECF No. 474-12,

8 ¶ 5.  But Oracle never expressly asked ██████ whether HPE installed a Solaris patch on an unentitled

9 server.  *See id.*  So too for the other subpoenaed customers.  *See*, *e.g.*, ECF Nos. 474-11, 474-13.

10         Instead, Oracle relied on the same evidence it obtained in *Terix*.  *Compare* ECF No. 475-20

11 ¶¶ 48–105, *with* Ex. 10 (Christian Hicks *Terix* Expert Report), 5.4.1–5.6.11; *see also* Ex. 11 (redline

12 comparing portions of Hicks's report in *Terix* to Hicks's report in this case).  In concluding that Terix

13 delivered patches to customers, for example, Oracle's technical expert Christian Hicks relied

14 exclusively ████████████████████████████ that Terix created and produced in the *Terix*

15 case.  *See* ECF No. 615 at 14; ECF No. 617-22; ECF No. 475-20 ¶¶ 77, 83, 99; ECF No. 826 at 2–5.

16 ████████████████████████████████████████████████

17 ████████ .  ECF No. 475-7 at 163:7–23; 166:24–168:14, 181:11–24. ████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████ .  *Id.* at 166:1–19; 183:15–185:16, 187:10–14.

21        Moreover, Hicks conceded that ████████████████████████

22 ████████████████████████████████████████████████

23 ████ .  *See* ECF No. 617-22; Ex. 12 ████████████████████ ; ECF No. 475-7 at 172:1–

24 173:10, 179:24–181:6; Ex. 16 (Ronald Schnell Expert Report), ¶ 83(b).  Following Hicks's deposition,

25 Oracle produced ████████████████████████████████████

26 ████████████████████████████████████████████████

27 ██ .  Ex. 13 (Oracle's Third Am. Resp. to HPE's Interrog. No. 25, Ex. B).  Oracle's damages expert

28 nevertheless ████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

███████. *See* Ex. 14 (James Pampinella Expert Report), ¶¶ 61–94; Ex. 16 (Schnell Report), ¶ 86.

**Direct support customers.**  Oracle's direct support claim fared no better.  Hicks identified 188 servers belonging to 11 customers that allegedly received a patch improperly (*see* ECF No. 471, App. C, Ex. 3), but Oracle had no evidence that HPE—as opposed to the customer or Oracle—performed the alleged installations or that the patches had even been installed at all (and at least some logically could *not* have been installed given that the accused patch had not even been released yet).  Hicks ████████████████████████████████████████████ (ECF No. 475-7 at 100:2–102:2), but the undisputed evidence was to the contrary (*e.g.*, Ex. 8 (Jensen Depo. Tr.) at 91:15–92:24 (████████████████████████████████████████████).  Hicks even admitted ██████████████████████████ ██████████ ECF No. 475-7 at 78:13–79:7.  As a result, Oracle conceded at the summary judgment hearing that it cannot identify "a specific patch that got installed on a specific server" belonging to a direct support customer.  Ex. 6 (6.14.18 Hr'g Tr.) at 5:6–9.

████████.  As to the ████████ account, Oracle failed to obtain evidence that HPE installed a specific patch on a server that was not entitled to receive it.  Hicks, again, conceded that Oracle cannot ████████████████████████████████████ ECF No. 475-7 at 200:23–201:3.

Despite having insufficient evidence to prove specific acts of infringement, Oracle sought nearly $100 million in lost profits damages (*see* Ex. 14 (Pampinella Report), ¶ 41), an additional $300 million in punitive damages, and an overbroad injunction (*see* Liversidge Decl. ¶ 16).

**C.**  **The Court Grants Summary Judgment in HPE's Favor on All Claims**

On January 19, 2019, "the Court grant[ed] summary judgment to HPE on all claims," and "denied" Oracle's competing summary judgment motion "in full."  ECF No. 893 at 20.

*First*, the Court concluded that "Oracle's infringement claims based on conduct prior to May 6, 2012," are time-barred.  *Id.* at 12.  The Court cited evidence showing that "Oracle had actual knowledge of Terix's conduct since at least 2009, and Oracle knew of, or at least strongly suspected, HPE's alleged wrongdoing starting in 2010."  *Id.* at 10.  The Court noted that Oracle failed to "conduct audits of its customers, although it had the contractual right to do so," and concluded that "Oracle's lack of investigation was unreasonable" under the circumstances.  *Id.* at 12.

*Second*, the Court ruled that Oracle could not prove infringement.  Oracle failed to "show that any particular patch was installed on an off-contract [＿＿＿] server"; failed to "introduce[] evidence" that "HPE installed a patch on a [direct support customer's] server that was not supported by an Oracle support contract" and that "the patch was released and downloaded while that server was not on contract"; and failed "to create a genuine dispute of material fact that Terix committed specific acts of direct infringement" because Oracle presented "no evidence regarding the actual installation of individual patches on any individual server" belonging to a joint customer.  *Id.* at 14–17.

*Third*, the Court determined that "HPE present[ed] sufficient evidence" establishing that "Oracle's interference claims based on conduct prior to May 6, 2013," are time-barred.  *Id.* at 13.  The Court cited evidence establishing that Oracle knew in September 2011 that HPE and Terix were offering their services to Comcast and other customers.  *Id.* at 12–13.

