UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ORACLE AMERICA, INC., et al.,<br><br>         Plaintiffs,<br><br>    v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>         Defendant. | Case No. 16-cv-01393-JST<br><br>**ORDER DENYING DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' CROSS-MOTION**<br><br>Re: ECF Nos. 459, 471, 955, 964 |

Before the Court are Plaintiffs' motion for partial summary judgment and Defendant's motion for summary judgment, or in the alternative, partial summary judgment, or a Rule 56(g) Order, ECF Nos. 459, 471, as well as Plaintiffs' and Defendant's supplemental briefing regarding the effect of the Ninth Circuit's decision remanding this case, ECF Nos. 955, 964.  The Court will deny Defendant's motion and grant Plaintiffs' motion as to HPE's affirmative defenses.

## I.    BACKGROUND

This is a copyright infringement action brought by Oracle America, Inc. ("OA") and Oracle International Corporation ("OIC") (collectively "Oracle") against Hewlett Packard Enterprise Company ("HPE").

### A.    Oracle's Solaris

Oracle is a supplier of enterprise hardware and software systems, as well as technical support and consulting services related to those systems.  ECF No. 462-1.  At issue here is Oracle's Solaris enterprise operating software.  Oracle holds registered copyrights for Solaris and related firmware.  ECF Nos. 462-2; 462-3; 462-4; 462-5; 462-6; 462-7; 462-8; 462-107.  Solaris was originally developed by Sun Microsystems, Inc. ("Sun").  Oracle acquired Sun in January

2010 and renamed it OA, ECF No. 306 at 5, and Solaris is used primarily with Oracle's Sun-branded servers, ECF No. 466-4 at 10.   OA holds all of Sun's interest, rights, and title to the copyrights for Solaris versions 8, 9, and 10.  *Id.*

Oracle licenses the Solaris products, including patches[1] and firmware updates to those products (collectively "patches"), to customers through form license agreements.  The Binary Code License Agreement ("BCL") covers Solaris versions 7, 8, and 9, and provides in relevant part:

> Sun grants you a non-exclusive and non-transferable license for the internal use only of the accompanying software and documentation and any error corrections provided by Sun [determined] by the number of users and the class of computer hardware for which the corresponding fee has been paid.

ECF No. 956-5 ¶ 1.  The Software License Agreement ("SLA") covers version 10.  ECF No. 956-6.  The SLA provides:

> Subject to the terms of your Entitlement, Sun grants you a nonexclusive, nontransferable limited license to use Software for its Permitted Use for the license term. . . . The terms and conditions of this Agreement will apply to any Software updates, provided to you at Sun's discretion, that replace and/or supplement the original Software, unless such update contains a separate license.

*Id.* ¶¶ 2, 5.  Solaris 11 is governed by a similar license agreement that states Oracle "will not provide technical support, phone support, or updates to you for the materials licensed under this Agreement," and that "[t]echnical support, if available, may be acquired from Oracle . . . under a separate agreement."  ECF No. 462-11.

As the foregoing language indicates, Oracle also provides technical support to its software customers.  Oracle sells technical-support services to customers on a "per system basis," meaning that it charges a fee for each individual server.  ECF No. 466-6 at 20.  Customers can purchase annual support contracts from Oracle, which grant the right to access and download patches.  ECF

---

[1] "A patch is computer code . . . that is incorporated into an existing piece of software in order to fix problems (bugs) in the software or to update the functionality of the software."  ECF No. 472-6 at 6.

United States District Court
Northern District of California

No. 466-4 at 3.  For customers with "on contract" servers, Oracle makes its patches available on My Oracle Support ("MOS"), a secure web portal, where a customer uses a credential obtained from Oracle to log in and download patches for its servers.  ECF No. 461 at 3.  Customers who access MOS agree to the site's Terms of Use.[2]  *Id.*  Sun had similar policies related to its support services and web portal, except that for some publicly available security-related patches, customers could access the patches even if the customer's servers were not covered by a support contract.  ECF No. 460 at 2-4.

An Oracle support contract grants the customer – or an agent acting on the customer's behalf, such as a third-party maintainer ("TPM") – a license to download, deliver, and install Solaris patches on the supported servers.  ECF Nos. 474-7 at 18; 476-6 at 2; 485-17 at 4.  When a TPM downloads a patch, it delivers the patch to a customer via a file transfer protocol ("FTP") site.  The TPM's delivery of a patch to an FTP site is licensed if the customer who accesses the FTP site has a server covered by a support contract, provided that the customer or TPM then installs the patch only on that particular server and does not "propagate" the patch to other, off-contract servers.  If a customer has an active support contract when it downloads a patch, the customer has the right to install the patch at a later time, even if the server on which the patch is installed is no longer covered by a support contract.  ECF No. 476-6 at 2.

**B.     Technical Support Provided by HPE and Terix**

Customers hire TPMs to provide different forms of technical support for their servers, including repairing servers when they break ("hardware break-fix"), advising on software issues ("technical advisory support"), or applying patches and updates.  ECF No. 470-3 at 4.  As a TPM, HPE provides multi-vendor support ("MVS") to customers with servers from multiple manufacturers, including Oracle.  *Id.*  Another former TPM, TERiX Computer Company, Inc. ("Terix"), served its own customers, and also served as a subcontractor to HPE to provide support services for HPE's customers with Oracle servers.  *Id.* at 5.

---

[2] Those terms state: "You agree that access to My Oracle Support, including access to the service request function, will be granted only to your designated Oracle technical support contacts and that the Materials may be used only in support of your authorized use of the Oracle programs and/or hardware for which you hold a current support contract from Oracle."  ECF No. 461-2 at 2.

In July 2013, Oracle sued Terix and others over allegedly improper installations of Solaris patches onto servers not covered under a support contract. *Oracle Am., Inc. v. Terix Comput. Co., Inc.*, Case No. 5:13-cv-03385-PSG, 2015 WL 2090191, at *1 (N.D. Cal. May 5, 2015). Terix used the customer MOS credentials associated with a single server under a support contract to gain access to patches for that customer's other servers that were not covered by support contracts. ECF No. 466-18 at 8-9, 11-13. Terix concealed its conduct from Oracle, including through the use of phony email addresses to access MOS. ECF Nos. 466-17 at 6; 466-18 at 24-25; 466-19 at 7-8, 20-21. Terix defended the case, in part, by contending that the patches it downloaded were covered by either an express or implied license. The court in that case rejected Terix's license defenses and granted summary judgment to Oracle on that issue, finding that none of the express licenses or alleged implied licenses in the case contained terms that excused or permitted Terix's conduct. *Terix*, 2015 WL 2090191, at *4-6. Following entry of that order, the parties settled and stipulated to a judgment, and several of Terix's executives later pleaded guilty to wire fraud. ECF Nos. 538-2; 538-6; 538-7; 538-8; 538-9.[3] Although the district court reached certain of Terix's affirmative defenses, it never made a finding that Terix committed copyright infringement.

In this lawsuit, Oracle alleges that HPE, either directly or through Terix, provided patches for the Solaris software and firmware to customers who had not paid the appropriate fee to Oracle for those patches. ECF No. 466-4 at 17. Oracle's claims relate to three categories of HPE customers: joint HPE/Terix customers, HPE's direct support customers, and HPE's direct support customers who contracted separately with Terix. ECF No. 470-3 at 5.

