LATHAM & WATKINS LLP
  Christopher S. Yates (SBN 161273)
  Sarah M. Ray (SBN 229670)
  Brittany N. Lovejoy (SBN 286813)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:   chris.yates@lw.com
         sarah.ray@lw.com
         brittany.lovejoy@lw.com

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  Peggy E. Bruggman (SBN 184176)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114
Email:   dorian.daley@oracle.com
         peggy.bruggman@oracle.com

ORACLE CORPORATION
  Jeffrey S. Ross (SBN 138172)
10 Van de Graaff Drive
Burlington, MA 01803
Telephone: 781.744.0449
Facsimile: 781.238.6273
Email:    jeff.ross@oracle.com

Attorneys for Plaintiffs
Oracle America, Inc. and Oracle
International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation; and DOES 1–50,<br><br>Defendants. | CASE NO. 4:16-cv-01393-JST<br><br>**ORACLE AMERICA, INC. AND ORACLE INTERNATIONAL CORPORATION'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION**<br><br>Date:      October 27, 2022<br>Time:      2:00 PM<br>Place:     Videoconference<br>Judge:     The Honorable Jon S. Tigar |

1    **NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION**

2         TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE

3    that on October 27, 2022, at 2:00 p.m., or as soon thereafter as the parties may be heard, before

4    the Honorable Jon S. Tigar, Plaintiffs Oracle America, Inc., and Oracle International Corporation

5    (collectively "Oracle"), will and hereby do move the Court for a permanent injunction under the

6    Copyright Act.

7         This Motion is made pursuant to 17 U.S.C. § 502(a) and the jury's verdict on June 14,

8    2022.[1]  This Motion is also based on this Notice of Motion, the accompanying Memorandum of

9    Points and Authorities, the Declaration of Christopher Yates, and exhibits thereto, the files,

10   records, and pleadings already on file in the action, and any other evidence or argument that may

11   be presented by Oracle at or before the hearing on this Motion.

12                                    **RELIEF SOUGHT**

13        As set forth in detail in the Proposed Order submitted with this motion, Oracle

14   respectfully requests that the Court issue an order against Defendant Hewlett Packard Enterprise

15   Company ("HPE") enjoining any copying, distribution, or use of Oracle's Solaris software,

16   firmware or support materials, whether by HPE or any others under HPE's supervision and

17   control, except as allowed by Oracle.

18

19

20

21

22

23

24

25

26

---

27   [1] Given the jury's verdict, Oracle is entitled to a finding that HPE violated California's Unfair
     Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.  However, mindful of the Court's
28   comments at the last case management conference, Oracle does not seek injunctive relief on
     those claims.

1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   LEGAL STANDARD ...........................................................................................3

III.  ARGUMENT .......................................................................................................4

    A.   HPE Should Be Permanently Enjoined From Copying Oracle's Solaris
    Support Software In Violation Of Oracle's Support Policies ...............................4

        1.   Oracle Has Suffered Irreparable Injury And There Is No Adequate
        Remedy At Law ............................................................................4

        2.   The Balance Of Hardships Weighs In Favor Of An Injunction.................12

        3.   Injunctive Relief Serves The Public Interest ................................13

    B.   Oracle's Proposed Injunctive Relief Is Appropriately Tailored To Remedy
    The Harm HPE Caused ........................................................................14

IV.   CONCLUSION...................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apple Comput. v. Franklin Computer Corp.*,
714 F.2d 1240 (3d Cir. 1983)....................................................................................13

*Apple Inc. v. Psystar Corp.*,
658 F.3d 1150 (9th Cir. 2011) ..............................................................................3, 10

*Apple Inc. v. Psystar Corp.*,
673 F. Supp. 2d 943 (N.D. Cal. 2009), aff'd, 658 F.3d 1150 (9th Cir. 2011) ................ *passim*

*Blackberry Ltd. v. Typo Prods., LLC*,
No. 14-cv-00023, 2014 WL 1318689 (N.D. Cal. Mar. 28, 2014) ..................................5

*Broad Music, Inc. v. Prana Hosp., Inc.*,
158 F. Supp. 3d 184 (S.D.N.Y. 2016)........................................................................12

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)...............................................................................3, 4

*Disney Enters., Inc. v. Redbox Automated Retail LLC*,
336 F. Supp. 3d 1146 (C.D. Cal 2018) .........................................................................5

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ................................................................................4, 13

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) .......................................................................9

*eBay, Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)..............................................................................................3, 4

*Eldred v. Ashcroft*,
537 U.S. 186 (2003)..................................................................................................14

*Facebook, Inc. v. Grunin*,
77 F. Supp. 3d 965 (N.D. Cal. 2015) ..........................................................................13

*Fikre v. FBI*,
904 F.3d 1033 (9th Cir. 2018) ...................................................................1, 2, 5, 9

*Golden State Bottling Co., v. N.L.R.B.*,
414 U.S. 168 (1973)..................................................................................................14

*Hewlett-Packard Co. v. Infostaf Consulting, Inc.*,
No. 12-cv-01806 (N.D. Cal. Apr. 26, 2012) ...............................................................7

ii

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) .............................................................................................3

*Iconix, Inc. v. Tokuda*,
   457 F. Supp. 2d 969 (N.D. Cal. 2006) ...............................................................................14

