1  JEFFREY T. THOMAS, SBN 106409
       jtthomas@gibsondunn.com
2  BLAINE H. EVANSON, SBN 254338
       bevanson@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   3161 Michelson Drive
4  Irvine, California  92612-4412
   Telephone:    949.451.3800
5  Facsimile:    949.451.4220

6  SAMUEL LIVERSIDGE, SBN 180578
       SLiversidge@gibsondunn.com
7  VERONICA S. MOYÉ (*pro hac vice*)
       vmoye@gibsondunn.com
8  ERIC D. VANDEVELDE, SBN 240699
       evandevelde@gibsondunn.com
9  ILISSA SAMPLIN, SBN 314018
       isamplin@gibsondunn.com
10 GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
11 Los Angeles, CA  90071-3197
   Telephone:    213.229.7000
12 Facsimile:    213.229.7520

13 *Attorneys for Defendant*
   *Hewlett Packard Enterprise Company*

14

15            IN THE UNITED STATES DISTRICT COURT

16           FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                      OAKLAND DIVISION

18 | ORACLE AMERICA, INC.., a Delaware | Case No. 4:16-cv-01393-JST |
   corporation, and ORACLE INTERNATIONAL
19 CORPORATION, a California corporation,

   **DEFENDANT HEWLETT PACKARD**
   **ENTERPRISE COMPANY'S**
20            Plaintiffs,               **RENEWED MOTION FOR**
                                        **JUDGMENT AS A MATTER OF LAW**
21        v.                            **OR, IN THE ALTERNATIVE, FOR**
                                        **NEW TRIAL**
22 HEWLETT PACKARD ENTERPRISE
   COMPANY, a Delaware corporation; and  Judge:  Hon. Jon S. Tigar
23 DOES 1-50,

24            Defendants.

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Hewlett Packard Enterprise Company ("HPE") will and hereby does move for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) on all of Oracle's claims, including:

1.  Oracle's claims for direct and indirect copyright infringement, as there is no legal or sufficient evidentiary basis to support a finding that Oracle's Solaris patches and updates are covered by valid copyright registrations;

2.  Oracle's claim for direct infringement, as there is no legal or sufficient evidentiary basis to support a finding that any purportedly installed patch is copyrighted;

3.  Oracle's claim for vicarious infringement, as there is no legal or sufficient evidentiary basis to support a finding that HPE had the right and ability to control Terix's purported infringement;

4.  Oracle's claim for intentional interference with contractual relations ("IICR"), as Oracle's theory based on alleged breaches of Oracle's support contracts, which purportedly incorporate Oracle's support policies, is preempted by the Copyright Act;

5.  Oracle's claim for intentional interference with prospective economic advantage ("IIPEA"), as Oracle's theory that HPE conspired with Terix to commit copyright infringement is preempted by the Copyright Act;

6.  Oracle's claims for IICR and IIPEA based on an agency theory, as no court has endorsed an agency theory of intentional interference, an agent cannot conspire with its principal, and there is no legal or sufficient evidentiary basis to support a finding that Terix was HPE's agent or that any of Terix's purported wrongful conduct occurred within the scope of any such agency relationship;

7.  Oracle's claims for IICR and IIPEA, as there is no legal or sufficient evidentiary basis to support a finding or calculation of damages for Oracle's intentional interference claims;

8.  Oracle's claim for direct infringement, as there is no legal or sufficient evidentiary basis to support a finding of infringement relating to 17 direct support customers;

9.  Oracle's claim for vicarious infringement, as there is no legal or sufficient evidentiary basis to support a finding of underlying direct infringement by Terix;

10. Oracle's claim for vicarious infringement, as there is no legal or sufficient evidentiary basis to support a finding that HPE derived a direct financial benefit from Terix's alleged infringement;

11. Oracle's claim for copyright infringement relating to Symantec, as there is no legal or sufficient evidentiary basis to support a finding that any patch provided to Symantec is copyrighted;

12. Oracle's claim for IICR, as there is no legal or sufficient evidentiary basis to support a finding that any customer at issue agreed to a support contract incorporating Oracle's support policies, that HPE knew any customer entered into a support contract or policy, that HPE induced customers to breach their alleged support contracts that purportedly incorporate Oracle's support policies; or that HPE interfered with its contracts with Oracle;

13. Oracle's claim for IIPEA, as Oracle's theory based on IICR fails for the same reasons Oracle's IICR claim fails;

14. Oracle's claim for lost profits damages, as there is no legal or sufficient evidentiary basis to support a finding of lost profits caused by alleged fraud or misrepresentations, lost profits relating to Comcast, lost profits relating to customers for which there is no evidence of infringement occurring during the limitations period, or lost profits based on the assumption that every customer would have placed every Sun server under an Oracle support contract but for the alleged misconduct;

15. Oracle's claim for unjust enrichment, as there is no legal or sufficient evidentiary basis to support a finding that HPE earned profits because of its alleged wrongdoing; and

16.   Oracle's claim for damages relating to international customers, as there is no legal or sufficient evidentiary basis to support a finding that any wrongful conduct relating to those customers occurred within the United States.

In the alternative, HPE moves for a new trial under Federal Rule of Civil Procedure 59 on Oracle's copyright infringement claims.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this matter, all testimony and evidence admitted at trial, and such argument as the Court may consider.

Dated:  July 29, 2022

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:  /s/ *Jeffrey T. Thomas*
                    Jeffrey T. Thomas

Attorneys for Defendant
HEWLETT PACKARD ENTERPRISE COMPANY

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**

2
**Page**

3

4

I.   INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 2

5

6

    A.   HPE Is Entitled To Judgment As A Matter Of Law ...................................... 2

7

        1.   Oracle's Copyright Infringement Claims Fail Because There Is No Evidence That Oracle's Patches Are Covered By Any Valid Copyright Registrations.................................................................. 2

8

9

        2.   Oracle's Claims Regarding The Direct Support Customers Fail Because There Is Insufficient Evidence Any Patch HPE Purportedly Installed Is Protectable ..................................................................................... 4

10

11

        3.   Oracle's Vicarious Infringement Claim Fails Because There Is Insufficient Evidence That HPE Had The Right And Ability To Stop Terix's Conduct.................................................................................... 5

12

13

        4.   Oracle's Interference Claims Are Preempted By The Copyright Act............. 5

14

            a.   Oracle's IICR Claim Is Preempted ....................................................... 5

15

            b.   Oracle's IIPEA Claim Is Preempted .................................................... 6

16

        5.   Oracle's Agency Theory of Interference Fails As A Matter of Law ................ 7

17

        6.   Oracle Presented Insufficient Evidence of Damages On Its Interference Claims ..................................................................................... 10

18

        7.   HPE Is Entitled To Judgment On Several Additional Grounds ..................... 11

19

            a.   Oracle Admitted It Had No Evidence Of Infringement For Most Direct Support Customers .................................................................... 11

20

21

            b.   Oracle Failed to Prove HPE Committed Vicarious Infringement....... 12

22

            c.   Oracle Failed to Prove Its Copyright Claims Concerning Symantec .............................................................................................. 14

23

            d.   Oracle Failed to Prove Its Intentional Interference Claims................ 14

24

                (i)   Oracle's IICR Claim Fails....................................................... 14

25

                (ii)   Oracle's IIPEA Claim Fails ..................................................... 16

26

            e.   Oracle Failed to Prove Its Damages Claims ....................................... 16

27

                (i)   Oracle's Claim For Lost Profits Fails .................................... 16

28

                (ii)   Oracle's Claim For Unjust Enrichment Fails........................ 19

i

1
2

**TABLE OF CONTENTS**
(continued)

Page

3       (iii)    Oracle May Not Seek Damages For International
4                Customers.................................................................................. 19

5   B.    HPE Is Alternatively Entitled To A New Trial On The Infringement Claims............ 20

6       1.    Several Instructional Errors Warrant A New Trial ......................................... 20

7           a.    HPE Was Entitled To An Authorized Copying Instruction ............... 20

8           b.    HPE Was Entitled To Copyright Registration Instructions ............... 20

9           c.    The Direct Infringement Instructions Were Incorrect........................ 21

10      2.    Several Evidentiary Rulings Warrant A New Trial ....................................... 22

11          a.    Terix Evidence Was Erroneously Admitted Under The Agency
                  Exception To The Hearsay Rule ....................................................... 22

12          b.    Terix Executives' Guilty Pleas Were Erroneously Admitted ............ 23

13          c.    The *Terix* Stipulated Judgment Was Erroneously Admitted.............. 24

14  III.   CONCLUSION ................................................................................................... 25

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

ii

# TABLE OF AUTHORITIES

**Page**

CASES

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
501 F.3d 1307 (Fed. Cir. 2007).....................................................................13

*Acumed LLC v. Adv. Surgical Servs., Inc.*,
561 F.3d 199 (3d Cir. 2009)..........................................................................15

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
2008 WL 364401 (D. Mass. Feb. 8, 2008) ...................................................23

*Allarcom Pay Tel. Ltd. v. Gen. Instrument Corp.*,
69 F.3d 381 (9th Cir. 1995)...........................................................................19

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005)......................................................................14

*Am. Airlines, Inc. v. Mawhinney*,
904 F.3d 1114 (9th Cir. 2018).........................................................................8

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994)...........................................................................3

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ...................................................................................16

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*,
2012 WL 7683452 (C.D. Cal. Nov. 20, 2012)................................................5

*Avery v. Integrated Healthcare Holdings, Inc.*,
218 Cal. App. 4th 50 (2013) .........................................................................15

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .........................................................................15

*Big Seven Music Corp. v. Lennon*,
554 F.2d 504 (2d Cir. 1977)..........................................................................17

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
20 F.4th 1231 (9th Cir. 2021) .................................................................20, 21

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)......................................................................................19

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 WL 5871243 (N.D. Cal. Oct. 7, 2016)................................................23

iii

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page

*Chambers v. Mississippi*,
   410 U.S. 284 (1973) ............................................................................................22

*City of Vernon v. S. Cal. Edison Co.*,
   955 F.2d 1361 (9th Cir. 1992) .................................................................2, 10, 16

*Clem v. Lomeli*,
   566 F.3d 1177 (9th Cir. 2009) ...........................................................................21

*Comprehensive Toxicology Billing, LLC v. Nord*,
   2017 WL 11639175 (C.D. Cal. Feb. 3, 2017) ...................................................17

*Crawford v. City of Bakersfield*,
   944 F.3d 1070 (9th Cir. 2019) .........................................................22, 23, 24, 25

*Crunchyroll, Inc. v. Pledge*,
   2014 WL 1347492 (N.D. Cal. Mar. 31, 2014) ..................................................17

*Dang v. Cross*,
   422 F.3d 800 (9th Cir. 2005) .............................................................................21

*Del Madera Props. v. Rhodes & Gardner, Inc.*,
   820 F.2d 973 (9th Cir. 1987) ...............................................................................6

*Diodem, LLC v. Lumenis, Inc.*,
   2017 WL 5764187 (C.D. Cal. May 24, 2007) ...................................................22