*Fourth*, the Court granted summary judgment on Oracle's remaining intentional interference claims because Oracle did not "identify any specific contract with which HPE allegedly interfered," "respond to HPE's argument that it suffered no economic harm," or identify any intentional act by HPE that occurred within the relevant time frame.  *Id.* at 18–19.  The Court also dismissed Oracle's unfair competition claim (*id.* at 20), and entered final judgment on February 20, 2019 (ECF No. 897).

### III.   ARGUMENT

HPE is the prevailing party in this case, and the Court should award HPE its reasonable attorneys' fees incurred defending against Oracle's unsupported claims.

**A.   HPE Is Entitled to Attorneys' Fees Under the Copyright Act**

The Copyright Act permits district courts to "award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  Attorneys' fees are "[a]n important remedy under the Copyright Act" that courts have "wide latitude" to award "based on the totality of the circumstances in a case."  *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1035, 1037 (9th Cir. 2018).  Courts examine several non-exclusive factors, including:  (1) the degree of success obtained by the prevailing party, (2) the objective reasonableness of the losing party's litigation position, (3) the need to advance compensation and deterrence, and (4) whether an award of fees furthers the purposes of the Copyright Act.  *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985–86 (2016); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

534 & n.19 (1994).  Each factor weighs in HPE's favor.

### 1.    HPE Achieved Total Success

The first factor is "the degree of success obtained."  *Shame on You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018).  Here, HPE achieved "total success."  *Glacier Films*, 896 F.3d at 1038.  "[T]he Court grant[ed] summary judgment to HPE on all claims," and denied Oracle's motion for summary judgment "in full."  ECF No. 893 at 20.  This factor weighs heavily in HPE's favor.  *See Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 WL 5597274, at *4 (N.D. Cal. Nov. 3, 2014) (Tigar, J.) (defendant "achieved total success" when it obtained dismissal of plaintiff's copyright claim).

### 2.    Oracle's Delay in Suing HPE and Attempt to Dramatically Expand the Case Warrant an Attorneys' Fee Award

The next factor is the "reasonableness of [the] losing party's legal and factual arguments." *Shame on You*, 893 F.3d at 666.  Courts generally "give substantial weight to the objective reasonableness of the losing party's position."  *Kirtsaeng*, 136 S. Ct. at 1983.  This factor weighs strongly in HPE's favor because Oracle (a) unreasonably delayed in suing HPE, and (b) vigorously sought to expand and litigate this case despite its lack of fundamental evidence of infringement.

#### a.    Oracle Unreasonably Delayed in Suing HPE

Oracle could have sued HPE in July 2013 when it filed the *Terix* case (if not earlier), and its failure to do so imposed an unnecessary burden on the parties and the Judiciary.  Oracle has asserted that it first learned in *Terix* about HPE's involvement in the alleged "scheme."  ECF No. 46 at 6.  But this Court ruled that Oracle knew, or had reason to know, about the alleged "scheme" between HPE and Terix well before Oracle sued Terix in July 2013.  ECF No. 893 at 10–13.  This Court also held that "Oracle's lack of investigation was unreasonable in light of the significant evidence Oracle had concerning Terix's pattern of infringement."  *Id.* at 12.  Oracle's decision not to sue HPE for its supposed involvement in that pattern until years later thus was unreasonable.

Oracle's failure to sue HPE in *Terix* significantly increased the cost of Solaris-related litigation. In *Terix*, the parties produced over 10 million pages of documents, and Oracle served over 75-third-party subpoenas, including on HPE, and deposed numerous witnesses.  In this case, the parties expended considerable resources re-producing and re-reviewing much of the *Terix* discovery, re-

deposing many of the witnesses deposed in *Terix*, and exchanging an additional two-million-plus pages of documents.  The parties also issued numerous third-party subpoenas, conducted 58 depositions, filed 25 joint letter briefs, fully briefed over 40 motions, and participated in 20 hearings before this Court and Judge Laporte.  *See* Liversidge Decl.  ¶¶ 8–14.  The substantial resources that the parties and the Court poured into this dispute would have been substantially reduced, if not eliminated, had Oracle sued HPE when it sued Terix.  HPE instead was forced to sort through, and ask witnesses about, decade-old documents, and to reach out to former employees who had since retired and whose memories had faded—all while the parties added nearly 900 entries to this Court's docket.  Oracle's delay in suing HPE was unreasonable and prejudicial, and weighs in favor of a fee award.

Worse still, Oracle opposed HPE's attempt to resolve the statute of limitations issue early in this case, even though HPE presented the very evidence that this Court cited in ruling that Oracle's pre-May 6, 2012 copyright claims are time-barred.  *Compare* ECF No. 194 at 1–3, *with* ECF No. 893 at 10–12.  As a result, the parties were forced to conduct expansive discovery on customers that received support before May 2012, and to have their experts unnecessarily analyze damages "stretching back to 2009."  ECF No. 194 at 1, 4; *see*, *e.g.*, Ex. 14 (Pampinella Report), ¶¶ 28, 38, 79, 87–90, 103, 107, 122, 128; Ex. 17 (Daniel McGavock Expert Report), ¶¶ 31–37.  Oracle's unwillingness to let the Court adjudicate HPE's defense nearly two years ago caused "substantial [in]efficiencies in this case" (ECF No. 194 at 1), and was unreasonable (*see Stern v. Does*, 978 F. Supp. 2d 1031, 1051 (C.D. Cal. 2011) (awarding fees where plaintiff unreasonably "prolonged this litigation"); *Goldberg v. Cameron*, 2011 WL 3515899, at *4 (N.D. Cal. Aug. 11, 2011) (unreasonable to continue litigating claims plaintiff knew were barred by the statute of limitations)).