### 1.   Joint HPE/Terix Customers

For joint customers, HPE subcontracted with Terix to provide support services, including the delivery of patches. *Id.* HPE and Terix entered into an HPE-Terix Master Consolidated Services Agreement ("MCSA") to support these customers. ECF No. 467-9. Under the MCSA,

---

[3] Oracle contends that Terix stipulated to judgment for copyright infringement, among other things. ECF No. 466-4 at 6. HPE makes an evidentiary objection to the use of the stipulated judgment, pursuant to Federal Rules of Evidence 401, 403, 802, and 901, and states that the stipulated judgment does not include any admission by Terix to infringement, let alone an admissible one. ECF No. 545-4 at 11 n.3. The Court overrules the objection.

United States District Court
Northern District of California

HPE retained the right to terminate its relationship with Terix at will. *Id.* at 27. Oracle states that HPE knew about and participated in Terix's conduct of downloading and delivering patches for servers not covered by support contracts for these customers. ECF Nos. 466-20; 546-42; 547-9 at 6. HPE states that Terix intentionally hid its process of obtaining patches and told HPE that it had a separate agreement with Oracle that permitted it to provide certain patches to its customers. ECF Nos. 545-35 at 10; 546-38 at 4. Terix gave a presentation it called "Clearvision"[4] to customers concerning what Terix believed regarding the customers' rights to patches under the terms of the Oracle licenses. ECF Nos. 485-25 at 7-8; 546-36. Terix represented that it could lawfully supply patches for servers without requiring a customer to purchase an Oracle support contract for each server because customers who purchased certain Solaris servers had a perpetual right to any updates and patches provided by Oracle. ECF Nos. 544-36; 553-14 at 20. Oracle alleges, and HPE disputes, that HPE knew the intended purpose of Clearvision, arranged presentations for customers, and sometimes took part in them. ECF Nos. 548-5 at 13-16, 18, 20; 547-6; 547-7; 547-8.[5]

### 2.   HPE's Direct Support Customers

HPE also provided direct support to customers. ECF No. 470-3 at 6. HPE worked together with Oracle (and previously Sun) to provide services to these customers pursuant to a Four Walls Agreement[6] and a Master Software and Licensing Distribution Agreement, which authorized HPE to resell Oracle support offerings. ECF No. 475-18 at 25-26. Oracle contends that HPE improperly installed patches for direct support customers, citing analysis performed by its forensic expert, Christian Hicks, who found instances where HPE installed patches that were

---

[4] The name of the presentation was sometimes spelled "Clear Vision."

[5] HPE states that it attempted for many years to find out what the presentation entailed but Terix blocked HPE from attending or knowing what was discussed. ECF Nos. 474-4 at 4; 474-5 at 6; 475-17 at 2-3; 485-4 at 9, 12; 485-11 at 4, 11; 545-18 at 8, 11; 545-20 at 3-4, 7-8, 10; 546-27. HPE says that in November 2012, Terix read to HPE, over the phone, portions of Clearvision, and did not say in that partial reading that Terix would provide or install any patches. ECF No. 545-16 at 8-9.

[6] Both HPE's brief, ECF No. 471 at 17, and one of its declarants, ECF No. 475-18 at 25, use the term "Four Walls Agreement," but neither defines it.

United States District Court
Northern District of California

first released after the customer's server was no longer under a support contract.  ECF No. 472-12 at 4.  HPE responds that it provided software support, including patch installation, to some of its customers, but other customers performed such installations themselves or went to Sun/Oracle for support.  ECF Nos. 475-23 at 10; 480-14.  For this reason, HPE casts doubt on Hicks's conclusions that the identified patches were necessarily installed by HPE.  ECF No. 470-3 at 28.  Additionally, HPE explains that the "███████████" column in HPE's discovery responses could mean (i) the date the patch was installed, (ii) the date the patch was released, or (iii) the date the file was updated on the machine.  ECF No. 480-18 at 9.

### 3.      HPE's Direct Support Customers Who Contracted with Terix

Some of HPE's direct support customers also contracted separately with Terix.  ECF No. 470-3 at 24.  For example, Nissan contracted with Terix before it contracted with HPE, ECF No. 476-9, and Symantec contracted with Terix and HPE concurrently, ECF No. 476-10.  Symantec contracted with HPE for support for some of its servers and separately contracted with Terix for others.  ECF No. 545-28 at 14, 28-29.  HPE employees admitted to installing patches obtained from Terix on Symantec servers that were not under support contracts.  ECF Nos. 467-13 at 15-17; 467-15 at 16-18.  HPE states, however, that Symantec represented to HPE in writing that Symantec had the lawful entitlement and authorization to access the patches.  ECF No. 476-26.

### C.      Procedural Background

On March 22, 2016, Oracle filed its complaint against HPE, asserting several claims for copyright infringement under 17 U.S.C. §§ 101 *et seq.*, as well as state law claims for intentional interference with contractual relations, intentional interference with prospective economic relations, and unfair competition under California Business and Professions Code § 17200.  ECF No. 1.  HPE filed a motion to dismiss the complaint, ECF No. 34, which the Court granted in part and denied in part.  ECF No. 68.  HPE filed a partial motion to dismiss Oracle's amended claims for vicarious copyright infringement, ECF No. 79, which the Court denied.  ECF No. 159.  Oracle filed a motion to strike several affirmative defenses asserted by HPE, ECF No. 99, which the Court granted in part and denied in part.  ECF No. 174.  Finally, the Court granted Oracle's motion to strike HPE's amended unclean hands defense.  ECF No. 240.  Oracle filed the operative

second amended complaint ("SAC") and HPE filed the operative third amended answer ("TAA").

ECF Nos. 305, 314.

On February 28, 2018, the parties filed cross-motions for summary judgment.  Oracle filed a motion for partial summary judgment on its copyright infringement claims, and on HPE's express and implied license, abandonment, estoppel, fair use, and 17 U.S.C. § 117 affirmative defenses.  ECF No. 459.  HPE filed a motion for summary judgment on all of Oracle's copyright infringement claims and all of its state law claims, and in the alternative, (1) a motion for partial summary judgment on Oracle's claims and/or customers where there is no material dispute of fact; (2) a motion for partial summary judgment on Oracle's claims for copyright infringement, intentional interference with contract, and intentional interference with prospective economic relations to the extent those claims are time-barred under the applicable statute of limitations; (3) a motion for partial summary judgment on Plaintiffs OA and OIC's copyright infringement claims based on copyrights they each do not own; and (4) a motion for an order under Federal Rule of Civil Procedure 56(g) stating that certain proposed facts are not genuinely in dispute and established in this case.  ECF No. 471.  Both motions were opposed.  ECF Nos. 533, 539.

On January 29, 2019, the Court granted HPE's motion for summary judgment and denied Oracle's cross-motion.  ECF No. 881.  The Court held that Oracle's infringement claims based on conduct from before May 6, 2012, and interference claims based on conduct before May 6, 2013, were barred by the statute of limitations.  *Id.* at 9-13.  The Court granted summary judgement on Oracle's timely direct and indirect infringement claims on the basis that Oracle had not presented evidence of an installation of a protectable patch on any individual off-contract server.  *Id.* at 13-17.  The Court held that Oracle's intentional interference claims failed because Oracle had not identified a specific contract that was breached or disrupted, did not respond to HPE's argument that Oracle suffered no economic harm, and had not shown HPE committed any independently wrongful act within the relevant time frame.  *Id.* at 17-19.  Finally, the court granted summary judgment on Oracle's UCL claim because it had held that Oracle's state law claims failed and any UCL claim based on the Copyright Act would be preempted.  *Id.* at 19-20.