*Inst. of Cetacean Res. v. Sea Shepherd Conservation Soc'y*,
   774 F.3d 935 (9th Cir. 2014) ............................................................................................14

*Irwin v. Mascott*,
   370 F.3d 924 (9th Cir. 2004) ............................................................................................14

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal 2007) ...................................................................... *passim*

*MySpace, Inc. v. Wallace*,
   498 F. Supp. 2d 1293 (C.D. Cal. 2007) ...............................................................................5

*Oracle USA, Inc. v. Rimini St., Inc.*,
   324 F. Supp. 3d 1157 (D. Nev. 2018) .......................................................................3, 10, 12

*Oracle USA, Inc. v. Rimini St., Inc.*,
   783 F. App'x 707 (9th Cir. 2019) ...............................................................................1, 2, 3, 5

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   No. 16-cv-00236, 2020 WL 2065700 (N.D. Cal. Apr. 29, 2020) ........................................3

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
   793 F. 2d 1132 (9th Cir. 1986) .........................................................................................13

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*,
   702 F.3d 1351 (Fed. Cir. 2012) ...........................................................................................3

*Razer Auto, Inc. v. Omix-ADA, Inc.*,
   No. 16-cv-00300, 2016 WL 6678008 (C.D. Cal. Apr. 20, 2016) ....................................4, 9

*SEC v. Koracorp Indus., Inc.*,
   575 F.2d 692 (9th Cir. 1978) ..............................................................................................6

*Teller v. Dogge*,
   No. 12-cv-00591, 2014 WL 4929413 (D. Nev. Sept. 30, 2014)........................................13

*Walt Disney Co. v. Powell*,
   897 F.2d 565 (D.C. Cir. 1990) ............................................................................................6

*Warner Bros. Entm't, Inc. v. WTV Sys.*,
   824 F. Supp. 2d 1003 (C.D. Cal. 2011) .............................................................................10

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) .............................................................................13

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

17 U.S.C. § 502(a), Copyright Act ........................................................................................... 3

**RULES**

Fed. R. Civ. P. 65(d)(2)(B)-(C) ............................................................................................... 14

Fed. R. Civ. P. 71 (2004) ...................................................................................................... 14

iv

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S MOTION FOR PERMANENT INJUNCTION
4:16-cv-01393-JST

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.   INTRODUCTION**

3        Following a three-week trial, the jury returned a verdict in Oracle's favor on its copyright

4   infringement and tortious interference claims against HPE.  Dkt. No. 1349 at 1-2.  Oracle now

5   moves for a permanent injunction to restrain HPE from continuing to make available unlawful

6   copies of Oracle's Solaris patches, updates, and firmware.  An injunction is needed to prevent

7   further harm to Oracle, especially given Terix's reemergence in the marketplace, HPE's proven

8   willingness to work with Terix even after Oracle sued Terix and Terix stipulated to judgment,

9   and HPE's arguments before and during trial minimizing or outright denying Oracle's IP rights.

10  In fact, a newly-created Terix website offers operating system ("OS") support services for Oracle

11  servers on its website and cites this Court's original 2019 summary judgment decision in support

12  of new misstatements about customers' ability to access patches without an Oracle support

13  contract.

14       Given that HPE's ongoing MVS business includes supporting Oracle servers, there is risk

15  that HPE will resume its misconduct, undeterred by the jury's damages award.  HPE argued

16  throughout the litigation that Terix's conduct was "entirely permissible" notwithstanding the

17  stipulated judgment that Terix agreed to and the criminal guilty pleas of the Terix executives.

18  And evidence presented at trial suggests that the damages the jury assessed are, to HPE, simply

19  the cost of doing business—the expected result of a calculated risk HPE planned for, including

20  by entering into indemnity agreements with Terix and its customers.  HPE employees were

21  aware that Terix was providing unlawful access to Oracle's software to customers, but HPE's

22  management refused to put an end to Terix's infringement.  Even after Oracle sued Terix and

23  Terix stipulated to judgment, it was "business as usual":  HPE allowed Terix to continue to

24  provide Solaris support to existing joint HPE-Terix customers until HPE began to question

25  Terix's solvency, and thus ability to satisfy its indemnity obligations to HPE.

26       HPE cannot meet its "heavy burden" to establish that its misconduct "cannot reasonably

27  be expected to start up again."  *Oracle USA, Inc. v. Rimini St., Inc.*, 783 F. App'x 707, 710 (9th

28  Cir. 2019) (quoting *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018)) (internal quotations

1    omitted).  Notwithstanding the jury's verdict, HPE could "immediately return to its prior ways,"

2    *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1221 (C.D. Cal 2007),

3    and resume its misconduct with Terix or others willing to disregard Oracle's intellectual property

4    rights.  The jury also found that HPE directly infringed Oracle's copyrights, independently of

5    Terix.  It thus cannot "be said with assurance that there is ***no reasonable expectation***" that HPE

6    will cease its misconduct, or that "interim relief or events have ***completely and irrevocably***

7    ***eradicated*** the effects of the alleged violation."  *Rimini*, 783 F. App'x at 710 (quoting *Fikre*, 904

8    F.3d at 1037) (internal quotations omitted) (emphasis added).

9            The jury's award of damages confirms that Oracle suffered lost support fees as a result of

10   HPE and Terix's misconduct, but Oracle was also harmed in other ways.  By selling access to

11   Oracle's software at fire sale prices—made possible only because neither HPE nor Terix

12   shouldered any costs associated with developing the intellectual property—HPE created the