*DropzoneMS, LLC v. Cockayne*,
   2019 WL 7630788 (D. Or. Sept. 12, 2019) .........................................................4

*Energy Intel. Grp., Inc. v. Jeffries, LLC*,
   101 F. Supp. 3d 332 (S.D.N.Y. 2015) ...............................................................13

*Erickson Prods., Inc. v. Kast*,
   921 F.3d 822 (9th Cir. 2019) .............................................................................14

*Everest Invs. 8 v. Whitehall Real Estate Ltd. P'ship XI*,
   100 Cal. App. 4th 1102 (2002) ............................................................................7

*Faria v. M/V Louise*,
   945 F.2d 1142 (9th Cir. 1992) ...........................................................................10

*Fikes v. Cleghorn*,
   47 F.3d 1011 (9th Cir. 1995) .............................................................................22

Gibson, Dunn &
Crutcher LLP

iv

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006)...................................................................................10

*Galdamez v. Potter*,
  415 F.3d 1015 (9th Cir. 2005)...............................................................................20

*Gantt v. City of L.A.*,
  717 F.3d 702 (9th Cir. 2013)..................................................................................22

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*,
  148 Cal. App. 4th 937 (2007) ..................................................................................8

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
  925 F.3d 1140 (9th Cir. 2019).............................................................................2, 3

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  723 F.2d 195 (2d Cir. 1983)....................................................................................7

*Hartford Fire Ins. Co. v. Clark*,
  727 F. Supp. 2d 765 (D. Minn. 2010) ...................................................................24

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
  307 F. Supp. 2d 521 (S.D.N.Y. 2004)......................................................................3

*Idema v. Dreamworks, Inc.*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ..................................................................7

*ING Bank, FSB v. Chang Seob Ahn*,
  758 F. Supp. 2d 936 (N.D. Cal. 2010) .................................................................8, 9

*Jaramillo v. Ford Motor Co.*,
  116 F. App'x 76 (9th Cir. 2004) ......................................................................24, 25

*Johnson Controls, Inc. v. Phx. Control Sys., Inc.*,
  886 F.2d 1173 (9th Cir. 1989)..................................................................................5

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...........................................................................................6

*Laws v. Sony Music Entm't, Inc.*,
  448 F.3d 1134 (9th Cir. 2006)..............................................................................6, 7

*Little v. Amber Hotel Co.*,
  202 Cal. App. 4th 280 (2011) ................................................................................17

Gibson, Dunn &
Crutcher LLP

v

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

4
*Lloyd v. Am. Exp. Lines, Inc.*,
 580 F.2d 1179 (3d Cir. 1978)................................................................24
5

6
*Mackie v. Rieser*,
 296 F.3d 909 (9th Cir. 2002).................................................................19
7

8
*Malibu Media, LLC v. Doe*,
 82 F. Supp. 3d 650 (E.D. Pa. 2015) ......................................................13

9
*McGary v. Inslee*,
 2018 WL 3747921 (W.D. Wash. July 13, 2018) ...................................25
10

11
*McHann v. Firestone Tire & Rubber Co.*,
 713 F.2d 161 (5th Cir. 1983)..................................................................25

12
*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
 629 F.3d 928 (9th Cir. 2010)....................................................................6
13

14
*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
 156 F. Supp. 3d 1052 (N.D. Cal. 2016) ...................................................7
15

16
*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
 2020 WL 5064253 (S.D. Cal. Aug. 27, 2020) .........................................7

17
*Millenium TGA, Inc. v. Doe*,
 2011 WL 1812786 (N.D. Cal. May 12, 2011) ..........................................7
18

19
*Moreland v. Ad Optimizers, LLC*,
 2013 WL 3786311 (N.D. Cal. July 18, 2013) ..........................................7
20

21
*Murphy v. City of Long Beach*,
 914 F.2d 183 (9th Cir. 1990)..............................................................4, 20

22
*Nguyen v. Barnes & Noble Inc.*,
 763 F.3d 1171 (9th Cir. 2014)................................................................15
23

24
*Olander Enters., Inc. v. Spencer Gifts, LLC*,
 2011 WL 13225062 (C.D. Cal. Oct. 21, 2011) ......................................21
25

26
*On Davis v. The Gap, Inc.*,
 246 F.3d 152 (2d Cir. 2001)...................................................................19

27
*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
 823 F. App'x 516 (9th Cir. 2020) .........................................................6, 7
28

Gibson, Dunn &
Crutcher LLP

vi

# TABLE OF AUTHORITIES
(continued)

**Page**

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.,*
    971 F.3d 1042 (9th Cir. 2020)..................................................................4, 11, 17, 21, 24, 25

*Oracle Corp. v. SAP AG,*
    765 F.3d 1081 (9th Cir. 2014)..................................................................................17, 18

*Oravec v. Sunny Isles Luxury Ventures, L.C.,*
    527 F.3d 1218 (11th Cir. 2008).........................................................................................3

*Overstock.com, Inc. v. Gradient Analytics, Inc.,*
    151 Cal. App. 4th 688 (2007) ...........................................................................................7

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,*
    50 Cal. 3d 1118 (1990) ...................................................................................................14

*Parrish v. Nat'l Football League Ass'n,*
    534 F. Supp. 2d 1081 (N.D. Cal. 2007) ...........................................................................8

*Perfect 10, Inc. v. Amazon.com,*
    508 F.3d 1146 (9th Cir. 2007)....................................................................................5, 13

*Perfect 10, Inc. v. Giganews, Inc.,*
    847 F.3d 657 (9th Cir. 2017)..........................................................................................13

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
    494 F.3d 788 (9th Cir. 2007)............................................................................................5

*Polar Bear Prods., Inc. v. Timex Corp.,*
    384 F.3d 700 (9th Cir. 2004)..............................................................................17, 18, 19

*Proctor & Gamble Co. v. Haugen,*
    2007 WL 701812 (D. Utah Mar. 2, 2007) .....................................................................22

*Range Road Music, Inc. v. E. Coast Foods, Inc.,*
    668 F.3d 1148 (9th Cir. 2012).........................................................................................21

*Reeves v. Hanlon,*
    33 Cal. 4th 1140 (2004) ..................................................................................................15

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,*
    907 F. Supp. 1361 (N.D. Cal. 1995) ..............................................................................12

*Routt v. Amazon.com, Inc.,*
    584 F. App'x 713 (9th Cir. 2014) .....................................................................................5

vii

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page

*Shaw v. Regents of the Univ. of Cal.*,
58 Cal. App. 4th 44 (1997) ...............................................................................15

*Sole Energy Co. v. Petrominerals Corp.*,
128 Cal. App. 4th 212 (2005) ...........................................................................17

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000) ...............................................................................9

*In re Southeastern Milk Antitrust Litig.*,
2011 WL 13122688 (E.D. Tenn. July 15, 2011)...............................................22

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004)................................................................................4

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008)..............................................................................7

*Synopsys, Inc. v. Atoptech, Inc.*,
2016 WL 80549 (N.D. Cal. Jan. 7, 2016) .........................................................2, 3

*Thompson v. TRW Auto, Inc.*,
2014 WL 12781291 (D. Nev. June 2, 2014)......................................................22

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
682 F.3d 292 (4th Cir. 2012)................................................................................7

*UAB "Planner5D" v. Facebook, Inc.*,
2020 WL 4260733 (N.D. Cal. July 24, 2020) ......................................................3

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017)...........................................................................2, 20

*United States v. Bennett*,
363 F.3d 947 (9th Cir. 2004)..............................................................................15

*United States v. Davis*,
596 F.3d 852 (D.C. Cir. 2010)............................................................................24

*United States v. Hawley*,
562 F. Supp. 2d 1017 (N.D. Iowa 2008)............................................................23

*United States v. Verdoorn*,
528 F.2d 103 (8th Cir. 1976)..............................................................................24

**TABLE OF AUTHORITIES**
(continued)

Page

*van't Rood v. Cty. of Santa Clara*,
113 Cal. App. 4th 549 (2003) ...............................................................................10

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019)...................................................................................5

*Villains, Inc. v. Am. Economy Ins. Co.*,
870 F. Supp. 2d 792 (N.D. Cal. 2012) ....................................................................7

*Violette v. Shoup*,
16 Cal. App. 4th 611 (1993) ....................................................................................8

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000)...............................................................................................19

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
354 F.3d 112 (2d Cir. 2003)....................................................................................3

*Wolf v. Superior Court*,
107 Cal. App. 4th 25 (2003) ....................................................................................8

*Woods v. Google Inc.*,
2011 WL 3501403 (N.D. Cal. Aug. 10, 2011)......................................................15

**OTHER AUTHORITIES**

United States Copyright Office, *Compendium of U.S. Copyright Office Practices, Third Edition*
§ 721.8 (2014)..........................................................................................................3

**RULES**

Fed. R. Civ. P. 50 ..........................................................................................................2

Fed. R. Evid. 401 ...................................................................................................22, 25

Fed. R. Evid. 403 ...................................................................................................22, 25

Fed. R. Evid. 801 ...................................................................................................22, 23

Fed. R. Evid. 802 ........................................................................................................24

Fed. R. Evid. 803 ........................................................................................................24

Fed. R. Evid. 1002 ......................................................................................................15

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

**Page**

TREATISES

Restatement (Third) of Agency § 1.01................................................................................8

1

## I.    INTRODUCTION

2      HPE is entitled to judgment as a matter of law on all of Oracle's claims.

3      As to Oracle's copyright claims, judgment is warranted for at least the following reasons:

4      1.   <u>Oracle failed to prove its patches are covered by valid copyright registrations</u>.

5  Registration is an element of all of Oracle's copyright infringement claims.  There is no dispute

6  Oracle did not register the patches it claims were infringed.  Oracle witnesses testified code from

7  the patches was *later* incorporated into versions of Solaris or firmware that were registered, but that

8  is insufficient because previously published code cannot be registered in a later computer program.

9      2. <u>Oracle failed to prove any patches provided to direct support customers are copyrighted</u>.

10  Oracle's expert did not analyze whether any patch installed on servers belonging to the direct

11  support customers contains protectable or registered source code, as required, and thus there was

12  insufficient evidence from which the jury could have found infringement as to those customers.  In

13  fact, neither Oracle nor its experts identified *any* of the allegedly installed patches.

14      3. <u>Oracle failed to prove HPE controlled Terix's conduct</u>.  Oracle did not prove HPE had

15  control over Terix's alleged wrongful conduct—an element of its vicarious infringement claim.

16  The joint customers constitute less than 5% of Terix's 700+ independent customer relationships.

17  And even if HPE could have terminated its contracts with Terix for the joint customers, HPE could

18  not have stopped Terix from providing patches to customers not authorized to receive them.