> **b.** **Oracle's Attempt to Expand This Case into a Massive and Complex Action Was Objectively Unreasonable**

Oracle has known since it filed this action that it did not have evidence of specific instances of infringement by Terix.  But rather than pursue discovery focused on proving specific instances of installations on unsupported servers, Oracle expanded the case in an attempt to put a nine-figure damages number in front of a jury.  This approach to litigation was unreasonable and imposed an enormous undue burden on HPE and the Court, warranting a fee award.

It is unreasonable for a plaintiff to maintain copyright infringement claims for years without evidentiary support (*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997)), yet engage in litigation tactics that "complicate[] rather than streamline[] the issues" (*Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 809 (6th Cir. 2005)).  In *Entertainment Research*, the Ninth Circuit affirmed a fee award where the plaintiff failed to present evidence at summary judgment "to support its [copyright] claims," despite "maintain[ing] those claims for almost three years" and forcing the parties to take "numerous depositions."  122 F.3d at 1229.  And in *Bridgeport Music*, the Sixth Circuit affirmed a fee award where "the manner in which the plaintiffs litigated [the] action" "contributed to the multiplication of fees by all parties"—the plaintiffs placed a "heavy emphasis on discovery disputes and motion practice" but paid "little attention … to narrowing the issues and refining the claims."  410 F.3d at 808–09; *see also Urban Textile v. Specialty Retailers*, 2017 WL 5983761, at *3 (C.D. Cal. June 15, 2017) (awarding fees where plaintiff's copyright claims failed to garner support "as the litigation continued, but its tactics only became more aggressive").

Fees are similarly warranted here.  After litigating against Terix for nearly two years, and refusing to mediate with HPE, Oracle filed this lawsuit, alleging that HPE engaged in a scheme with Terix to install Solaris patches on unentitled servers.  ECF Nos. 1, 306.  Despite collecting substantial discovery in *Terix*, Oracle could not prove a single instance in which HPE or Terix installed a patch on an unentitled server.  HPE made this argument in moving to dismiss the complaint (ECF No. 48 at 3), and while the Court deemed the allegations sufficient at that stage, it made clear that Oracle must prove "specific acts of infringement" to prevail (ECF No. 68 at 8 (quoting *Luvdarts*, 710 F.3d at 1072)).

Oracle ignored this central element of its claims.  Rather than use discovery to obtain evidence that any specific unauthorized installations occurred, Oracle embarked on a dogged, burdensome campaign to expand the case far beyond the pleadings—seeking broad discovery into HPE's hardware customers, direct support customers, and the like—all so it could turn this case into something it was not and hike up its damages request.  Oracle subpoenaed relevant customers, but did not seek evidence about whether HPE or Terix installed a Solaris patch on a server without a support contract.  Nor did Oracle audit its customers, "although it had the contractual right to do so."  ECF No. 893 at 12; *see Lexar Homes, Inc. v. Port*, 2013 WL 6498293, at *2, 5 (E.D. Wash. Dec. 11, 2013) (awarding fees

where plaintiff pursued "its claims without the foundational evidence pertaining to … the alleged copying," and failed to interview witnesses who "could have [had] relevant information").

Oracle eventually succeeded in "expanding the scope of discovery and of the case" (ECF No. 303 at 5), which imposed a significant burden on HPE and the Court.  Yet Oracle *still* failed to obtain evidence that HPE or Terix installed a single Solaris patch on an unentitled server.  *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 757 n.4 (1980) ("many actions are extended unnecessarily by lawyers who exploit or abuse judicial procedures, especially the liberal rules for pretrial discovery"); *Love v. Mail on Sunday*, 2007 WL 2709975, at *5 (C.D. Cal. Sept. 7, 2007) (awarding fees where plaintiff "unnecessarily expand[ed]" the case and "Defendants' (and this Court's) work").

For the direct support customers, Hicks identified 188 servers belonging to 11 customers that allegedly received a patch improperly (ECF No. 471, App. C, Ex. 3), but Oracle failed to "introduce[] evidence" that "*HPE* installed a patch on a [direct support customer's] server" or that a "patch was released and downloaded while that server was not on contract."  ECF No. 893 at 15–16 (emphasis added); *see Fosson v. Palace (Waterland) Ltd.*, 78 F.3d 1448, 1456 (9th Cir. 1996) (fees warranted where the plaintiff failed to "connect the [defendant] to the allegedly infringing acts").  In fact, Hicks conceded ███████████████████████████████████████████████████████ (ECF No. 475-7 at 78:13–79:7), and Oracle admitted within the first few minutes of the summary judgment hearing that it cannot identify "a specific patch that got installed on a specific server" belonging to a direct support customer (Ex. 6 (6.14.18 Hr'g Tr.) at 5:6–9).

As to the joint customers, Oracle failed to "create a genuine dispute of material fact that Terix committed specific acts of direct infringement" because Oracle had "no evidence regarding the actual installation of individual patches [by Terix] on any individual server" belonging to a joint customer.  ECF No. 893 at 17.  Indeed, Oracle admitted that ██████████████████████████ ██████████████████████████████████████████████████, and relied primarily on evidence it obtained in *Terix* for the remaining customers.  *See supra* II.B.5.  ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1    ███████ .  HPE was forced to defend against Oracle's allegations even though Oracle acknowledged it

2    had no evidence.  *See Kourtis v. Cameron*, 358 F. App'x 863, 867–68 (9th Cir. 2009) (affirming fee

3    award "based on the objective unreasonableness of pursuing a claim for five years that was substantially

4    identical to the claim previously denied, without any additional evidentiary basis").