Oracle filed a notice of appeal, and on August 20, 2020 the Ninth Circuit issued an opinion

United States District Court
Northern District of California

affirming in part and reversing and vacating in part the Court's summary judgment order.  ECF

No. 936; *see also Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042 (9th Cir. 2020).

The Ninth Circuit affirmed this Court's grant of partial summary judgment for HPE on (1) the

copyright infringement and IIPEA claims as time-barred, and (2) the indirect infringement claims

for patch installations by Terix.  The Ninth Circuit reversed summary judgment "on all

infringement claims for pre-installation conduct, and on the direct infringement claims for

unauthorized patch installations by HPE."  *Id.* at 1054.  In a concurrently filed memorandum

disposition, the Ninth Circuit also reversed this Court's state law holdings that Oracle could not

prove an actual breach of contract or show resulting damage, and this Court's wrongful act

analysis.  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 823 Fed. App'x 516, 518 (9th Cir.

2020).  The Ninth Circuit affirmed this Court's summary judgment ruling for Oracle's UCL

claims predicated on infringement because they were preempted, but reversed summary judgment

for the UCL claims premised on the IICR and IIPEA claims.  *Id.* at 519.

On January 12, 2021, the Court held a case management conference following the mandate

of the Ninth Circuit's decision.  ECF Nos. 942, 950.  The parties agreed to file opening briefs that

would include excerpts from their existing summary judgment briefing on issues remaining to be

decided, as well as 19 pages of supplemental briefing addressing how the Ninth Circuit's decision

bears on the questions now before the Court.  ECF No. 954.  Both parties filed opening briefs,

ECF Nos. 955, 964, and both parties were given an opportunity to file supplemental replies, ECF

Nos. 974, 976.  The Court held a hearing on June 3, 2021.

## II.    JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a

verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the

case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When deciding a motion for

United States District Court
Northern District of California

8

summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations.  *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists.  *Id.* at 1102-03.  The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted).  Indeed, it is not the duty of the district court "to scour the record in search of a genuine issue of triable fact." *Id*.  "[A] mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc*., 127 F.3d 1150, 1152 (9th Cir. 1997) (quoting *Liberty Lobby*, 477 U.S. at 252, 249).  If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV.    DISCUSSION

### A.    Copyright Infringement

The parties have filed competing motions for summary judgment on Oracle's direct, vicarious, and contributory copyright infringement claims.  This Court granted HPE's motion for summary judgment, but the Ninth Circuit reversed "on all infringement claims for pre-installation conduct, and on the direct infringement claims for unauthorized patch installations by HPE." *Oracle*, 971 F.3d at 1054.  The Ninth Circuit remanded for this Court "to properly analyze the

licenses," in considering HPE's express license defense and to "reconsider all infringement claims for pre-installation conduct." *Id.* 1051. The Ninth Circuit also declined to award Oracle summary judgment, holding that "[a]t the very least, the testimony creates a dispute of material fact" when viewing the evidence in the light most favorable to HPE. *Id.* at 1053 n.11.

### 1.   Indirect Infringement

"As for Oracle's copyright infringement claim for the 'joint HPE/Terix customers,' HPE seeks summary judgment as to its express license defense or, in the alternative, the elements of contributory and vicarious infringement. In the alternative, HPE seeks partial summary judgment or a Rule 56(g) Order limiting these claims to those servers and/or customers for which Oracle has adduced sufficient evidence to create a material dispute of fact." ECF No. 956-3 at 2. Oracle also seeks summary judgment on HPE's express license defense.

### a.   Express License Defense

After noting that Terix's pre-installation conduct "appears to show direct infringement," the Ninth Circuit remanded the question of whether this conduct was authorized by a license. *Oracle*, 971 F.3d at 1050-51. Upon a close review of the record, and in light of the legal principles articulated by the Ninth Circuit, the Court grants Oracle summary judgment as to HPE's express license defense.

The Court applies the following legal principles, as explained by the Ninth Circuit, to evaluate Oracle's licenses.

> An applicable license may be dispositive of an infringement claim. "Anyone who is authorized by the copyright owner to use the copyrighted work in a way specified in [the Copyright Act] . . . is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S. Ct. 774, 78 L.Ed.2d 574 (1984). Thus, an infringement claim "fails if the challenged use of the work falls within the scope of a valid license." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019). And "[t]he existence of a license creates an affirmative defense to" an infringement claim. *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000). But "[w]hen a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement." *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1156 (9th Cir. 2006).

United States District Court
Northern District of California

> A court must construe the license to evaluate its effect on a claim of copyright infringement. "A copyright license 'must be construed in accordance with the purposes underlying federal copyright law.' " *Great Minds*, 945 F.3d at 1110 (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989)); *see also Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988) (same). "Chief among these purposes is the protection of the author's rights." *S.O.S.*, 886 F.2d at 1088. "Federal courts 'rely on state law to provide the canons of contractual construction to interpret a license, but only to the extent such rules do not interfere with federal copyright law or policy.' " *Great Minds*, 945 F.3d at 1110 (quoting *S.O.S.*, 886 F.2d at 1088).

*Oracle*, 971 F.3d at 1051.  Another court has already had cause to evaluate the licenses at issue here, and the Ninth Circuit has held that the court presiding over *Oracle America, Inc. v. Terix Computer Co.*, 2015 WL 2090191 (N.D. Cal. May 5, 2015) appropriately "applied the relevant principle to construe the licenses for Solaris Versions 7, 8, 9, and 10." *Id.* at 1054.

The *Terix* Court explained that "[u]nder California law, the intent of the parties to a written agreement 'is to be ascertained from the writing alone, if possible.'  California law also recognizes that contract interpretation is a question of law for the court." *Terix*, 2015 WL 2090191, at *4 (footnotes omitted).  "Where there is a dispute as to the meaning of a contract's term, the court must determine whether the term is ambiguous or 'reasonably susceptible' to more than one interpretation.  Regardless of the answer, the trial judge is the arbiter of both ambiguous and unambiguous language, as long as the evidence required to resolve the ambiguity is uncontroverted." *Id.* (footnotes omitted).  As in *Terix*, the question here is whether the terms of the relevant licenses – the BCL and the SLA – permit Terix's conduct.

The Ninth Circuit summarized the evidence of Terix's downloading and copying of patches for joint HPE-Terix customers in its opinion reversing this Court's grant of summary judgement.  *See Oracle*, 971 F.3d at 1050.  The Ninth Circuit pointed to Terix downloading "some 11,500 copies of Solaris patches, including thousands of copies of registered protectable code by using customers' MOS credentials." *Id.*  It also noted that "Terix employees copied patches to internal Terix repositories as well as to Terix-provided laptops so that it could provide patches on demand to joint customers.  Terix reproduced and distributed patches on its servers so that customers could access patch copies." *Id.*  In sum, the Ninth Circuit concluded that "Terix

downloaded patches using the [MOS credentials for a single-server Oracle support contract] to make copies for use on off-contract servers as part of the so-called 'one-to-many' scheme.  When a customer was not yet supported, Terix created credentials by using fictitious names, emails addresses, and credit cards." *Id.* at 1046.

The Court must now consider whether this conduct was permitted by the BCL and SLA licenses.  The BCL grants "a non-exclusive and non-transferable license for the internal use only of the accompanying software and documentation and any error corrections provided by Sun [determined] by the number of users and the class of computer hardware *for which the corresponding fee has been paid*."  ECF No. 956-5 ¶ 1 (emphasis added).  Similarly, the SLA explains that Sun grants a license "[s]ubject to the terms of [the customer's] Entitlement," which was defined as "the collective set of applicable documents . . . *evidencing your obligation to pay associated fees* (if any) for the license."  ECF No. 956-6 at 8 (emphasis added).  As the *Terix* court explained, the BCL and SLA "plainly" did not authorize Terix's conduct.