13   harmful misimpression that Oracle was overcharging its customers, irreparably damaging

14   Oracle's goodwill.  Moreover, by providing customers with unlicensed access to Oracle's

15   proprietary software, and allowing Terix to pitch customers its bogus "Clearvision" solution,

16   HPE created marketplace confusion about whether Oracle is in fact the only lawful source of

17   Solaris software.  Finally, HPE's unlawful provision of Oracle's intellectual property gave it a

18   "foot in the door" to displace customers' Oracle servers with HPE servers, ensuring that Oracle

19   will continue to suffer from HPE's misconduct.  These harms, though pernicious, are impossible

20   to quantify, and thus are irreparable as a matter of law.  *See Apple Inc. v. Psystar Corp.*, 673 F.

21   Supp. 2d 943, 948-49 (N.D. Cal. 2009) ("*Apple I*"), aff'd, 658 F.3d 1150 (9th Cir. 2011).  An

22   injunction is necessary to prevent their reoccurrence.

23           All other relevant factors support enjoining HPE from further infringement.  Since Oracle

24   simply requests that HPE follow the law and respect Oracle's copyrights that the jury found it

25   infringed directly and through Terix, the balance of hardships weighs heavily in favor of an

26   injunction.  Indeed, if HPE has no intention of continuing the infringement the jury concluded it

27   had committed, then it should stipulate to an injunction, which would merely bar HPE from

28   engaging in conduct it claims to have abandoned.  The injunction also serves the public interest

2

1  by deterring copyright infringement.  HPE's unrepentant pattern of infringement, the opportunity

2  for future harm to Oracle's customer relationships, and the final jury verdict for Oracle on its

3  claims all compel Oracle's request for injunctive relief.

4  **II.   LEGAL STANDARD**

5        Oracle is entitled to a permanent injunction to prevent HPE from engaging in any future

6  infringement of Oracle's copyrights.  The Copyright Act permits a court to "grant temporary and

7  final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a

8  copyright."  17 U.S.C. § 502(a).  A party seeking a permanent injunction must establish: "(1) that

9  it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

10 damages, are inadequate to compensate for that injury; (3) that, considering the balance of the

11 hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

12 public interest would not be disserved by a permanent injunction."  *See eBay, Inc. v.*

13 *MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150,

14 1152-53 (9th Cir. 2011) ("*Apple II*"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

15 *Progress*, No. 16-cv-00236, 2020 WL 2065700, at *12 (N.D. Cal. Apr. 29, 2020).  Even where a

16 defendant has apparently ceased its misconduct, an injunction may be "appropriate to ensure that

17 the misconduct does not recur as soon as the case ends."  *Grokster*, 518 F. Supp. 2d at 1222.

18       To assess irreparable injury in a copyright action, courts consider direct competition

19 between the parties and loss of customer and business goodwill.  *Oracle USA, Inc. v. Rimini St.,*

20 *Inc.*, 324 F. Supp. 3d 1157, 1164 (D. Nev. 2018), aff'd in relevant part, 783 F. App'x 707 (9th

21 Cir. 2019) (citing *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362

22 (Fed. Cir. 2012); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010); *Celsis in*

23 *Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)).  In fact, "direct competition

24 between a copyright holder and a proven copyright infringer has consistently supported the

25 issuance of a permanent injunction."  *Id.* (citing *Presidio Components*, 702 F.3d at 1362).

26 Moreover, "[i]n run-of-the-mill copyright litigation, . . . proof of . . . harm stemming from

27 infringement—such as harm to business reputation and market share—should not be difficult to

28 establish."  *Apple I*, 673 F. Supp. 2d at 948.  Indeed, "price erosion, loss of goodwill, damage to

3

1  reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."

2  *Celsis*, 664 F.3d at 930.  Since irreparable harms such as loss of goodwill are difficult to

3  quantify, these harms also support a finding that monetary damages are inadequate.  *See Apple I*,

4  673 F. Supp. 2d at 949-50 ("the same evidence and rationale put forth by Apple to show

5  irreparable harm support the conclusion that an award of damages would be inadequate"); *Razer*

6  *Auto, Inc. v. Omix-ADA, Inc.*, No. 16-cv-00300, 2016 WL 6678008, at *7 (C.D. Cal. Apr. 20,

7  2016).

8        In copyright infringement cases, the balance of hardships favors a rights holder seeking to

9  protect its copyrighted works where the party enjoined does not have a "separate legitimate

10  business purpose" for continuing the infringing acts.  *Grokster*, 518 F. Supp. 2d at 1220.

11  Further, "the public has a compelling interest in protecting copyright owners' marketable rights

12  to their work and the economic incentive to continue creating [copyrighted works]."  *Disney*

13  *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017).