19      As to Oracle's interference claims, judgment is warranted for at least the following reasons:

20      1. <u>Oracle's interference claims are preempted</u>.  Oracle's interference claims are based on

21  the same conduct as its copyright infringement claims—the alleged download, delivery, and

22  installation of patches outside the scope of authorized use.  In fact, Oracle and its expert admitted

23  Oracle's interference theory is "HPE was interfering by infringing."  Tr. 693:16; Tr. 1166:11-15.

24      2. <u>Oracle failed to prove that Terix was HPE's agent</u>.  As this Court observed during trial,

25  "the evidence of agency" was "underwhelming."  Tr. 1129:17-18.  Oracle failed to present

26  sufficient evidence that Terix had authority to alter the legal relations between HPE and third

27  parties, Terix owed a fiduciary obligation to HPE, or HPE had in effect taken over Terix's day-to-

28  day operations.  In any event, Terix's alleged conduct occurred outside the scope of any agency.

1    3.  <u>Oracle failed to prove the amount of its interference damages</u>.  Oracle did not present

2    any evidence from which the jury could calculate damages on its interference claims.  Its damages

3    expert presented a figure based on the May 6, 2012 cutoff date for Oracle's copyright claims, but

4    he failed to present *any* number for interference.  *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d

5    1361, 1371 (9th Cir. 1992) (plaintiff must prove amount of damages).

6    Oracle's claims also fail because Oracle did not prove underlying infringement, did not

7    prove customers agreed to Oracle's support policies purportedly incorporated into Oracle's support

8    contracts, and did not prove causation between the alleged wrongdoing and damages.

9    Alternatively, the Court should order a new trial on only the copyright infringement claims (and

10   not the interference claims) because the jury instructions erroneously relieved Oracle from proving

11   the elements of its claims, and several erroneous evidentiary rulings—including admission of Terix

12   executives' criminal pleas and hearsay statements of Terix employees under the agency

13   exception—substantially prejudiced HPE.

14   ## II.    ARGUMENT

15   ### A.    HPE Is Entitled To Judgment As A Matter Of Law

16   Judgment as a matter of law is appropriate where, as here, "a reasonable jury would not

17   have a legally sufficient evidentiary basis to find for the party" on a claim or issue presented at trial.

18   Fed. R. Civ. P. 50(a)(1), (b).

19   ### 1.    Oracle's Copyright Infringement Claims Fail Because There Is No Evidence That Oracle's Patches Are Covered By Any Valid Copyright Registrations

20

21   A copyright plaintiff is "required to show registration as an element of an infringement

22   claim."  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017).  Oracle's

23   failure to prove *any* patches are covered by valid registrations warrants judgment on all of Oracle's

24   copyright claims.  *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1148

25   (9th Cir. 2019); *Synopsys, Inc. v. Atoptech, Inc.*, 2016 WL 80549, at *1–2 (N.D. Cal. Jan. 7, 2016).

26   Oracle registered major versions of the "Solaris operating system Versions 8, 9, 10 and 11"

27   and "system firmware" (Tr. 625:13–627:8), which Oracle does not contend HPE or Terix copied.

28   Oracle contends HPE and Terix copied patches for which "Oracle has not filed separate

1   registration[s] with the copyright office" (Tr. 657:10-12 (Armes)), because it decided to "deal[]

2   with" registration through "the next [major] release" of Solaris (Tr. 663:8-12 (Armes)), since "[a]ll

3   the code changes that were made in patches are incorporated into the next major release."  Tr.

4   656:4-7 (Armes); Tr. 373:8-9 (Eder); Tr. 595:25–596:2 (Armes); Tr. 1286:14-17 (Goldberg).

5   Oracle contends that code released in patches was registered in a *later* Solaris or firmware version.

6   This is insufficient as a matter of law to satisfy the registration requirement.  Dkt. 1327.

7       *First*, a copyright registration for a computer program (like a Solaris or firmware version)

8   does not cover code previously published in a *prior* program (like a patch).  A registration for a

9   computer program may cover only *new* code—"a registration for a specific version of a computer

10  program does not cover any unclaimable material that may appear in that version. … [U]nclaimable

11  material includes:  Previously published material."  United States Copyright Office, *Compendium*

12  *of U.S. Copyright Office Practices, Third Edition* § 721.8 (2014).  Thus, "a registration for version

13  1.30 of a computer program does not cover version 1.20 or any previously published or previously

14  registered content that appears in the later version of that program."  *Id.* § 504.3; *see Gold Value*,

15  925 F.3d at 1145; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447 (9th Cir. 1994).

16      *Second*, Oracle cannot claim the patches were "effectively" registered when the later Solaris

17  or firmware versions were registered.  *None* of the registrations expressly identifies the *patches* that

18  are "the foundation of this action" (*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307

19  F. Supp. 2d 521, 529–30 (S.D.N.Y. 2004)) with "sufficient specificity" (*Synopsys*, 2016 WL 80549,

20  at *1; *see Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229–30 (11th Cir. 2008);

21  *UAB "Planner5D" v. Facebook, Inc.*, 2020 WL 4260733, at *4 (N.D. Cal. July 24, 2020)).  Some

22  registrations even *expressly disclaim* previously published patches, stating all "[p]rior works by

23  claimant" are "excluded from this claim."  Tr. Ex. 1396 at 17; Tr. Ex. 1551 at 1; Tr. Ex. 1552 at 1;

24  Tr. Ex. 1553 at 1; Tr. Ex. 1554 at 1; Tr. Ex. 1555 at 1; Tr. Ex. 1556 at 1; Tr. Ex. 1557 at 1; Tr. Ex.

25  1558 at 1; Tr. Ex. 1559 at 1; Tr. Ex. 1786 at 17.  The effective registration doctrine does not apply

26  where the allegedly copied work "is not listed in any copyright registration."  *Well-Made Toy Mfg.*

27  *Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 116 (2d Cir. 2003); *Oravec*, 527 F.3d at 1229–30.

28      *Third*, there is no evidence any patch contained code first published in a registered version

Gibson, Dunn &
Crutcher LLP

3

of Solaris or firmware.  Dkt. 1327 at 3–4.  Oracle's expert Dr. Goldberg did not examine more than 90 percent of the patches, analyze *when* patches were released, or know whether any protectable code function was first published in a patch or registered version of Solaris or firmware.  Tr. 1280:9-12, 1281:12-14, 1282:13-17, 1286:2-24 (Goldberg); Tr. 623:5-7 (Armes).  Oracle has suggested the jury could have trawled through hundreds of pages of appendices and cross-compared patch IDs with the tens of thousands of rows in Tr. Ex. 1839 to determine when patches were released and whether patches contained registered code.  Dkt. 1325; Tr. 1818:3-6.  This kind of analysis is what experts must do—but one Dr. Goldberg did not do.  *DropzoneMS, LLC v. Cockayne*, 2019 WL 7630788, at *7 (D. Or. Sept. 12, 2019).  Dr. Goldberg is the only witness who could have conducted that analysis, and his failure to do so means there is no evidence of registration.

### 2.      Oracle's Claims Regarding The Direct Support Customers Fail Because There Is Insufficient Evidence Any Patch HPE Purportedly Installed Is Protectable

Oracle's infringement claims for the direct support customers fail because Oracle did not present sufficient evidence that any patch HPE purportedly installed onto a direct support customer's unsupported server is *protectable* or *registered*.  *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1052–54 (9th Cir. 2020); *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004).  In fact, Oracle did not identify *any* of the patches that were allegedly installed onto direct support customers' unsupported severs.  Tr. 1680:9-12 (Schnell) ("I didn't see a patch identified in [Hicks's] direct customer exhibit").  That is because the Court precluded Oracle's forensic expert from belatedly supplementing his report to "identif[y] Solaris patches installed by HPE without an Oracle support contract."  Dkt. 880 at 3.  As a result, Dr. Goldberg did not (and could not) analyze whether any patch allegedly installed by HPE contains protectable or registered source code.  Tr. 1278:19-21, 1283:19-22, 1293:25–1294:11.  Indeed, he admitted he had "no information" and was "not offering any opinions" on "whether any patch that was allegedly installed on a customer's server was protectable."  Tr. 1294:2-11.  Because there is insufficient evidence from which the jury could find infringement, the Court should enter judgment or, at minimum, order a new trial because the verdict is "contrary to the clear weight of the evidence."  *Murphy v. City of Long Beach*, 914 F.2d 183, 186–87 (9th Cir. 1990).

Gibson, Dunn &
Crutcher LLP

### 3. Oracle's Vicarious Infringement Claim Fails Because There Is Insufficient Evidence That HPE Had The Right And Ability To Stop Terix's Conduct

There is insufficient evidence that HPE had "a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146, 1173 (9th Cir. 2007). A contractual relationship is not enough. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007). Nor is the ability to "reduce the number" of alleged infringements. *Id.* Oracle was required to show HPE had the "ability to directly control [the infringing] activity" (*id.*), and "directly put an end to that conduct." *Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 714 (9th Cir. 2014); *Zillow*, 918 F.3d at 746. Oracle did not make that showing. The 26 joint customers constitute less than 5% of Terix's 700+ Sun customers. *E.g.*, Tr. 1312:1-20 (Farlin); Tr. 1683:8-13 (Schnell). HPE had no control over Terix's independent contractual relationships. Dkt. 1222-1 at 108:25–109:7; Dkt. 1222-5 at 73:7-13. Terix even took steps to keep HPE out of independent customer meetings. Dkt. 1330-4 at 62:20–63:2; Dkt. 1274-1 at 251:12–252:01. Terix's statements of work established Terix had "exclusive control over the means, method and details of fulfilling" its obligations to customers. Tr. Ex. 1130 at 9; Tr. Ex. 1150 at 38; Tr. 758:6–759:2; Dkt. 1278-1 at 178:3-8; Tr. 1361:1–1362:10 (Farlin). At most, Oracle showed HPE could "terminate partnerships" with Terix (*Amazon*, 508 F.3d at 1173); but it did not show HPE could "directly put an end to" Terix's alleged conduct (*Routt*, 584 F. App'x at 714; *Visa*, 494 F.3d at 803).

### 4. Oracle's Interference Claims Are Preempted By The Copyright Act

#### a. Oracle's IICR Claim Is Preempted

Oracle claims HPE induced customers to breach Oracle support contracts that purportedly incorporated Oracle's support policies. This claim is preempted by the Copyright Act.

***Software falls within the subject matter of copyright***, satisfying the first preemption element. *See Johnson Controls, Inc. v. Phx. Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989).