5            The reason for Oracle's strategy was clear.  Oracle knew that if it sought evidence of individual

6    instances of installations, there would be few, if any, instances in which a patch was installed on an

7    untitled server, and there would have been *no* instances that HPE knew of or contributed to.  But

8    Oracle had no interest in litigating a case focused on proving specific unauthorized installations,

9    because it was hell-bent on putting an enormous damages figure before a jury.  Oracle's strategy at

10   summary judgment, and its clear strategy for trial, was to paper over the gaping hole in its case by

11   pointing to guilty pleas in an unrelated case involving Terix executives and the stipulated judgment

12   from *Terix*.  *See* ECF No. 459 at 1; ECF No. 798 at 3 (Oracle arguing the stipulated judgment "is a

13   relevant admission of liability in every practical sense of the word"); ECF No. 844 at 2 (Oracle claiming

14   "[t]here is perhaps no *more* probative evidence" of infringement by Terix than the guilty pleas).  But

15   neither proved that HPE or Terix installed a patch on an untitled server.  The guilty pleas concern a

16   conspiracy to commit wire fraud (*not* copyright infringement) and have nothing to do with HPE.  ECF

17   No. 809.  And the stipulated judgment contains no finding of liability whatsoever.  ECF No. 473-8.

18           Oracle attempted to shortcut through the legal elements of its claims, hoping the Court and the

19   jury would find HPE liable based on the smoke of some unspecified wrongdoing by Terix.  The Court

20   was correct to hold Oracle to its burden.  Oracle's decision to engage in years of protracted litigation

21   while having no evidence that HPE or Terix installed a patch on an untitled server was unreasonable

22   and warrants a fee award.  *See Entm't Research*, 122 F.3d at 1229; *Bridgeport Music*, 410 F.3d at 809.

23       **3.     Fees Are Necessary to Compensate HPE and to Deter Oracle**

24           A fee award is also necessary "to advance considerations of compensation and deterrence"

25   (*Shame on You*, 893 F.3d at 666), and here is warranted to deter plaintiffs like Oracle from over-

26   litigating objectively unreasonable or weak claims (*see Kirtsaeng*, 136 S. Ct. at 1986 (fees appropriate

27   where it would "deter[] those [plaintiffs] with weak [positions] from proceeding with litigation");

28   *Shame on You*, 893 F.3d at 668 ("general deterrence would be served by awarding fees against a party

who had litigated an objectively unreasonable claim")).   After all, a "copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance" if it will be required to pay its opponent's fees if the case "proceed[s] to judgment." *Kirtsaeng*, 136 S. Ct. at 1987. And fees are especially "crucial" here "to deter [Oracle], and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006).

Fees are also warranted to compensate HPE "for the costs of defending against" Oracle's unreasonable approach to litigation (*Choyce*, 2014 WL 5597274, at *5)—which complicated the issues and "contributed to the multiplication of fees for [HPE]" (*Bridgeport Music*, 410 F.3d at 809)—and for the "economic benefit [Oracle] may have obtained by distracting [a] primary competitor with litigation" (*Mattel, Inc. v. MGA Entm't, Inc.*, 2011 WL 3420603, at *2 (C.D. Cal. Aug. 4, 2011)).

There also is "a need in this case to compensate [HPE] for the costs incurred in [having to] defend[] this action" *at all* (*Love*, 2007 WL 2709975, at *5), given the available alternatives to litigation.  Before Oracle filed this lawsuit, HPE proposed that the parties resolve in mediation Oracle's qualms with HPE's practices.  *See* Kwong Decl. ¶ 2.  The parties participated in an initial mediation session in February 2016, and HPE requested that the parties schedule a second session.  *Id.*  But in March 2016, Oracle unilaterally ended all settlement discussion and filed this lawsuit.  *Id.*

Moreover, if Oracle believed there was any improper patching, Oracle could have "conduct[ed] audits of its customers" and sought back support, as is custom in the enterprise software market.  ECF No. 893 at 12.  Oracle does this all the time.  *See* Ex. 7 (Miller Depo. Tr.) at 298:7–8 ███████████ ████████████████████████████████████████████████████████████████.  In fact, ███████ ███████████████████████████████████████████████████████████████████████████ but declined to do the same for any other customer.  *See* Ex. 9 (Oracle and Comcast Settlement) at 14, 21. ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████   Instead of working with the customers to determine whether any unauthorized patching occurred, Oracle filed this lawsuit, not to recover the true cost of any unauthorized patching, but to levy a $400 million punishment on its

competitor. *See Scott v. Meyer*, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010) ("Deterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend themselves against meritless claims are both laudable ends.").

Oracle's unwillingness to use these alternatives forced HPE to spend millions of dollars defending against overreaching claims and damages requests. This factor weighs in HPE's favor.

### 4.     A Fee Award Would Ensure That The Copyright Act Is Being Applied in an Evenhanded Manner

A fees award also would "further the purposes of the [Copyright] Act" by ensuring that the Act is being applied in an evenhanded manner to prevailing plaintiffs and defendants. *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013). Defendants who advance "meritorious copyright defenses" further the purposes of the Act just as much as plaintiffs who "litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527; *see also Kirtsaeng*, 136 S. Ct. at 1985 ("defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement"). As a result, the Supreme Court has twice held that "[p]revailing plaintiffs and prevailing defendants are to be treated alike" under the Act. *Fogerty*, 510 U.S. at 534; *see also Kirtsaeng*, 136 S. Ct. at 1986.