> [T]he licenses specifically contemplate download privileges "for the number of users and the class of computer hardware for which the corresponding fee has been paid" or for updates "that replace and/or supplement the original Software" for which a customer pays "associated fees." [Terix] violated the terms of the relevant licenses by using a customer's credentials to—at the very least—download patches for any number of that customer's machines, whether covered by the license terms or not. This type of use is clearly not contemplated on the face of the license agreements.

*Terix*, 2015 WL 2090191, at *6.

HPE's contentions that (1) because every customer had an active support contract during the relevant period, all accused downloads and deliveries were authorized uses of patches provided by Oracle under the license agreements, ECF No. 956-3 at 5, and (2) Oracle's reading of the licenses would require the Court to conclude that the licenses themselves were not effective unless a customer bought a support contract for every server, ECF No. 974 at 3-5, are unavailing.  The evidence of Terix's extensive downloading and copying reflects that it was not abiding by the terms of the license to use only the patches "provided by Sun . . . for which the corresponding fee has been paid."  ECF No. 956-5 ¶ 1; *see also* ECF No. 956-6 ¶ 5.  The fact that a customer had a support contract for one server did not permit Terix, the customer's agent, to download and copy

United States District Court
Northern District of California

12

1   the patches without limit.  And the plain language of the license makes clear that a customer may

2   use the licensed software without purchasing a support contract, but that the use of any "error

3   corrections" or "Software updates" – aka patches – is dependent on "Sun's discretion" and the

4   payment of "the corresponding fee."  *Id.*

5     The Court therefore concludes that Terix's conduct exceeded the scope of the identified

6   licenses, and grants Oracle summary judgment as to HPE's express license defense.

7         **b.**   **Contributory Liability**

8     Oracle alleges that "[i]n addition to directly infringing Oracle's exclusive rights, [HPE] has

9   contributorily infringed Oracle's exclusive rights in the software."  SAC, ECF No. 306 ¶ 68.

10   Oracle asserts that HPE encouraged and assisted Terix's infringement by sending Terix customers

11   HPE knew required Solaris patches but did not have or were not intending to obtain Oracle

12   support contracts.  ECF No. 963-6 at 35-38.

13     HPE moves for summary judgment on the grounds that Oracle has not established either

14   the knowledge or the material contribution elements of contributory infringement.  ECF No. 956-7

15   at 2-5, 7-9.  HPE argues that Oracle presents no evidence that HPE knew which servers Terix was

16   providing patches to or that the customers who owned those servers did not have the necessary

17   support contracts.  HPE explains that Oracle can only point to evidence that HPE knew Terix

18   might violate Oracle's support policies, but not that HPE knew Terix's conduct exceeded Oracle's

19   software licenses and constituted copyright infringement.  HPE also contends that Oracle has no

20   specific evidence that HPE contributed to particular acts of infringement.

21     Contributory copyright infringement requires showing that a defendant "(1) has knowledge

22   of another's infringement and (2) either (a) materially contributes to or (b) induces that

23   infringement."  *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).  A

24   defendant must know of "specific infringing material" and fail to "take simple measures to prevent

25   further damage."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171-72 (9th Cir. 2007)

26   (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) and *Religious*

27   *Tech. Ctr. V. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995)).

28   Although the law remains unsettled over whether "reason to know" of specific infringement

United States District Court
Northern District of California

satisfies the standard, *see Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 832 (9th Cir. 2019) (noting inconsistency in case law), it is undisputed that "[w]illful blindness of specific facts would establish knowledge for contributory liability." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013). "A willfully blind defendant is one who took deliberate actions to avoid confirming suspicions of criminality." *United States v. Heredia*, 483 F.3d 913, 918 n.4 (9th Cir. 2007) (en banc).

The Court finds that there is a material dispute of fact as to whether HPE was willfully blind to Terix's infringement. As discussed above, Terix's conduct violated Oracle's licenses according to the plain meaning of the contracts. HPE's attempt to frame Terix's conduct as potentially violating Oracle's support policies rather than the software licenses themselves is therefore unavailing. In addition, Oracle presented specific evidence of HPE's knowledge of Terix's conduct that violated the terms of Oracle's licenses. For example, an HPE employee designated under Rule 30(b)(6) to testify on HPE's behalf regarding "HPE's general marketing and advertising efforts with respect to its multivendor support offers as they relate to Oracle software running on Oracle hardware" stated that "███████████" were "███████████" and "███████████" because they were "███████████" Ex. 466-11 at 9, 23-25. This employee had communicated with other HPE employees about how "███████████ ███████████████████████████████████████████████████████" and testified that he was referencing "███████████████████████████ ████████████████████████████████████████████████████" *Id.* at 35-36. Another HPE employee testified that he had raised his concern that Terix was "███████████████████ █████████████████" with HPE management. ECF No. 548-12 at 15-16. Oracle has therefore demonstrated that HPE may have had knowledge that Terix providing software patches to customers without Oracle support contracts was unlawful and would violate the terms of the licenses.

In addition, Oracle has provided evidence of specific knowledge of infringement. In a November 2012 email an HPE employee described "██████████████████████████████ ████████████████████████████████████████████████████████████

██████████████████████████" ECF No. 467-42 at 2.  Oracle has pointed to several joint

HPE/Terix customers – including Comcast and Sybase – who HPE knew did not pay for Oracle

support, but who contracted with HPE and Terix with the understanding that they would receive

Oracle patches.  *See, e.g.*, ECF No. 467-21 at 7-8 (Comcast affirming that when it was

"████████████████████████" it was "████████████████████████████

███████████████████████████████████████" and that HPE said

"████████████████████████████"); ECF No. 467-26 at 18

(termination letter from Comcast to Oracle distributed through an HPE communication); ECF No.

467-41 at 2 (HPE employee explaining to Sybase that "███████████████████

███████████████████████████████████████████████████████

████████████████████████████").  HPE's practice of "██████████

███████████████████████████████████" constitutes

evidence of willful blindness to Terix's direct infringement. ECF No. 467-42 at 2.

Finally, the evidence of HPE directing customers who did not want to contract with Oracle

to contract directly with Terix similarly satisfies Oracle's burden of establishing that HPE induced

Terix's liability by taking "active steps . . . to encourage direct infringement."  *VHT, Inc. v. Zillow

Grp., Inc.*, 918 F.3d 723, 743 (9th Cir. 2019) (quotation marks and citation omitted).  A July 2011

communication "██████████████████████████████████████" described

one of "████████████████████████████████████

██████████████████████████████" as follows:

ECF No. 964-17 at 4 (emphasis added).  In addition, Oracle has presented specific evidence

regarding HPE's role in assisting Terix's direct infringement through its relationships with

customers like Comcast.  *See, e.g.*, ECF No. 574-24 at 234 at 8-9, 15 (Comcast testified that ██

United States District Court
Northern District of California

1     ███████████████████████████████████████████████████████

2     ███████████████████████████████████████████████████

3     ███████████████████████████████████████████████████████

4     ███████).  The evidence gathered by Oracle reflects that HPE's partnership with Terix –

5     which hinged on Terix's ability to provide customers with Solaris patches – was an important

6     piece of HPE's business and was encouraged by management.

7        The Court therefore holds that Oracle can satisfy both elements of contributory copyright

8     infringement and denies HPE's motion for summary judgment on this claim.