14  **III.**    **ARGUMENT**

15      **A.**    **HPE Should Be Permanently Enjoined From Copying Oracle's Solaris**

16               **Support Software In Violation Of Oracle's Support Policies**

17        An injunction is necessary to prevent HPE from engaging in any future infringement of

18  Oracle's copyrights.  Oracle satisfies all the requirements for injunctive relief:  it has suffered

19  irreparable injury; remedies available at law are inadequate to compensate for that injury; the

20  balance of hardships weighs in its favor; and an injunction is in the public interest.  *eBay,* 547

21  U.S. at 391.  Oracle is therefore entitled to a permanent injunction.

22          **1.**    **Oracle Has Suffered Irreparable Injury And There Is No Adequate**

23                 **Remedy At Law**

24        Given HPE's prior course of conduct, there is risk that HPE will resume its misconduct in

25  the future with either Terix, another TPM, or entirely on its own.  Further, HPE's unlawful

26  copying caused Oracle to suffer harm in the form of lost contract revenue—the subject of

27  Oracle's damages claim at trial—but Oracle *also* suffered other pernicious effects which are

28  more difficult to quantify, such as price erosion, loss of goodwill, and interference with Oracle's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ability to sell *other* products to its customers, including servers and other software products. These lasting harms—all of which can be expected to recur if HPE were to continue or resume its misconduct—are irreparable as a matter of law. *See, e.g.*, *Blackberry Ltd. v. Typo Prods.*, *LLC*, No. 14-cv-00023, 2014 WL 1318689, at *11 (N.D. Cal. Mar. 28, 2014) (irreparable harm may include "price erosion, loss of goodwill, damage to reputation, and loss of business opportunities"); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable[.]"); *Disney Enters., Inc. v. Redbox Automated Retail LLC*, 336 F. Supp. 3d 1146, 1157 (C.D. Cal 2018) (evidence that unauthorized distribution of plaintiffs' copyrighted works was "damaging [their] relationships with [] licensees" was "sufficient to warrant injunctive relief[.]").

a. *There Is Risk That HPE Will Continue Its Unlawful Conduct*

Absent a permanent injunction, there is risk that HPE's unlawful behavior will continue, causing additional irreparable harm to Oracle. Voluntary cessation of the challenged conduct does not render an injunction moot unless "it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Rimini*, 783 F. App'x at 710 (quoting *Fikre*, 904 F.3d at 1037) (internal quotations omitted); *see also Redbox*, 336 F. Supp. 3d at 1158 (rejecting argument that cessation of infringing conduct mooted the need for an injunction because "[a]bsent injunctive relief, it seems quite possible that [the alleged infringer] would begin [its infringing activity]"). Here, the business circumstances today are materially unchanged in that HPE and Oracle compete to provide support services to customers with Oracle servers, and Terix continues to act as third party maintainer in that same market. HPE could therefore "immediately return to its prior ways," so an injunction is appropriate to ensure that the misconduct does not continue. *Grokster*, 518 F. Supp. 2d at 1221. HPE, not Oracle, bears the "heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again." *Rimini*, 783 F. App'x at 710 (quoting *Fikre*, 904 F.3d at 1037) (internal quotations omitted). It cannot meet that burden.

1    HPE argued throughout the litigation that Terix's conduct was legitimate: "entirely

2  permissible" in its words. Dkt. No. 545-4 at 11; Trial Tr. 245:10-249:8; Dkt. No. 1003 at 3; Dkt.

3  No. 955 at 1. HPE advanced that argument despite Judge Grewal's summary judgment order on

4  Terix's license defense, Terix's stipulated judgment to copyright infringement, fraud, and

5  intentional interference, and the criminal guilty pleas of four Terix executives related to the theft

6  of Oracle's intellectual property. Dkt. No. 1029; Dkt. No. 1097; Dkt. No. 1112. Thus, HPE

7  employees could choose in the future to partner with Terix (or others) if not enjoined. Indeed,

8  Terix appears substantially revived, again touting its ability to provide OS support to Oracle

9  customers.

10    ***HPE Already Blatantly Disregarded Oracle's Intellectual Property Rights.*** HPE's

11  refusal to alter its practices or accept responsibility for its misconduct supports the conclusion

12  that HPE would continue to infringe Oracle's copyrights (and unlawfully interfere with Oracle's

13  contractual and prospective economic relationships) given the chance. *See Grokster*, 518 F.

14  Supp. 2d at 1221 ("such an inference is warranted based upon various undisputed facts, including

15  . . . [cessation] admittedly did not commence until after this Court's . . . Order granting

16  Plaintiffs' motion for summary judgment"); *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698

17  (9th Cir. 1978) (noting that promises of reform are unpersuasive "especially if no evidence of

18  remorse surfaces until the violator is caught"); *Walt Disney Co. v. Powell*, 897 F.2d 565, 568

19  (D.C. Cir. 1990) (upholding permanent injunction where the defendant "simply took the action

20  that best suited him at the time [by voluntarily ceasing infringement]; he was caught red-handed .

21  . . [and] suddenly reformed").

22    Substantial evidence at trial demonstrated that HPE was aware that Oracle's policies

23  explicitly prohibited HPE and Terix from engaging in the infringing conduct they ultimately

24  undertook. HPE employees repeatedly testified that they understood that Oracle requires

25  customers to purchase a support contract for each server for which it required access to Solaris

26  patches and firmware. Dkt. No. 1259-2 (Gunther Dep. Tr.) at 66:8-11; Dkt. No. 1330-3 (Simms

27  Dep. Tr.) at 212:18-23; TX 1173 at 3 ("NOBODY outside of Oracle can legally provide

28  Firmware updates, Software Patches, or Software Updates. . . ."); TX 1234 at 1 ("The only way

1   today that HP can provide Solaris patches/updates and Sun firmware is to subcontract back to