***Oracle's IICR claim does not protect different rights.*** "Claims for tortious interference are … preempted when they involve acts of unauthorized use of copyrighted work." *Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, 2012 WL 7683452, at *10 n.1 (C.D. Cal. Nov. 20,

Gibson, Dunn & Crutcher LLP

1   2012).  That is true where, as here, the claim is based on an alleged breach of a contract provision

2   limiting the permitted scope of use of the copyrighted work.  *Compare Del Madera Props. v.*

3   *Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987), *overruled on other grounds by Fogerty*

4   *v. Fantasy, Inc.*, 510 U.S. 517 (1994) (claim based on alleged violation of "promise not to use or

5   copy materials within the subject matter of copyright" "preempted"), *with MDY Indus., LLC v.*

6   *Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010) ("We conclude that since [plaintiff] seeks to

7   enforce contractual rights that are not equivalent to any of its exclusive rights of copyright, the

8   Copyright Act does not preempt its tortious interference claim.").  Oracle's infringement and IICR

9   claims are identical.  For both, Oracle alleges (1) customers' right to use patches is governed by the

10  support policies' Unsupported Hardware provision, (2) customers (through HPE or Terix) violated

11  that provision by copying patches for unsupported systems, and (3) this copying infringed Oracle's

12  copyrights and breached support agreements.  Dkt. 991 at 12, 19, 21, 24; Tr. 693:16, 699:20-22;

13  *see Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 823 F. App'x 516, 518 (9th Cir. 2020).  Because

14  the alleged use of patches "outside the scope of permitted use" (*Oracle*, 823 F. App'x at 518) is

15  "part and parcel of [Oracle's] copyright claim," the interference claim is preempted.  *Del Madera*,

16  820 F.2d at 977.  In fact, Oracle argued "HPE was interfering *by infringing*" (Tr. 693:16 (emphasis

17  added)), and that it was "the unlawful provision [of patches] that … interfered with the contract."

18  Tr. 699:20-22; *see also* Tr. 1162:1-3, 1166:11-15 (Pampinella) (testifying HPE "offered …

19  copyrighted works inappropriately and, *as a result* of that, [HPE] interfered") (emphasis added).[1]

20              **b.     Oracle's IIPEA Claim Is Preempted**

21          An IIPEA plaintiff must prove "the defendant engaged in an independently wrongful act."

22  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003).  Oracle's claim is

23  based on (i) interference with contract (preempted for the reasons stated above); and (ii) conspiracy

24  to commit infringement (preempted because it does not protect rights "qualitatively different from

25  the copyright rights").  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1143 (9th Cir. 2006).  In

26

27  ―――――――――――――――
    [1]  Oracle tried to backtrack, saying its "interference theory is premised on" the "fraudulent business
28  practices" HPE and Terix allegedly used to make "Oracle's software available day in and day out."
    Tr. 960:20-24.  But Oracle cannot rely on fraud.  Dkt. 1183 at 5; *Oracle*, 823 F. App'x at 518.

MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL
CASE NO. 4:16-CV-01393-JST

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008), the Ninth Circuit held that the state claims were preempted because the plaintiff "would have to prove that copyright infringement occurred" to prevail—and "to the extent an alleged wrongful act by the [defendant] is based on copyright infringement, it is preempted." *See also Oracle*, 823 F. App'x at 519 ("UCL claims predicated on infringement" preempted). The same is true here, as Oracle's conspiracy to infringe theory requires it to show the "underlying wrongful act"—copyright infringement. *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2020 WL 5064253, at *19 (S.D. Cal. Aug. 27, 2020); *Everest Invs. 8 v. Whitehall Real Estate Ltd. P'ship XI*, 100 Cal. App. 4th 1102, 1106 (2002); *see also Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 311–12 (4th Cir. 2012) (reversing liability verdict: "the core of the claim for conspiracy to infringe copyrights is identical to that under the Copyright Act, and the extra element of agreement or combination does not make it otherwise"); *Laws*, 448 F.3d at 1144–45; *Millenium TGA, Inc. v. Doe*, 2011 WL 1812786, at *2 (N.D. Cal. May 12, 2011); *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1192–94 (C.D. Cal. 2001).[2]

### 5.      Oracle's Agency Theory of Interference Fails As A Matter of Law

***No court has endorsed an agency theory of interference.***   An interference claim requires evidence of "wrongful conduct on the part of *the defendant*." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 713 (2007) (emphasis added). There is no legal support for Oracle's argument that HPE can be held liable for *Terix's* alleged interference. Dkt. 1177 at 5.

***An agent cannot conspire with its principal.***   Oracle says HPE conspired with Terix, but "[a]gents … cannot conspire with their corporate principal … where they act in their official capacities." *Moreland v. Ad Optimizers, LLC*, 2013 WL 3786311, at *4 (N.D. Cal. July 18, 2013); *Villains, Inc. v. Am. Economy Ins. Co.*, 870 F. Supp. 2d 792, 795–96 (N.D. Cal. 2012).[3]

***Oracle failed to prove an agency relationship.***   Oracle had to establish:  (1) the purported agent "holds a power to alter the legal relations between the principal and third persons and between

---

[2]  The intent element of the claim does not supply the "extra element." *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985); *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1073 (N.D. Cal. 2016).
[3]  To be clear, HPE was not Terix's corporate principal.

Gibson, Dunn &
Crutcher LLP

1   the principal and himself"; (2) the "agent is a fiduciary with respect to matters within the scope of

2   the agency"; and (3) the "principal has the right to control the conduct of the agent with respect to

3   matters entrusted to him."  *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal.

4   App. 4th 937, 964 (2007).  Oracle failed to do so.  Tr. 1129:17-18.

5          *First*, there is insufficient evidence Terix had "authority to act for and in the place of [HPE]

6   for the purpose of bringing [it] into legal relations with third parties."  *Violette v. Shoup*, 16 Cal.

7   App. 4th 611, 620 (1993).  HPE subcontracted with Terix, but Terix could not "bind … [HPE] to

8   contracts" or "negotiate" on HPE's behalf.  Restatement (Third) of Agency § 1.01 cmt. c.

9          The Master Consolidated Services Agreement ("Master Agreement") said Terix would "act

10  solely as an independent contractor," and "[n]othing contained herein will be construed to create

11  the relationship of principal and agent."  Tr. Ex. 1080 at 13; Tr. Ex. 1050 at 12; Dkt. 1274-4

12  (3.19.2015) at 19:15-21, 25:1-4; *id.* (5.16.2017) at 283:5–284:13; *see ING Bank, FSB v. Chang*

13  *Seob Ahn*, 758 F. Supp. 2d 936, 943 (N.D. Cal. 2010).  And it prohibited Terix from "hav[ing] any

14  direct contact or communication with a Customer" during "the proposal/bid phase" (Tr. Ex. 1080

15  at 7)—so Terix could not negotiate with customers on HPE's behalf.  Tr. at 1358:9–1359:5 (Farlin).

16         *Second*, there is insufficient evidence Terix "owe[d] a fiduciary obligation to [HPE]."

17  Restatement (Third) of Agency § 1.01 cmt. e.  The "[m]ere contractual relationship[]" between

18  HPE and Terix "do[es] not give rise to a fiduciary relationship[]" (*Parrish v. Nat'l Football League*

19  *Ass'n*, 534 F. Supp. 2d 1081, 1097 (N.D. Cal. 2007)), and there is insufficient evidence HPE

20  reposed trust and confidence in Terix.  *See Wolf v. Superior Court*, 107 Cal. App. 4th 25, 31 (2003)

21  ("implied covenant cannot create a fiduciary relationship").  Terix was an *independent* TPM that

22  served more than 700 customers (Tr. 1312:1-20 (Farlin); Tr. 1162:20-22 (Pampinella)) and

23  "*competed* against HP."  Dkt. 1252-4 at 108:15–109:7; Dkt. 1252-2 at 73:7-13; Tr. 1310:23–

24  1311:1, 1366:6-12 (Farlin).  There is no agency relationship where entities have "oppos[ing] …

25  interests."  *Am. Airlines, Inc. v. Mawhinney*, 904 F.3d 1114, 1124 (9th Cir. 2018).

26         *Third*, there is insufficient evidence HPE had "the right to control the manner and means of

27  accomplishing the result desired."  *ING Bank*, 758 F. Supp. 2d at 941.  HPE did not "manage how

28  [Terix] did the work," as Terix was "responsible for defining [its] own processes and how they do

8

it."  Dkt. 1278-1 (5.16.2017) at 178:3-8; Tr. 1361:1–1362:10 (Farlin); Tr. Ex. 1050 at 37.  To be sure, the Master Agreement prohibited Terix from commencing any work until it received an HPE purchase order, and granted HPE the right to supervise and assess Terix's performance, audit Terix, and terminate statements of work.  Tr. Ex. 1080 at 6–7, 17.  But one who hires a contractor "may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect, the right to stop the work, [and] the right to make suggestions or recommendations as to the details of the work"—"without changing the relationship" to an agency relationship.  *ING Bank*, 758 F. Supp. 2d at 941.  The level of "control that gives rise to an agency [relationship] is comprehensive, immediate, and day-to-day" (*id.* at 941–42)—such that the principal has "in effect taken over performance of the [agent's] day-to-day operations in carrying out that policy."  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 542 (2000).  Oracle did not prove that HPE took over Terix's day-to-day operations in supporting the joint customers.  Tr. 1361:1–1362:10 (Farlin).

**Terix's wrongful conduct was outside the scope of any purported agency.**  HPE's customer contracts made clear that customers were responsible for having the necessary entitlements.  Tr. Ex. 1119 at 40; Dkt. 1274-2 at 62:8–63:10; Dkt. 1274-4 (3.19.2015) at 76:25–77:10, 89:15-20; *id.* (5.16.2017) at 81:3-23; Tr. 755:19–756:4, 765:10-13, 775:6-8 (Klevickis); Tr. Ex. 1076B at 16–17; Dkt. 1274-3 at 136:5–137:2; Dkt. 1316-2 21:7-12, 46:5-17, 52:8–53:22, 78:25–79:11; Dkt. 1316-3 at 14:19–15:2; Tr. Ex. 2031 at 7–8.  HPE's policy was that customers needed support contracts to obtain patches.  Dkt. 1252-2 72:20–74:2; Dkt. 1252-3 107:18–108:02; Dkt. 1274-4 (3.19.2015) at 76:25–77:10; Tr. Ex. 1234 at 1; Tr. Ex. 1323 at 1.  And many of HPE's contracts with Terix excluded patching.  Tr. 1355:10–1356:23, 1359:2–1360:7 (Farlin); Dkt. 1252-3 at 26:12–17, 133:07–133:12; Dkt. 1252-4 at 47:11–23; Tr. Ex. 1074 at 39; Tr. Ex. 1731 at 13; Tr. Ex. 3248 at 6–7.  Indeed, HPE's "corporate directive" was to provide "break-fix advisory support" and not to "bring [Terix] in if the customer needs Solaris patches and updates" (Dkt. 1259-3 at 74:20–75:8)—particularly since Terix executives hid Clearvision (and Snoe Wight) from HPE employees (and other Terix employees) and concealed whether Terix provided patches for unsupported servers.  Tr. Ex. Nos. 2916 & 3574 (Snoe Wight); Tr. Ex. 3183; Tr. Ex. 1676; Tr. 1389:15-23

Gibson, Dunn &
Crutcher LLP

1   (Farlin); Tr. 765:20–766:6 (Klevickis); Dkt. 1252-4 at 41:17-23, 410:1-15; Dkt. 1252-3 at 94:13-

2   22, 170:11-18, 181:17-22, 225:12–226:13; Dkt. 1252-2 at 73:1–74:2, 79:1-16, 285:16-21, 286:4-6,

3   372:11-20; Dkt. 1330-4 at 62:20–63:2; Dkt. 1259-2 at 154:12-23, 192:5-7; Dkt. 1274-1 at 251:16–

4   252:1; Dkt. 1274-4 (3.19.2015) at 76:5-9, 95:4–96:8; Dkt. 1278-2 at 81:5-24, 112:22–113:2.