Oracle is a serial plaintiff and aggressive litigant that consistently seeks to run its competitors out of the market. *Supra* n. 1; *see Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *12 (C.D. Cal. Mar. 24, 2015) (awarding fees against "a serial plaintiff operating on a self-proclaimed business model of litigation"). Oracle's strategy is its own prerogative. But because Oracle has been awarded fees when it has *prevailed* (*e.g.*, *Oracle Corp. v. SAP AG*, 4:07-cv-01658, ECF No. 1251 (N.D. Cal. Nov. 14, 2014) ("*SAP*") (awarding $120 million in fees and costs); *Oracle Corp. v. Rimini St., Inc.*, 2:10-cv-00106, ECF No. 1165 (D. Nev. Aug. 14, 2018) ("*Rimini*") (awarding $28.5 million in fees)), it should be required to pay its opponent's fees when it *loses*.

Section 505 of the Copyright Act is "party-neutral" and should be "applied to prevailing plaintiffs and defendants in an evenhanded manner." *Fogerty*, 510 U.S. at 525 n.12. Oracle should be treated the same way when it loses as it is treated when it wins. And declining to award fees to a prevailing defendant such as HPE would discourage defendants "with strong … positions" from

"stand[ing] on their rights" when defending against overreaching copyright claims. *Kirtsaeng*, 136 S. Ct. at 1986. This is especially so when such defendants are sued by "corporate behemoths" (like Oracle) that are willing to pour endless resources into litigation. *Fogerty*, 510 U.S. at 524; *Mattel*, 705 F.3d at 1111 ("failure to vigorously defend" against infringement claims could "usher[] in a new era of copyright litigation aimed … at stifling the 'competition' upon which America thrives"). A fee award would further the purposes of the Copyright Act, and ensure the Act's evenhanded application.

## B.      HPE's Requested Fees Are Reasonable

A substantial number of hours were required to defend this action, and nearly $20 million in attorneys' fees were incurred. But HPE seeks only $17,879,638.03 in fees after unilaterally reducing its request by $1,876,879.76 (roughly 10%). Liversidge Decl. ¶¶ 3–5, 40.[2] This request is reasonable.

"[R]easonable attorney's fee[s]" are based on the "lodestar" calculation. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). "Under the lodestar method, the district court 'multiplies the number of hours the prevailing party reasonably expended by a reasonable hourly rate.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Although the lodestar is "presumptively the reasonable fee" (*Van Gerwen v. Guar. Mut. Life Ins.*, 214 F.3d 1041, 1045 (9th Cir. 2000)), courts determining the reasonableness of a fee request consider some or all of the *Johnson-Kerr* factors (*Carter v. Caleb Brett LLC*, 757 F.3d 866, 869 (9th Cir. 2014)). The relevant factors here include: (1) "the amount involved and the results obtained"; (2) "the time and labor required"; (3) "the skill requisite to perform the legal service properly"; (4) "the customary fee"; (5) "the experience, reputation, and ability of the attorneys"; (6) "the nature and length of the professional relationship with the client"; and (7) "awards in similar cases." *Id.* As set forth below and in the supporting declarations, each factor supports HPE's requested lodestar.

### 1.      The Amount Involved and the Results Obtained

"[T]he most critical factor" to the reasonableness of a fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436. Oracle sought nearly $100 million in lost profits damages, $300

---

[2] HPE seeks $16,007,987.28 in fees attributable to the work Gibson Dunn performed on this matter, and $1,871,650.75 in fees attributable to the work contract attorneys at Legal People performed on this matter. *See* Liversidge Decl. ¶¶ 3–4. The rates charged, and hours expended, by Legal People are reasonable for a case of this type. *See id.* ¶ 55; Kwong Decl. ¶ 10.

1   million in punitive damages, and overbroad injunctive and impoundment relief.  *See* Liversidge Decl.

2   ¶ 16.  HPE's counsel defeated every claim, and obtained the best result possible for its client.  The

3   amount of fees HPE seeks is "reasonable in relation to the results obtained."  *Hensley*, 461 U.S. at 440;

4   *see also* Moscaret Decl. ¶¶ 58–66.

5         **2.**      **The Time and Labor Required**

6        In determining whether a prevailing party spent a reasonable number of hours defending an

7   action, the Court should review "the billing records" (*Gonzalez*, 729 F.3d at 1202) "in light of the

8   totality of the litigation" (*Perfect 10*, 2015 WL 1746484, at *27).  But "[b]y and large, the court should

9   defer to the winning lawyer's professional judgment as to how much time he was required to spend on

10  the case."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

11       ***HPE's hours were reasonable***.  HPE seeks fees for 25,758.80 hours expended defending

12  against Oracle's claims.  This is a reasonable number of hours, given the complex, contentious, and

13  high-stakes nature of this lawsuit.  *See* Moscaret Decl. ¶¶ 32–38.  In the three years the parties spent

14  litigating this case, the parties conducted 58 depositions, produced over two million pages of

15  documents, jointly filed 25 letter briefs, fully briefed over 40 motions, and participated in 20 hearings.