9                  **c.**     **Vicarious Liability**

10    Vicarious copyright infringement requires showing that a "defendant has (1) the right and

11    ability to supervise the infringing conduct and (2) a direct financial interest in the infringing

12    activity."  *Giganews*, 847 F.3d at 673; *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster,*

13    *Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes vicariously by profiting from direct infringement

14    while declining to exercise a right to stop or limit it.").  HPE argues that Oracle cannot establish

15    either of these elements.  Oracle responds that it has satisfied the "control" prong by

16    demonstrating that HPE "had the power to police Terix's access to their joint customers

17    individually, and . . . promoted Terix's infringing activities by directing customers to Terix for

18    Solaris patches," as the Court instructed in its order denying HPE's motion to dismiss Oracle's

19    claim for vicarious copyright infringement.  ECF No. 963-6 at 43 (quoting ECF No. 159 at 4).

20        First, the Court holds that, contrary to HPE's argument, Oracle need not have the ability to

21    put an end to all of Terix's infringing conduct to support its claim that HPE is liable for vicarious

22    copyright infringement.  For example, in *Napster*, an MP3 music sharing website was accused of

23    vicariously liability for users' sharing of copyrighted songs.  239 F.3d at 1011.  Addressing the

24    right and ability to supervise, the court found that Napster had the right to control access to its

25    system because it reserved the right to terminate users.  *Id*. at 1023.  Although the boundaries of

26    Napster's control were limited by the system's "architecture," Napster maintained song indices

27    which it could use to locate infringing material and which "as a practical matter" gave it the ability

28    to stop infringement.  *Id*. at 1023-24.  While users could technically alter file names, the names

16

would have to "roughly" correspond to copyrighted music in order for users to find it through search. *Id*. at 1024. The Ninth Circuit thus concluded that Napster had the practical ability to supervise infringement even though it could not control all of the third-parties' infringement. The Ninth Circuit has also held that evidence of a swap meet operator's "broad contract with its vendors" was sufficient to satisfy the control requirement because the operator "had the right to terminate vendors for an reason whatsoever and through that right had the ability to control the activities of vendors on the premises." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996). The case that HPE relies on – an unpublished disposition from the Ninth Circuit – holds that a defendant must have control over a third party's infringing conduct to the extent that the defendant "can directly put an end to that conduct," but does not support HPE's sweeping position that a defendant must be able to put an end to *all* of a third party's infringing conduct to be liable for vicarious copyright infringement. *See Routt v. Amazon.com, Inc.*, 584 Fed. App'x 713, 714 (9th Cir. Aug. 29, 2014).

The ███████████████████████████ between HPE and Terix – although not a "formal, contractual ability to control the direct infringer," *Fonovisa*, 76 F.3d at 263 – provides insight into HPE's supervisory role over Terix in the context of joint HPE/Terix customers. Under this agreement, ███████████████████████████████████████████ ███████████████████ ECF No. 467-9 at 7, 18. ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ *Id.* at 8.

Furthermore, evidence of HPE's interactions with specific customers make it clear that HPE had the practical ability "to stop or limit the directly infringing conduct." *Perfect 10*, 508 F.3d at 1173. HPE confirmed that in HPE's multivender support services – such as those provided to joint HPE/Terix customers – HPE was the "██████████████████" for customers' support needs and was "████████████████████████████████" ECF No. 467-19 at 13-16. One joint HPE/Terix customer explained that the process for getting support was to call HPE, who "████████████████████████████████████████████████

United States District Court
Northern District of California

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" ECF No. 574-24 at 16.  This customer received "▓▓▓▓▓▓▓▓▓▓▓▓▓"

Solaris patches "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" and understood that "▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" and that HPE "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" *Id.* at 16-18  Another joint customer described

a similar process in which they would "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"

ECF No. 549-6 at 17.  An HPE employee confirmed that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" and stated that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" ECF

No. 549-18 at 17-18.  This evidence of HPE's involvement in customer's software service

inquiries, and its role in directing business and specific service requests to Terix, is comparable to

the role of Napster or a swap meet operator and supports the "control" element of Oracle's

vicarious liability claim.

Second, the Court holds that Oracle's evidence is sufficient to meet its burden to show that

HPE had a "direct financial interest in the infringing activity." *Giganews*, 847 F.3d at 673.  As

discussed above, Terix's infringement allowed HPE to "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" even if the

customer did not want to contract with Oracle.  ECF No. 964-17 at 4.  HPE described its ability to

obtain business from a customer who required access to Solaris patches but did not contract with

Oracle as "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" ECF No. 467-26 at 2.  Finally,

HPE's argument that "access to patches was *not* the reason that sophisticated enterprise customers

contracted with HPE for multi-vendor support" is unpersuasive.  ECF No. 956-7 at 11.  As noted

above, Oracle has presented evidence that certain joint HPE/Terix customers "▓▓▓▓▓" access to

Solaris patches in order to contract with HPE.  *See, e.g.*, ECF No. 467-21 at 7-8 (Comcast).

Terix's infringement made that possible and so was a "draw for [customers], not just an added

benefit."  *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).

The Court holds that Oracle can satisfy both elements of vicarious copyright infringement

United States District Court
Northern District of California

1    and denies HPE's motion for summary judgment on this claim.

2

3              **d.       Partial Summary Judgement or Rule 56(g) Order**

4        HPE asks the Court to grant partial summary judgment or issue a Rule 56(g) order limiting

5    Oracle's claims regarding joint support customers.  First, HPE argues that because Oracle has not

6    challenged this Court's grant of summary judgment regarding the absence of evidence of Terix

7    installing patches on any out-of-contract servers for a joint support customer, Oracle's pre-

8    installation claims regarding Terix downloading or delivering a patch with the intent to infringe

9    cannot be a basis for copyright infringement.  ECF No. 965-3 at 14-15.  HPE contends that "the

10   Copyright Act is concerned with the *act* of copying or redistributing a protected work" and "does

11   not regulate a party's state of mind."  *Id.* at 14.  However, HPE bases this argument on its

12   assertion that "it is undisputed that the mere act of downloading a patch for a joint support

13   customer or delivering a patch to an FTP site for a joint support customer – i.e., the act of *copying*

14   the patch – did *not* violate the customers' licenses."  *Id.* at 15.  This mischaracterizes the record

15   and distorts the Ninth Circuit's opinion.  Although an agent downloading and delivering a patch

16   for a server that is under an Oracle support contract would not violate the license, that is not what

17   Oracle's evidence shows.  As discussed above, the Ninth Circuit concluded that "Terix's

18   downloaded patches using the [MOS credentials for a single-server Oracle support contract] to

19   make copies for use on off-contract servers as part of the so-called 'one-to-many' scheme" and

20   noted that the evidence of Terix's downloading and copying "appears to show direct

21   infringement."  *Oracle*, 971 F.3d at 1046, 1050.  A jury could conclude that Terix's pre-

22   installation conduct violated the Oracle licenses and so is a proper basis for a claim of copyright

23   infringement.