2   Oracle/Sun.").  HPE's policies for its own patches are the same—and HPE even sued a TPM

3   engaged in the same conduct as Terix.  Dkt. No. 1330-1 (Cahill Dep. Tr.) at 28:18-22, 110:24-

4   111:2; Dkt. No. 1330-3 (Simms Dep. Tr.) at 152:2-8; Complaint at 2, 6-7, *Hewlett-Packard Co.*

5   *v. Infostaf Consulting*, Inc., No. 12-cv-01806 (N.D. Cal. Apr. 26, 2012).  Yet HPE chose to

6   disregard Oracle's intellectual property rights by partnering with Terix to provide Solaris

7   software support for customers' servers not covered by an Oracle support contract.  TX 1050;

8   TX 1080; TX 1074; TX 1353; Trial Tr. 6/2/2022 at 1025:10-21 (Jones).

9          HPE knew Terix's operations were unlawful.  At the time, other TPMs told HPE that

10   there was "not a legitimate way to support Solaris patches and updates as Terix indicates."  TX

11   1167 at 1; *see also* TX 1590 at 1 ("[T]he concern that is being reviewed by legal is whether a 3rd

12   party like Terix actually has legal permission to provide authorization for us to install a product

13   that is owned by Oracle. . . . I honestly can't imagine that Terix would be able to legally cover

14   this . . . .").  HPE's corporate designee admitted that Terix's deals were "based on false claims,"

15   and that Terix "impl[ied] they can do something that Oracle has prohibited."  Dkt. No. 1259-2

16   (Gunther Dep. Tr.) at 210:20-22, 211:07-212:11, 248:17-249:4; TX 1173.  HPE employees

17   repeatedly raised red flags about Terix's conduct, but HPE management brushed them aside.

18   Dkt. No. 1284-1 (Hall Dep. Tr.) at 56:11-15, 56:21-57:1, Trial Tr. 5/31/2022 at 786:20-787:7

19   (Klevickis); Dkt. No. 1278-2 (Elfers Dep. Tr.) at 198:4-11; TX1139B; TX 1106 at 1; Dkt. No.

20   1284-1 (Hall Dep. Tr.) at 60:13-21; Dkt. No. 1278-2 (Elfers Dep. Tr.) at 113:22-114:5; TX 1184.

21          If HPE had wanted to, it could have exercised its control over Terix to put a stop to

22   Terix's unlawful conduct at any time.  Instead, HPE was aware of its legal exposure,[2] so it

23   simply responded to Oracle's lawsuit by including new and more robust indemnity provisions in

24   its contracts with Terix.  TX 1080 at 21-22.  Additionally, though HPE expressed initial concern

---

[2] *See*, *e.g.*, TX 1339 at 2 ("One concern that has been raised in APJ from the delivery team is a concern that the Terix solution to provide patches may actually breach Oracle's new licensing conditions and put HP at risk of legal action."); TX 1250 ("[I]n 80% of the cases where TERiX obtains the patch, it works well, but the 10%-20% of the cases, it's a disaster and a 'legal mess.'"); TX 1325 ("how we deal with the Sun OS support/TERiX Clearvision issue and avoid $10 million lawsuits."); TX 1159 ("Oracle may have [the] legal right to come after us now.").

1    over its customer Symantec working with Terix, its worries evaporated after HPE secured a letter

2    of indemnity from the customer.  TX 1789 at 2; TX 1602; Trial Tr. 6/8/2022 at 1594:3-7

3    (Buckland).  Thereafter, HPE knowingly installed patches it received from Terix on Symantec

4    servers not covered by an Oracle support contract, and continued to do so through 2015.  Dkt.

5    No. 1278-2 (Elfers Dep. Tr.) at 221:19-222:6.  It was not until HPE began to have concerns

6    about Terix's solvency that it removed Terix from existing customer accounts, *years* after Oracle

7    had sued Terix.  TX 1298 at 1 ("[HPE's] only outstanding action is to confirm Terix's financial

8    health going forward."); Yates Decl. Ex. 1 at 3 ("We believe Terix is going to fail as a company

9    and we are proactively trying to move our SOWs and contracts away from them. . . .").  Thus,

10   HPE has demonstrated that so long as it can cover its exposure through risk shifting agreements,

11   it remains incentivized (and willing) to infringe Oracle's IP.

12        ***HPE Could Resume Its Relationship With Terix, Partner With Others, Or Misuse***

13   ***Oracle's Intellectual Property On Its Own.***  HPE has argued that an injunction is not warranted

14   because it has not worked with Terix for years.  *See* Dkt. No. 1354 at 7 n.6.  That is of no

15   moment.  Terix has reemerged and presently has an active website and social media accounts.

16   Yates Decl. Exs. 2-4.  In fact, it was recently recognized as a "key player" in the provision of

17   multi-vendor support services in a research report forecasting trends out to 2027.  Yates Decl.