5           HPE thus contracted with Terix only to provide hardware support, not software support.

6   Dkt. 1252-4 at 47:11-23, 108:15–109:7; Dkt. 1252-3 at 25:12–26:17, 133:7-12; Dkt. 1259-2 at

7   103:22-24; Dkt. 1274-4 (5.16.2017) at 178:16–179:2; Tr. 1309:25–1310:2 (Farlin).  And Terix told

8   HPE it "will not download any patches and fixes for a customer nor will [it] install them on their

9   hardware" (Tr. Ex. 2164 at 1), and any agreement concerning Solaris patches was "strictly between

10  Terix and the customer."   Dkt. 1252-2 at 313:24–314:3.   In fact, customers independently

11  concluded they were entitled to patches from Terix for servers without a support contract.  Dkt.

12  1274-3 at 40:2-14; Tr. 1557:13-23, 1559:4-16, 1560:5-8, 1596:10-13 (Buckland).

13          Thus, any patching Terix provided to unsupported servers was without HPE's involvement

14  and outside the scope of any agency relationship.  *See van't Rood v. Cty. of Santa Clara*, 113 Cal.

15  App. 4th 549, 573 (2003).  Indeed, once HPE learned more about Terix's processes, it terminated

16  its relationship with Terix and began rolling customers off Terix.  Tr. 1362:13–1363:9, 1364:11–

17  1370:15, 1374:21–1375:5, 1375:21–1387:21, 1453:25–1454:14 (Farlin); Tr. Ex. 3225 at 2.

18          **6.      Oracle Presented Insufficient Evidence of Damages On Its Interference Claims**

19          Oracle's damages expert James Pampinella did not offer any calculation of damages on

20  Oracle's interference claims.  He offered only a $73 million *infringement* number.  Although

21  Pampinella admitted Oracle's interference claims had a later statute of limitations "cutoff" than its

22  infringement claims (Tr. 1246:12-18), he did not provide any guidance about how the jury could

23  calculate interference damages.   "[B]ecause no damages ha[ve] been properly shown" for

24  interference, the claims fail.  *City of Vernon*, 955 F.2d at 1371; *In re First All. Mortg. Co.*, 471 F.3d

25  977, 1002 (9th Cir. 2006); *Faria v. M/V Louise*, 945 F.2d 1142, 1143 (9th Cir. 1992).[4]

26

27  [4]  During closing, Oracle argued the jury could award $56.1 million for interference.  Tr. 1912:14–
1913:4.  But Pampinella did not testify about that figure, which was never even mentioned during

28  the presentation of evidence, as this Court observed.  Tr. 1915:23–1916:3.

MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL
CASE NO. 4:16-CV-01393-JST

1

### 7.     HPE Is Entitled To Judgment On Several Additional Grounds

2

### a.     Oracle Admitted It Had No Evidence Of Infringement For Most Direct Support Customers

3

At summary judgment, Oracle relied on 35 spreadsheets it said showed  210 instances—

4

corresponding to only 10 direct support customers—in which a patch may have been installed after

5

a support contract ended.  Dkt. 955 at 3.  Oracle appealed from summary judgment, but the Ninth

6

Circuit's remand was directed solely to those 210 instances; the court concluded that a trial was

7

necessary to resolve whether the 210 "entries" in HPE's spreadsheets "reflected an actual

8

installation" that occurred while a server was not on contract, and whether "HPE" (as opposed to

9

the customer, Oracle, or someone else) "applied the patch[es]" to those servers.  *Oracle*, 971 F.3d

10

at 1052–53; Dkt. 955 at 3–9.  Despite the Ninth Circuit's limited remand for a trial as to those 210

11

entries, Oracle improperly pursued infringement claims as to direct support customers for which it

12

indisputably had no evidence of infringement.  But Oracle failed to present *any* evidence at trial

13

concerning 17 of the 27 direct support customers for which Oracle sought damages—much less

14

"evidence that HPE installed a patch on a server that was not supported by an Oracle support

15

contract" (*Oracle*, 971 F.3d at 1052) belonging to those 17 customers.[5]  Of the "35 direct support

16

customers" Hicks analyzed (Tr. 894:14-17), he found evidence of purported unauthorized

17

installations for only 11 (Tr. 896:21-24),[6] and admitted there is no "evidence of any improper

18

patching on any other" customers' servers.  Tr. 896:21-24; *see* Tr. 877:1-23, 907:18-25, 908:14-

19

16, 979:21–980:14.[7]  Oracle should not have been permitted to claim infringement beyond the 210

20

---

21

[5]  Pampinella and Hicks offer opinions about different sets of customers.  Pampinella testified about damages for 26 joint support customers and 27 direct support customers, while Hicks testified about 33 joint support customers and 35 direct support customers.  Not all the customers for which Hicks identifies evidence of alleged infringement are customers for which Pampinella opines on damages.

22

23

[6]  Hicks said he found evidence of wrongful installations for 11 direct support customers: AGCO Corporation; Allison Transmission; California Physicians' Service, Inc.; Bristol Myers Squibb; BP PLC; Ericsson; Grupo Bimbo; Alcatel-Lucent; Owens-Illinois; and Sabre Corp.  Tr. 974:11-17.

24

25

[7]  The direct support customers for which Oracle seeks damages but has no evidence of infringement are Airgas, Inc., Ally Financial Inc., American Airlines Inc., Athene USA, Black & Veatch, Blue Cross Blue Shield of Massachusetts, Clorox, Dr. Pepper Snapple Group, Kraft Foods Group, Mercedes-Benz Financial Services USA LLC, MERSCORP Holdings, Inc., Molson Coors Brewing Company, Pegasus Solutions, Phoenix Companies, Universal Music Group, US Airways (fka USAir), and Virgin America.  *Compare* Tr. 1199:8–1200:23 (Pampinella), *with* Tr. 974:11-17 (Hicks).

26

27

28

Gibson, Dunn & Crutcher LLP

MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL
CASE NO. 4:16-CV-01393-JST

1   instances for which the Ninth Circuit found there was a triable issue of fact.  Nor should Oracle

2   have been permitted to ask the jury to assume infringement as to customers for which it presented

3   no evidence based on its evidence relating to the 11 customers Hicks identified.  *See* Dkt. 955 at 7–

4   8 (citing cases).

5               **b.    Oracle Failed to Prove HPE Committed Vicarious Infringement**

6        ***Oracle failed to prove Terix committed direct infringement.***  Oracle had to show that Terix

7   downloaded, copied, or delivered a patch "with the intent to install [the] patch on an unsupported

8   server for a particular [joint HPE-Terix] customer."  Dkt. 991 at 19.[8]  Oracle failed to do so.

9        *First*, as with the direct support customers, it was undisputed at summary judgment that

10  Oracle had no evidence of direct infringement by Terix for the majority of the joint support

11  customers for which Oracle seeks damages, and thus Oracle should not have been permitted to ask

12  the jury to speculate that infringement occurred as to those customers despite the total absence of

13  evidence for those customers.  *See* Dkt. 955 at 12–13.  Indeed, at trial, Oracle failed to prove that

14  Terix downloaded, copied, or delivered a patch "with the intent to install [the] patch on an

15  unsupported server" belonging to 15 of the 26 joint-support customers for which Oracle seeks

16  damages.  Dkt. 991 at 19.  Hicks testified that he found downloads for "eleven" of the 33 joint

17  support customers he analyzed, but did not identify any of the 11 customers aside from

18  Sungard/Fidelity.  Tr. 914:8-24.  And he identified only 12 of the 33 customers as having received

19  allegedly unlawful deliveries (including Sungard).  Tr. 921:21–922:17.  He further conceded he

20  identified no evidence of improper downloads or deliveries for any other customer for which Oracle

21  seeks damages, and Oracle did not present any other evidence of infringement for those customers.

22  Tr. 922:5-8, 922:18-21, 981:14-20.[9]  Oracle had to prove infringement for each joint customer for

---

[8]   HPE respectfully disagrees with the infringement standard the Court adopted at summary
judgment, as the Copyright Act does not regulate a party's state of mind.  *See* Dkt. 955 at 10–11;
*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1367 (N.D. Cal.
1995) (copyright infringement does not turn on "intent or any particular state of mind").

[9] The joint-support customers for which Oracle seeks damages but has no evidence of infringement
are Astra Zeneca Pharmaceutical, Bell Canada, Bharti Telecom, Boeing, BSNL, Equant, GE
Treasury, Midwest ISO (MISO), ON Semiconductor, TATA (TCS), Texas Instruments (Japan),
and Time Warner Cable.  *Compare* Tr. 1198:6 – 1199:7 (Pampinella), *with* Tr. 914:8-24, 922:5-21,
981:14-20 (Hicks).  The customers for which Oracle has no evidence of post-statute of limitations

Gibson, Dunn &
Crutcher LLP

1   which it seeks damages, but failed to present *any* evidence—through Hicks or otherwise—of

2   infringement for 15 such customers.  *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650, 658 (E.D.

3   Pa. 2015); *Energy Intel. Grp., Inc. v. Jeffries, LLC*, 101 F. Supp. 3d 332, 342 (S.D.N.Y. 2015);

4   *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312–13 (Fed. Cir. 2007).

5          *Second*, the evidence Oracle presented is insufficient to support the verdict.  Hicks identified

6   6,051 ***downloads*** by Terix, but Hicks admitted that "over 90% of those" downloads were for

7   Symantec (not a joint support customer), and that he "can't tell" whether Terix or the customer

8   downloaded the patches from MOS.  Tr. 912:16-23, 915:2-10, 916:11-23 (Hicks).  And Oracle's

9   ARU database does not track which customer a patch was downloaded on behalf of.  Dkt. 1321-1

10  at 136:17-20.  Nor is there evidence for which server a patch was downloaded, much less whether

11  the server was or was not under a support contract.  Tr. 418:3-9, 441:6-23 (Eder); Dkt. 1316-5 at

12  216:25–217:4.  There also is insufficient evidence each downloaded patch is protectable.  Tr.

13  1288:12–1290:9 (Goldberg).  Oracle admitted there is no evidence tying downloads to deliveries

14  or installations for specific servers, let alone unsupported ones.  Tr. 915:11-16; Tr. 918:7–919:6

15  (Hicks); Tr. 867:3-13; Dkt. 1321-1 at 85:16–86:1.  And Hicks admitted that, as a result, there is no

16  way to tell what happened to any patch after it was downloaded.  Tr. 867:3-13 (Hicks).  Oracle

17  cannot prove Terix downloaded a patch with the *intent of installing* it on an *unsupported* server.