16  *See* Liversidge Decl. ¶¶ 8–14; Moscaret Decl. ¶ 34.  HPE also interviewed numerous people as part of

17  its "substantial and time consuming" investigation into direct support accounts (which was necessary

18  due to Oracle's insistence that it receive discovery on those customers, ECF No. 151-3 at 8–10), and

19  engaged in multiple rounds of briefing because of Oracle's refusal to produce documents from its co-

20  CEO Mark Hurd (ECF Nos. 353-23, 510).  The parties were weeks away from trial when the Court

21  issued its summary judgment order, meaning substantial trial preparation had occurred.  ECF No. 893.

22       Many of HPE's lawyers have significant experience litigating copyright cases, and were able

23  to leverage that experience to reduce the number of hours litigating this case.  *See* Liversidge Decl.

24  ¶¶ 17–35, 48.  HPE also hired lead counsel from *Itanium*, which created additional efficiencies as they

25  were already familiar with some of HPE's practices and with litigating against Oracle.  *See id.* ¶ 18.

26       Oracle cannot complain about the fees HPE incurred defending against Oracle's claims, given

27  that it was Oracle at every turn that expanded the case.  Fees would have been much lower had Oracle

28  agreed to resolve HPE's statute of limitations defense in 2017, or sought discovery only on the claims

1   it pleaded.  But Oracle instead barreled forward, and sought discovery on nearly every aspect of HPE's

2   multivendor support business (and on many other irrelevant issues), ultimately pushing the case to the

3   eve of trial—all without evidence that HPE or Terix committed a single unauthorized installation.

4          Oracle's litigation tactics also were extremely aggressive.  Indeed, Judge Laporte sua sponte

5   issued an order in April 2018 "admonish[ing] Oracle for its failure to adhere to the Northern District

6   of California's 'Guidelines for Professional Conduct,'" and ordered Oracle to "cease" its use of

7   "inappropriate language" in motion practice.  ECF No. 516 at 1–2.

8          Despite the reasonableness of the fees incurred, HPE has nonetheless removed 3,573.3 hours

9   from its request.  HPE seeks fees for 19 "core" team members, and is not seeking any fees for hours

10   expended by "non-core" attorneys and paralegals who worked on this case for only a short period.  *See*

11   Liversidge Decl. ¶¶ 40–42.  Nor is HPE seeking fees associated with privileged time entries, time

12   entries for 12.5 hours or more, or time entries that in HPE's and its counsel's judgment should be

13   removed from the request.  *See id.*; *Hensley*, 461 U.S. at 434.

14          ***Oracle's copyright and state-law claims were intertwined***.  HPE should be awarded fees based

15   on all the hours spent defending against this lawsuit because Oracle concedes that its copyright and

16   non-copyright claims are intertwined.  "[A] party entitled to attorney's fees as a prevailing party on a

17   particular copyright claim" *also* is entitled to fees incurred successfully defending against any other

18   "related claims."  *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003).

19   Claims are "related" if they involve a "common core of facts" (*Webb v. Sloan*, 330 F.3d 1158, 1168

20   (9th Cir. 2003)), or arise "out of the same course of conduct" (*Ibrahim v. U.S. Dep't of Homeland Sec.*,

21   912 F.3d 1147, 1174 (9th Cir. 2019) (en banc)).

22          HPE is entitled to its fees incurred in successfully defending against Oracle's state-law claims

23   because Oracle concedes that those claims stem from the same course of conduct as its copyright

24   claims.  The claims involve the same customers, the same servers, the same contracts, the same

25   purported "business model," and the same request for damages.  The copyright claims arise out of

26   HPE's and Terix's alleged installations of Solaris patches onto client servers, and the tortious

27   interference and UCL claims arise out of HPE's purported statements about its ability to install such

28   patches. *See Counts v. Meriwether*, 2016 WL 1165888, at *6 (C.D. Cal. Mar. 9, 2016) (awarding fees

for defending against state-law claims because they "were based on the same allegations as the copyright infringement claim"); *Minow v. Lexus*, 2008 WL 11338145, at *2 (C.D. Cal. Aug. 15, 2008) (awarding fees for defending against non-copyright claims "[b]ecause these claims emanated from the same course of conduct from which plaintiff's copyright infringement claim arose").

Oracle's representations to this Court confirm this.  In its complaint, Oracle alleged that all its claims arise out of HPE's and Terix's joint "business model," in which "HP falsely represented to customers that HP and Terix could lawfully provide Solaris Updates and other support services at a lower cost than Oracle, and then worked with Terix to improperly access and provide Oracle's proprietary Solaris Updates to customers."  ECF No. 306, ¶ 1; *see* Ex. 1 (7.14.16 Hr'g Tr.) at 11:1–8, 12:25–13:5.  Oracle also has argued that "every customer at issue in this case was exposed to a misrepresentation" (Ex. 6 (6.14.18 Hr'g Tr.) at 16:17–18), and that the alleged misrepresentations satisfy the "encouragement" and "contribution" requirements of Oracle's contributory infringement claim (Ex. 1 (7.14.16 Hr'g Tr.) at 13:24–14:4).  In fact, Oracle argued at summary judgment that the claims so overlapped that proof of *one* claim was sufficient for the jury to infer that Oracle should prevail on the *other*.  ECF No. 533 at 18 n.13.  And Oracle's damages expert testified that ███████