24        Second, HPE asserts that partial summary judgment should be granted because Oracle has

25   not presented evidence of a download or a delivery that was made with the intent to install a patch

26   on an unsupported server for a particular customer.  ECF No. 965-3 at 15-16.  HPE emphasizes

27   that Oracle cannot simply assert that Terix downloaded or delivered patches with the intent of

28   installing the patches on unsupported servers because Oracle does not dispute that there is no

United States District Court
Northern District of California

evidence that any such installation actually occurred.  *Id.* at 16.  As an extension of this argument, HPE argues that, at a minimum, the Court should grant partial summary judgement or a Rule 56(g) order limiting Oracle's claims to the 300 patch deliveries that Oracle speculates could have been made for unsupported servers.  *Id.* at 16-17.  HPE contends that the evidence affirmatively forecloses Oracle's argument regarding most joint support customers because Oracle's expert admitted that there is no evidence that Terix delivered any patches for 25 of the 37 joint support customers.  *Id.* at 17.  Oracle responds that (1) Terix did make copies for unsupported servers; (2) HPE focuses on evidence of deliveries but ignores the "overwhelming evidence of Terix's downloading and internal copying," and (3) Oracle is not required to show that a particular download or copy was for a specific unsupported server to establish unauthorized conduct.  ECF No. 963-4 at 6-10.

The Court first declines to grant partial summary judgment based on which customers Oracle can demonstrate were delivered patches.  To do so would ignore HPE's liability for Terix's other infringing acts, such as its unauthorized downloading and copying.  In describing "Oracle's evidence of Terix's downloading and copying of patches for joint HPE-Terix customers," the Ninth Circuit explained that:

> Terix downloaded some 11,500 copies of Solaris patches, including thousands of copies of registered protectable code by using customers' MOS credentials. Terix employees copied patches to internal Terix repositories as well as to Terix-provided laptops so that it could provide patches on demand to joint customers. Terix reproduced and distributed patches on its servers so that customers could access patch copies.

*Oracle*, 971 F.3d at 1050.  The Ninth Circuit concluded that this evidence – without mention of any deliveries – "appears to show direct infringement."  *Id.*

The Court also rejects HPE's argument that Oracle is required to identify which out-of-contract servers Terix and/or HPE intended to install each downloaded patch on.  HPE's argument that Oracle needs to do more than assert that Terix downloaded or delivered patches with the intent of installing the patches on unsupported servers appears to be a new version of an argument that the Ninth Circuit has already rejected – "that only patch installations could constitute infringing conduct" because "Terix was an agent of a customer with a license."  *Id.* at 1051.  In

20

1  remanding this case, the Ninth Circuit emphasized that "[p]roof of copyright infringement is often

2  highly circumstantial . . . [b]ecause direct evidence of copying is rarely available." *Id.* at 1053

3  (quoting *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016) and *Baxter v. MCA, Inc.*, 812 F.2d

4  421, 423 (9th Cir. 1987)).  As the Ninth Circuit explained, Terix operated a "so-called 'one-to-

5  many' scheme" in which it would use "MOS credential[s] for [a] single-server Oracle support

6  contract . . . to make copies for use on off-contract servers." *Id.* at 1046.  And "[w]hen a customer

7  was not yet supported, Terix created credentials by using fictitious names, emails addresses, and

8  credit cards." *Id.*  The evidence of Terix's scheme of downloading and copying Solaris patches

9  for use on off-contract servers is sufficient circumstantial evidence of infringement.

10      The Court therefore denies HPE's motion for partial summary judgment or a Rule 56(g)

11 order as to the indirect infringement claims.

### 2.      Direct Copyright Infringement

13      HPE acknowledges that the Ninth Circuit has held that "summary judgment was improper

14 on the direct infringement claims concerning non-Symantec customers" because "[v]iewing the

15 evidence in the light most favorable to Oracle, a reasonable jury could find that HPE performed

16 patch installations for direct customers." *Oracle*, 971 F.3d at 1053.  However, HPE argues that it

17 is entitled to summary judgment as to Oracle's claims concerning Symantec and partial summary

18 judgment with respect to Oracle's claims pertaining to non-Symantec direct support customers.

### a.      Non-Symantec Direct Support Customers

20      HPE argues that it is entitled to partial summary judgement regarding Oracle's direct

21 infringement claims because Oracle does not have cognizable evidence of infringement pertaining

22 to non-Symantec direct support customers beyond the 210 installations identified by Oracle's

23 expert, Hicks, and addressed in the Ninth Circuit's analysis. ECF No. 956-3 at 10-13; *see also*

24 *Oracle*, 971 F.3d at 1052-53.  Oracle responds that it may establish HPE's practice of unlawful

25 copying through circumstantial evidence – including evidence that HPE provided protected

26 patches to direct support customers who had over 1,500 servers not on Oracle support – and that

27 HPE installed unauthorized patches across many customers' servers, as identified by the

28 spreadsheet reflecting the 210 potentially infringing installations.  ECF No. 963-4 at 12-16.

"Granting or denying a partial summary judgment is, in the end, 'largely . . . a discretionary matter.'" *Kottom v. Walker*, No. 14-CV-04492-LB, 2015 WL 7301849, at *3 (N.D. Cal. Nov. 19, 2015) (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2728 at 531-32 (3d ed. 1998)).  Under Federal Rule of Civil Procedure 56(g), the Court "may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."  However, "[e]ven if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established.  The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event."  *Malbco Holdings, LLC v. Patel*, No. 3:14-CV-00947-PK, 2016 WL 5898629, at *1 (D. Or. Oct. 7, 2016) (quoting Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment).  Another court in this district has recognized that "[d]espite its name, a partial summary judgment is not a judgment at all but merely a pretrial adjudication that certain issues shall be deemed established.  *Kottom*, 2015 WL 7301849, at *4 (quotation marks and citations omitted).  A partial summary judgment order therefore "has no preclusive effect, since the trial court retains jurisdiction to modify the order at any time prior to the entry of a final judgment."  *Id.* (quoting Wright, *supra*, § 2737 at 323); *see also Solis v. Jasmine Hall Care Homes, Inc.*, 610 F.3d 541 (9th Cir. 2010) (holding partial summary judgment was non-final and not appealable).

The Court declines to grant partial summary judgment or a Rule 56(g) order.  As discussed throughout this order, the Ninth Circuit reversed this Court in part because "Oracle may prove infringement circumstantially" and "Oracle did not need to further show that a particular patch was installed on a particular off-contract server to survive summary judgment."  *Oracle*, 971 F.3d at 1053.  Considering that hundreds of disputed instances of infringement regarding the non-Symantec direct support customers must be tried in any event, the Court declines to limit Oracle's infringement claims as to those customers at this stage.

            **b.**      **Symantec**

The Ninth Circuit held that summary judgment for HPE on the direct infringement claims regarding Symantec was "improper" because "[t]he testimony from HPE's employees permitted

United States District Court
Northern District of California

the reasonable inference that HPE installed a patch on *an* unsupported Symantec server"

considering that "HPE had a practice . . . of installing patches downloaded from and delivered

through Terix for Symantec's off-contract servers." *Oracle*, 971 F.3d at 1053-54 (quotation marks

omitted). Although the Ninth Circuit held that Oracle could prove infringement concerning

Symantec circumstantially, the court remanded the question of whether HPE is nonetheless

entitled to summary judgment on the basis that Oracle has not shown that any patch delivered to

Symantec was protectable. *Id.* at 1054.

HPE argues that summary judgment is warranted because "[n]one of the █████████

███████████████████████ to Symantec – i.e., identified by Oracle at summary judgment –

is in Dr. Goldberg's list of ████ protectable patches." ECF No. 956-3 at 19. Oracle responds that

Terix's delivery data confirms that it delivered protected firmware for an off-contract Symantec

server. ECF No. 963-4 at 17 (citing ECF No. 472-11 at 5 and ECF No. 963-20 at 5). Oracle also

points to additional evidence of infringement regarding Symantec, including Oracle's expert's

analysis of Terix's downloading patches for Symantec and the testimony of an HPE employee,

Elfers, who admitted to receiving patches from Terix and described "HPE's 'practice' of installing

Terix-provided patches on unsupported Symantec servers." *Id.* (emphasis omitted). Finally,

Oracle notes that Elfers himself admitted to downloading protected patches for unsupported

Symantec servers. *Id.* at 18. HPE responds that (1) the only protectable patches Oracle points to

are those that Terix downloaded or delivered, which is not evidence of direct infringement by

HPE, and (2) there is no evidence that the patches downloaded by Elfers were delivered to

Symantec or were for out-of-contract servers. ECF No. 974 at 6 & n.6.