18   Ex. 2.  Terix's website confirms that Terix is still offering customers OS support services,

19   including for Oracle servers and Solaris.  Yates Decl. Ex. 3.  Terix even refers to the Court's

20   2019 summary judgment decision in this case to support a number of misstatements about

21   Terix's ability to provide Solaris OS patches, so long as those patches were at one point

22   previously made publicly-available.  *Compare* Yates Decl. Ex. 4, *with* Dkt. No. 1020.  For its

23   part, HPE still offers MVS services, Yates Decl. Ex. 5, and HPE's counsel remains in contact

24   with Mr. Appleby.  Dkt. No. 1253.  Further, Terix provided a blueprint to other entities interested

25   in gaining a competitive advantage by violating Oracle's software copyrights.  And, of course, at

26   trial, the jury found that HPE unlawfully copied Oracle's Solaris patches on its own, without

27   Terix.  Dkt. No. 1349 at 1.  Because it cannot "be said with assurance that there is no reasonable

28   expectation . . . that the alleged violation will recur" or that "interim relief or events have

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

completely and irrevocably eradicated the effects of the alleged violation," an injunction is warranted here.  *Fikre*, 904 F.3d at 1037.

        b.    *HPE's Conduct Has And Will Continue To Damage Oracle's Relationships With Its Customers*

     HPE's misconduct has and will continue to damage Oracle's relationships with its hardware customers.  HPE competes with Oracle to sell hardware to customers, and its MVS business also competes with Oracle to provide support services to customers with Oracle hardware products.  In HPE's own words, its misconduct with respect to Oracle's customers resulted in "revenue right out of Oracle's pocket into ours."  TX 1286 at 1.  Moreover, HPE's conduct created harmful marketplace confusion about whether Oracle is the only lawful source of access to Oracle's proprietary software.  A damages award is inadequate here because these harms are "neither easily calculable, nor easily compensable."  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000); *Apple I*, 673 F. Supp. 2d at 949-50 ("an award of damages would be inadequate, simply because the harm caused to Apple's reputation, goodwill, and brand is difficult, if not impossible, to quantify"); *Razer*, 2016 WL 6678008, at *7 ("Because the loss of goodwill, loss of customers, and price erosion are difficult to quantify, these considerations support a finding that monetary damages would be insufficient.").

     ***Loss of Goodwill.***  HPE's misconduct seriously damaged Oracle's goodwill with its customer base.  By providing customers with its direct competitor's intellectual property—IP that HPE did not expend resources to develop—HPE was able to charge substantially less than Oracle charged for support, typically 50% or less of what Oracle charged.  Trial Tr. 6/6/2022 at 1751:12-14 (Pampinella) ("third-party maintainers[] . . . typically [price their support contracts at] a 40 to 50 percent discount"); TX 1095 ("contracting with Terix is obviously a much cheaper path.").  For instance, by offering Solaris support through Terix, HPE was able to quote Comcast $4 million annually to "support the same equipment" that had been under Oracle support for around $7 million annually.  Dkt. No. 1274-3 (Yohe Wagner Dep. Tr.) at 21:14-19; TX 1031 at 1; Trial Tr. 6/6/2022 at 1008:2-19 (Jones).  HPE's lower prices pressured Oracle to offer a discount in an attempt to hold onto the account.  Trial Tr. 6/2/2022 at 1009:18-1011:1 (Jones).

1    But Comcast rejected Oracle's proposal and moved its Oracle servers to HPE and Terix support,

2    worth $3.7 million in annual revenue to HPE, half what Comcast previously paid Oracle.  *Id.* at

3    1011:2-13 (Jones); Dkt. No. 1274-3 (Yohe Wagner Dep. Tr.) at 19:2-15; TX 1253 at 1.

4            Not only does such downward pricing pressure result in price erosion—itself an

5    irreparable harm that warrants an injunction—but it damaged Oracle's relationships with many

6    of its customers, with lasting negative effects on Oracle's goodwill and reputation.  These

7    injuries constitute irreparable harm as a matter of law.  *Rimini*, 324 F. Supp. 3d at 1165 ("[B]y

8    purporting to offer vendor-level support at half the price of Oracle support, Rimini Street created

9    the impression that Oracle was overcharging for support and eroded the bonds and trust that

10   Oracle has with its customers.  Such injuries to a business' reputation and goodwill have

11   consistently been held to constitute irreparable harm." (citing *Apple II*, 658 F.3d at 1154)).

12   Oracle invests substantial resources to maintain relationships with enterprise customers that

13   purchase Oracle servers that run the Solaris OS.  Trial Tr. 5/26/2022 at 590:14-23, 601:20-602:7

14   (Armes); Trial Tr. 6/2/2022 at 991:2-993:2 (Jones).  By offering software support for less than

15   half Oracle's price, HPE created the impression that Oracle was overcharging for its services,

16   which destroyed customer trust and damaged Oracle's customer relationships.  Trial Tr. 6/2/2022

17   at 991:10-17 ("it's very important that [customers] can trust and rely on the products, as well as

18   the support service that we deliver."), 1012:15-1013:1 (Jones) ("there were some feelings that

19   started floating around that . . . [Oracle] must have been charging [Comcast] too much if we can

20   get this for . . . a much cheaper price . . . it impacted the trust in our relationship between people.

21   . . . [T]rust is paramount in the relationships between these companies. . . .").

22           ***Customer Confusion.***  Worse yet, by providing customers with access to Oracle's

23   proprietary software, HPE confused the market about Oracle being the only lawful source of

24   Solaris patches, updates, and firmware.  Irreparable injury can result from conduct that "threatens

25   to confuse consumers . . . and to create incorrect but lasting impressions with consumers about

26   what constitutes lawful . . . exploitation of plaintiffs' copyrighted works, including confusion or

27   doubt regarding whether payment is required for access to the copyrighted works."  *Warner*

28   *Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013 (C.D. Cal. 2011); *see also Rimini*,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1  324 F. Supp. 3d at 1166 ("One of the most fundamental rights a copyright holder has is the right

2  to exclude others from taking and distributing the copyrighted work and this right has routinely

3  been held difficult to compensate solely through monetary compensation.").