18         Oracle also failed to meet its burden on ***deliveries***.  Hicks testified that 118 such deliveries

19  occurred over the course of several years.  Tr. 921:13–923:24 (Hicks).  But Oracle failed to present

20  evidence of *who* pulled any given patch from an FTP site, that any patch was delivered for use on

21  an unsupported server, or that each delivered patch was protectable.  Tr. 920:1-7 (Hicks).  Oracle

22  did not prove Terix delivered a patch with the *intent of installing* it on an *unsupported* server.  Dkt.

23  991 at 19.

24         ***Oracle failed to prove HPE derived a direct financial benefit***.  In addition to failing to

25  prove HPE could control Terix's conduct, Oracle failed to present sufficient evidence HPE derived

26  a "direct financial benefit" from Terix's specific infringing acts.  *Amazon*, 508 F.3d at 1173; *Perfect*

27

28  infringement are Bristol-Myers Squibb, Time, Inc., and Verizon.  *Id.*; *see also* Dkt. 1060-2 at 3.

MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL
CASE NO. 4:16-CV-01393-JST

1    *10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673–74 (9th Cir. 2017); *Erickson Prods., Inc. v. Kast*, 921

2    F.3d 822, 829 (9th Cir. 2019).  Customers were not drawn to HPE because of free patches; HPE

3    never told customers it could provide free Solaris patches.  Dkt. 1316-2 at 45:18–46:17, 72:10–

4    73:6; Dkt. 1316-3 at 34:9-13, 52:17–54:10; Dkt. 1316-4 at 296:6-10, 13-14; Dkt. 1321-5 at 29:12-

5    18, 30:4-9.  HPE's contracts with Terix and the joint customers often excluded patching and

6    specified it was the customer's responsibility to maintain necessary entitlements.  *E.g.*, Tr. Ex. 1119

7    at 40; Tr. Ex. 1731 at 13; Tr. Ex. 3248 at 6–7; Tr. Ex. 1074 at 39.

8            **c.     Oracle Failed to Prove Its Copyright Claims Concerning Symantec**

9          HPE is entitled to judgment as a matter of law or, at minimum, a new trial on Oracle's

10   infringement claims concerning Symantec because Dr. Goldberg failed to testify any patch

11   purportedly provided to Symantec contains protectable or registered code.

12           **d.     Oracle Failed to Prove Its Intentional Interference Claims**

13               **(i)     Oracle's IICR Claim Fails**

14         ***Oracle failed to prove any customer agreed to a support contract incorporating the***

15   ***support policies.***  Oracle had to prove the existence and breach of "a valid contract between plaintiff

16   and a third party."  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990);

17   CACI 2201.  Oracle's sole theory of breach is that the copying of patches breached the support

18   policies purportedly *incorporated* into the customer's support contracts.  Oracle was required to

19   prove customers entered into binding support contracts validly incorporating the support policies.

20         Oracle failed to present sufficient evidence that a *single customer* assented to the terms of

21   Oracle's support policies.  Oracle introduced several versions of its support policies (Tr. Ex. Nos.

22   1350, 1529–30), but never claimed the *policies themselves* are a "contract"—nor do they have the

23   necessary indicia of a binding contract.  *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092

24   (9th Cir. 2005).  And while Oracle's SVP of Global Business Practices Ellen Eder testified that

25   Oracle's support policies are "available publicly on [Oracle's] website" (Tr. 378:24), and

26   "incorporated" into the "orders … for the support listing what [customers are] buying" (Tr. 444:8-

27   23; *id.* at 384:13-20), her bald assertion of incorporation is insufficient.

28         The "principles of contract formation apply with equal force to contracts formed online"; a

1    plaintiff that "offers contractual terms to those who use [its] site" must show the "user engage[d]

2    in conduct that manifests her acceptance of those terms." *Berman v. Freedom Fin. Network, LLC*,

3    30 F. 4th 849, 855–56 (9th Cir. 2022); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176–77

4    (9th Cir. 2014).  Further, a document cannot be incorporated into a contract unless (1) there is a

5    "clear and unequivocal" statement in the contract incorporating the document, (2) the document is

6    "called to the attention of the other party and he must consent thereto," and (3) "the terms of the

7    incorporated document" are "known or easily available."  *Woods v. Google Inc.*, 2011 WL

8    3501403, at *3 (N.D. Cal. Aug. 10, 2011); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal.

9    App. 4th 50, 66 (2013); *Shaw v. Regents of the Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997).  There

10   is insufficient evidence any customer saw, much less affirmatively assented to, the support policies.

11          Eder's testimony that the support policies are "incorporated" into contracts violates the best

12   evidence rule, HPE properly objected to that testimony (Tr. 384:23-24), and it cannot salvage

13   Oracle's argument.  The terms of a written contract cannot be established without the written

14   contract itself.  Fed. R. Evid. 1002; Dkt. 1299 at 1; *United States v. Bennett*, 363 F.3d 947, 953 (9th

15   Cir. 2004); *Acumed LLC v. Adv. Surgical Servs., Inc.*, 561 F.3d 199, 222 (3d Cir. 2009).

16          Without evidence *any* customer—much less all of them—executed a support contract that

17   validly incorporated Oracle's support policies, Oracle cannot show breach and its IICR claim fails.

18          **Oracle failed to prove HPE knew of any contract.**  There is insufficient evidence HPE

19   knew any customer entered into a support contract or policy effective while receiving support

20   from HPE.  The jury could not find HPE knew "interference was certain or substantially certain to

21   occur as a result of [its alleged] action."  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).

22          **Oracle failed to prove HPE induced breach.**  HPE told "customer[s] that an Oracle contract

23   needs to be in place" to access Solaris patches and "work[ed] with Oracle to put the right contracts

24   in place" for customers that wanted patches.  Dkt. 1259-2 at 99:4–99:20, 101:7–103:19; Dkt. 1274-

25   4 (5.16.2017) at 35:14-20; *id.* (3.19.2015) at 76:25–77:10; Tr. 755:19–756:4 (Klevickis); Tr. Ex.

26   1119 at 40; Tr. Ex. 1076B at 16–17.  Terix purported to offer a solution for patches without an

27   Oracle contract, but did not share the details with HPE; HPE did not know what the solution was

28   and did not sponsor or promote it.  Dkt. 1252-2 at 70:14-17, 73:1–74:2, 323:7-16; Dkt. 1259-2 at

Gibson, Dunn &
Crutcher LLP

1   103:22-24; Tr. 1389:18-23 (Farlin).  And Oracle cannot argue HPE misrepresented to customers

2   that HPE could provide free patches. Dkt. 1183 at 5.  If customers obtained patches from Terix for

3   unsupported servers, it is because they *chose* to do so in the wake of much confusion.  Tr. 369:19-

4   21, 375:17-22, 387:13-21, 393:4-7, 397:20-22, 402:14-22, 406:23–407:15 (Eder); Tr. at 516:19-20

5   (Edwards);  Tr.  at  634:24–635:3,  636:24–638:7,  641:1-18  (Armes);  Tr.  1050:1-11,  1054:2-3

6   (Jones); Tr. Ex. 3220; Tr. Ex. 2421; Dkt. 1252-2 at 246:19-24, 303:25–304:1; Tr. Ex. 2700_A; Tr.

7   Ex. 2379; Tr. Ex. 2700; Tr. Ex. 2416; *compare* Tr. Ex. 2610, *with* Dkt. 1316-4 at 101:12–103:9;

8   Tr. 642:21–645:7 (Armes); Tr. Ex. 2383; Dkt. 1252-4 at 138:13-25; Dkt. 1274-3 at 40:2-14, 136:5–

9   137:1; Dkt. 1274-1 at 180:22–181:6; Tr. 1557:13-23, 1559:4-16, 1560:5-8, 1596:10-13, 1564:18–

10  1569:12, 1569:20-22 (Buckland); Tr. Ex. 2944; Tr. Ex. 1096; Tr. 1391:10-19 (Farlin).

11      ***HPE cannot interfere with its contracts with Oracle.***  For direct support customers, "HPE

12  is the prime contractor and Oracle is the subcontractor"—meaning HPE, not the customer, is the

13  contracting party.   Tr.  1084:21-23  (Jones);  Tr.  1610:18–1612:9,  1623:19–1624:7,  1626:6-8,

14  1630:7-16 (Marek); Dkt. 1274-4 (5.16.2017) at 35:14–36:04, 47:11-18; Dkt. 1316-3 at 15:3-9,

15  21:8-25; Tr. Ex. 2313.  A party to a contract cannot interfere with its own contract.  *Applied Equip.*

16  *Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 513–14 (1994).

17                      **(ii)      Oracle's IIPEA Claim Fails**

18      Oracle predicated its IIPEA claim on its IICR claim and the theory that HPE conspired with

19  Terix to commit copyright infringement.  Oracle's IICR claim fails for all the reasons stated above,

20  and Oracle's conspiracy-to-infringe theory is preempted by the Copyright Act, as discussed above.

21              **e.      Oracle Failed to Prove Its Damages Claims**

22      The jury awarded Oracle $30 million on its copyright infringement claims and alternatively

23  $24 million on its intentional interference claims. Dkt. 1349 at 2–3.  Neither award is supported

24  by the evidence, and the damages theories Oracle relied on fail as a matter of law.  If the Court

25  concludes that any portion of the damages award is unsupported, the Court should grant judgment

26  to HPE. *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1373 (9th Cir. 1992).

27                      **(i)      Oracle's Claim For Lost Profits Fails**

28      A copyright plaintiff seeking lost profits must present evidence "establish[ing] [a] causal

                                16

1    connection" "between the infringement and the monetary remedy sought." *Polar Bear Prods., Inc.*

2    *v. Timex Corp.*, 384 F.3d 700, 708, 710 (9th Cir. 2004).  Lost profits "damages may be recovered

3    only if there is a necessary, immediate and direct causal connection between the wrongdoing and

4    the damages." *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2d Cir. 1977).  Where a

5    plaintiff seeks lost profits based on loss of customers, the plaintiff must connect *each* lost customer

6    and *each* lost sale to a proven act of infringement.  *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087

7    (9th Cir. 2014); *Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, at *3 (N.D. Cal. Mar. 31, 2014);

8    *Oracle USA, Inc. v. Rimini St., Inc.*, 2:10-cv-0106-LRH-PAL, Dkt. 880 at 35 (D. Nev. Oct. 6, 2015).

9    These rules apply in both the copyright and interference context.  *Sole Energy Co. v. Petrominerals*

10   *Corp.*, 128 Cal. App. 4th 212, 232 (2005).  Oracle failed to meet this standard.

11       ***Oracle cannot recover lost profits caused by alleged fraud or misrepresentations.***

12   Pampinella attempted to quantify the profits lost "for the customers HPE unlawfully diverted from

13   Oracle's support through false representations."  Dkt. 619-2 ¶ 45; Tr. 1168:16-20 (Pampinella).

14   But "Oracle may not present the theory that HPE committed IICR or IIPEA based on HPE's

15   misrepresentations to Oracle customers" (Dkt. 1183 at 5), so Oracle could not recover damages

16   under this theory.  *E.g.*, *Comprehensive Toxicology Billing, LLC v. Nord*, 2017 WL 11639175, at

17   *3–4 (C.D. Cal. Feb. 3, 2017) (excluding damages expert on "already-dismissed diversion claims").