████████████████████████████████████████████████████████████████████

████████████  *See* Ex. 15 (Pampinella Depo Tr.) at 36:4–37:1; Ex. 14 (Pampinella Report), ¶¶ 34–41.  Hicks similarly conflated evidence in support of both claims.  *See* ECF No. 475-20 ¶¶ 7, 45.  Thus, Oracle's claims arise out of the same "course of conduct," and HPE should receive all its fees incurred defeating Oracle's claims.  *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995); *see also* Moscaret Decl. ¶ 88.[3]

### 3.    The Skill Requisite to Perform the Legal Service Properly

In analyzing this factor, the Court should draw on its "past experience as a lawyer," and consider counsel's "work product, … preparation, and general ability before the court."  *Johnson v. Ga. Highway*

---

[3]  If the Court disagrees, and elects to award HPE its fees for its defense of only the copyright claims, the Court should award HPE $17,783,514.79.  *See* Liverside Decl. ¶ 41 n.3.  Alternatively, the Court could reduce the fee request by 10% to account for the limited work done solely to defend against the state-law claims.  *See Moreno*, 534 F.3d at 1112 (district courts may impose a 10% reduction "based on its exercise of discretion and without a more specific explanation"); *Gates v. Deukmejian*, 987 F.2d 1392, 1399–1400 (9th Cir. 1992); Moscaret Decl. ¶ 89.

*Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974).  Here, the skill displayed by HPE's counsel was excellent and instrumental to the results obtained.  HPE argued in its motion to dismiss that Oracle failed to allege a single instance in which HPE or Terix installed a Solaris patch on an unentitled server.  ECF Nos. 44, 48.  HPE pressed that defense until this Court granted summary judgment because Oracle failed to present evidence of a specific act of infringement.  ECF No. 893.

### 4.     The Customary Fee

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation" (*Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)), including the rates actually charged by counsel in this case (*e.g.*, *Kourtis*, 358 F. App'x at 868; *see also Perfect 10*, 2015 WL 1746484, at *18 ("the rates counsel actually charged ... is at least one factor the Court may consider in determining whether the rates sought are reasonable"); *Elser v. I.A.M. Nat'l Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984) (same)).  The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

HPE hired a team of Gibson Dunn lawyers in San Francisco, Los Angeles, and Irvine, California to defend it in this case.  *See* Liversidge Decl. ¶¶ 17–35.  Between 2016 and 2019, Gibson Dunn charged—and HPE paid—hourly rates ranging from ███████████████████████████████████ ██████████████████████████████████████████████████.  *See id.* ¶ 43.  ██████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████  HPE is a sophisticated consumer of legal services, and its decision to pay Gibson Dunn's rates is the best evidence that those rates are reasonable and commensurate with the market rate for similar services.  *See* Kwong Decl. ¶ 3; Moscaret Decl. ¶ 44; *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best evidence of his market rate"); *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982) (same).

To be sure, Gibson Dunn charges premium rates.  But "partner billing rates in excess of $1,000

an hour[] are … not uncommon in the context of complex commercial litigation." *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016).  Gibson Dunn is an internationally renowned law firm, and "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).  Courts on both coasts have awarded Gibson Dunn rates similar to those requested here. *See MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (awarding Gibson Dunn partner rates between $874.60 and $1,048.47, associate rates between $569.02 and $753.42, and staff rates between $210.75 and $437.30); *ScripsAmerica, Inc. v. Ironridge Global LLC*, 2016 WL 6871280, at *4 (C.D. Cal. Jan. 12, 2016) (same, at $950 for a partner, $450 to $700 for associates, and $350 for paralegals); *see also Visa Outdoor Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (approving Gibson Dunn partner rates from $1,165 to $1,260); *U.S. ex rel. Lee v. Corinthian Colls., Inc.*, 2013 WL 12114064, at *7 (C.D. Cal. June 6, 2013) (approving Gibson Dunn rates from $349 to $900).

The rates HPE paid Gibson Dunn are consistent with the prevailing rates California courts award in similarly complex litigation.  Moscaret Decl. ¶¶ 47–57.  For example, the court in *Wynn v. Chanos*, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015), concluded that Arnold & Porter LLP rates ranging from $875 to $1,035 for partners and $570 to $710 for associates were reasonable.  The court in *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965–66 (N.D. Cal. 2014), held that Cooley LLP rates "ranging from $355 to $1,095 per hour for partners and associates" are "within the range, though on the high end, of prevailing market rates for comparable firms in the Northern District."  *See also Max Sound Corp. v. Google, Inc.*, 2017 WL 4536342, at *12 (N.D. Cal. Oct. 11, 2017) (hourly rates ranging from $520 to $950 "are well in line with the billing rates" for Bay Area attorneys ); *G. F. v. Contra Costa Cty.*, 2015 WL 7571789, at *13–14 (N.D. Cal. Nov. 25, 2015) (approving rates between $175 (staff) and $975 (partners) as "in line with the overall range of market rates ... in this District between 2013 and 2014"); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337–38 (C.D. Cal. 2015) (the "Valeo Hourly Rates Database for Los Angeles and Orange County shows that intellectual property partners at major law firms bill in the range of approximately $600 to $1,100 per hour"); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21,

2015) (awarding rates between $475 and $975 for partners, $300 and $490 for associates, and $150 and $430 for paralegals); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2007 WL 5279897, at *7 (C.D. Cal. Nov. 5, 2007) (approving rates ranging from $390 for associates to $1,002.96 for a partner).