The Court holds that because "Oracle may prove infringement circumstantially," *Oracle*,

971 F.3d at 1054 (citing *Loomis*, 836 F.3d at 994), there is a material dispute of fact regarding

whether HPE installed a protected patch on an out-of-contract Symantec server. There are at least

two means by which a jury could find direct copyright infringement concerning Symantec. First, a

jury might draw the inference that HPE installed a protected patch on an unsupported server based

on (1) the evidence that Terix downloaded hundreds of protected patches for Symantec, *compare*

ECF No. 963-17 *with* ECF No. 963-18, and (2) the HPE employee testimony regarding HPE's

practice of installing Terix-provided patches on unsupported Symantec servers, *see* ECF No. 964-25 at 17-18, 24-25; ECF No. 964-26 at 10, 11-12, 13; *see also* ECF No. 964-39 at 17, 21, 22 (another HPE employee testifying to HPE installing Solaris patches provided by Terix on Solaris servers at Symantec). *See also Oracle*, 971 F.3d at 1054 ("testimony from HPE employees showed that HPE had a practice of . . . installing patches downloaded from and delivered through Terix for Symantec's off-contract servers"). Second, the jury could find copyright infringement by relying on Oracle's expert's analysis of the evidence as demonstrating that HPE itself downloaded patches for use on unsupported servers and later installed those patches on unsupported servers. *See* ECF No. 963-13 ¶¶ 118-120. The Court therefore denies HPE's motion for summary judgment regarding Oracle's direct infringement claims concerning Symantec.

### 3.    Additional Affirmative Defenses

Finally, Oracle moves for summary judgment on HPE's implied license, abandonment, estoppel, fair use, and Section 117 affirmative defenses for Oracle's copyright claims. ECF No. 963-6 at 69-85. Although the Court ordered both parties to attach excerpts of their existing summary judgment briefs to their supplemental briefs, ECF No. 954, HPE did not provide the Court with briefing on these issues, *see* ECF Nos. 955, 956. The Court therefore considers the arguments made in HPE's original opposition to Oracle's motion for summary judgment. ECF No. 545-4 at 28-30.

First, Oracle moves for summary judgment on HPE's abandonment defense because "Sun and Oracle never engaged in an overt act to abandon copyright protection." ECF No. 963-6 at 72. In denying Oracle's motion to strike HPE's abandonment defense, this Court noted that although a lack of action is insufficient to be considered abandonment, Oracle had not pointed to a case regarding a plaintiff who had "acquired copyright material that had been previously supplied 'for little or no cost' and without a required contract, . . . and where the plaintiff had knowledge of that fact and then proceeded to take no action to enforce the copyright." ECF No. 174 at 5. However, Oracle has presented evidence regarding the steps it took to protect and enforce its copyright, including "plac[ing] every single Solaris patch and firmware update behind a password-protected website that required a support contract for access, and issue[ing] corresponding support policies."

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ECF No. 963-6 at 75 (citing ECF No. 461 ¶¶ 5-7; ECF No. 561-1).  In addition, Sun included copyright notices on all Solaris patches, which indicates an intent not to abandon.  ECF No. 462-84 at 7.  *See Paramount Pictures Corp. v. Carol Pub. Grp.*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir. 1999).  Because HPE has not pointed to any evidence of an overt act evidencing an intent by Oracle to surrender its rights, the Court grants Oracle's motion for summary judgment on HPE's abandonment defense.

Second, HPE opposes Oracle's motion for summary judgment as to the implied license and estoppel defenses with respect to the direct support customers because HPE and Oracle "had an informal but open understanding that customers should receive the required support, and then the parties could compare records and true up any fees owing for the time of any inadvertent support lapse."  ECF No. 545-4 at 29.  The estoppel defense includes four necessary elements: (1) the plaintiff must know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendants must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury. *McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069, 1101 (E.D. Cal. 2009) (citing *Hampton v. Paramount Pictures Corp.*, 279 F. 2d 100, 104 (9th Cir. 1960)).  The evidence cited by HPE does not support any of these elements.  HPE asserts – without any record support – that it "relied on" its informal agreement with Oracle "in providing support and in reselling Oracle contracts."  ECF No. 545-4 at 29.  Because HPE has failed to "introduce some 'significant probative evidence tending to support the complaint,'" the Court grants Oracle's motion for summary judgment as to the estoppel defense.  *Summers*, 127 F.3d at 1152.

The Court holds that "the implied license defense fails as a matter of law because implied terms are justified only when they are not inconsistent with some express term of the contract." *Evox Prods. LLC v. Kayak Software Corp.*, No. CV15-5053 PSG (AGRX), 2017 WL 5634858, at *8 (C.D. Cal. Apr. 4, 2017) (quotation marks and citation omitted).  As discussed above, the licenses here "specifically contemplate download privileges 'for the number of users and the class of computer hardware for which the corresponding fee has been paid' or for updates 'that replace

and/or supplement the original Software' for which a customer pays 'associated fees.'" *Terix*, 2015 WL 2090191, at *6. An implied term that would allow HPE to provide Solaris patches for servers not under a support contract would be inconsistent with these express terms. Oracle is therefore entitled to summary judgment on HPE's implied license defense.

Third, HPE argues that Oracle is not entitled to summary judgment on its fair use defense. In determining whether the use made of a work in any particular case is a fair use, a court must consider at least:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. HPE contends that a jury should determine whether HPE's conduct was (1) transformative and (2) whether it harmed the market value of Oracle's software. ECF No. 545-4 at 30. A use is transformative if it "adds something new, with a further purpose or different character, altering the [creation] with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). However, HPE does not allege that it added anything to Oracle's software; only that it downloaded, stored, and delivered the software patches. Its use therefore cannot be said to be transformative. And, as discussed above, the record reflects that HPE described its ability to obtain business from a customer who required access to Solaris patches but did not contract with Oracle as "██████████████████████████████████" ECF No. 467-26 at 2. Because HPE has pointed to no evidence in the record to support its theory of fair use, the Court grants Oracle summary judgment as to this affirmative defense.

Finally, Oracle argues that HPE's defense based on Copyright Act section 117 fails. 17 U.S.C. § 117 provides that it is not an infringement under the Copyright Act for "the owner or lessee of a machine to make or authorize the making of a copy of a computer program if such copy is made solely by virtue of the activation of a machine that lawfully contains an authorized copy of the computer program, for purposes only of maintenance or repair of that machine." § 117(c).