4         HPE itself argued that the "industry" was confused about whether Oracle actually

5  required a support contract to receive certain software updates and patches—confusion it turned

6  out HPE and Terix fomented.  Trial Tr. 6/13/2022 at 1918:5-23.  Along with telling customers

7  like Comcast, Sybase, and Abbott that it could provide Solaris patches through Terix, Dkt. No.

8  1274-3 (Yohe Wagner Dep. Tr.) at 21:17-19; TX 1180 at 1; Dkt. No. 1307-1 (Matuszewski Dep.

9  Tr.) at 41:9-15, HPE also allowed Terix to present its "Clearvision" solution to potential

10  customers, creating more confusion about whether Oracle's licenses require customers to

11  purchase support contracts to access Solaris updates and patches.  TX 1209 at 1; TX 1213; TX

12  1142; TX 1327A.  HPE did so even though Terix's license interpretation was "unreasonable"

13  "[a]s a matter of law."  Trial Tr. 5/31/2022 at 692:11-19.  HPE also permitted Terix to mislead

14  Symantec into believing it had the right to access patches without obtaining Oracle support

15  contracts—even though HPE (and its legal department) knew that Terix's claims were not

16  truthful.  Trial Tr. 6/8/2022 at 1558:8-1559:16, 1562:4-20 (Buckland); TX 2944 at 1; TX 1095;

17  TX 1096.  Were HPE to resume its unlawful provision of Oracle's proprietary patches to the

18  market, that conduct would exacerbate the confusion HPE and Terix have already created,

19  causing significant irreparable harm to Oracle.

20         ***Lost Business Opportunities.***  HPE's intended purpose for infringing Oracle's copyrights

21  was primarily to gain a direct point of contact with Oracle's customers so that it could ultimately

22  replace Oracle hardware with its own.  HPE admitted its MVS business was not profitable.  Trial

23  Tr. 6/6/2022 at 1309:1-4 (Farlin); Dkt. No. 1278-1 (Farlin 9/20/2017 Dep. Tr.) at 607:22-608:02.

24  But the business provided HPE with a "foot in the door" to replace Oracle's hardware with

25  HPE's.  Trial Tr. 6/6/2022 at 1309:4-10 (Farlin).  MVS helps HPE sell other products by

26  allowing HPE to better "learn information about the customer and what their needs are[.]"  Dkt.

27  No. 1330-2 (Whitaker Dep. Tr.) at 334:21-335:5.  HPE internal documents likewise confirmed

28  that HPE viewed winning the support business for Oracle equipment as "an excellent initial

11

1   strategy for achieving account control and gaining [] influence with the [c]ustomer to drive a Sun

2   to HP migration." TX 1237 at 1.  The strategy worked:  only about 9,000 of the 26,000 servers

3   that migrated from Oracle support to HPE support returned to Oracle, suggesting that HPE had

4   an opportunity to replace a significant number of Oracle servers with HPE hardware.  Trial Tr.

5   6/6/2022 at 1179:13-15 (Pampinella).

6          HPE's conduct thus also imperiled Oracle's ability to sell customers additional Oracle

7   hardware or other Oracle software products.  These harms are undoubtedly substantial but

8   difficult to quantify.  *See* Trial Tr. 6/6/2022 at 1191:15-1192:2 (Pampinella) ("[S]oftware support

9   is one-tenth the price of hardware, so that is a very material, large number that I did not include

10  in the calculations.").  Thus, Oracle's damages expert did not calculate damages associated with

11  hardware displacement because they could not be ascertained with certainty.  Trial Tr. 6/6/2022

12  at 1190:20-1191:4, 1191:9-22 (Pampinella).  An injunction is therefore necessary to prevent

13  further irreparable harm to Oracle.  *See Rimini*, 324 F. Supp. 3d at 1165 (injunction appropriate

14  where damages were "complex and difficult to determine"); *Broad Music, Inc. v. Prana Hosp.,*

15  *Inc.*, 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) ("[C]ourts routinely find the harm suffered by

16  plaintiffs in copyright cases to be 'irreparable' on the theory that lost sales . . . can be difficult if

17  not impossible to measure.").

18         HPE's repeated and systematic infringement over many years caused Oracle to suffer

19  irreparable injury for which legal remedies are inadequate.  HPE has never shown remorse for its

20  unlawful conduct—and, instead, denied liability and advanced arguments that Terix's conduct

21  was "entirely permissible."  Since HPE has consistently demonstrated its willingness to violate

22  Oracle's copyrights, in all likelihood, "monetary damages would not prevent [HPE] from

23  continuing to infringe [Oracle's] copyrights. . . and will not prevent third-parties from infringing

24  [Oracle's] copyrights."  *Apple I*, 673 F. Supp. 2d at 950.

25              **2.    The Balance Of Hardships Weighs In Favor Of An Injunction**

26         Oracle seeks only to enjoin unlicensed copying, distributing, and use of Oracle's software

27  in violation of Oracle's support policies.  Thus, the balance of hardships entirely favors Oracle,

28  as HPE does not have a "separate legitimate business purpose" to engage in the infringing acts.