18       ***Comcast damages are time-barred.***   Oracle could not pursue "copyright infringement

19   claims … for conduct before May 6, 2012," or interference claims "for conduct before May 6,

20   2013." *Oracle*, 971 F.3d at 1047.  Nor could Oracle seek interference damages for conduct before

21   May 6, 2013.  *Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 304 (2011).  Pampinella testified

22   Comcast paid Oracle $7.2 million per year in fees before cancelling its contract with Oracle, and

23   that it would have paid Oracle $21.6 million more if that cancellation had not occurred (resulting

24   in more than $15 million in purported lost profits).  Tr. 1180:6–1181:5, 1198:20-22 (Pampinella);

25   Tr. 1008:7-19 (Jones).  But Comcast terminated its Oracle contract in April 2012 and signed a

26   three-year contract with HPE that month.  Tr. 1240:7-17 (Pampinella); Tr. Ex. 1286; Tr. Ex. 1253.

27   Any purported misconduct *after* May 6, 2012, could not have caused Oracle to lose Comcast's

28   business in April 2012.  The verdict cannot be supported by any damages attributable to Comcast.

***Oracle is not entitled to damages for customers with no evidence of infringement within the statute of limitations.***  Oracle sought damages for 49 different customers (Tr. 1175:18-25), but failed to present sufficient evidence of within-limitations infringement for the vast majority of them.  *Infra* Parts II.A.2, II.A.7.a–b.  Pampinella conceded he did not limit his "damages [opinions] to servers for which there's evidence" of infringement.  Tr. 1224:24–1225:7 (Pampinella); Tr. 1717:3-6 (McGavock); *SAP*, 765 F.3d at 1094; *Polar Bear*, 384 F.3d at 708.  For example, Oracle sought more than $5 million in damages for Boeing (Tr. 1198:6–1200:10, 1226:6-13), but Oracle has no evidence of infringement as to Boeing after May 6, 2012.  Tr. 896:21-24, 914:8-24, 922:5-17, 974:11-17 (Hicks); *see supra* n.9 (listing joint support customers for which Oracle seeks damages but has no evidence of infringement, either before or after the statute of limitations cutoff).

***Oracle failed to prove every customer would have placed every server under Oracle support but for the alleged wrongdoing.***  Oracle's entire damages theory was predicated on the assumption that it would have sold support contracts for every Sun server HPE or Terix supported, for every day under support, at whatever price Oracle charged, whether or not the server received or needed a patch.  Tr. 1200:11-20 (Pampinella).  This theory is speculative and unsupported.  *See SAP*, 765 F.3d at 1094; *Polar Bear*, 384 F.3d at 708.

The undisputed evidence—including from Oracle's own witnesses—established that many customers did not purchase support because they did not need or want patches for many servers.  Dkt. 1316-1 at 85:24–87:1, 98:19–99:8; Tr. Ex. 2418; Tr. Ex. 2412; Tr. Ex. 2439_A at 2; Tr. Ex. 3257 at 14; Tr. 630:18-20, 654:4-13 (Armes); Tr. 1482:18-25 (Swartout).  Customers with aging, stable servers had no need for patches and chose to self-support or contracted with a TPM for support.  Tr. 1051:15-23, 1081:3-17 (Jones); Tr. Ex. 2432; Tr. Ex. 2757; Tr. Ex. 2439_A; Tr. Ex. 2643; Dkt. 1316-1 at 98:19–99:22; Dkt. 1321-4 at 79:22–80:12; Dkt. 1316-6 at 233:2-10; Dkt. 1321-5 at 73:16–74:14.  Roughly 80% of the servers Oracle seeks damages for were end of service life.  Tr. 1746:3–1747:7 (McGavock).  Oracle had *thousands* of Sun servers not under support.  Tr. Ex. 3257 at 60; Tr. Ex. 2647 at 95.  And Oracle never supported thousands of Sun servers belonging to the customers for which Oracle seeks damages—either before or after those customers contracted with HPE.  *See* Tr. 653:22–654:3 (Armes); Ex. 3614; Tr. 1715:10-13, 1728:24–1730:11, 1731:5-

18

1     12 (McGavock).   The undisputed evidence squarely contradicted Pampinella's unsupported

2     assumption that customers would have purchased support for *every last server* at issue.[10]

3                   **(ii)**       **Oracle's Claim For Unjust Enrichment Fails**

4         Oracle also sought damages under an unjust enrichment theory, but failed to "show a causal

5     connection" "between [any] infringement and the monetary remedy sought." *Polar Bear Prods.*,

6     384 F.3d at 708; *see also Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002).   Pampinella based

7     his direct infringement figure on HPE's sales order data, but failed to account for the myriad ways

8     this data does not "bear a legally significant relationship to the [alleged] infringement." *Polar Bear*,

9     384 F.3d at 711.   The sales order data is not limited to HPE's revenues related to supporting Sun

10    servers, and includes revenue earned by supporting IBM servers, Dell servers, and other systems

11    that are wholly irrelevant to this case.   Tr. 1192:25–1193:15, 1232:2-11 (Pampinella); *On Davis v.*

12    *The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001).   The data also includes customers for which there is

13    no evidence of infringement.  *See infra* Parts II.A.7.a–b.

14                **(iii)**      **Oracle May Not Seek Damages For International Customers**

15        The Copyright Act does not apply to conduct outside the United States.  *Allarcom Pay Tel.*

16    *Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995).   Oracle did not present any

17    evidence—through Hicks or any other witness—that wrongful conduct occurred in the United

18    States relating to the following international customers:   Bank of Baroda, Bell Canada, Bharti

19    Telecom (TNG), BSNL (Embee Software), Ericsson, TATA (TCS), and Texas Instruments.   Tr.

20    1173:24–1174:4, 1192:25–1193:15 (Pampinella); Tr. Ex. 1954 at 6, 8–9, 11–13.   As a result, HPE

21    is entitled to judgment as to these customers, and Oracle could not seek $5.3 million in related

22    damages.   Tr. 1192:25–1194:10 (Pampinella).

---

[10]    During trial, the Court denied HPE's motion to preclude Pampinella from (1) testifying about damages relating to customers for which Oracle has no evidence of allegedly improper copying, (2) testifying about damages relating to direct support customers for which Oracle has no evidence of infringement of a copyrighted work, and (3) testifying that, but for HPE's alleged misconduct, every server HPE supported would have been under an Oracle support contract.  Dkt. 1280-1; Tr. 963:23.   HPE renews its objection to the admission of Pampinella's testimony, without which the jury's damages finding could not stand given the centrality of the identified testimony to his overall damages opinion.  *See Weisgram v. Marley Co.*, 528 U.S. 440, 453–54, 457 (2000); *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

Gibson, Dunn &
Crutcher LLP

1    **B.    HPE Is Alternatively Entitled To A New Trial On The Infringement Claims**

2        **1.    Several Instructional Errors Warrant A New Trial**

3        "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are …

4    bases for a new trial."  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

5            **a.    HPE Was Entitled To An Authorized Copying Instruction**

6        Both Oracle and this Court have expressly recognized that copying patches for supported

7    servers is *not* infringement.  Dkt. 1113 at 2; Dkt. 991 at 3.  Thus, as HPE's proposed instructions

8    explained, HPE and Terix were authorized to copy patches for servers under an Oracle support

9    contract.  Dkt. 1082 at 184, 189, 205; Dkt. 1336 at 2, 8.  Yet the jury was not given HPE's authorized

10   copying instructions, and was instead told that they should find copyright liability if HPE or Terix

11   "copied original expression from the copyrighted work" (Dkt. 1334 at 23, 29)—i.e., if HPE or Terix

12   copied *any* copyrighted patch, even if for a server under an Oracle support contract.  Given that

13   patch copies made for servers under Oracle support are not infringing, and that the evidence

14   established HPE copied patches for servers under Oracle support contracts (Tr. 1084:14-23

15   (Jones)), it was wrong to tell the jury *any* copy of a copyrighted patch was infringing.

16       This error is presumed to be prejudicial, and Oracle cannot carry its burden of proving that

17   it was not.  *See Galdamez v. Potter*, 415 F.3d 1015, 1025 (9th Cir. 2005).  Whether HPE or Terix

18   unlawfully copied patches was the central question in the case.  And the erroneous instruction

19   misled the jury into believing it could find for Oracle on this central issue merely because HPE or

20   Terix made *lawful* copies—i.e., copies made for servers under support contracts.  This instruction

21   would necessitate a new trial on its own, given the evidence of lawful copying at trial (Tr. 1084:14-

22   23 (Jones); Dkt. 1316-4 at 220:3-4; Tr. 907:18-25 (Hicks))—but it was particularly prejudicial here

23   because it followed other, mid-trial instructions that also erroneously suggested that *any* copying

24   was infringing, even if for a supported server.  Tr. 439:14–440:8, 518:9-12.  Because Oracle cannot

25   show the jury would have found for Oracle even if it were properly instructed, a new trial is

26   required.  *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1245 (9th Cir. 2021).

27           **b.    HPE Was Entitled To Copyright Registration Instructions**

28       Copyright registration is a separate "element" of an infringement claim.  *Unicolors, Inc. v.*

20

1    *Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017); *Olander Enters., Inc. v. Spencer Gifts,*

2    *LLC*, 2011 WL 13225062, at *3 (C.D. Cal. Oct. 21, 2011).  There was at the *very least* a disputed

3    issue regarding whether Oracle's patches were registered—in fact, the evidence established they

4    were *not*.  Dkt. 1327.  The failure to give HPE's proffered instructions on registration—and to

5    instead take the registration question out of the jury's hands completely (Tr. 1818:20–1819:5)—

6    was erroneous.  *See* Dkt. 1336 at 2; Dkt. 1082 at 70; Dkt. 1318 at 9–10, 15.  It also was indisputably

7    prejudicial, as there was no evidence to support the registration element of Oracle's infringement

8    claims.  Oracle cannot establish the jury would have found its patches were registered if it had been

9    properly instructed, and a new trial is required.  *See BladeRoom*, 20 F.4th at 1245.

10              **c.**      **The Direct Infringement Instructions Were Incorrect**

11              Instruction 17.5 on direct infringement as to the direct customers and Instruction A.3 on

12   direct infringement as to the joint customers incorrectly articulated Oracle's burden of proof on the

13   copying element of its copyright claims.  Dkt. 1334 at 23, 29; Dkt. 1336 at 2, 8; Dkt. 1082 at 184,

14   205.  Although the instructions were based on Ninth Circuit Model Instruction 17.5, "the use of a

15   model jury instruction does not preclude a finding of error" where "the substance of the applicable

16   law was not fairly and correctly covered."  *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005).