The rates HPE paid also are consistent with the rates charged by Latham & Watkins, Oracle's counsel in this matter.  Moscaret Decl. ¶ 55.  In a case pending from 2014 to 2016, a Latham & Watkins partner billed at rates ranging from $975 to $1,075, and associates billed at rates ranging from $495 to $905.  *Norton v. City of Springfield*, 281 F. Supp. 3d 743, 747–48 (C.D. Ill. 2017).  In a case pending from 2013 to 2014, Latham & Watkins partners billed at rates from $895 to $1,110, and associates billed at rates from $465 to $725.  *Xu v. Yamanaka*, 2014 WL 3840105, at *4 (N.D. Cal. Aug. 1, 2014); *see also Lugus IP, LLC v. Volvo Car Corp.*, 2015 WL 1399175, at *6–8 (D.N.J. Mar. 26, 2015) (approving Latham & Watkins rates ranging from $274.50 to $895.50 in patent case).

**5.  The Experience, Reputations, and Ability of the Attorneys**

"Billing rates usually reflect, in at least a general way, counsel's reputation and status." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982).  Jeffrey Thomas is a fellow in the American College of Trial Lawyers and has been named one of the top five trial lawyers in the nation, and Sam Liversidge regularly represents some of the world's leading companies in high-profile litigation matters.  Liversidge Decl. ¶¶ 17, 20.  Blaine Evanson was named one of five "Rising Stars" under 40 in appellate litigation.  *Id.* ¶ 21.  Mr. Liversidge, Mr. Thomas, and Mr. Evanson have significant experience in copyright cases involving software support.  *See id.*  Several of the associates also have significant experience, including in copyright actions, and have graduated from some of the country's top law schools and clerked for federal judges.  *See id.* ¶¶ 24–35.  The experience, reputations, and ability of these lawyers support HPE's decision to retain Gibson Dunn and pay its hourly rates.  Moscaret Decl. ¶¶ 67–71; *Perfect 10*, 2015 WL 1746484, at *19 ("With more than 30 motions …, voluminous discovery (and seemingly endless discovery disputes), nearly 700 entries, and more than 38,000 pages in the Court's docket, there is little doubt that this case was precisely the sort of complex, large, and burdensome case that justified top-tier litigators."); *Spanski Enters., Inc. v. Tlewizja Polska S.A.*, 278 F. Supp. 3d 210, 220 (D.D.C. 2017) ("nationwide reputation[] and high level of experience and skill in handling intellectual property matters" supported awarding national firm its actual rates).

### 6.   The Nature and Length of the Professional Relationship with the Client

The professional relationship between HPE and Gibson Dunn supports the lodestar.  *See Johnson*, 488 F.2d at 719.  Mr. Liversidge, Mr. Thomas, Mr. Evanson, and two senior associates on this case have successfully represented HPE in numerous complex cases, including in *Itanium*, in which a jury awarded HP $3 billion in damages.  *See* Liversidge Decl. ¶¶ 17–35.  Gibson Dunn has become a go-to law firm for HPE in complex litigation, and HPE has developed a high level of trust, confidence, and satisfaction in the firm.  Kwong Decl. ¶ 4; Moscaret Decl. ¶¶ 72–76.  HPE's decision to hire Gibson Dunn was reasonable.  *See Perfect 10*, 2015 WL 1746484, at *20 (reasonable to hire national law firms that "had successfully represented Google and Microsoft in similar actions by [plaintiff]"); *Wynn*, 2015 WL 3832561, at *3 ("reasonable to retain both a longtime law firm that is familiar with a client and a specialist in the litigation at hand").

### 7.   Awards in Similar Cases

"The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit."  *Johnson*, 488 F.2d at 719.  A "fee award is not unreasonable simply because it involves a lot of money."  *Perfect 10*, 2015 WL 1746485, at *27.  Indeed, "[c]ourts in this [circuit] have awarded attorneys' fees in excess of $100,000,000 in copyright litigation."  *Id.*; *see, e.g.*, *Mattel*, 2011 WL 3420603, at *10 ($105,688,073.00 award); *Perfect 10*, 2015 WL 1746485, at *28 ($5,213,117.06 award).  And Oracle itself has been awarded fees of $28.5 million (*Rimini*, ECF No. 1165) and $120 million (*SAP*, ECF No. 1251) in cases raising similar allegations and technology.  HPE's request fits comfortably within these ranges.

*          *          *

This case was hard fought and contentious.  A lot was at stake, and HPE hired top-notch counsel to prevail.  HPE's counsel spent 25,758.80 hours and incurred nearly $20 million in fees litigating this case to a complete victory, and here seeks $17,879,638.03.  This amount reflects a self-imposed haircut, a reasonable number of hours for a case of this complexity, and reasonable hourly rates.  It is in line with awards in similar copyright cases—including cases in which Oracle has received fees.

## IV.   CONCLUSION

The Court should grant HPE's motion, and award it $17,879,638.03 in attorneys' fees.

Gibson, Dunn & Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: March 22, 2019

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Samuel Liversidge
                    Samuel Liversidge

Attorneys for Defendant
HEWLETT PACKARD ENTERPRISE COMPANY

## **SIGNATURE ATTESTATION**

I, Blaine H. Evanson, am the ECF User whose identification and password are being used to file the foregoing document. Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained.

Dated:  March 22, 2019

GIBSON, DUNN & CRUTCHER LLP


By:     */s/ Blaine H. Evanson*
            Blaine H. Evanson

Attorneys for Defendant
HEWLETT PACKARD ENTERPRISE COMPANY