Defendant must prove that "(1) such new copy is used in no other manner and is destroyed immediately after the maintenance or repair is completed; and (2) with respect to any computer program or part thereof that is not necessary for that machine to be activated, such program or part thereof is not accessed or used other than to make such new copy by virtue of the activation of the machine." *Id.*  HPE cites no relevant evidence to support its opposition to Oracle's motion for summary judgment or its position that any copy of a patch was made solely for the activation of a machine for the purpose only of maintenance or repair of that machine.  *See* ECF No. 545-4 at 30.  The Court also rejects HPE's attempt to raise the new argument that section 117 can apply to customers who "archived patches for later use." *Id.*  HPE has alleged section 117 as a defense only in the context of the maintenance and repair provision, asserting that "HPE and Terix customers authorized the making of a copy of Sun software as an essential step in the utilization of the Sun software in conjunction with the customers' servers for the sole purpose of maintaining or repairing the servers. Further, both HPE and Terix maintain and repair Sun hardware."  ECF No. 314 ¶ 49.  The Court therefore grants Oracle's motion for summary judgment as to this defense.

### B.  State Law Claims

The Ninth Circuit affirmed in part and reversed in part this Court's summary judgment ruling on Oracle's state law claims.  *See Oracle*, 823 Fed. App'x at 517.  The Ninth Circuit explained that because it had "reversed summary judgment against Oracle on the infringement claims for pre-installation and installation conduct, we reverse on [the IICR] issue as well" and that their "reversal of summary judgment on the infringement and IICR claims compel[led] [them] to reject [this Court's IIPEA] wrongful act analysis." *Id.* at 518.  The focus of the parties' supplemental briefing is whether Oracle's intentional interference claims are preempted by the Copyright Act.

#### a.  Intentional Interference with Contract Relations

In reversing this Court's IICR analysis, the Ninth Circuit explained that "Oracle support customers had at least two contracts: (1) a support contract and (2) a corresponding agreement for accessing software patches," and that "Oracle claims that HPE and Terix induced breaches of those contracts by downloading, copying, and installing Solaris patches outside the scope of

United States District Court
Northern District of California

permitted use."  *Id.*  The Ninth Circuit also held that Oracle had provided enough evidence to show resulting damages "from the diversion of server-support contract business from Oracle[] and evidence showing that Oracle suffered lost profits."  *Id.*

HPE argues that it is entitled to summary judgment on Oracle's IICR claim because both intentional interference claims are preempted by the Copyright Act.  The Copyright Act preempts a state law claim if: (1) the plaintiff asserts "rights that are equivalent" to those protected by the Copyright Act as defined in 17 U.S.C. § 106; and (2) the work involved falls within the "subject matter" of the Copyright Act as defined in 17 U.S.C. §§ 102 and 103.  *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998).

The Court first notes that "[m]ost courts have held that the Copyright Act does not preempt the enforcement of contractual rights."  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005).  "Contract claims generally survive preemption because they require proof of . . . an extra element," such as an "agreement of payment for use."  *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 980 (9th Cir. 2011) (en banc).  *See also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir.1996) ("A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.' ").  However, as another court in this district has recognized, "[s]ome courts have cautioned against an overbroad application of the doctrine that the Copyright Act does not preempt contract rights."  *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 977 (N.D. Cal. 2013).

As in *Craigslist*, the Court "need not decide . . . whether *any* contract could be preempted by the Copyright Act, because the contract that [Oracle] alleges here involves a number of 'extra element[s]' not merely 'equivalent to' rights under the Copyright Act."  *Id.*  As Oracle explains, the contracts at issue "created numerous other commitments that customers, through Terix and HPE, violated."  ECF No. 963-4 at 23.  For example, the MOS Terms of Use barred customers from "access[ing] or us[ing] My Oracle Support in any manner that could . . . result in unauthorized access to . . . any Oracle accounts, systems or networks," ECF No. 964-34 at 2, and from "receiv[ing] updates, . . . patches, . . . or other technical support services for unsupported

28

hardware systems," ECF No. 964-35 at 4.  HPE does not respond to Oracle's arguments regarding these other provisions of the MOS Terms of Use or allege that these provisions of the contract protect "rights that are equivalent" to those protected by the Copyright Act.  Nor could it.

Due to the "extra element[s]" of the MOS Terms of Use, and because the Copyright Act generally does not preempt contracts, the Court denies HPE's motion for summary judgment on the basis that Oracle's state law claims are preempted.

### b.   Intentional Interference with Prospective Economic Advantage

The Ninth Circuit explained that it was "compel[led]" to reverse this Court's IIPEA wrongful act analysis due to its reversal of this Court's holdings regarding Oracle's infringement claims and IICR claim.  *Oracle*, 823 Fed. App'x at 518.  HPE argues that the IIPEA claim is preempted and that Oracle keeps its "theory of wrongfulness . . . intentionally vague" because "the only theory it *could* advance as to why [HPE and Terix's] 'scheme' was independently wrongful is that it violated the Copyright Act."  ECF No. 974 at 6-7.  Oracle responds that its IIPEA claim is based on Terix's unlawful "one-to-many" scheme which involved many wrongful acts by both HPE and Terix beyond copyright infringement.  ECF No. 963-4 at 19-21.

"An IIPEA claim requires an intentionally wrongful act by the defendant designed to disrupt a prospective business relationship."  *Oracle*, 823 Fed. App'x at 518 (citing *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017)).  Unlike a claim for intentional interference with contract, claims for intentional interference with prospective economic relations "require that a defendant's conduct be independently wrongful."  *Oakley Inc., v. Nike, Inc.*, 988 F. Supp. 2d 1130, 1135 (C.D. Cal. 2013).  As discussed above, the Copyright Act does not preempt Oracle's IICR claim because HPE and Terix induced customers to violate provisions of their contracts with Oracle that did not involve rights protected by the Copyright Act.  Inducing these breaches of contract was wrongful conduct "designed to disrupt the relationship" between Oracle and its customers, and this conduct caused Oracle economic harm.  *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987)).  Oracle has therefore carried its burden of establishing the elements

of its IIPEA claim.  HPE does not address IICR as a possible wrongful act underlying Oracle's

IIPEA claim because it argues that both claims involved content within the subject matter of

copyright and both claims aimed to protect rights qualitatively identical to copyright acts.  *See*

ECF No.  956-3 at 21-22.

The Court holds that Oracle's IIPEA claim is not preempted by the Copyright Act and

therefore denies Oracle's motion for summary judgment as to this claim.[7]

### c.   UCL

HPE's argument that it is entitled to summary judgment on Oracle's claim under the

"unlawful" prong of the UCL to the extent that this claim is "premised on intentional interference"

also fails.  ECF No. 956-3 at 20 n.7.  *See Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164,

178 (2001) (holding that UCL claims under the unlawful prong "stand or fall depending on the

fate of the antecedent substantive causes of action.").

### CONCLUSION

For the foregoing reasons, the Court denies HPE's motion for summary judgment on all

counts and grants Oracle's motion for summary judgment as to HPE's express license, implied

license, abandonment, estoppel, fair use, and 17 U.S.C.  § 117 defenses.

**IT IS SO ORDERED.**

Dated:  June 4, 2021



JON S. TIGAR
United States District Judge

---

[7] HPE argues that Oracle's intentional interference claims "also fail because Oracle has no evidence that an alleged wrongful act was the *proximate cause* of its alleged harm."  ECF No. 956-3 at 20 n.6; ECF No. 956-18.  However, the Ninth Circuit held that Oracle has presented sufficient evidence regarding "the diversion of server-support contract business from Oracle, and evidence showing that Oracle suffered lost profits," which indicates that HPE and Terix's inducement of the customers' breach of contract was the proximate cause of Oracle's alleged harm.  *Oracle*, 823 Fed. App'x at 518.  *See also* ECF No. 467-26 at 2 (HPE employee describing business from a former Oracle customer – a business that is specifically referenced in the context of Oracle's IIPEA claim, SAC ¶¶ 78-79 – as "████████████████████████████████ ████").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California