12

1  *Grokster*, 518 F. Supp. 2d at 1220 (C.D. Cal 2007); *Teller v. Dogge*, No. 12-cv-00591, 2014 WL

2  4929413, at *5 (D. Nev. Sept. 30, 2014) ("Any harm to defendant in forcing him to comply with

3  the requirements of the law is outweighed by plaintiff's efforts to protect his copyrighted

4  performances . . . from consumer confusion.").

5      The irreparable harm to Oracle absent an injunction far outweighs the impact to HPE

6  from being enjoined from its illegal activities.  Oracle has already suffered, and would continue

7  to suffer, irreparable harm from any infringing conduct.  By contrast, HPE would only be

8  prohibited from infringing Oracle's copyrights in the future.  *Polo Fashions, Inc. v. Dick Bruhn,*

9  *Inc.*, 793 F. 2d 1132, 1135-36 (9th Cir. 1986) (stating that "[i]f the defendants sincerely intend

10  not to infringe, the injunction harms them little; if they do, it gives [the plaintiff] substantial

11  protections"); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal.

12  2012) ("the balance of hardships favors Plaintiff because without an injunction, Plaintiff will lose

13  profits and goodwill, while an injunction will only proscribe Defendants' infringing activities.").

14      Further, Oracle's burden in continuing to investigate and block illicit copying of Oracle

15  software by HPE and its subcontractors outweighs any burden HPE would face in ceasing

16  unlawful downloading and ensuring that it does not engage subcontractors involved in unlawful

17  downloading.  *Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 973 (N.D. Cal. 2015) (granting an

18  injunction where a defendant guilty of computer fraud "continued to fraudulently obtain

19  Facebook accounts and to access Facebook's services" after Facebook sent multiple cease-and-

20  desist letters and terminated multiple accounts).  If HPE has in fact ceased all infringing conduct

21  (and does not intend to work again with Terix or another TPM willing to infringe Oracle's

22  copyrights), then an injunction would create no burden whatsoever on HPE, as HPE would be

23  barred only from engaging in conduct it has already abandoned.

24          **3.**      **Injunctive Relief Serves The Public Interest**

25      Finally, an injunction against HPE's unlawful infringement serves the public interest in

26  protecting copyright holders.  *VidAngel,* 869 F.3d at 867 (9th Cir. 2017); *see also Apple I,* 673 F.

27  Supp. 2d at 950 ("[T]he public receives a benefit when the legitimate rights of copyrighted

28  holders are vindicated."); *see also Apple Comput. v. Franklin Computer Corp.*, 714 F.2d 1240,

13

1255 (3d Cir. 1983) ("[T]he public interest can only be served by upholding copyright

protections and, correspondingly, preventing the misappropriation of the skills, creative energies,

and resources which are invested in the protected work.").  Copyright protection encourages

creating original works and discourages infringers from free riding on others' works.  *See Eldred*

*v. Ashcroft*, 537 U.S. 186, 212-15 (2003).  Oracle's proposed injunction thus protects the public

interest by enforcing precisely these policies.

**B.      Oracle's Proposed Injunctive Relief Is Appropriately Tailored To Remedy The Harm HPE Caused**

Oracle's requested relief is appropriately tailored to prevent future occurrences of the

conduct adjudged to constitute copyright infringement.  *See, e.g.*, *Iconix, Inc. v. Tokuda*, 457 F.

Supp. 2d 969, 998 (N.D. Cal. 2006).  The jury determined that HPE directly and vicariously

infringed Oracle's copyrights, Dkt. No. 1349 at 1-2, and Oracle's proposed injunction only seeks

to protect its copyrights by preventing unlicensed copying and distribution of Oracle's software.

Oracle's injunction also appropriately reaches HPE's supervisory control over

subcontractors involved in unlawful behavior, including but not limited to Terix.  The Court has

the power "to enforce orders against 'a person who is not a party . . . as if a party.'"  *Irwin v.*

*Mascott*, 370 F.3d 924, 931-32 (9th Cir. 2004) (citing Fed. R. Civ. P. 71 (2004)).  Any injunction

entered by the Court will bind not only HPE, but also its "officers, agents, servants, employees,

and attorneys" and "other persons who are in active concert or participation with" them,

including aiders and abettors and privies of an enjoined party.  Fed. R. Civ. P. 65(d)(2)(B)-(C);

*see Golden State Bottling Co., v. N.L.R.B.*, 414 U.S. 168, 179-80 (1973).  Oracle's proposed

relief requesting that the Court enjoin HPE from permitting others under its supervision and

control to infringe Oracle's copyrights is thus consistent with the scope of the Court's equitable

power.  *See Inst. of Cetacean Res. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949-50

(9th Cir. 2014) (discussing parties' and non-parties' duties and obligations under an injunction).

///

1    **IV.    CONCLUSION**

2           For the foregoing reasons, Oracle requests that the Court grant its Motion for a

3    Permanent Injunction against HPE.

4    Dated:  July 29, 2022                          Respectfully submitted,

5                                                    LATHAM & WATKINS LLP

6                                                    By:    /s/ Christopher S. Yates

7                                                        Christopher S. Yates
                                                         Attorneys for Plaintiffs
8                                                        Oracle America, Inc. and
                                                         Oracle International Corporation

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28