17              Instruction 17.5 said Oracle had the burden of proving that "HPE copied original expression

18   from the copyrighted work."  Dkt. 1334 at 23.  Although copying is an element of every copyright

19   infringement claim (*Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th

20   Cir. 2012), the Ninth Circuit held that to prove "the copying element" as to "the direct infringement

21   claims" against HPE, Oracle had to prove "that HPE installed a patch on a server that was not

22   supported by an Oracle support contract" (*Oracle*, 971 F.3d at 1052).  But no instruction informed

23   the jury that it could not hold HPE liable for direct infringement as to the direct support customers

24   unless it found that HPE *installed* a patch on an unsupported server.  Instruction A.3 likewise failed

25   to instruct the jury that Oracle had to prove that Terix downloaded, copied, or delivered patches

26   with the intent to install them on unsupported servers.  Dkt. 991 at 19–21; *see* Dkt. 1082 at 30.

27              Instructions 17.5 and A.3 thus "misstated the law" (*Clem v. Lomeli*, 566 F.3d 1177, 1181

28   (9th Cir. 2009)), and were "incomplete" (*Dang*, 422 F.3d at 806), precluding the jury from

Gibson, Dunn &
Crutcher LLP

1   "determin[ing] the issues presented intelligently" (*Fikes v. Cleghorn*, 47 F.3d 1011, 1013 (9th Cir.

2   1995)).  The error was clearly prejudicial, as no instruction accurately articulate Oracle's burden to

3   prove unlawful "copying" and allowed the jury to hold HPE liable for conduct neither this Court

4   nor the Ninth Circuit has held is infringing.  *Gantt v. City of L.A.*, 717 F.3d 702, 707 (9th Cir. 2013).

5        **2.      Several Evidentiary Rulings Warrant A New Trial**

6        An evidentiary error is grounds for a new trial if it "more probably than not tainted the

7   verdict."  *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019).

8             **a.      Terix Evidence Was Erroneously Admitted Under The Agency
                 Exception To The Hearsay Rule**

9        Oracle introduced a mass of evidence from *Terix* to prove infringement, including 40 pages

10   of Terix discovery responses, three depositions of Terix employees (among other depositions), and

11   myriad documents from *Terix*.  Tr. 564:9-20; Dkts. 1252-4, 1259-1, 1284-1.[11]  HPE was saddled

12   with this evidence under the mistaken theory that Terix was HPE's agent.  Dkt. 1183 at 8.

13        Oracle should have been precluded from introducing Terix's discovery responses.  *See*

14   *Thompson v. TRW Auto, Inc.*, 2014 WL 12781291, at *13 (D. Nev. June 2, 2014).[12]  Because Terix

15   was not HPE's agent, the discovery responses were not party admissions.  Fed. R. Evid. 801(d)(2).

16   Nor were they admissible as statements against interest under Rule 804(b)(3) (Dkt. 1171 at 2),

17   because Oracle failed to show Terix was unavailable, and there was nothing inculpatory about

18   Terix's discovery responses "at the time [they were] made."  *Chambers v. Mississippi*, 410 U.S.

19   284, 299 (1973).  Moreover, the discovery responses were irrelevant, or at least highly misleading,

20   because the vast majority of Terix's customers were not HPE customers.  Fed. R. Evid. 401, 403.

21   Their probative value also was substantially outweighed by the risk of unfair prejudice because

22   they allowed Oracle "to insinuate and the jury to conclude, wrongly," that because Terix made

23   certain admissions for purposes of a separate lawsuit, Oracle's claims here were more likely to be

24   true.  *In re Southeastern Milk Antitrust Litig.*, 2011 WL 13122688, at *6 (E.D. Tenn. July 15, 2011).

25

26   _____

[11]  *See, e.g.*, Tr. Exs. 1342, 1611, 1619, 1621, 1623, 1625, 1629, 1635, 1673, 1675-1677, 1692,
27   1709, 1958-1960.
[12]  *See also, e.g.*, *Diodem, LLC v. Lumenis, Inc.*, 2017 WL 5764187, at *2 (C.D. Cal. May 24,
28   2007); *Proctor & Gamble Co. v. Haugen*, 2007 WL 701812, at *3 (D. Utah Mar. 2, 2007).

Gibson, Dunn &
Crutcher LLP

Similarly, the depositions taken in *Terix* should not have been treated as having been taken in this case. Dkt. 224. HPE was not a party in *Terix*, was not present at any of the depositions, and had no opportunity to defend itself in that case. Dkt. 161. Terix also did not have the same motive to cross-examine. Indeed, during many of the depositions, Oracle asked questions relevant only to HPE's liability and not Terix's, even though HPE was not a defendant and Terix had every incentive to shift blame to unrepresented HPE. *Akamai Techs., Inc. v. Limelight Networks, Inc*., 2008 WL 364401, at *3 (D. Mass. Feb. 8, 2008). In any event, the deposition testimony of Terix employees should not have been admitted under the agency exception to the hearsay rule. Fed. R. Evid. 801(d)(2)(D); Dkt. Nos. 1171 & 1183.

This evidence prejudiced HPE because it contained statements Terix supposedly told HPE and its customers about whether Terix could provide patches and updates, communications between customers and Terix regarding the provision of patches, and more, all without opportunity for cross-examination by HPE. The blanket admission of Terix evidence under Oracle's agency theory "tainted the verdict" and warrants a new trial. *Crawford*, 944 F.3d 1077.

### b. Terix Executives' Guilty Pleas Were Erroneously Admitted

Oracle attempted to establish its indirect infringement claims against HPE by citing guilty pleas from *United States v. Appleby*, No. 2:17-CR-138-JLG (S.D. Ohio). Those pleas are irrelevant because the four Terix executives merely pleaded guilty to the "essential elements" of conspiracy to commit wire fraud. Tr. Exs. 1475, 1476, 1477, 1478. That four Terix executives willfully joined in an agreement to commit *wire fraud* does not make it any more (or less) likely that Terix committed *copyright infringement*—let alone with respect to the joint customers at issue in this case. The evidence should have been excluded on Rule 401 grounds alone. *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 5871243, at *8 (N.D. Cal. Oct. 7, 2016) (Tigar, J.).

The *Appleby* evidence also should have been excluded under Rule 403 because evidence of plea agreements "invite[s] jurors to find against [the defendant] because of association, rather than because of evidence demonstrating [the defendant's] involvement in the conduct at issue." *United States v. Hawley*, 562 F. Supp. 2d 1017, 1054 (N.D. Iowa 2008). Admitting the guilty pleas allowed Oracle mislead the jury into erroneously finding that because the Terix executives plead guilty, and

1    HPE had a business relationship with Terix, HPE must have similarly engaged in wrongful conduct.

2            The *Appleby* evidence also should have been excluded under the rule against hearsay.  Fed.

3    R. Evid. 802.  The guilty pleas do not meet the exception for "evidence of a final judgment of

4    conviction" under Rule 803(22) because they are not "final judgment[s] of conviction."  Fed. R.

5    Evid. 803(22); *Lloyd v. Am. Exp. Lines, Inc.*, 580 F.2d 1179, 1190 (3d Cir. 1978); *Hartford Fire*

6    *Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 781 (D. Minn. 2010).  Nor did Oracle use the pleas to "prove

7    any fact essential to the judgment."  Fed. R. Evid. 803(22)(C); Tr. 1870:13-20, 1873:8-24, 1902:3-

8    8.  The only "fact essential to the judgment[s]" was that each defendant willfully joined an

9    agreement to commit wire fraud—not whether Terix committed *copyright infringement*.

10           Finally, evidence relating to the plea agreements is independently inadmissible under Rule

11   408 as evidence of a "compromise" of a disputed claim.  *United States v. Verdoorn*, 528 F.2d 103,

12   107 (8th Cir. 1976); *United States v. Davis*, 596 F.3d 852, 860 & n.6 (D.C. Cir. 2010).

13           The erroneous admission of the guilty pleas prejudiced HPE.  There was insufficient

14   evidence Terix downloaded, copied, or delivered a patch "with the intent to install [the] patch on

15   an unsupported server for a particular [joint HPE-Terix] customer."  Dkt. 991 at 19; *supra* Part

16   II.A.7.b.  To circumvent that hole in its case, Oracle told the jury to ignore that there was "minimal

17   evidence of infringement" because "four executives, through Terix, pleaded guilty."  Tr. 1870:13-

18   20; *see also* Tr. 275:7-12.  The importance of the guilty pleas to Oracle's case is underscored by

19   the fact that Oracle referenced the guilty pleas at least four times in its opening statement (Tr. 275:7-

20   12, 290:23-291:7, 297:18-24, 298:14-17) and three times in closing argument (Tr. 1870:13-20,

21   1873:8-24, 1902:3-8).  It is "more probabl[e] than not" that the guilty pleas "tainted the verdict."

22   *Crawford*, 944 F.3d 1077; *Jaramillo v. Ford Motor Co.*, 116 F. App'x 76, 79 (9th Cir. 2004).

23                   **c.      The *Terix* Stipulated Judgment Was Erroneously Admitted**

24           Oracle has repeatedly characterized the stipulated judgment from *Terix* as having

25   "established liability on all of Oracle's claims."  Dkt. 305 ¶ 40; Tr. 290:14-22.  But as the Ninth

26   Circuit recognized, "Terix stipulated to a judgment for Oracle on the infringement and fraud claims

27   without admitting liability."  *Oracle*, 971 F.3d at 1046.  Yet, Oracle was improperly allowed to

28   introduce the judgment and to mischaracterize it before the jury.  Tr. Ex. 1491; Tr. 1153:12-19.

1  The stipulated judgment was entered into pursuant to a settlement, and should have been

2  excluded under Rule 408. *McGary v. Inslee*, 2018 WL 3747921, at *3 (W.D. Wash. July 13, 2018).

3  Oracle's use of the judgment at trial—to argue to the jury that "Terix … admitted to its [alleged]

4  wrongdoing" (Tr. 290:14-22)—was barred by Rule 408(a)'s prohibition on admission of settlement

5  documents "to prove or disprove the validity … of a disputed claim." *McHann v. Firestone Tire*

6  *& Rubber Co.*, 713 F.2d 161, 167 (5th Cir. 1983). And the stipulated judgment was irrelevant to

7  the claims and defenses in this case and allowing Oracle to introduce it mislead the jury and unfairly

8  prejudiced HPE. Fed. R. Evid. 401–403. It contains no findings of fact or admissions that Terix

9  infringed Oracle's copyrights. *Oracle Am.*, 971 F.3d at 1046. At trial, Oracle used the judgment

10  to mislead the jury into thinking Terix's underlying infringement has already been "established"

11  for purposes of Oracle's secondary infringement claims against HPE. Fed. R. Evid. 403. This

12  "more probably than not tainted the verdict" and warrants a new trial. *Crawford*, 944 F.3d 1077;

13  *Jaramillo*, 116 F. App'x at 79.

### III.   CONCLUSION

15  The Court should grant judgment to HPE on all claims or, at minimum, order a new trial on

16  Oracle's copyright infringement claims.

18  Dated: July 29, 2022                    GIBSON, DUNN & CRUTCHER LLP

                                        By:   *Jeffrey T. Thomas*
20                                              Jeffrey T. Thomas